**MATLOCK LAW GROUP, P.C.**
Anne-Leith Matlock, State Bar No. 244351
1485 Treat Blvd., Suite 200
Walnut Creek, CA 94597
Tel.:    (925) 944-7131
Fax:    (925) 944-7138
Attorneys for  Debtor
Pacific Thomas Corporation

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: | Case No. 12-46534 |
| Pacific Thomas Corporation | Chapter 11 |
| Debtor. | |

**DEBTOR'S PLAN OF REORGANIZATION, DATED JUNE 12, 2013**

# **TABLE OF CONTENTS**

ARTICLE I.   DEFINITIONS, INTERPRETATIONS, AND RULES OF CONSTRUCTION 4
    1.01    Definitions............................................................................................. 4
    1.02    Interpretations, Computation of Time and Governing Law.............................. 4
    1.03    Undefined Terms. ................................................................................ 14
    1.04    Rules of Interpretation ........................................................................ 14
    1.05    Computing Time Periods. ..................................................................... 16
    1.06    Section Numbers. ............................................................................... 16
    1.07    Notices and Delivery of Documents ....................................................... 16

ARTICLE II.   INTRODUCTION ............................................................................. 17

ARTICLE III. CLASSIFICATION AND TREATMENT OF  CLAIMS AND INTERESTS . 19
    3.01    General Overview. .............................................................................. 19
    3.02    Unclassified Claims. ........................................................................... 20
    3.02.1    Administrative Expenses. ................................................................. 20
    3.02.2    Court Approval of Fees Required. ...................................................... 21
    3.02.3    Priority Tax Claims............................................................................ 21
    3.03    Classified Claims and Interests ............................................................ 23
    3.03.1    Classes of Secured Claims. ................................................................ 23
    3.03.2    Classes of General Unsecured Claims. ................................................. 38
    3.03.3    Classes of Priority Unsecured Claims................................................... 38
    3.03.4    Classes of General Unsecured Claims ................................................. 39
    3.03.5    Classes of Interest Holders. ............................................................... 42
    3.04    Means of Effectuating the Plan............................................................. 42
    3.04.1    Resolution of the State Court Actions ................................................. 42
    3.04.2    Funding for the Plan. ....................................................................... 43
    3.05    Post-confirmation Management ............................................................ 43
    3.06    Disbursing Agent ............................................................................... 44
    3.07    Acceptance of Rejection of the Plan; Cramdown ..................................... 44
    3.07.1    Acceptance by Impaired Classes of Claims and Interests ........................ 44
    3.07.2    Voting Classes ............................................................................... 45
    3.07.3    Ballot Instructions ........................................................................... 45
    3.07.4    Cramdown: Section 1129(b) of the Bankruptcy Code............................. 45
    3.08    Employment and Compensation of Professionals ..................................... 46
    3.09    Post-Confirmation Estate Claims .......................................................... 46
    3.10    Objections to Claims .......................................................................... 48
    3.11    Pending Disputed General Unsecured Claims as of the Date of Distribution 48
    3.12    Unclaimed Distributions ...................................................................... 49
    3.13    Other Provisions of the Plan ................................................................ 50
    3.13.1    Executory Contracts and Unexpired Leases .......................................... 50
    3.13.2    Changes In Rates Subject to Regulatory Commission Approval .............. 52
    3.13.3    Retention of Jurisdiction ................................................................... 52

ARTICLE IV. EFFECT OF CONFIRMATION OF THE PLAN ........................................... 55

4.01    Discharge ............................................................................ 55
4.02    Revesting of Property in the Debtor .................................... 55
4.03    Modification of the Plan ....................................................... 56
4.04    Post-Confirmation Status Reports........................................ 56
4.05    Post-Confirmation Conversion/Dismissal ........................... 56
4.06    Final Decree ......................................................................... 57

ARTICLE V.  REVESTING OF THE PROPERTY OF THE ESTATE ................................. 57

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

Debtor's Plan of Reorganization - 3

# ARTICLE I.

## DEFINITIONS, INTERPRETATIONS, AND RULES OF CONSTRUCTION

**1.01    Definitions.**

1.      "**Administrative Claim**" means a Claim for costs and expenses of the administration of the Case under Sections 503(b) or 507(b) of the Bankruptcy Code, including, without limitation: (a) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estate and operating the business of the Debtor (such as wages, salaries, or commissions for services); (b) all Claims of professionals employed at the expense of the Estate; and (c) any fees or charges assessed against the Estate under 28 U.S.C. § 1930.

2.      "**Allowed Administrative Claim**" means an Administrative Claim allowed pursuant to Sections 503(b) or 507(b) of the Bankruptcy Code.

3.      "**Allowed Amount**" means the amount of any Claim against the Debtor determined in accordance with Sections 502 and 506(a) of the Bankruptcy Code and any other applicable Section of the Bankruptcy Code, and recognized by the Debtor as value or allowed by Final Order of the Court, except to the extent described or defined otherwise herein.

4.      "**Allowed Claim**" means a Claim: (a) with respect to which a Proof of Claim has not been filed but the Claim has been listed in the Schedules filed with the Bankruptcy Court by the Debtor and not listed as disputed, contingent, or unliquidated as to amount and as to which no objection is filed within the time period fixed by the Bankruptcy Court, or as to which any such objection has been determined by a Final Order; or (b) with respect to which a Proof of Claim has been filed within the time period fixed by the Bankruptcy Court, and as to which no objection is filed within the time period fixed by the Bankruptcy Court, or as to which any such objection has been determined by a Final Order.

5.      "**Allowed Class ___ Claim**" means an Allowed Claim in the particular Class described.

Debtor's Plan of Reorganization - 4

6. **"Allowed Class _____ Interest"** means an Allowed Interest in the particular Class described

7. "**Allowed General Unsecured Claim**" means an unsecured Allowed Claim against the Debtor, however arising, not entitled to priority under Section 507(a) of the Bankruptcy Code, including, without limitation, an Allowed Claim based on the rejection of an executory contract or unexpired lease.

8. "**Allowed Priority Claim**" means an Allowed Administrative Claim, Allowed Priority Tax Claim, or Allowed Priority Unsecured Claim.

9. "**Allowed Priority Tax Claim**" means an Allowed Claim entitled to priority pursuant to Section 507(a)(8) of the Bankruptcy Code.

10. "**Allowed Priority Unsecured Claim**" means an Allowed Claim entitled to priority pursuant to Sections 507(a)(3), 507(a)(4), or 507(a)(6) of the Bankruptcy Code.

11. "**Allowed Secured Claim**" means an Allowed Claim secured by a lien, security interest or other charge against property in which the Estate has an interest, or which is subject to setoff under Section 553 of the Bankruptcy Code, to the extent of the value, determined in accordance with Section 506(a) of the Bankruptcy Code, of the interest of the holder of such Allowed Secured Claim in the Estate's interest in such property, or to the extent of the amount subject to any setoff, as the case may be.

12. "**Amended Bank of the West Note 1 Security Documents**" means the Bank of the West Note 1 Security Documents as they relate to the collateral securing the Bank of the West Note 1, as amended pursuant to the Plan.

13. "**Amended Jacol LLC Note 1 Security Documents**" means the Private Mortgage Fund Note 1 Security Documents as they relate to the collateral securing the Private Mortgage Fund Note 1, as amended pursuant to the Plan.

14. "**Amended Private Mortgage Fund LLC Security Documents**" means the Private Mortgage Fund LLC Note 1 Security Documents as they relate to the collateral securing the Private Mortgage Fund LLC Note 1, as amended pursuant to the Plan.

**15.** "**Amended Summit Bank Note 1 Security Documents**" means Summit Bank Note 1 Security Documents as they relate to the collateral securing the Summit Bank Note 1, as amended pursuant to the Plan.

**16.** "**Approved Date**" means the date on which an Order approving the Disclosure Statement, or an amended version thereof, is entered by the clerk on the Court's docket.

**17.** "**Avoidance Action**" means any action which is filed or which may be filed pursuant to the provisions of Sections 510, 542, 543, 544, 545, 547, 548, 549, or 550 of the Bankruptcy Code, any actions based on applicable non Bankruptcy law that may be incorporated or brought under the foregoing sections of the Bankruptcy Code, or any other similar action or proceeding filed to recover property for or on behalf of the Estate or to avoid a lien or transfer.

**18.** "**Ballot**" means the form distributed to holders of claims and interests on which is to be stated an acceptance or rejection of the Plan.

**19.** "**Bankruptcy Code**" means Title 11 of the United States Code, as now in effect or hereafter amended. All citations in the Plan to section numbers are to the Bankruptcy Code unless otherwise expressly indicated.

**20.** "**Bankruptcy Court**" means the United States Bankruptcy Court for the Northern District of California, Oakland Division which has jurisdiction over the Case and the Estate of the Debtor, or such successor court or tribunal as may hereafter be confirmed or created by lawful authority with power to confirm reorganization plans under Chapter 11 of the Bankruptcy Code and all applicable statutes, rules, and regulations pertaining thereto.

**21.** "**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for use in the Bankruptcy Court, as now in effect or hereafter amended.

**22.** "**Bank of the West**" means Bank of the West, the holder of the beneficial interest in the 1st Mortgage encumbering the Bank of the West Note 1 Collateral.

//

Case: 12-46534    Doc# 298    Filed: 06/12/13    Entered: 06/12/13 18:33:39    Page 6 of 58

23. **"Bank of the West Note 1"** means that certain Promissory Note secured by a $^{1st}$ trust deed encumbering the Bank of the West Note 1 Collateral

24. **"Bank of the West Note 1 Collateral"** means the $^{1ST}$ deed of trust encumbering the property located at 2615 East 12th Oakland, CA on APNs 25-693-8, 19-102-4, 25-701-11, 25-697-7-15, 2

25. **"Bank of the West First Note 1"** means that certain Promissory Note to be executed by the Reorganized Debtor as maker in favor of the current holder of the Bank of the West Note 1 pursuant to the Plan in an amount equal to the amount of the Bank of the West Note 1 on the Effective Date secured by an first deed of trust encumbering the Bank of the West Note 1 collateral as of the Effective Date.

26. **"Bar Date"** means the last date for filing Proofs of Claim other than Administrative Claims or Claims based upon the rejection of any executory contracts or unexpired leases. The Bar Date for filing Proofs of Claim for all creditors except a governmental unit was set by the Bankruptcy Court as December 10, 2012.

27. **"Business Day"** means any day other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

28. **"Case"** means the Debtor's Chapter 11 case which was filed in the Bankruptcy Court, as 12-46534

29. **"Cash"** means cash and cash equivalents, including, but not limited to, checks or similar forms of payment or exchange.

30. **"Claim"** means: (a) a right to payment from the Debtor, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, or (b) a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

Case: 12-46534    Doc# 298    Filed: 06/12/13    Entered: 06/12/13 18:33:39    Page 7 of 58

**31.** "**Claimant**" means the holder of a Claim.

**32.** "**Class**" means a grouping into which Claims or Interests which are substantially similar to other Claims or Interests have been classified pursuant to Article IV of the Plan.

**33.** "**Confirmation**" means the entry of the Confirmation Order by the Bankruptcy Court.

**34.** "**Confirmation Date**" means the date on which the Confirmation Order is entered by the Bankruptcy Court.

**35.** "**Confirmation Hearing**" means the hearing, including any continued or postponed session thereof, at which time the Bankruptcy Court will consider and determine whether to confirm the Plan.

**36.** "**Confirmation Order**" means the order, as entered, of the Bankruptcy Court confirming the Plan pursuant to Section 1129 of the Bankruptcy Code.

**37.** "**Creditor**" means the holder of an Allowed Claim.

**38.** "**Debtor**" means Pacific Thomas Corporation, the debtor in the Case.

**39.** "**Disallowed Claim**" means a Claim against the Debtor, which Claim is disallowed pursuant to an order of the Bankruptcy Court as to which eleven (11) calendar days have passed following entry of such order and no stay pending an appeal of such order is obtained during such period

**40.** "**Disbursing Agent**" means the person or entity charged with making Distributions pursuant to the terms of the Plan. Pursuant to the Plan, the Court shall appoint a neutral person or entity to serve as the Disbursing Agent under the Plan.

**41.** "**Disclosure Statement**" means the Disclosure Statement (and all exhibits or schedules annexed thereto or referenced therein) which accompanies the Plan, as the Disclosure Statement may be amended, modified, or supplemented from time to time in accordance with the Bankruptcy Code and Bankruptcy Rules.

42.    "**Disputed Claim**" means any Claim: (a) listed on the Debtor's Schedules as unliquidated, disputed, or contingent; or (b) as to which the Debtor, or any other party in interest, has interposed a timely objection or request for estimation or subordination in accordance with the Bankruptcy Code and the Bankruptcy Rules, which objection or request for estimation or subordination has not been withdrawn or determined by a Final Order. A Claim will be considered a Disputed Claim in its entirety if an objection is timely filed to any portion of such Claim.

43.    "**Disputed Claims Reserve Account**" means the segregated account to be created for holding the pro-rata share of any Disputed Claims pending final resolution of the Disputed Claim.

44.    "**Distribution**" means the Cash which is required to be distributed under the Plan to the holders of Allowed Claims.

45.    "**Effective Date**" means the date not later than ninety (90) days following the date upon which the Confirmation Order becomes a Final Order; provided, however, that, if an appeal of the Confirmation Order is timely filed, the Debtor may elect to cause the Plan to become effective, notwithstanding the pendency of such appeal, so long as no stay of the Confirmation Order is in effect, by filing with the Bankruptcy Court a notice of such election, in which event the Plan will become effective as provided herein.

46.    "**Equity Security Holder**" means the holder of an Interest in the Debtor.

47.    "**Estate**" means the estate created under Section 541 of the Bankruptcy Code in the Case.

48.    "**Exhibits**" means those exhibits annexed to the Plan or Disclosure Statement or incorporated by reference in the Plan or Disclosure Statement.

49.    "**File**," "**Filed**," or "**Filing**" means filed with the Bankruptcy Court having jurisdiction over the Case.

50.    "**Final Distribution**" means, for each Class, the last Distribution to be made to holders of Allowed Claims in that Class

Case: 12-46534    Doc# 298    Filed: 06/12/13    Entered: 06/12/13 18:33:39    Page 9 of 58

51.  "**Final Order**" means an order or judgment of the Bankruptcy Court, or of any court of competent jurisdiction where there is pending an action in which the Debtor is a party, which has not been reversed, stayed, modified, or amended, and as to which: (a) the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceeding for reargument or rehearing shall then be pending; or (b) any right to appeal, petition for certiorari, reargument, or rehearing shall have been waived in writing in form and substance satisfactory to the Debtor; or (c) any appeal, petition for certiorari, reargument or rehearing has been resolved by the highest court to which the order or judgment was appealed timely or from which certiorari, reargument, or rehearing was sought.

52.  "**Financial Projections**" means the financial statements prepared by the Debtor which sets forth, among other things, the Debtor's cash flow projections, and which is attached as Exhibit "C" hereto.

53.  "**General Unsecured Claim**" means an unsecured Claim against the Debtor that is not entitled to priority under Section 507(a) of the Bankruptcy Code, including, without limitation, a Claim based on the rejection of an executory contract or unexpired lease.

54.  "**Interest**" means a membership interest in the Debtor.

55.  "**Jacol**" means Jacol LLC, the holder of the beneficial interest in the 1st deed of trust encumbering the Jacol Note 1 Collateral

56.  "**Jacol Note 1**" means that certain Promissory Note secured by a first deed of trust encumbering Jacol Note 1 Collateral

57.  "**Jacol First Note 1**" means that certain Promissory Note to be executed by the Reorganized Debtor as maker in favor of the current holder of the Jacol Note 1 pursuant to the Plan in an amount equal to the amount of the Jacol Note 1 on the Effective Date secured by a first trust deed encumbering the Jacol Note 1 collateral as of the Effective Date.

58.  "**Jacol Note 1 Collateral**" means the 1st Deed of trust encumbering the Property located in Oakland, CA on APNs 25-697-2-4, 25-697-3-6, 25-697-7-14.

Debtor's Plan of Reorganization - 10

Case: 12-46534    Doc# 298    Filed: 06/12/13    Entered: 06/12/13 18:33:39    Page 10 of 58

**59.** **"Net Sales Proceeds"** means all of the Cash proceeds from the sale of the assets of the Estate minus all costs of sale and administrative expenses of the Estate including, but not limited to, the fees and expenses of the Disbursing Agent and Professionals employed by the Estate, income taxes and payments pursuant to the Plan to creditors holding Allowed Administrative Claims, Allowed Priority Claims and/or Allowed Secured Claims.

**60.** **"Order"** means an order or judgment of the Bankruptcy Court as entered on the Court's docket.

**61.** **"Pacific Thomas Properties"** means the Properties located on APNs 25-697-2-4, 25-697-3-6, 25-697-7-14, APNs 25-697-2-4, 25-697-3-6, 25-697-7-14, APNs 25-693-8, 19-102-4, 25-701-11, 25-697-7-15, 2, and APNs 25-693-8, 19-102-4, 25-701-11, 25-697-7-15, 2

**62.** "**Person**" means any individual, corporation, general partnership, limited partnership, association, joint stock company, joint venture, estate, trust, government or any political subdivision, governmental unit (as defined in the Bankruptcy Code) or official committee appointed by the United States Trustee.

**63.** "**Petition Date**" means August 6, 2012, the date on which the Debtor filed its voluntary petition under Chapter 11 of the Bankruptcy Code, commencing the Case.

**64.** **"Plan"** means the Debtor's Chapter 11 Plan of Reorganization, as the Plan may be amended, modified, or supplemented from time to time in accordance with the Bankruptcy Code and Bankruptcy Rules.

**65.** **"Post-Confirmation Estate Claims** "means any and all claims and causes of action which constitute property of the Estate including, but not limited to, any Avoidance Actions, whether or not such claims or causes of action are the subject of litigation pending as of the Effective Date.

**66.** "**Post-Petition Earnings**" means any funds received by Debtor since the Petition Date.

**67.** "**Priority Claim**" means an Administrative Claim, Priority Tax Claim, or Priority Unsecured Claim.

Case: 12-46534    Doc# 298    Filed: 06/12/13    Entered: 06/12/13 18:33:39    Page 11 of 58

**68.** "**Priority Tax Claim**" means a Claim asserted to have priority under Section 507(a)(8) of the Bankruptcy Code.

**69.** "**Priority Unsecured Claim**" means a Claim asserted to have priority under Sections 507(a)(3), 507(a)(4), or 507(a)(6) of the Bankruptcy Code.

**70.** "**Private Mortgage Fund**" means Private Mortgage Fund, LLC, the holder of the beneficial interest in the 1st deed of trust encumbering the Private Mortgage Fund Note 1 Collateral

**71.** "**Private Mortgage Fund Note 1**" means that certain Promissory Note secured by a first deed of trust encumbering the Private Mortgage Fund Note 1 Collateral

**72.** "**Private Mortgage Fund First Note 1**" means that certain Promissory Note to be executed by the Reorganized Debtor as maker in favor of the current holder of the Private Mortgage Fund Note 1 pursuant to the Plan in an amount equal to the amount of the Private Mortgage Fund Note 1 on the Effective Date secured by a first trust deed encumbering the Private Mortgage Fund Note 1 collateral as of the Effective Date.

**73.** "**Private Mortgage Fund Note 1 Collateral**" means the 1st Deed of trust encumbering the Property located at 1111 29th Ave, 2783 East 12th Avenue and the, 2801 East 12th Street parking lot in Oakland, CA on APNs 25-697-2-4, 25-697-3-6, 25-697-7-14.

**74.** "**Professionals**" means professionals, such as attorneys, consultants or accountants employed by the Debtor in this case after the confirmation of the Plan, including but not limited to, Anne-Leith Matlock.

**75.** "**Pro Rata**" means the proportional amount of any one Claim or Equity Interest in a Class or a group of Claims to the aggregate amount of all Claims or Equity Interests in the same Class or group, including Disputed Claims until disallowed.

**76.** "**Proof of Claim**" means a statement under oath filed in the Case by a Claimant in which the Claimant sets forth the amount claimed to be owed to it and sufficient detail to identify the basis for the Claim, in accordance with Federal Rule of Bankruptcy Procedure 3001.

77.   **"PTC"** means Pacific Thomas Corporation.

78.   **"Reorganized Debtor"** means the Debtor, Pacific Thomas Corporation  on and after the Effective Date, who shall assume all of the rights and obligations of the Debtor together with title to and control of the Debtor's assets and liabilities upon Confirmation of the Plan, as such rights, obligations, assets and liabilities are modified in the Plan

79.   "**Schedules**" means the Schedules of Assets and Liabilities and Statement of Financial Affairs filed by the Debtor in the Case, as amended, modified, or supplemented from time to time.

80.   **"Secured Claim"** means a Claim secured by a lien, security interest or other charge against property in which the Estate has an interest, or which is subject to setoff under Section 553 of the Bankruptcy Code, to the extent of the value, determined in accordance with Section 506(a) of the Bankruptcy Code, of the interest of the holder of such Secured Claim in the Estate's interest in such property, or to the extent of the amount subject to any setoff, as the case may be.

81.   "**Secured Creditor**" shall mean the holder of an Allowed Secured Claim.

82.   **"Summit Bank"** means Summit Bank, the holder of the beneficial interest in the 1st deed of trust encumbering the Summit Bank Note 1 Collateral.

83.   **"Summit Bank Note 1"** means that certain Promissory Note secured by a 1st trust deed encumbering the Summit Bank Note 1 Collateral.

84.   **"Summit Bank  Note 1 Collateral"** means the Building located at 1113-1115 29th Ave, the 23rd Ave Cul de sac parking area, and the 2901 East 12th Street Parking Lot(s) located in Oakland, CA on APNs 25-693-8, 19-102-4, 25-701-11, 25-697-7-15, 2.

85.   **"Summit Bank First Note 1"** means that certain Promissory Note to be executed by the Reorganized Debtor as maker in favor of the current holder of the Summit Bank  Note 1 pursuant to the Plan in an amount equal to the amount of the Summit Bank  Note 1 on the Effective Date secured by a first deed of trust encumbering the Summit Bank  Note 1 collateral as of the Effective Date.

**86.** "<u>Tax Collector</u>" means the County Treasurer/Tax Collector or its successors-in-interest

**87.** "<u>Unclaimed Distribution</u>" means any Distribution which is unclaimed as a result of any of the following: (a) checks which have been returned as undeliverable without a proper forwarding address; (b) checks which were not mailed or delivered because of the absence of a proper address to which to mail or deliver the same; (c) checks which remain un-negotiated for a period of ninety (90) days after the date of issuance.

**88.** "<u>Unclassified Claims</u>" means the Allowed Amount of all Administrative Claims of the Debtor's Case, allowed pursuant to Section 503(b) of the Bankruptcy Code; and (ii) all Priority Tax Claims entitled to priority pursuant to SECTION 507(a)(8) of the Bankruptcy Code.

**89.** "<u>Unsecured Creditors</u>" means Creditors holding Allowed Unsecured Claims against the Debtor for which there are no assets of the Debtor serving as a security, but not including Priority Claims.

**90.** "<u>Wage Claimant</u>" means a Claimant asserting a Claim pursuant to Section 507(a)(3) or (a)(4) of the Bankruptcy Code

**1.02** <u>Interpretations, Computation of Time and Governing Law</u>.

**1.03** <u>Undefined Terms.</u>

Any term used and not defined in this Plan, but that is used in the Bankruptcy Code or the Bankruptcy Rules, has the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules.

**1.04** <u>Rules of Interpretation.</u>

For the purposes of this Plan:

1. Whenever, from the context, it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural.

2. Any reference in the Plan to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and

Case: 12-46534    Doc# 298    Filed: 06/12/13    Entered: 06/12/13 18:33:39    Page 14 of 58

conditions means that such document shall be substantially in such form or substantially on such terms and conditions.

3. Any reference in the Plan to an existing document or Exhibit Filed or to be Filed means such document or Exhibit, as it may have been or may be amended, modified, or supplemented as of the Confirmation Date.

4. Unless otherwise specified in a particular reference in the Plan, all references in the Plan to Sections, Articles or Exhibits are references to Sections, Articles and Exhibits of or to the Plan.

5. Unless otherwise specified in a particular reference in the Plan, the words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to the Plan in its entirety rather than only to a particular paragraph, subparagraph, or clause contained in the Plan.

6. Captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan.

7. The rules of construction set forth in Bankruptcy Code Section 102 shall apply.

8. The provisions of the Plan will control over any description thereof contained in the Disclosure Statement.

9. Any term used in the Plan that is not defined in the Plan, but that is used in the Bankruptcy Code or in the Bankruptcy Rules shall have the meaning assigned to that term in (and shall be construed in accordance with the rules of construction under) the Bankruptcy Code or the Bankruptcy Rules. Without limiting the foregoing, the rules of construction set forth in Section 102 of the Bankruptcy Code shall apply hereto. The definitions and rules of construction contained herein do not apply to the Disclosure Statement or to the exhibits to the Plan except to the extent expressly so stated in the Disclosure Statement or in each exhibit to the Plan.

10.   Except to the extent that federal law, including the Bankruptcy Code or the Bankruptcy Rules are applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced for all purposes in accordance with, the laws of the State of California, without giving effect to any principles of conflict of laws thereof.

11.   All exhibits to the Plan are incorporated into the Plan and will be deemed to be included in the Plan, regardless of when they are filed.

**1.05      Computing Time Periods.**

In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

**1.06      Section Numbers.**

References in the Plan and Disclosure Statement to a Code section are references to the United States Bankruptcy Code (Title 11 of the United States Code) except as otherwise indicated.

**1.07      Notices and Delivery of Documents.**

All notices, correspondence, and other deliveries under this Plan must be directed as follows:

| | |
|---|---|
| To the Debtor or Reorganized Debtor: | Pacific Thomas Corporation<br>Attn: Randall Whitney<br>1818 Mt. Diablo Blvd., Suite D, Walnut Creek, CA |
| With a Copy to: | Matlock Law Group, P.C.,<br>Anne-Leith Matlock, Esq.<br>1485 Treat Blvd., Suite 200, Walnut Creek, CA 94597<br>Telephone: (925) 944-7131 |

## ARTICLE II.

## INTRODUCTION

PACIFIC THOMAS CORPORATION, is the Debtor in this Case[1]. The Debtor commenced its Case by filing a voluntary Chapter 11 petition under the United States Bankruptcy Code, ("Code") Sections 101-1330, on August 6, 2012    (the "Petition Date"). This document is the Chapter 11 plan proposed by the Debtor (the Debtor may sometimes be referred to herein as the "Proponent" of the Plan).

This is a Plan of Reorganization that proceeds in two steps: first, a restructuring plan with a new sixty (60) months note subject to a balloon payment; upon the closing of a refinancing loan in the second step, a cash-out of all claims upon refinancing of all existing debts.  In other words, the Proponent seeks to accomplish payments under the Plan by restructuring notes secured by real property of the estate held by Summit Bank, Bank of the West, Jacol LLC, and Private Mortgage Fund LLC, by restructuring notes secured by personal property and real property of the estate, by restructuring liens levied by the real estate taxing authorities, and by paying off in full all secured and general unsecured creditors within sixty months.  The secured as well as the general unsecured creditors of the estate shall be paid the present value of their claim at a market interest rate over a sixty month period through net income generated from the Pacific Thomas Properties and/or through a refinance or sale of the Pacific Thomas Properties.  The Effective Date of the proposed Plan is projected to be September 16, 2013.  The first payment due under the plan based upon the projected Effective Date is October 15, 2013.

The Plan will be implemented through the following means:  The proceeds from net income resultant from the leasing of the Pacific Thomas Properties will be used to fund the payments to both Secured and Unsecured Creditors provided for under the Plan. Debtor will have approximately $550,000.00 in cash on hand on the Effective Date of the Plan to pay

---

[1] The definitions of the capitalized terms used in this Plan are contained in Section I. above.

Case: 12-46534    Doc# 298    Filed: 06/12/13    Entered: 06/12/13 18:33:39    Page 17 of 58

administrative claims. Randall Whitney, will provide oversight and assistance in the operation of the Debtor's business and day-to-day management decisions. The Debtor will work to maintain and increase lease revenues as well as to close the refinancing loan, either as currently offered through a conditional commitment letter or term sheet or pursuant to a loan with like terms, or to sell the Pacific Thomas Properties providing funds for the payment of creditors.

- Randall Whitney will provide oversight and assistance in the operation of the Debtor's business and day-to-day management decisions. The Debtor will work to refinance/sell, and develop the Pacific Thomas Properties providing funds for the payment of creditors

- The proceeds from net income resultant from the leasing, and or the refinance/sale of the Pacific Thomas Properties will be used to fund the payments to both Secured and Unsecured Creditors provided for under the Plan. It is anticipated that there will be sufficient funds from the above referenced sources to pay all Allowed Secured and Allowed Unsecured Claims as follows:

- The Alameda County Treasurer will be paid in full on or before the earlier of the sixtieth (60th) month following the Effective Date or the closing of a refinance loan.

- The secured claim of Summit Bank, will be paid in full on or before the earlier of the sixtieth (60th) month following the Effective Date or the closing of a refinance loan.

- Secured Creditor Bank of the West shall be paid in full on or before the earlier of the sixtieth (60th) month following the Effective Date or the closing of a refinance loan.

- Secured creditor Private Mortgage Fund LLC shall be paid in full on or before the earlier of the sixtieth (60th) month following the Effective Date, or the closing of a refinance loan.

Case: 12-46534    Doc# 298    Filed: 06/12/13    Entered: 06/12/13 18:33:39    Page 18 of 58

- Secured creditor Jacol LLC shall be paid in full on or before the earlier of the sixtieth (60th) month following the Effective Date, or the closing of a refinance loan.

- Allowed Class 6A General Unsecured Claims will receive 100% of their allowed claim on or before the earlier of the sixtieth (60th) month following the Effective Date or the closing of a refinance loan.

- Allowed Class 6B Unsecured Claims of Insiders will receive their allowed claim whereby Class 6B shall receive no funds until Class 6A has been paid in full in accordance with the absolute priority rule.

## ARTICLE III.

## CLASSIFICATION AND TREATMENT OF

## CLAIMS AND INTERESTS

**3.01    General Overview.**

As required by the Bankruptcy Code, the Plan classified Claims and Interests in various classes according to their right to priority of payments as provided under the Bankruptcy Code.  The Plan states whether each class of Claim or Interest is impaired or unimpaired.  The Plan provides the treatment each class will receive under the Plan.

| | |
|---|---|
| Class 1: | Consists of the allowed secured claim of Summit Bank |
| Class 2: | Consists of the allowed secured claim of Bank of the West |
| Class 3: | Consists of the allowed secured claim of Private Mortgage Fund LLC |
| Class 4: | Consists of the allowed secured claim of Jacol LLC |
| Class 5a-5h: | Consists of the allowed secured claims of the Alameda County Treasurer |
| Class 6A: | Consists of the allowed claims of general unsecured creditors |
| Class 6B: | Consists of the allowed unsecured claims of insiders |
| Class 7: | Consists of the interest holders in the Debtor |

Case: 12-46534     Doc# 298     Filed: 06/12/13     Entered: 06/12/13 18:33:39     Page 19 of 58

**3.02**      <u>Unclassified Claims.</u>

         Certain types of Claims are not placed into voting classes; instead they are unclassified. They are not considered impaired and they do not vote on the Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code. As such, Proponent has <u>not</u> placed the following Claims in a class.

3.02.1     **Administrative Expenses.**

         Administrative expenses are Claims for costs or expenses of administering Debtor's Chapter 11 case which are allowed under Code Section 507(a)(1). The Code requires that all Administrative Claims be paid on the Effective Date of the Plan, unless a particular claimant agrees to a different treatment.

         Except to the extent that the holder of a particular Allowed Administrative Claim agrees to a different treatment thereof, each Allowed Administrative Claim will be paid in full, in Cash, on the later of: (a) the Effective Date; or (b) the fifth Business Day after the order allowing such Administrative Claim becomes a Final Order. Any holder of an Administrative Claim (including, without limitation, any governmental unit holding an Administrative Claim for post-petition taxes and/or interest and penalties related to such taxes) is required to file a request for payment of its Administrative Claim. Requests for payment of Administrative Claims must be filed not later than thirty days after the Effective Date, and will be paid on or before the fifth Business Day after the order allowing such Administrative Claim becomes a Final Order. Any failure by the holder of an Administrative Claim to file a request for payment of its Administrative Claim within thirty days after the Effective Date will forever bar such holder of an Administrative Claim from asserting its Administrative Claim against the Estate.

//

//

The following chart lists all of Debtor's Section 507(a)(1) Administrative Claims and their treatment under the Plan:[2]

| Name | Amount Owed | Treatment |
|------|-------------|-----------|
| Matlock Law Group, P.C. | $100,000(est.) | Paid on Effective Date |
| Chapter 11 Trustee | $50,000 (est.) | Paid on Effective Date |
| Chapter 11 Trustee Counsel | $100,000 (est.) | Paid on Effective Date |
| Chapter 11 Trustee Accountant | $5,000 (est.) | Paid on Effective Date |
| Clerk's Office Fees | $0.00 (est.) | Paid in full on Effective Date |
| Office of the U.S. Trustee Fees | $650 (3rd qtr '013) | Paid in full on Effective Date |
| | TOTAL $255,650.00 | |

**3.02.2    Court Approval of Fees Required.**

The Court must rule on all professional fees listed in the chart above before the fees will be owed.  For all fees except the Clerk's Office fee and the United States Trustee's fees, the professional in question must file and serve a properly noticed fee application and the Court must rule on the application. Only the amount of fees allowed by the Court will be owed and required to be paid under the Plan.

**3.02.3    Priority Tax Claims**.

Priority tax claims are certain unsecured income, employment and other taxes described by Code Section 507(a)(8).  Except to the extent that the holder of a particular Allowed Priority Tax Claim agrees to a different treatment thereof, the Code requires that each holder of an Allowed Priority Tax Claim receive the present value of such Allowed Priority Tax Claim in deferred Cash payments over a period not exceeding six years from the date of assessment of such tax.

---

[2]    The amounts listed owed are estimates.

Case: 12-46534    Doc# 298    Filed: 06/12/13    Entered: 06/12/13 18:33:39    Page 21 of 58

<u>Treatment of Allowed Priority Tax Claims</u>.

Priority tax claims are certain unsecured income, employment and other taxes described by Code Section 507(a)(8). Except to the extent that the holder of a particular Allowed Priority Tax Claim agrees to a different treatment thereof, the Code requires that each holder of an Allowed Priority Tax Claim receive on account of such Claim regular installment payments -

i. of a total value, as of the Effective Date of the Plan, equal to the allowed amount of such Claim; ii. over a period ending not later than five years after the Petition Date under Section 301, 302 or 303; and iii. in a manner not less favorable than the most favored nonpriority Unsecured Claim provided for by the Plan (other than Cash payments made to a class of creditors under Section 1122(b)).

The Debtor has no Section 507(a)(8) Priority Tax Claims. If it is determined that there are allowed Section 507(a)(8) Priority Tax Claims, such Allowed Priority Tax Claims will be paid in monthly installment payments such that they are paid in full within five years of the Petition Date, with payments to commence within thirty days of the Effective Date, will include annual interest at the published rate for one-year Treasury constant in the middle of the month of the Effective date and will be fully amortized in 60 equal payments. Alternatively, the Allowed Claim amount may be paid in full on the Effective Date.

The following chart lists <u>all</u> of the Debtor's Section 507(a)(8) priority tax claims and their treatment under the Plan:

**The Debtor has no Section 507(a)(8) priority tax claims**. [3]

//

//

//

---

[3] In the event any taxing agencies filed Priority Tax Claims, the Debtor reserves the right to file an objection to such Claims on any appropriate grounds.

Case: 12-46534    Doc# 298    Filed: 06/12/13    Entered: 06/12/13 18:33:39    Page 22 of 58

| Description | Amount Owed | Treatment |
|---|---|---|
| | | |
| · Name = Not Applicable<br>· Type of tax = None<br>· Date tax assessed = Not Applicable | 0.00 | · Pymt interval     =<br>· Est. pymt amt/interval =<br>· Begin date        =<br>· End date          =<br>· Interest rate %    =<br>· Total payout amount%   = $0 |

**3.03**     **Treatment of Allowed Classified Claims and Interests**

3.03.1     **Classes of Secured Claims.**

       Secured claims are claims secured by liens on property of the estate. The following chart lists all classes containing Debtor's secured pre-petition claims and their treatment under the Plan.

               3.01.1.1   Class 1

| CLASS# | DESCRIPTION | INSIDERS<br><br>(Y/N) | IMPAIRED<br><br>(Y/N) | TREATMENT |
|---|---|---|---|---|
| | | | | |

Case: 12-46534    Doc# 298    Filed: 06/12/13    Entered: 06/12/13 18:33:39    Page 23 of 58

| | | | | | |
|---|---|---|---|---|---|
| | 1 | Secured claim of:<br><br>· Name = Summit Bank<br><br>· Collateral description = First Trust Deed<br><br>· Priority of security int. = 1st<br><br>· Principal owed = $7,693,122.98<br><br>· Post-pet. arrearage amount = 0 (est)<br><br>· Total claim amount = $7,693,122.98 | N | Impaired, Claims in this class are entitled to vote on the Plan. | Pymt interval = Monthly<br>· Est. pymt amt/interval = $32,054months 1-30 and $41,704 months 31-60<br>· Balloon pymt = $7,114,160<br>Begin date = 10/15/2013· End date = 10/14/2018<br>Interest rate % = 5.0% fixed interest only months 1-30 and amortized over 30 years in months 31-60.<br>· Total payout % = 100%<br>$9,616,404 will be paid over on 100% of a principal balance of $$7,693,122.98.<br>· Treatment of lien = Lien is retained and in full force and effect. |

Comments:

Class 1 consists of the Allowed Claims of Summit Bank or the holder of the Summit Bank Note 1. Class 1 is impaired under the Plan. As of the confirmation date, the Summit Bank Note 1 shall be deemed satisfied and paid in full. Within five (5) business days after the Confirmation Date (but coterminous with the execution and delivery of the Summit Bank First Note 1 as described below), Summit Bank or the holder of the Summit Bank Note 1 shall return to the Reorganized Debtor the Summit Bank Note 1 marked "Paid in Full." Summit Bank or the holder of the Summit Bank Note 1 Security Documents shall also return to the Reorganized Debtor the Summit Bank Note 1 Security Documents marked "Canceled" and "Superseded." In full and complete satisfaction of the Allowed Class 1 Claim, Summit Bank or the holder of the Allowed Class 1 Claim shall receive the following:

(1) Within five (5) business days after the Confirmation Date (but coterminous with the cancellation and return of the Summit Bank Note 1 as described above), the Reorganized Debtor shall execute the Summit Bank First Note 1 and the Amended Summit Bank Note 1 Security Documents.

Case: 12-46534    Doc# 298    Filed: 06/12/13    Entered: 06/12/13 18:33:39    Page 24 of 58

(a) The Summit Bank First Note 1.  The Summit Bank First Note 1 and Amended Summit Bank Note 1 Security Documents shall be in the same form as the Summit Bank First Note 1 and Summit Bank Note 1 Security Documents, respectively.

In the event there is any provision of the Summit Bank First Note 1 which is inconsistent with the terms of the Plan, the terms of the Plan shall control.

The Amended Summit Bank Note 1 Security Documents shall secure a lien on the Summit Bank Note 1 Collateral with the same priority and validity that existed prior to the Debtor's alleged pre-petition default(s).  The Amended Summit Bank Note 1 Security Documents shall secure repayment of the Summit Bank First Note 1.  Since the Summit Bank Note 1 has been paid in full pursuant to the Plan, any event of default that may have existed pre-petition with respect to the Summit Bank Note 1 and/or the Summit Bank Note 1 Security Documents shall be deemed cured and any notice of default which may have been recorded pre or post-petition with respect to the Summit Bank Note 1 and the Summit Bank Note 1 Security Documents shall be deemed null and void and of no further force or effect, and Summit Bank or the holder of the Summit Bank Note 1 shall execute any documents or instruments necessary to reflect the same, including the execution and recordation of a release of notice of default.

Payments on the Summit Bank First Note 1 shall be shall be made in monthly installments of interest only calculated at a fixed interest rate of five percent (5.0%) for the first 30 months, and then amortized over 360 months for the final 30 months, calculated at a fixed interest rate of five percent (5.0%). Interest shall begin to accrue on the Summit Bank First Note 1 as of the Effective Date.  The first (1st) payment shall be due on the fifteenth (15th) day of the first (1st) full month following the Effective Date, and shall be in an amount equal to a percentage of a full monthly installment payment derived from the number of days remaining in the month in which the Effective Date occurs (the numerator) divided by the number of days in the month in which the Effective Date occurs (the denominator).  Thereafter, payments shall

Case: 12-46534    Doc# 298    Filed: 06/12/13    Entered: 06/12/13 18:33:39    Page 25 of 58

be due on the fifteenth (15th) day of each and every month until the sixtieth (60th) month after the Effective Date at which time the entire outstanding balance of the Summit Bank First Note 1 shall be all due and payable excepting that when Debtor finalizes and closes a refinance loan with a third party lender prior to the sixtieth (60th) month after the Effective Date, the Class 1 Claimant shall be paid in full upon the funding of Debtor's refinance loan. See Article II above. There shall be no prepayment penalty.

Upon payment in full of the Summit Bank First Note 1, the lien evidenced by the Amended Summit Bank Note 1 Security Documents shall be deemed satisfied and shall be deemed canceled. Summit Bank shall execute and record a reconveyance of its Deed of Trust and shall cancel and terminate any and all of its security interests.

In the event that the Reorganized Debtor defaults in its obligation to pay each payment due and payable under the Summit Bank First Note 1 and the Amended Summit Bank Note 1 Security Documents , the holder of the Summit Bank First Note 1 shall be entitled to record a notice of default and accelerate the entire unpaid indebtedness and/or exercise such other remedies as provided under the guarantee, the Summit Bank First Note 1 and the Amended Summit Bank Note 1 Security Documents or under applicable California law. The Reorganized Debtor shall be entitled to cure and reinstate any such default under applicable California law.

Nothing in the Plan shall enhance or otherwise increase the rights of the holder of the Class 1 claim to seek recovery on its claim as against any party other than the Reorganized Debtor.

3.01.1.2 **Class 2**

| CLASS# | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|--------|-------------|----------------|----------------|-----------|

Case: 12-46534    Doc# 298    Filed: 06/12/13    Entered: 06/12/13 18:33:39    Page 26 of 58

| | 2 | Secured claim of: <br> · Name =Bank of the West <br> · Collateral <br> description = (see Definitions: Bank of the West Note 1 Collateral) <br> Collateral value = <br> Fully secured <br> Priority of <br> security int. = (see Definitions: Bank of the West Note 1 collateral) <br> · Principal owed = $3,150,064.00 <br> · Pre-pet. arrearage <br> amount = $ (included above) <br> · Post-pet. arrearage <br> amount = $0(est) <br> · Total claim amount = <br> $3,150,064.00 | N | Impaired, Claims in this class are entitled to vote on the Plan. | · `Pymt interval = Monthly <br> · Est. pymt amt/interval = $13,125.27 months 1-30 and $17,076 months 31-60 <br> · Balloon pymt = $222,049 <br> Begin date = 4/15/2013· End date = 4/14/2018 <br> Interest rate % = 5.0% fixed interest only months 1-30 and amortized over 30 years in months 31-60. <br> · Total payout % = 100% $3,937,580  will be paid over on 100% of a principal balance of $3,150,064.00. <br> · Treatment of lien = Lien is retained and in full force and effect. |

//

//

Comments:

Class 2 consists of the Allowed Claims of Bank of the West or the holder of the Bank of the West Note 1.  Class 2 is impaired under the Plan.  As of the confirmation date, the Bank of the West Note 1 shall be deemed satisfied and paid in full.  Within five (5) business days after the Confirmation Date (but coterminous with the execution and delivery of the Bank of the West  First Note 1 as described below), Bank of the West  or the holder of the Bank of the West Note 1 shall return to the Reorganized Debtor the Bank of the West Note 1 marked "Paid in Full."  Bank of the West or the holder of the Bank of the West Note 1 Security Documents shall also return to the Reorganized Debtor the Bank of the West Note 1 Security Documents marked "Canceled" and "Superseded."  In full and complete satisfaction of the Allowed Class 2 Claim, Bank of the West or the holder of the Allowed Class 2 Claim shall receive the following:

    (1)   Within five (5) business days after the Confirmation Date (but coterminous with the cancellation and return of the Bank of the West Note 1 as described

Case: 12-46534     Doc# 298     Filed: 06/12/13     Entered: 06/12/13 18:33:39     Page 27 of 58

above), the Reorganized Debtor shall execute the Bank of the West First Note 1 and the Amended Bank of the West Note 1 Security Documents.

    (a) <u>The Bank of the West First Note 1</u>.  The Bank of the West First Note 1 and Amended Bank of the West Note 1 Security Documents shall be in the same form as the Bank of the West First Note 1 and Bank of the West Note 1 Security Documents, respectively.

In the event there is any provision of the Bank of the West First Note 1 which is inconsistent with the terms of the Plan, the terms of the Plan shall control.

The Amended Bank of the West Note 1 Security Documents shall secure a lien on the Bank of the West Note 1 Collateral with the same priority and validity that existed prior to the Debtor's alleged pre-petition default(s).  The Amended Bank of the West Note 1 Security Documents shall secure repayment of the Bank of the West First Note 1.  Since the Bank of the West Note 1 has been paid in full pursuant to the Plan, any event of default that may have existed pre-petition with respect to the Bank of the West Note 1 and/or the Bank of the West Note 1 Security Documents shall be deemed cured and any notice of default which may have been recorded pre or post-petition with respect to the Bank of the West Note 1 and the Bank of the West Note 1 Security Documents shall be deemed null and void and of no further force or effect, and Bank of the West or the holder of the Bank of the West Note 1 shall execute any documents or instruments necessary to reflect the same, including the execution and recordation of a release of notice of default.

Payments on the Bank of the West First Note 1 shall be shall be made in monthly installments of interest only calculated at a fixed interest rate of five percent (5.0%) for the first 30 months, and then amortized over 360 months for the final 30 months, calculated at a fixed interest rate of five percent (5.0%). Interest shall begin to accrue on the Bank of the West First Note 1 as of the Effective Date.  The first (1st) payment shall be due on the fifteenth (15th) day of the first (1st) full month following the Effective Date, and shall be in an amount equal to a percentage of a full monthly installment payment derived from the number of days remaining

in the month in which the Effective Date occurs (the numerator) divided by the number of days in the month in which the Effective Date occurs (the denominator). Thereafter, payments shall be due on the fifteenth (15th) day of each and every month until the sixtieth (60th) month after the Effective Date at which time the entire outstanding balance of the Bank of the West First Note 1 shall be all due and payable excepting that when Debtor finalizes and closes a refinance loan with a third party lender prior to the sixtieth (60th) month after the Effective Date, the Class 2 Claimant shall be paid in full upon the funding of Debtor's refinance loan. See Article II above. There shall be no prepayment penalty.

Upon payment in full of the Bank of the West First Note 1, the lien evidenced by the Amended Bank of the West Note 1 Security Documents shall be deemed satisfied and shall be deemed canceled. Bank of the West shall execute and record a reconveyance of its Deed of Trust and shall cancel and terminate any and all of its security interests.

In the event that the Reorganized Debtor defaults in its obligation to pay each payment due and payable under the Bank of the West First Note 1 and the Amended Bank of the West Note 1 Security Documents , the holder of the Bank of the West First Note 1 shall be entitled to record a notice of default and accelerate the entire unpaid indebtedness and/or exercise such other remedies as provided under the guarantee, the Bank of the West First Note 1 and the Amended Bank of the West Note 1 Security Documents or under applicable California law. The Reorganized Debtor shall be entitled to cure and reinstate any such default under applicable California law.

Nothing in the Plan shall enhance or otherwise increase the rights of the holder of the Class 2 claim to seek recovery on its claim as against any party other than the Reorganized Debtor.

### 3.01.1.3 **Class 3**

| CLASS# | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| | | | | |

Case: 12-46534    Doc# 298    Filed: 06/12/13    Entered: 06/12/13 18:33:39    Page 29 of 58

| | 3 | Secured claim of: <br> · Name =Private Mortgage Fund LLC <br> · Collateral description = (see Definitions: Private Mortgage Fund LLC Note 1 Collateral) <br> · Collateral value = Fully secured <br> Priority of security int. = (see Definitions: Private Mortgage Fund LLC Note 1 Collateral) <br> · Principal owed = $1,725,000.00 <br> · Pre-pet. arrearage amount = $ (included above) <br> · Post-pet. arrearage amount = $0 (est) <br> · Total claim amount = $1,725,000.00 | N | Impaired, Claims in this class are entitled to vote on the Plan. | · Pymt interval = Monthly <br> · Est. pymt amt/interval = $ 7,187.50 months 1-30 and $9,351months 31-60 <br> · Balloon pymt = $1,595,181 <br> Begin date = 4/15/2013 <br> · End date = 4/14/2018 <br> Interest rate % = 5.0% fixed interest only months 1-30 and amortized over 20,years in months 31-60 <br> · Total payout % = 100% $2,156,250 will be paid over sixty months on 100% of a principal balance of $1,725,000.00. <br> · Treatment of lien = Lien is retained and in full force and effect. |
|---|---|---|---|---|---|

Comments:

Class 3 consists of the Allowed Claims of Private Mortgage Funder the holder of the Private Mortgage Fund LLC Note 1. Class 3 is impaired under the Plan. As of the confirmation date, the Private Mortgage Fund LLC Note 1 shall be deemed satisfied and paid in full. Within five (5) business days after the Confirmation Date (but coterminous with the execution and delivery of the Private Mortgage Fund LLC First Note 1 as described below), Private Mortgage Fund LLC or the holder of the Private Mortgage Fund LLC Note 1 shall return to the Reorganized Debtor the Private Mortgage Fund LLC Note 1 marked "Paid in Full." Private Mortgage Fund LLC or the holder of the Private Mortgage Fund LLC Note 1 Security Documents shall also return to the Reorganized Debtor the Private Mortgage Fund LLC Note 1 Security Documents marked "Canceled" and "Superseded." In full and complete satisfaction of the Allowed Class 3 Claim, Private Mortgage Fund LLC or the holder of the Allowed Class 3 Claim shall receive the following:

(1)    Within five (5) business days after the Confirmation Date (but coterminous with the cancellation and return of the Private Mortgage Fund LLC Note 1 as described above), the Reorganized Debtor shall execute the Private Mortgage Fund LLC First Note 1 and the Amended Private Mortgage Fund LLC Note 1 Security Documents.

(a)    <u>The Private Mortgage Fund LLC First Note 1</u>.  The Private Mortgage Fund LLC First Note 1 and Amended Private Mortgage Fund LLC Note 1 Security Documents shall be in the same form as the Private Mortgage Fund LLC First Note 1 and Private Mortgage Fund LLC Note 1 Security Documents, respectively.

In the event there is any provision of the Private Mortgage Fund LLC First Note 1 which is inconsistent with the terms of the Plan, the terms of the Plan shall control.

The Amended Private Mortgage Fund LLC Note 1 Security Documents shall secure a lien on the Private Mortgage Fund LLC Note 1 Collateral with the same priority and validity that existed prior to the Debtor's alleged pre-petition default(s).  The Amended Private Mortgage Fund LLC Note 1 Security Documents shall secure repayment of the Private Mortgage Fund LLC First Note 1.  Since the Private Mortgage Fund LLC Note 1 has been paid in full pursuant to the Plan, any event of default that may have existed pre-petition with respect to the Private Mortgage Fund LLC Note 1 and/or the Private Mortgage Fund LLC Note 1 Security Documents shall be deemed cured and any notice of default which may have been recorded pre or post-petition with respect to the Private Mortgage Fund LLC Note 1 and the Private Mortgage Fund LLC Note 1 Security Documents shall be deemed null and void and of no further force or effect, and Private Mortgage Fund LLC or the holder of the Private Mortgage Fund LLC Note 1 shall execute any documents or instruments necessary to reflect the same, including the execution and recordation of a release of notice of default.

Payments on the Private Mortgage Fund LLC First Note 1 shall be shall be made in monthly installments of interest only calculated at a fixed interest rate of five percent (5.0%)for

Case: 12-46534    Doc# 298    Filed: 06/12/13    Entered: 06/12/13 18:33:39    Page 31 of 58

the first 30 months, and then amortized over 360 months for the final 30 months, calculated at a fixed interest rate of five percent (5.0%). Interest shall begin to accrue on the Private Mortgage Fund LLC First Note 1 as of the Effective Date. The first (1st) payment shall be due on the fifteenth (15th) day of the first (1st) full month following the Effective Date, and shall be in an amount equal to a percentage of a full monthly installment payment derived from the number of days remaining in the month in which the Effective Date occurs (the numerator) divided by the number of days in the month in which the Effective Date occurs (the denominator). Thereafter, payments shall be due on the fifteenth (15th) day of each and every month until the sixtieth (60th) month after the Effective Date at which time the entire outstanding balance of the Private Mortgage Fund LLC First Note 1 shall be all due and payable excepting that when Debtor finalizes and closes a refinance loan with a third party lender prior to the sixtieth (60th) month after the Effective Date, the Class 3 Claimant shall be paid in full upon the funding of Debtor's refinance loan. See Article II above. There shall be no prepayment penalty.

Upon payment in full of the Private Mortgage Fund LLC First Note 1, the lien evidenced by the Amended Private Mortgage Fund LLC Note 1 Security Documents shall be deemed satisfied and shall be deemed canceled. Private Mortgage Fund LLC shall execute and record a reconveyance of its Deed of Trust and shall cancel and terminate any and all of its security interests.

In the event that the Reorganized Debtor defaults in its obligation to pay each payment due and payable under the Private Mortgage Fund LLC First Note 1 and the Amended Private Mortgage Fund LLC Note 1 Security Documents , the holder of the Private Mortgage Fund LLC First Note 1 shall be entitled to record a notice of default and accelerate the entire unpaid indebtedness and/or exercise such other remedies as provided under the guarantee, the Private Mortgage Fund LLC First Note 1 and the Amended Private Mortgage Fund LLC Note 1 Security Documents or under applicable California law. The Reorganized Debtor shall be entitled to cure and reinstate any such default under applicable California law.

Nothing in the Plan shall enhance or otherwise increase the rights of the holder of the Class 3 claim to seek recovery on its claim as against any party other than the Reorganized Debtor.

### 3.01.1.4 Class 4

| CLASS # | DESCRIPTION | INSIDERS Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 4 | Secured claim of: <br> · Name =Jacol LLC <br> · Collateral description = (see Definitions: Jacol LLC  Note 1 Collateral) <br> · Collateral value = Fully secured <br> Priority of security int. = (see Definitions: Jacol LLC  Note 1 Collateral) <br> · Principal owed = $700,000 <br> · Pre-pet. arrearage amount = $ (included above) <br> · Post-pet. arrearage amount = $0 (est) <br> · Total claim amount = $700,000.00 | N | Impaired, Claims in this class are entitled to vote on the Plan. | · Pymt interval = Monthly <br> · Est. pymt amt/interval = $ $2,916 months 1-30 and $3,795 months 31-60 <br> · Balloon pymt = $647,319 <br> Begin date = 4/15/2013 <br> · End date = 4/14/2018 <br> Interest rate % = 5.0% fixed interest only months 1-30 and amortized over 30,years in months 31-60 <br> · Total payout % = 100% $875,000  will be paid over sixty months on 100% of a principal balance of $700,000.00. <br> · Treatment of lien = Lien is retained and in full force and effect. |

Comments:

Class 4 consists of the Allowed Claims of JACOL LLC or the holder of the Jacol LLC Note 1.  Class 4 is impaired under the Plan.  As of the confirmation date, the Jacol LLC Note 1 shall be deemed satisfied and paid in full.  Within five (5) business days after the Confirmation Date (but coterminous with the execution and delivery of the Jacol LLC First Note 1 as described below), Jacol LLC or the holder of the Jacol LLC Note 1 shall return to the Reorganized Debtor the Jacol LLC Note 1 marked "Paid in Full."  Jacol LLC or the holder of the Jacol LLC Note 1 Security Documents shall also return to the Reorganized Debtor the Jacol LLC Note 1 Security Documents marked "Canceled" and "Superseded."   In full and

Case: 12-46534    Doc# 298    Filed: 06/12/13    Entered: 06/12/13 18:33:39    Page 33 of 58

complete satisfaction of the Allowed Class 4 Claim, Jacol LLC or the holder of the Allowed Class 4 Claim shall receive the following:

    (1)  Within five (5) business days after the Confirmation Date (but coterminous with the cancellation and return of the Jacol LLC Note 1 as described above), the Reorganized Debtor shall execute the Jacol LLC First Note 1 and the Amended Jacol LLC Note 1 Security Documents.

    (a)  <u>The Jacol LLC First Note 1</u>.  The Jacol LLC First Note 1 and Amended Jacol LLC Note 1 Security Documents shall be in the same form as the Jacol LLC First Note 1 and Jacol LLC Note 1 Security Documents, respectively.

In the event there is any provision of the Jacol LLC First Note 1 which is inconsistent with the terms of the Plan, the terms of the Plan shall control.

The Amended Jacol LLC Note 1 Security Documents shall secure a lien on the Jacol LLC Note 1 Collateral with the same priority and validity that existed prior to the Debtor's alleged pre-petition default(s).  The Amended Jacol LLC Note 1 Security Documents shall secure repayment of the Jacol LLC First Note 1.  Since the Jacol LLC Note 1 has been paid in full pursuant to the Plan, any event of default that may have existed pre-petition with respect to the Jacol LLC Note 1 and/or the Jacol LLC Note 1 Security Documents shall be deemed cured and any notice of default which may have been recorded pre or post-petition with respect to the Jacol LLC Note 1 and the Jacol LLC Note 1 Security Documents shall be deemed null and void and of no further force or effect, and Jacol LLC or the holder of the Jacol LLC Note 1 shall execute any documents or instruments necessary to reflect the same, including the execution and recordation of a release of notice of default.

Payments on the Jacol LLC  First Note 1 shall be shall be made in monthly installments of interest only calculated at a fixed interest rate of five percent (5.0%)for the first 30 months, and then amortized over 360 months for the final 30 months, calculated at a fixed interest rate of five percent (5.0%). Interest shall begin to accrue on the Jacol LLC First Note 1 as of the Effective Date.  The first (1st) payment shall be due on the fifteenth (15th) day of the first (1st)

full month following the Effective Date, and shall be in an amount equal to a percentage of a full monthly installment payment derived from the number of days remaining in the month in which the Effective Date occurs (the numerator) divided by the number of days in the month in which the Effective Date occurs (the denominator). Thereafter, payments shall be due on the fifteenth (15th) day of each and every month until the sixtieth (60th) month after the Effective Date at which time the entire outstanding balance of the Jacol LLC First Note 1 shall be all due and payable excepting that when Debtor finalizes and closes a refinance loan with a third party lender prior to the sixtieth (60th) month after the Effective Date, the Class 4 Claimant shall be paid in full upon the funding of Debtor's refinance loan. See Article II above. There shall be no prepayment penalty.

Upon payment in full of the Jacol LLC First Note 1, the lien evidenced by the Amended Jacol LLC Note 1 Security Documents shall be deemed satisfied and shall be deemed canceled. Jacol LLC shall execute and record a reconveyance of its Deed of Trust and shall cancel and terminate any and all of its security interests.

In the event that the Reorganized Debtor defaults in its obligation to pay each payment due and payable under the Jacol LLC First Note 1 and the Amended Jacol LLC Note 1 Security Documents , the holder of the Jacol LLC First Note 1 shall be entitled to record a notice of default and accelerate the entire unpaid indebtedness and/or exercise such other remedies as provided under the guarantee, the Jacol LLC First Note 1 and the Amended Jacol LLC Note 1 Security Documents or under applicable California law. The Reorganized Debtor shall be entitled to cure and reinstate any such default under applicable California law.

Nothing in the Plan shall enhance or otherwise increase the rights of the holder of the Class 4 claim to seek recovery on its claim as against any party other than the Reorganized Debtor.

3.01.1.5 **Class 5**

| CLASS# | DESCRIPTION | INSIDERS | IMPAIRED (Y/N) | TREATMENT |
|--------|-------------|----------|----------------|-----------|

Case: 12-46534    Doc# 298    Filed: 06/12/13    Entered: 06/12/13 18:33:39    Page 35 of 58

| | | (Y/N) | | |
|---|---|---|---|---|
| 5a | Secured claim of:<br>· Name = Alameda County Treasurer<br>· Collateral description = Real Property Tax Lien APN 25-693-8<br>· Priority of security int. = 1st<br>Principal owed = $4,631.64<br>· Post-pet. Arrearage amount = $0 (est)<br>Total claim amount = $4,631.64 | N | Unimpaired, Claims in this class are not entitled to vote on the Plan. | Pymt interval = Monthly<br>· Est. pymt amt/interval = $97<br>· Balloon pymt = 0<br>Begin date = 10/15/2013<br>End date = 10/14/2018<br>· Interest rate % = 8.0%<br>· Total payout % = 100<br>$5,800 will be paid over 60 months at $97 per month on 100% of a principal balance of $4,631.64 unless the Pacific Thomas Property or Properties securing the lien is sold at which time the Class 5a Claimant will be paid in full at close of escrow. Treatment of lien = Lien is retained and in full force and effect. |
| 5b | Secured claim of:<br>· Name = Alameda County Treasurer<br>· Collateral description = Real Prop Tax Lien APN 25-701-6-4<br>· Priority of security int. = 1st<br>Principal owed = $ 69,514.31<br>· Post-pet. Arrearage amount = $0 (est)<br>Total claim amount = $69,514.31 | N | Unimpaired, Claims in this class are not entitled to vote on the Plan. | Pymt interval = Monthly<br>· Est. pymt amt/interval = $1,451<br>· Balloon pymt = 0<br>Begin date = 10/15/2013<br>End date = 10/14/2018<br>· Interest rate % = 8.0%<br>· Total payout % = 100<br>$87,052 will be paid over 60 months at $1,451 per month on 100% of a principal balance of $69,514.31 unless the Pacific Thomas Property or Properties securing the lien is sold at which time the Class 5b Claimant will be paid in full at close of escrow. Treatment of lien = Lien is retained and in full force and effect. |
| 5c | Secured claim of:<br>· Name = Alameda County Treasurer<br>· Collateral description = Real Prop Tax Lien APN 25-697-2-4<br>· Priority of security int. = 1st<br>Principal owed = $ 13,841.33<br>· Post-pet. Arrearage amount = $0 (est)<br>Total claim amount = $13,841.33 | N | Unimpaired, Claims in this class are not entitled to vote on the Plan. | Pymt interval = Monthly<br>· Est. pymt amt/interval = $289<br>· Balloon pymt = 0<br>Begin date = 10/15/2013<br>End date = 10/14/2018<br>· Interest rate % = 8.0%<br>· Total payout % = 100<br>$17,333 will be paid over 60 months at $289 per month on 100% of a principal balance of $13,841.33 unless the Pacific Thomas Property or Properties securing the lien is sold at which time the Class 5c Claimant will be paid in full at close of escrow. Treatment of lien = Lien is retained and in full force and effect. |
| 5d | Secured claim of:<br>· Name = Alameda County Treasurer<br>· Collateral description = Real Prop Tax Lien APN 25-697-3-6<br>· Priority of security int. = 1st<br>Principal owed = $ 13,924.28<br>· Post-pet. Arrearage amount = $0 (est)<br>Total claim amount = $13,924.28 | N | Unimpaired, Claims in this class are not entitled to vote on the Plan. | Pymt interval = Monthly<br>· Est. pymt amt/interval = $291<br>· Balloon pymt = 0<br>Begin date = 10/15/2013<br>End date = 10/14/2018<br>· Interest rate % = 8.0%<br>· Total payout % = 100<br>$17,437 will be paid over 60 months at $291 per month on 100% of a principal balance of $13,924.28 unless the Pacific Thomas Property or Properties securing the lien is sold at which time the Class 5d Claimant will be paid in full at close of escrow. Treatment of lien = Lien is retained and in full force and effect |
| 5e | Secured claim of:<br>· Name = Alameda County Treasurer<br>· Collateral description = Real | N | Unimpaired, Claims in this class are not entitled to vote on | Pymt interval = Monthly<br>· Est. pymt amt/interval = $48<br>· Balloon pymt = 0<br>Begin date = 10/15/2013 |

Debtor's Plan of Reorganization - 36

Case: 12-46534    Doc# 298    Filed: 06/12/13    Entered: 06/12/13 18:33:39    Page 37 of 58

| Class | Description | Impaired / Vote | Status | Treatment |
|---|---|---|---|---|
| | Property Tax Lien APN 19-102-4<br>· Priority of security int. = 1st<br>Principal owed = $2,321.68<br>· Post-pet. Arrearage amount = $0 (est)<br>Total claim amount = $2,321.68 | | the Plan. | End date = 10/14/2018<br>· Interest rate % = 8.0%<br>· Total payout % = 100<br>$2,907 will be paid over 60 months at $48 per month on 100% of a principal balance of $2,321.68 unless the Pacific Thomas Property or Properties securing the lien is sold at which time the Class 5e Claimant will be paid in full at close of escrow. Treatment of lien = Lien is retained and in full force and effect. |
| 5f | Secured claim of:<br>· Name = Alameda County Treasurer<br>· Collateral description = Real Prop Tax Lien APN 25-701-11<br>· Priority of security int. = 1st<br>Principal owed = $ 26,095.34<br>· Post-pet. Arrearage amount = $0 (est)<br>Total claim amount = $26,095.34 | N | Unimpaired, Claims in this class are not entitled to vote on the Plan. | Pymt interval = Monthly<br>· Est. pymt amt/interval = $545<br>· Balloon pymt = 0<br>Begin date = 10/15/2013<br>End date = 10/14/2018<br>· Interest rate % = 8.0%<br>· Total payout % = 100<br>$32,679 will be paid over 60 months at $545 per month on 100% of a principal balance of $26,095.34 unless the Pacific Thomas Property or Properties securing the lien is sold at which time the Class 5f Claimant will be paid in full at close of escrow. Treatment of lien = Lien is retained and in full force and effect. |
| 5g | Secured claim of:<br>· Name = Alameda County Treasurer<br>· Collateral description = Real Prop Tax Lien APN 25-697-7-15<br>· Priority of security int. = 1st<br>Principal owed = $ 16,158.74<br>· Post-pet. Arrearage amount = $0 (est)<br>Total claim amount = $16,158.74 | N | Unimpaired, Claims in this class are not entitled to vote on the Plan. | Pymt interval = Monthly<br>· Est. pymt amt/interval = $337<br>· Balloon pymt = 0<br>Begin date = 10/15/2013<br>End date = 10/14/2018<br>· Interest rate % = 8.0%<br>· Total payout % = 100<br>$20,325 will be paid over 60 months at $337 per month on 100% of a principal balance of $16,158.74 unless the Pacific Thomas Property or Properties securing the lien is sold at which time the Class 5g Claimant will be paid in full at close of escrow. Treatment of lien = Lien is retained and in full force and effect. |
| 5h | Secured claim of:<br>· Name = Alameda County Treasurer<br>· Collateral description = Real Prop Tax Lien APN 25-697-7-14<br>· Priority of security int. = 1st<br>Principal owed = $ 4,643.35<br>· Post-pet. Arrearage amount = $0 (est)<br>Total claim amount = $4,643.35 | N | Unimpaired, Claims in this class are not entitled to vote on the Plan. | Pymt interval = Monthly<br>· Est. pymt amt/interval = $97<br>· Balloon pymt = 0<br>Begin date = 10/15/2013<br>End date = 10/14/2018<br>· Interest rate % = 8.0%<br>· Total payout % = 100<br>$5,815 will be paid over 60 months at $97 per month on 100% of a principal balance of $ 4,643.35 unless the Pacific Thomas Property or Properties securing the lien is sold at which time the Class 5h Claimant will be paid in full at close of escrow. Treatment of lien = Lien is retained and in full force and effect. |

Comments:

Classes 5a through 5h consists of any and all secured claims for Real Property

Taxes pertaining to the Pacific Thomas Properties. Classes 5a through 5h are unimpaired under the Debtor's Plan.

The Debtor shall satisfy the Allowed Secured Claims of the 5a through 5h Claimants by paying the Class 5a through 5h Claimants their post petition interest and penalties on the Effective Date, after which deferred cash payments equal to the value of their Allowed Secured Claims as of the Effective Date will be paid as follows: Commencing on the tenth (10th) day of the first full month after the Effective Date, such deferred cash payments will be made in equal monthly installments of principal and interest in an amount sufficient to amortize the Allowed Secured Claim over a period of five (5) years, all due in five (5) years from the Effective Date. The outstanding and unpaid amount of the Allowed Secured Claim will bear interest, commencing on the Effective Date and continuing until such Allowed Secured Claim is paid in full. Interest on the tax claim will be paid in accordance with applicable non-bankruptcy law at the rate of 8.0% per annum. If Debtor finalizes and closes a refinance loan with a third party lender prior to the sixtieth (60th) month after the Effective Date, the Class 5a – 5h Claimant shall be paid in full upon the funding of Debtor's refinance loan and there shall be no prepayment penalty.

//

3.03.2 **Classes of General Unsecured Claims**.

General unsecured claims are unsecured claims not entitled to priority under Code Section 507(a). The chart in section 3.03.4 identifies the Plan's treatment of the classes containing all of Debtor's General Unsecured Claims:

3.03.3 **Classes of Priority Unsecured Claims**

Certain priority claims that are referred to in Code Sections 507(a)(3), (4), (5), (6), and (7) are required to be placed in classes. These types of claims are entitled to priority treatment as follows: the Code requires that each holder of such a Claim receive cash on the Effective Date equal to the allowed amount of such Claim. However, a Class of unsecured priority claim holders may vote to accept deferred

Case: 12-46534    Doc# 298    Filed: 06/12/13    Entered: 06/12/13 18:33:39    Page 38 of 58

cash payments of a value, as of the Effective Date, equal to the allowed amount of such Claim. **The Debtor has no Claims of the type identified in Code Sections 507(a)(3), (4), (5), (6), and (7)**.

3.03.4    **Classes of General Unsecured Claims**

General unsecured claims are unsecured claims not entitled to priority under Code Section 507(a). The following chart identifies the Plan's treatment of the classes containing all of Debtor's General Unsecured Claims:[4]

3.03.4.1    Class 6A

| CLASS # | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---------|-------------|----------------|-----------|
| 6A | General non-insider unsecured claims · Total amt of claims = $268,196.91 | Y Impaired claims in this class are entitled to vote on the plan | Pymt interval = Monthly · Est. pymt amt/interval = $2,589.73· Balloon pymt = $117,000.62 · Begin date = 10/15/2013 · End date = 10/14/2018 · Interest rate % = 3% · Total payout = $303,461.18 Claim will be paid over sixty months on 100% of a principal balance of $268,196.91 · Treatment of lien = Lien is converted to a promissory note. |

Comments:

Class 6A consists of the Allowed Claims of the General Unsecured Creditors. Class 6Ais impaired under the Plan. In full and complete satisfaction of the Class 6A Claim, the Class 6A Claimant shall be treated as follows: On or before the Effective Date, the Debtor shall execute a promissory note with each holder of a Class 6A Claim. Interest shall accrue on the promissory Note at an interest rate of three

---

[4] The Debtor reserves its right to object to any of the Claims filed by the following Creditors on any reasonable grounds.

Case: 12-46534    Doc# 298    Filed: 06/12/13    Entered: 06/12/13 18:33:39    Page 39 of 58

percent (3%) interest-only beginning on the Effective Date. The first (1st) payment shall be due on the fifteenth (15th) day of the first (1st) full month following the Effective Date, and shall be in an amount equal to a percentage of a full monthly installment payment derived from the number of days remaining in the month in which the Effective Date occurs (the numerator) divided by the number of days in the month in which the Effective Date occurs (the denominator). Commencing on the fifteenth (15th) day of each month thereafter through the sixtieth (60th) month following the Effective Date, the Reorganized Debtor shall make equal monthly payments of interest to the Class 6A Claimant. The Promissory Note shall be due and payable sixty (60) months following the Effective Date. In the event of a sale all or a portion of the Pacific Thomas Properties the Class 6A Claimants Claims shall be payable at close of escrow only after payment to all secured creditors in classes 1 through 10. In the event funds are not sufficient to pay the Class 6A Claimants upon sale of all or a portion of the Pacific Thomas Properties, the Class 6A Claimants shall receive a pro-rata share of the funds available by dividing the total amount of money each Class 6A Claimant is owed by the sum of the Class 6A Claimants claims and multiplying that percentage by the amount of money available to pay the Class 6A Claimants after sale of the Pacific Thomas Properties. Nothing in the Plan shall enhance or otherwise increase the rights of the holder of the Class 6A claim to seek recovery on its claim as against any party other than the Reorganized Debtor.

3.03.4.2  Class 6B

| CLASS # | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---------|-------------|----------------|-----------|
|         |             |                |           |

| 6B | General unsecured claims of insiders<br><br>· Total amt of claim = $2,819,646.31 | Y<br><br>Impaired claims in this class are NOT entitled to vote on the plan | Pymt interval = Monthly<br>· Est. pymt amt/interval = Interest Accrues<br>· Balloon pymt = $2,819,646.31<br>· Begin date = 10/15/2013<br>· End date = 10/14/2018<br>· Interest rate % = 3%<br>· Total payout = $2,819,646.31<br>Claim will be paid only after payment in full to classes 1 through 5h and Class 6A<br>· Treatment of lien = Lien is converted to a promissory note. |
|---|---|---|---|

Comments:

Class 6B consists of the Allowed unsecured Claims of insiders. Class 6B is impaired under the Plan.

In full and complete satisfaction of the Class 6B Claim, the Class 6B Claimants shall be treated as follows: On or before the Effective Date, the Debtor shall execute a promissory note with each holder of a Class 6B Claim. Interest shall accrue on the promissory Note at an interest rate of three percent (3%) interest-only beginning on the Effective Date and continue to accrue for up to 60 months. Class 6B Claimants shall be paid only after payment in full of Classes 1 through 6A. In the event of a of sale all or a portion of the Pacific Thomas Properties and only after payment in full of Classes 1 through 6A the Class 6B Claimants Claims shall be payable at close of escrow. In the event funds are not sufficient to pay the Class 6B Claimants upon sale of the Pacific Thomas Properties, the Class 6B Claimants shall receive a pro-rata share of the funds available by dividing the total amount of money each Class 6B Claimant is owed by the sum of the Class 6B Claimants claims and multiplying that percentage by the amount of money available to pay the Class 6bBClaimants after sale of the Pacific Thomas Properties.

Nothing in the Plan shall enhance or otherwise increase the rights of the holder of the Class 6B claim to seek recovery on its claim as against any party other than the Reorganized Debtor.

Case: 12-46534    Doc# 298    Filed: 06/12/13    Entered: 06/12/13 18:33:39    Page 41 of 58

3.03.5 **Classes of Interest Holders.**

        Interest holders are the parties who hold ownership interest (i.e., equity interest) in the debtor. If the debtor is a corporation, entities holding preferred or common stock in the debtor are the interest holders. If the debtor is a partnership, the interest holders include both general and limited partners. If the debtor is an individual, the debtor is the interest holder. The following chart identifies the Plan's treatment of the class of interest holders.

| CLASS # | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|
| 7 | Interest holders<br><br>Randall Whitney Shareholder and President 2%<br><br>Jill Worsley Shareholder, Secretary and 2%<br><br>Edwin Thomas Revocable Living Trust Shareholder 92%<br><br>Roger W. Worsley Shareholder 2%<br><br>Stephen T. Worsley Shareholder 2% | Insider; claims in this class are not entitled to vote on the Plan |     Class 7 is unimpaired under the Plan and will receive the pro-rata share of monies available after payment to classes 1 through 6Aand Class 6B.<br><br>    Class 7 equity holders will retain their equity in the reorganized Debtor. |

        Notwithstanding any other provision of the Plan, no payments or Distributions shall be made on account of any Disputed Claim or Disputed Interest until such Claim or Interest becomes an Allowed Claim or Allowed Interest, and then only to the extent it becomes an Allowed Claim or Allowed Interest. Any Proof of Claim or Proof of Interest filed which differs from the Scheduled amount is deemed to be a Disputed Claim or Disputed Interest.

**3.04** **Means of Effectuating the Plan**

3.04.1 **Resolution of the State Court Actions**

        It is anticipated that the following state court actions will be resolved by or will not interfere with plan confirmation: THERE ARE NO STATE COURT ACTIONS

Debtor's Plan of Reorganization - 42

3.04.2    **Funding for the Plan**

It is anticipated that there will be sufficient funds from these sources to pay all Allowed Secured and Allowed Unsecured Claims as follows:

The Reorganized Debtor shall make all payments due under the Plan out of the funds on hand in the Debtor's Estate as of the Effective Date, and through the net lease revenue generated by the Pacific Thomas Properties and/or refinance or sale of the Pacific Thomas Properties.

It is anticipated that there will be sufficient funds from these sources to pay all Allowed Secured and Allowed Unsecured Claims as follows:

- The Alameda County Treasurer will be paid in full on or before the sixtieth (60th) month following the Effective Date.
- The secured claim of Summit Bank, will be paid in full on or before the sixtieth (60th) month following the Effective Date.
- Secured Creditor Bank of the West shall be paid in full on or before the sixtieth (60th) month following the Effective Date.
- Secured creditor Private Mortgage Fund LLC shall be paid in full on or before sixtieth (60th) month following the Effective Date,
- Secured creditor Jacol LLC shall be paid in full on or before sixtieth (60th) month following the Effective Date,
- Allowed Class 6A General Unsecured Claims will receive 100% of their allowed claim on or before the sixtieth (60th) month following the Effective Date.
- Allowed Class 6B Unsecured Claims of Insiders will receive 100% of their allowed claim whereby Class 6B shall receive no funds until Class 6A has been paid in full in accordance with the absolute priority rule.

**3.05    <u>Post-confirmation Management</u>**

The Debtor will retain possession of the Pacific Thomas Properties and the management of its financial affairs after the confirmation of the Plan under the following management: Randall Whitney, who will also manage the Debtor.

**3.06** **Disbursing Agent**

A neutral person or entity shall be appointed by the Court to act as the Disbursing Agent for the purpose of making all distributions provided for under the Plan. The Disbursing Agent shall serve without bond and shall receive no fee for Disbursing Agent services rendered and expenses incurred pursuant to the Plan.

The Disbursing Agent shall be responsible for the Distribution of the Debtor's Cash or any recoveries to Creditors pursuant to the provisions of the Bankruptcy Code and the Plan. The duties of the Disbursing Agent shall include preparing and filing the Post-Confirmation Status Reports with the Office of the United States Trustee and paying all post-confirmation quarterly fees of the Office of the United States Trustee until the bankruptcy case is dismissed or a final decree has been entered, whichever occurs first. The Debtor, not the Disbursing Agent, shall be responsible for operating the Debtor's business, maximizing the Debtor's business affairs, preserving the assets of the Debtor's bankruptcy estate, and pursuing of any claims held by the Debtor's bankruptcy estate, including any Avoidance Actions and Post-Confirmation Estate Claims. Any recovery from Avoidance Actions will be utilized to pay the Class 1, 2, 3, 4, 5a – 5h, and 6A creditors in full.

**3.07** **Acceptance of Rejection of the Plan; Cramdown**

3.07.1 **Acceptance by Impaired Classes of Claims and Interests**

3.07.1.1 Pursuant to section 1126(c) of the Bankruptcy Code, an Impaired Class of Claims shall have accepted the Plan if: (a) the holders of at least two-thirds (2/3) in dollar amount of the Allowed Claims actually voting in such Class (other than Claims held by any holder designated pursuant to section 1126(e) of the Bankruptcy Code) have timely and properly voted to accept the Plan, and (b) more than one-half (1/2) in

Case: 12-46534    Doc# 298    Filed: 06/12/13    Entered: 06/12/13 18:33:39    Page 44 of 58

number of the holders of such Allowed Claims actually voting in such Class (other than Claims by any holder designated pursuant to section 1126(e) of the Bankruptcy Code) have timely and properly voted to accept the Plan

3.07.1.2 No Class of Interests is entitled to vote on the Plan pursuant to section 1126(f) of the Bankruptcy Code

**3.07.2    Voting Classes**

3.07.2.1 Except as otherwise required by the Bankruptcy Code or the Bankruptcy Rules or as otherwise provided in this Section II.G.2, the holders of Claims in Classes 1 and 4 shall be entitled to vote to accept or reject the Plan.  Classes 2 and 3 are unimpaired under the Plan and, as a result, shall not be entitled to vote to accept or reject the Plan, and shall be conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.

3.07.2.2 Administrative Claims and Priority Tax Claims are deemed to be Unimpaired and not classified under the Plan.  As a result, such Claims are not entitled to vote to accept or rejection the Plan.

**3.07.3    Ballot Instructions**

3.07.3.1 Each Claimant entitled to vote on the Plan is required to complete and return a Ballot to the voting agent, which will compile the votes so received.  All questions as to the validity, form, and eligibility (including time of receipt) of Ballots will be resolved by the Bankruptcy Court upon application or at the Confirmation Hearing.

**3.07.4    Cramdown: Section 1129(b) of the Bankruptcy Code**

3.07.4.1 If all applicable requirements for confirmation of the Plan are satisfied as set forth in section 1129(a)(1) through (13) of the Bankruptcy Code except subsection (8) thereof, the Debtor intends to request that the Bankruptcy Court confirm the Plan in

accordance with section 1129(b) of the Bankruptcy Code, notwithstanding the requirements of section 1129(a)(8) of the Bankruptcy Code.

**3.08**     **Employment and Compensation of Professionals**

The Debtor does not anticipate that professionals will be employed to assist with their duties herein other than the professionals that were employed by the Debtor pursuant to Court order during the Case. In carrying out its duties under the Plan, the Debtor shall use the services of its professionals employed pursuant to order of the Bankruptcy Court prior to confirmation of the Plan. The continued employment of such professionals will save the fees and costs associated with counsel not already familiar with the matters which the professionals will undertake. Since their involvement in Debtor's Case, the professionals have conducted investigations and obtained special knowledge that will assist the Debtor in carrying out the provisions of the Plan and assist with the winding up of the Case including claims objections.

Except as set forth herein to the contrary, any professional employed by the Debtor in this Case after the confirmation of the Plan seeking payment of its post-confirmation fees and costs will be entitled to seek payment of such fees and costs without the need for any further order of the Bankruptcy Court.

**3.09**     **Post-Confirmation Estate Claims**

The right to enforce, litigate, collect, and settle, on behalf of the Estate (at the expense of the Estate), any and all Claims and causes of action which constitute property of the Estate including, but not limited to, any Avoidance Actions, whether or not such Claims or causes of action are the subject of litigation pending as of the Effective Date (collectively, the "Post-Confirmation Estate Claims"), shall be vested solely in the Reorganized Debtor as of the Effective Date. From and after the Effective Date, the Reorganized Debtor shall have the sole right to enforce, file, prosecute, collect, or settle, any Post-Confirmation Estate Claims.

Any litigation based upon Post-Confirmation Estate Claims will be filed no later than one (1) year after the Effective Date, or within any applicable limitations period, or within such additional period of time as the Bankruptcy Court may allow upon motion of the Debtor, after such notice as the Bankruptcy Court may deem appropriate. In the event that litigation based upon any Post-Confirmation Estate Claim is not timely commenced, such Post-Confirmation Estate Claim will be deemed forever waived by the Estate and neither the Debtor nor any other party-in-interest will have the right to pursue the same; provided, however, that any such Post-Confirmation Estate Claim may be utilized as a defense against or offset to any Claim or cause of action which may be brought against the Estate.

Notwithstanding the rights of the Reorganized Debtor with respect to Post-Confirmation Estate Claims, nothing in the Plan will require the Reorganized Debtor to prosecute or litigate any such matters, all of which may be decided by the Reorganized Debtor in its sole discretion. Any recovery from Avoidance Actions will be utilized to pay the Class 1, 2, 3 and 4 creditors in full.

THE DEBTOR HAS NOT FULLY REVIEWED WHETHER POST-CONFIRMATION ESTATE CLAIMS EXIST, INCLUDING, WITHOUT LIMITATION, WHETHER OR NOT THERE ARE ANY AVOIDANCE ACTIONS THAT MAY BE BROUGHT BY THE REORGANIZED DEBTOR AFTER THE EFFECTIVE DATE. THIS INVESTIGATION IS ON-GOING AND WILL OCCUR IN LARGE PART AFTER THE EFFECTIVE DATE, AS A RESULT, CREDITORS AND OTHER PARTIES-IN-INTEREST SHOULD BE, AND ARE PURSUANT TO THE TERMS OF THE PLAN, SPECIFICALLY ADVISED THAT, NOTWITHSTANDING THAT THE EXISTENCE OF ANY PARTICULAR POST-CONFIRMATION ESTATE CLAIM MAY NOT BE LISTED, DISCLOSED, OR SET FORTH IN THE PLAN OR THE DISCLOSURE STATEMENT, A POST-CONFIRMATION ESTATE CLAIM MAY BE BROUGHT AGAINST ANY

Case: 12-46534    Doc# 298    Filed: 06/12/13    Entered: 06/12/13 18:33:39    Page 47 of 58

CLAIMANT AT ANY TIME, SUBJECT TO THE BAR DATE LIMITATIONS SET FORTH IN THE PLAN.

**3.10    Objections to Claims**

The right to litigate, resolve, and settle objections to Claims (at the expense of the Estate), whether or not the subject of litigation as of the Effective Date, will be vested solely in the Reorganized Debtor as of the Effective Date. From and after the Effective Date, the Reorganized Debtor shall have the sole right to file, prosecute, litigate, and settle any objections to Claims, whether or not any such objection is pending as of the Effective Date.

Notwithstanding that the Reorganized Debtor shall have the right to file, litigate, prosecute, and settle objections to Claims on behalf of the Estate, nothing contained herein will be deemed to obligate the Reorganized Debtor to take any such actions, all of which will be determined in the Reorganized Debtors' sole discretion.

THE DEBTOR HAS NOT FULLY REVIEWED THE CLAIMS IN THE CASE OR DETERMINED WHETHER OBJECTIONS TO CLAIMS EXIST. THIS INVESTIGATION IS ONGOING AND WILL OCCUR IN LARGE PART AFTER THE EFFECTIVE DATE. CREDITORS AND OTHER PARTIES-IN-INTEREST SHOULD BE, AND ARE PURSUANT TO THE TERMS OF THE PLAN SPECIFICALLY ADVISED THAT, NOTWITHSTANDING THAT THE EXISTENCE OF ANY PARTICULAR OBJECTION TO CLAIM MAY NOT BE LISTED, DISCLOSED, OR SET FORTH IN THE PLAN OR DISCLOSURE STATEMENT, AN OBJECTION TO CLAIM MAY BE BROUGHT AGAINST ANY CLAIMANT AFTER THE EFFECTIVE DATE.

**3.11    Pending Disputed General Unsecured Claims as of the Date of Distribution**

In the event that any objection to any General Unsecured Claim should be pending as of the date on which a Distribution is owed to the holder of such General

Case: 12-46534    Doc# 298    Filed: 06/12/13    Entered: 06/12/13 18:33:39    Page 48 of 58

Unsecured Claim, no Distribution will be made on account of such disputed General Unsecured Claim until such Disputed Claim has been determined and allowed by a Final Order. In the event that a Disputed Claim is allowed by a Final Order, within five Business Days after such Disputed Claim is allowed by such Final Order, such Allowed General Unsecured Claim will be paid to the extent of the Distributions previously made on account of Allowed General Unsecured Claims in the same Class. Further Distributions, if any, on account of such Allowed General Unsecured Claim will be paid directly to the holder of such Allowed General Unsecured Claim, in an aggregate amount not to exceed the amount of the General Unsecured Claim allowed by the Final Order.

**3.12** **Unclaimed Distributions**

Distributions to holders of Allowed Claims will be made either: (a) at the addresses set forth in the Proof of Claim filed by the Creditor; or (b) at the address set forth in any written notice of address change delivered to the Debtor or the Disbursing Agent after the date on which any related Proof of Claim was filed; or (c) at the address reflected in the Schedules relating to the applicable Allowed Claim if no Proof of Claim has been filed by the Creditor and neither the Debtor nor the Reorganized Debtor has received a written notice of a change of address.

The Disbursing Agent shall not be required to perform any investigation or inquiry as to the proper address for such Creditor if the address stated in any Proof of Claim filed by the Creditor, written notice of change of address filed by the Creditor, or in the Schedules is incorrect.

Any unclaimed Distribution ("Unclaimed Distribution") provided for under the Plan (which will include: (a) checks which have been returned as undeliverable without a proper forwarding address; (b) checks which were not mailed or delivered because of the absence of a proper address to which to mail or deliver the same; or (c)

checks which remain unnegotiated for a period of ninety (90) days), will be retained and utilized by the Reorganized Debtor.

Following the earlier to occur of: (a) two (2) years after a Distribution becomes and Unclaimed Distribution, or (b) ninety (90) days after the making of the Final Distribution under the Plan (collectively, the "Unclaimed Distribution Holding Period"), such Unclaimed Distribution will become property of the Reorganized Debtor, free and clear of any restrictions thereon, and the holders of Allowed Claims otherwise entitled to such Unclaimed Distributions will cease to be entitled thereto and their Claims based thereon will be deemed discharged, waived, and forever barred.

**3.13**     **Other Provisions of the Plan**

**3.13.1**     **Executory Contracts and Unexpired Leases**

3.13.1.1 Assumptions

The following are the unexpired leases that are to be assumed as obligations of the reorganized Debtor under the Plan:

| LEASES | ARREARS/DMGS | METHODS OF CURE |
|---|---|---|
| Planned Parenthood Mar Monte Inc. Commercial Lease. | ·Default amt = 0<br>·Actual pecuniary loss = 0 | ·Method of curing default & loss = Not Applicable |
| Pacific Trading Ventures Commercial Lease | ·Default amt = 0<br>·Actual pecuniary loss = 0 | |
| Mujeres Unidas Y Activas Commercial Lease | ·Default amt = 0<br>·Actual pecuniary loss = 0 | |
| Avila Trucking Commercial Lease | ·Default amt = 0<br>·Actual pecuniary loss = 0 | |
| Performance Contracting, Inc. Commercial Lease | ·Default amt = 0<br>·Actual pecuniary loss = 0 | |
| Clark Construction Commercial Lease | ·Default amt = 0<br>·Actual pecuniary loss = 0 | |
| Budget Parking Commercial Lease | ·Default amt = 0<br>·Actual pecuniary loss = 0 | |
| Safe Parking Commercial Lease | ·Default amt = 0<br>·Actual pecuniary loss = 0 | |

Debtor's Plan of Reorganization - 50

On the Effective Date, the unexpired leases listed above if any shall be assumed as obligations of the reorganized Debtor.  The Order of the Court confirming the Plan shall constitute an Order approving the assumption of the lease listed above.  If you are a party to a lease or contract to be assumed and you object to the assumption of your lease or contract, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan.  See Section {I.B.3.} of this document for the specific date.

The following are the executory contracts to be assumed as obligations of the reorganized Debtor under this Plan:

| Executory Contract | ARREARS/DMGS | METHODS OF CURE |
|---|---|---|
| Pacific Trading Ventures Management Contract<br><br>Sprint Wireless Services Contract<br><br>AT&T Advertising Solutions<br><br>East Bay Municipal Utility District 4 Contracts<br><br>Pacific Gas & Electric Co., 5 accounts. | ·Default amt = N/A | N/A |

3.13.1.2  Rejections

On the Effective Date, the following executory contracts and unexpired leases will be rejected:  NONE.

On the Confirmation Date, except for any executory contract or unexpired lease specifically assumed or rejected pursuant to a prior order of the Bankruptcy Court or assumed pursuant to the Plan, each executory contract or unexpired lease entered into by the Debtor prior to the Petition Date that has not previously expired or terminated pursuant to its own terms will be deemed rejected pursuant to Section 365 of the Bankruptcy Code.

The order confirming the Plan shall constitute an Order approving the rejection of any leases or contracts.  If you are a party to a contract or lease to be

Case: 12-46534    Doc# 298    Filed: 06/12/13    Entered: 06/12/13 18:33:39    Page 51 of 58

rejected and you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan. See Section I.B.3. of the Disclosure Statement for the specific date.

THE BAR DATE FOR FILING A PROOF OF CLAIM BASED ON A CLAIM ARISING FROM THE REJECTION OF LEASE OR CONTRACT IS THIRTY (30) DAYS FROM THE CONFIRMATION DATE. Any Claim based on the rejection of a contract or lease will be barred if the proof of Claim is not timely filed, unless the Court later orders otherwise.

Proofs of Claim for any Claims arising by reason of any rejection of executory contracts or unexpired leases pursuant to the Plan shall be filed and served upon the Debtor and counsel for the Debtor within thirty days after the Confirmation Date. In the event that any such Proof of Claim is not filed and served as set forth herein, such Claim will be deemed conclusively to be waived and will be forever barred in the Case, without further notice. Any Claim timely asserted hereunder arising out of the rejection of an executory contract or unexpired lease will be deemed to be a General Unsecured Claim under the Plan, but will not automatically become an Allowed Claim.

3.13.2 **Changes In Rates Subject to Regulatory Commission Approval**

The Debtor is not subject to governmental regulatory commission approval of its rates. The Debtor is not regulated by a governmental commission.

3.13.3 **Retention of Jurisdiction**

Notwithstanding Confirmation or the Effective Date having occurred, the Bankruptcy Court shall retain jurisdiction to the extent provided by law, including, but not limited to, the following purposes until this Plan has been fully consummated:

3.13.3.1 The classification, allowance, disallowance, or estimation of the Claim of any Claimant and the re-examination of Claims which have been allowed for the purposes of determining acceptance of the Plan at the time of the Confirmation Hearing and the

Case: 12-46534    Doc# 298    Filed: 06/12/13    Entered: 06/12/13 18:33:39    Page 52 of 58

determination of such objections as may be filed to Claims. The failure by the Debtor to object to or to examine any Claim for the purpose of determining acceptance of this Plan shall not be deemed to be a waiver of the right of Debtor to object to or to re-examine the Claim, in whole or in part, at a later date.

3.13.3.2 The resolution of any matters, including, without limitation, the allowance or disallowance of any Claim for damages by reason of the rejection of any executory contract or unexpired lease, related to the assumption, assumption and assignment, or rejection of any executory contract or unexpired lease to which Debtor is a party or with respect to which the Debtor or Reorganized Debtor may be liable, including the determination of whether such contract is executory for the purposes of Section 365 of the Bankruptcy Code, and to hear, determine and, if necessary, liquidate any Claims arising therefrom.

3.13.3.3 Except for as otherwise provided herein, the determination of all questions and disputes regarding title to the assets of Debtor, the Estate, or Reorganized Debtor and the determination of all causes of action, controversies, disputes, or conflicts, whether or not subject to any action pending as of the Confirmation Date, in which the Debtor or the Reorganized Debtor is a party.

3.13.3.4 The correction of any defect, the curing of any omission, or the reconciliation of any inconsistency in the Plan or in the Confirmation Order as may be necessary to carry out the purposes and intent of the Plan.

3.13.3.5 The resolution of any motions, adversary proceedings, contested or litigated matters and any other matters and grant or deny any applications involving the Debtor or the Reorganized Debtor that may be pending on the Effective Date.

3.13.3.6 The modification of the Plan after confirmation pursuant to the Bankruptcy Code and the Bankruptcy Rules, or if in the best interests of the Estate and the Creditors, modification of this Plan even after the Plan has been substantially consummated.

Case: 12-46534    Doc# 298    Filed: 06/12/13    Entered: 06/12/13 18:33:39    Page 53 of 58

3.13.3.7 The enforcement and interpretation of the terms and conditions of the Plan or the Confirmation Order, and the determination of such matters, and the making of such orders consistent with the Plan as may be necessary or desirable to effectuate the provisions of the Plan.

3.13.3.8 The determination, either before or after the closing of the Case, of any Claims concerning state, local, and federal taxes pursuant to Section 346, 505, 525, or 1146 of the Bankruptcy Code or other applicable law, and the Debtor's, Reorganized Debtor's, or the Estate's entitlement, if any, to tax attributes which may have been property of the Estate, either before or after the closing of the Case.

3.13.3.9 The shortening or extending, for cause, of the time fixed for doing any act or thing under the Plan, on such notice, if any, as the Bankruptcy Court shall determine to be appropriate.

3.13.3.10 The entry of any order, including, without limitation, any injunction, to enforce the title, rights, and powers of the debtor or the Reorganized debtor and such limitations, restrictions, terms, and conditions of such title, rights, and powers as the Bankruptcy Court may deem necessary.

3.13.3.11 The determination of any disputes arising under or relating to any order entered by the Bankruptcy Court in the Case.

3.13.3.12 The determination of the validity, extent, or priority of any liens and security interests against property of Debtor, the Reorganized Debtor, or the Estate.

3.13.3.13 The determination of all actions and proceedings which relate to pre-confirmation matters affecting the Debtor or the Estate whether such action or proceeding is brought before or after the Effective Date.

3.13.3.14 The liquidation or allowance of any Claim as well as any objection or dispute concerning any Claim of the Estate.

3.13.3.15 The determination of all questions and disputes regarding collection of assets of Debtor or the Estate as of the Confirmation Date.

Case: 12-46534    Doc# 298    Filed: 06/12/13    Entered: 06/12/13 18:33:39    Page 54 of 58

3.13.3.16 The entry of an order concluding and terminating the Case.

3.13.3.17 Such other matters to the extent provided by law.

## ARTICLE IV.

### EFFECT OF CONFIRMATION OF THE PLAN

**4.01**     **Discharge**

        The Plan provides that upon confirmation of the Plan, the Debtor shall be discharged of liability for payment of debts incurred before confirmation of the Plan to the extent specified in 11 U.S.C. Section 1141. However, the discharge will not discharge any liability imposed by the Plan.

**4.02**     **Revesting of Property in the Debtor**

        Except as provided herein and except as provided elsewhere in the Plan, the confirmation of the Plan revests all of the property of the estate in the Debtor. After the Confirmation Date, the sale of any property owned by the Debtor shall not be subject to or require Court approval.

        Except as set forth in the Plan to the contrary, on the Effective Date, the property of the Estate will vest in the Reorganized Debtor, free and clear of any Claims, liens, encumbrances, or interests of Creditors, Interest Holders, parties-in-interest, and other entities.

        From and after the Effective Date, the Reorganized Debtor may acquire, and dispose of property and settle and compromise claims without supervision by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than restrictions expressly imposed by the Plan, the Confirmation Order, and any document, agreement, or instrument delivered in connection therewith.

        Except as otherwise provided in the Plan or in the Confirmation Order, the rights afforded in the Plan and the treatment of all Claims in the Plan will be in exchange for and in complete satisfaction, discharge, and release of all Claims

Case: 12-46534    Doc# 298    Filed: 06/12/13    Entered: 06/12/13 18:33:39    Page 55 of 58

(including Administrative Claims and any interest accrued on any Claim from and after the Petition Date) against the Debtor and any of its assets and properties.

**4.03      Modification of the Plan**

The Debtor may modify the Plan at any time before confirmation. However, the Court may require a new disclosure statement and/or re-voting on the Plan.

The Debtor may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated and (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

If the Bankruptcy Court determines that a post-confirmation modification of the Plan is in the best interest of the Estate and the Creditors, even after substantial consummation of the Plan, then, notwithstanding the provisions of Section 1127(b) of the Bankruptcy Code, the Bankruptcy Court may authorize such modification of the Plan, after notice and a hearing, in such manner and under such conditions, as the Bankruptcy Court deems appropriate.

**4.04      Post-Confirmation Status Reports**

Within 120 days of the entry of the order confirming the Plan, the debtor shall file a status report with the Bankruptcy Court explaining what progress has been made toward consummation of the confirmed Plan. The status report shall be served on the United States Trustee, the twenty largest unsecured Creditors, and those parties who have requested special notice. Further status reports shall be filed every 120 days and served on the same entities.

**4.05      Post-Confirmation Conversion/Dismissal**

A Creditor or party in interest may bring a motion to convert or dismiss the case under Section 1112(b), after the Plan is confirmed, if there is a default in performing the Plan. If the Bankruptcy Court orders the case converted to Chapter 7 after the Plan is confirmed, then all property that had been property of the Chapter 11 estate, and that has not been disbursed pursuant to the Plan, will revest in the Chapter

Case: 12-46534    Doc# 298    Filed: 06/12/13    Entered: 06/12/13 18:33:39    Page 56 of 58

7 estate.  The automatic stay will be reimposed upon the revested property, but only to the extent that relief from stay was not previously authorized by the Court during this case.

The order confirming the Plan may also be revoked under very limited circumstances.  The Court may revoke the order if the order of confirmation was procured by fraud and if a party in interest brings an adversary proceeding to revoke confirmation within 180 days after the entry of the order of confirmation.

**4.06**     **Final Decree**

Once the estate has been fully administered as referred to in Federal Rule of Bankruptcy Procedure 3022, the Plan Proponent, or such other party as the Court shall designate in the Plan confirmation order, shall file a motion with the Bankruptcy Court to obtain a final decree to close the case.

## ARTICLE V.

## REVESTING OF THE PROPERTY OF THE ESTATE

Except as provided elsewhere in the Plan, the confirmation of the Plan revests all of the property of the Estate in the respective Debtor. After the Confirmation Date, the sale of any property owned by the Debtor shall not be subject to or require Court approval. Except as set forth in the Plan to the contrary, on the Effective Date, the property of the Estate will vest in the Reorganized Debtor, free and clear of any Claims, liens, encumbrances, or interests of Creditors, Interest Holders, parties-in-interest, and other entities.

//

//

//

//

//

//

From and after the Effective Date, the Reorganized Debtor may acquire, and dispose of property and settle and compromise claims without supervision by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than restrictions expressly imposed by the Plan, the Confirmation Order, and any document, agreement, or instrument delivered in connection therewith.

Except as otherwise provided in the Plan or in the Confirmation Order, the rights afforded in the Plan and the treatment of all Claims in the Plan will be in exchange for and in complete satisfaction, discharge, and release of all Claims (including Administrative Claims and any interest accrued on any Claim from and after the Petition Date) against the Debtor and any of its assets and properties.

Dated:  June 12, 2013

                                                                 Respectfully submitted,

By Plan Proponent,

/s/ Randall Whitney
Pacific Thomas Corporation, Debtor
Randall Whitney

Matlock Law Group, P.C.

By: /s/Anne-Leith Matlock
Anne-Leith Matlock, Esq.
Attorneys for Debtor

Case: 12-46534    Doc# 298    Filed: 06/12/13    Entered: 06/12/13 18:33:39    Page 58 of 58