# EXHIBIT D

BUCHALTER NEMER
 ROBERT E. IZMIRIAN (SBN: 53805)
 MIA S. BLACKLER (SBN: 188112)
 CRAIG C. CHIANG (SBN: 209602)
A Professional Corporation
55 Second Street, Suite 1700
San Francisco, CA 94105-3493
Telephone: (415) 227-0900
Fax: (415) 227-0770
Email: rizmirian@buchalter.com; cchiang@buchalter.com

Attorneys for Chapter 11 Trustee
KYLE EVERETT

## UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| In re | Case No. 12-46534 MEH |
| PACIFIC THOMAS CORPORATION, dba PACIFIC THOMAS CAPITAL, dba SAFE STORAGE, | Chapter 11 |
| Debtor. | **CHAPTER 11 TRUSTEE KYLE EVERETT'S COMPLAINT FOR:** |
| | **(1) DECLARATORY RELIEF;**<br>**(2) ACCOUNTING;**<br>**(3) TURNOVER; AND**<br>**(4) INJUNCTIVE RELIEF** |
| KYLE EVERETT, CHAPTER 11 TRUSTEE, | Adv. Proc. No. _____ |
| Plaintiff, | |
| vs. | |
| RANDALL WHITNEY aka RANDALL C.M. WHITNEY aka RANDALL WORSLEY aka RANDALL C.M. WORSLEY, an individual; PACIFIC TRADING VENTURES dba SAFE STORAGE MANAGEMENT COMPANY, a California corporation; PACIFIC TRADING VENTURES, LTD. ("PTVL"), a Nevada corporation; and JILL V. WORSLEY aka V. JILL WORSLEY, an individual, | |
| Defendants. | |

1

COMPLAINT

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
SAN FRANCISCO
BN 13696069v4

Kyle Everett, the duly appointed, qualified and acting Chapter 11 Trustee (in such capacity, the "Trustee" or "Plaintiff") of the bankruptcy estate of Pacific Thomas Corporation, dba Pacific Thomas Capital, dba Safe Storage, complains and alleges as follows:

## GENERAL ALLEGATIONS

1.     This action arises from a scheme by Defendants to deprive Plaintiff of the ability to recover significant funds for the bankruptcy estate of Pacific Thomas Corporation, dba Pacific Thomas Capital, dba Safe Storage ("Debtor" or "PTC").   Since the Court appointed Plaintiff as Trustee to administer and pursue assets of PTC's bankruptcy estate, Defendants have failed and refused to provide Plaintiff with the books, records, and accounts concerning the management and operation of the real property located at 2615 E. 12th Street, 2783 E. 12th Street, 2801 E. 12th Street, 1111 29th Avenue, 1113-15 29th Avenue, in Oakland, California (the "Premises"), of which PTC is the record owner.

2.     Concealing and misrepresenting the true status of income and expenses from the Premises, including PTC's self-storage facilities located at 2619 East 12th Street in Oakland, California, Defendants have withheld significant funds from Plaintiff by misrepresenting that PTC had leased a significant portion of the Premises to Defendant Pacific Trading Ventures, and claiming that such lease is effective.   Through this complaint, Plaintiff seeks a determination that no lease of the Premises to Pacific Trading Ventures is effective, and that the assertion that a lease of PTC's self-storage facilities to Pacific Trading Ventures exists is part of a scheme to siphon funds that properly belong to PTC's bankruptcy estate.

3.     Despite Plaintiff's repeated requests to the manager of PTC's self-storage facilities – either Pacific Trading Ventures or PTVL, based on agreements signed with PTC –   to review the books, records, and accounts related to PTC's self-storage facilities, Plaintiff has not received a full disclosure of the books, records, and account, thus creating a situation where Plaintiff is denied basic data of rents generated from property of PTC's estate.   The Court appointed Plaintiff as Chapter 11 trustee in response to the lack of adequate and accurate disclosure of the operation of the Premises, including PTC's self-storage facilities.   Because of Defendants' continuing

2

COMPLAINT

BN 13469606v4

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

concealment of financial and operational data and records, this complaint is necessary to allow Plaintiff to administer PTC's bankruptcy estate.

## JURISDICTION AND VENUE

4.     On August 6, 2012, PTC filed a voluntary petition under Chapter 11 of Title 11 of the United States Code, commencing the above-captioned bankruptcy case.

5.     This complaint for declaratory relief, accounting, turnover, and injunctive relief ("Complaint") constitutes the initiation of an adversary proceeding in accordance with the provisions of Federal Rules of Bankruptcy Procedure 7001 *et seq.*

6.     The United States Bankruptcy Court for the Northern District of California, Oakland Division has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334.

7.     Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

8.     This adversary proceeding is a core proceeding as that term is defined at 28 U.S.C. § 157(b)(2)(B).

## PARTIES

9.     At all times herein mentioned, Plaintiff was and now is the duly-appointed, qualified and acting Chapter 11 trustee of the bankruptcy estate of PTC in its bankruptcy case pending in this Court, designated as Case No. 12-46534.

10.     Plaintiff is informed and believes, and based thereon alleges, that PTC is a California corporation, and was authorized to do business in California.  Plaintiff is further informed and believes that PTC is record owner of the Premises.

11.     Plaintiff is informed and believes, and based thereon alleges, that Randall Whitney aka Randall C.M. Whitney aka Randall Worsley aka Randall C.M. Worsley ("Whitney") is an individual who resides in Alameda County and is the Chief Operating Officer and Chairman of the Board of PTC.

12.     Plaintiff is informed and believes, and based thereon alleges, that Pacific Trading Ventures, Ltd. ("PTVL") is a Nevada corporation with its principal office within Walnut Creek, California.

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

3

COMPLAINT
BN 13469606v4

Case: 13-04079    Doc# 1    Filed: 04/11/13    Entered: 04/11/13 18:03:27    Page 3 of 10
Case: 12-46534    Doc# 341-6    Filed: 07/26/13    Entered: 07/26/13 11:45:15    Page 4 of 23

13.     Plaintiff is informed and believes, and based thereon alleges, that Pacific Trading Ventures dba Safe Storage Management Company ("PTV") is a California corporation with its principal office within Walnut Creek, California.

14.     Plaintiff is informed and believes, and based thereon alleges, that Jill V. Worsley aka V. Jill Worsley ("Worsley") is the sole shareholder of PTVL and Chief Operating Officer of PTV. She is also the Secretary of the Board and a 25% shareholder of PTC. Plaintiff is further informed and believes that Worsley is the mother of Whitney.

### THE MANAGEMENT AGREEMENTS

15.     Plaintiff is informed and believes, and based thereon alleges that, on or about January 9, 2003, PTC and PTVL entered into a written Management Agreement (the "Management Agreement"), through which PTVL agreed to provide property management services to PTC at PTC's self-storage facilities located at 2619 East 12th Street in Oakland, California (the "Self-Storage Facility"), which are located on, and represent a portion of, the Premises, including agreeing to maintain, to operate, to manage, and to supervise the Self-Storage Facility, in exchange for a start-up management fee of $2,500, the greater of $1,500 per month or 6% of gross revenue, among other agreed-upon compensation. A copy of the Management Agreement is attached as **Exhibit "1."**

16.     Plaintiff is informed and believes, and based thereon alleges, that on or about January 1, 2011, PTC and Pacific Trading Ventures, dba Safe Storage Management Company entered into an Amended Management Agreement (the "Amended Management Agreement"), through which they agreed to amend the Management Agreement to provide for PTC's payment of the greater of $2,000 per month or 6% of gross revenue, among other agreed-upon compensation. A copy of the Amended Management Agreement is attached as **Exhibit "2."**

### THE LEASES

17.     Plaintiff is informed and believes, and based thereon alleges, that one or more of the Defendants alleges that, on or about January 1, 2005, PTC and PTV entered into a 5-year written Lease of Improved Industrial/Commercial Property ("2005 Lease"), through which PTV agreed to lease buildings A-K, which purports to include the Self-Storage Facilities, and a portion

4

COMPLAINT

Case: 13-04079    Doc# 1    Filed: 04/11/13    Entered: 04/11/13 18:03:27    Page 4 of 10
BN 13495065v4
Case: 12-46534    Doc# 341-6    Filed: 07/26/13    Entered: 07/26/13 11:45:15    Page 5 of 23

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

of the Morse Building, consisting of 1,500 square feet, located at 2783 East 12th Street, Oakland, CA, in exchange for a monthly rental fee of $2,500 in addition to the "greater amount of $22,500 or 40% of the property net operating income proceeds...." A copy of the 2005 Lease is attached as **Exhibit "3."**

18. Plaintiff is informed and believes, and based thereon alleges, that one or more of the Defendants alleges that, on or about January 1, 2008, PTC and PTV entered into a 5-year written Lease of Improved Industrial/Commercial Property ("2008 Lease"), through which PTV agreed to lease a portion of the Morse Building, consisting of approximately 1500 square feet, located at 2783 East 12th Street, Oakland, CA, in exchange for a monthly rental fee of $2,500. A copy of the 2005 Lease is attached as **Exhibit "4."**

19. Plaintiff is informed and believes, and based thereon alleges, that one or more of the Defendants alleges that, on or about January 1, 2010, PTC and PTV entered into a written lease extension to extend the 2005 lease by another 5-years (the "2005 Lease Extension"). A copy of the 2005 Lease Extension is attached as **Exhibit "5."**

20. Plaintiff is further informed and believes, and based thereon alleges, that one or more of the Defendants alleges that, on or about August 1, 2012, PTC and PTV entered into a written Amendment and Modification to Lease (the "Amendment"), pursuant to which the 2005 Lease was modified to provide for PTV's payment to PTC of $70,000 per month. A copy of the Amendment is attached as **Exhibit "6."**

## FIRST CLAIM FOR RELIEF

### [Declaratory Relief]

21. Plaintiff incorporates by reference and realleges each of the allegations set forth in paragraphs 1 through 20, inclusive, as though set forth in full.

22. A dispute has arisen and an actual controversy exists regarding the validity of the 2005 Lease, the 2008 Lease, the 2005 Lease Extension, and the Amendment (collectively, the "Leases"). Plaintiff is informed and believes, and based thereon alleges, that the Leases are null and void, and unenforceable against Debtor's estate.

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

5

COMPLAINT

Case: 13-04079    Doc# 1    Filed: 04/11/13    Entered: 04/11/13 18:03:27    Page 5 of 10
BN 13469606v4
Case: 12-46534    Doc# 341-6    Filed: 07/26/13    Entered: 07/26/13 11:45:15    Page 6 of 23

23. Plaintiff is informed and believes, and based thereon alleges, that one or more of the Defendants contend that the 2005 Lease, the 2008 Lease, 2005 Lease Extension, and/or Amendment are valid.

24. A dispute has arisen and an actual controversy exists regarding the existence and effect of the Management Agreement. Plaintiff is informed and believes, and based thereon alleges, that the Management Agreement is effective.

25. Plaintiff is informed and believes, and based thereon alleges, that one or more of the Defendants contend that the Amended Management Agreement is effective.

26. A judicial determination is necessary and proper to determine Plaintiff's rights and Defendants' duties in connection with the matters alleged herein. It is appropriate for this Court to make such a declaration of rights because no adequate remedy at law exists.

## SECOND CLAIM FOR RELIEF

### [Accounting]

27. Plaintiff incorporates by reference and realleges each of the allegations set forth in paragraphs 1 through 26, inclusive, as though set forth in full.

28. One or more of the Defendants has the information regarding the income generated from the Premises, including the Self-Storage Facilities, and the expenses incurred in connection with the Premises, including the Self-Storage Facilities.

29. An accurate accounting of the income generated from the Premises, including the Self-Storage Facilities, and the expenses incurred in connection with the Premises, can only be determined from information in the possession of one or more of the Defendants.

30. One or more of the Defendants has failed to provide Plaintiff with an accurate accounting of the income generated from the Premises, including the Self-Storage Facilities.

31. Under the Management Agreement, PTV or PTVL is obligated to make available for inspection and audit by Plaintiff the books, records, and accounts, including those relating to all receipts and disbursements, in connection with the management and operation of the Self-Storage Facilities.

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

BN 13699667v4

32.     One or more of the Defendants has denied Plaintiff access to books, records, and accounts in connection with the management and operation of the Self-Storage Facility.

33.     Plaintiff has requested a current status report of the amounts collected from the Self-Storage Facilities tenants each month since the bankruptcy filing, but has not received that information.  PTV and PTVL have failed to provide any detail as to the amount Defendants have collected, and are collecting, from the Self-Storage Facilities users.

34.     Plaintiff is informed and believes, and based thereon alleges, that the Self-Storage Facilities generate approximately $110,000 to $120,000 each month in rent from its users, yet Defendants have turned over no more than approximately $70,000 each month to Plaintiff. Defendants have provided Plaintiff with no explanation or document supporting the amount of funds that Defendants have failed to turn over to Plaintiff.

35.     Plaintiff is informed and believes, and based thereon alleges, that because the Leases are null and void, significant rents from the Premises have been wrongly withheld from Plaintiff.

36.     Plaintiff is informed and believes, and based thereon alleges, that one or more of the Defendants had maintained, and currently maintains, monthly/daily parking schedules that are necessary to determine the amount due from parking tenants of the Premises, but has not provided Plaintiff with all of these schedules, without which Plaintiff cannot determine from which parking tenant funds have been collected.

37.     Plaintiff is informed and believes, and based thereon alleges, that one or more of the Defendants asserts that it made payments to third parties on behalf of PTC.  However, Defendants have provided no detail to allow Plaintiff to determine what exactly have been paid on PTC's behalf.

38.     Plaintiff is informed and believes, and based thereon alleges, that one or more of the Defendants has withheld funds derived from tenants of the Premises, including the Self-Storage Facility.

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

39.    The amount and extent of profits and losses, and assets and liabilities, of PTC, including the amount owing to PTC by the Defendants, cannot be ascertained without an accounting of the business affairs of the Defendants.

40.    Plaintiff is entitled to an accounting of the business affairs of the Defendants to ascertain such sums as may be found to be due and owing to the Debtor's estate.

## THIRD CLAIM FOR RELIEF

### [Turnover of Estate Property]

41.    Plaintiff incorporates by reference and realleges each of the allegations set forth in paragraphs 1 through 40 inclusive, as though set forth in full.

42.    Plaintiff is entitled to turnover of all amounts due and owing to Debtor's estate under an accounting.

43.    The amounts due and owing to Debtor's estate from the Defendants constitute property of the estate within meaning of Section 541 of the Bankruptcy Code.

44.    Pursuant to Section 542(a) of the Bankruptcy Code, the Defendants are required to turn over the full amount owing to the Debtor's estate under an accounting.

45.    Therefore, Plaintiff seeks a judgment against one or more of the Defendants in an amount to be determined under an accounting according to proof.

## FOURTH CLAIM FOR RELIEF

### [Injunctive Relief]

46.    Plaintiff incorporates by reference and realleges each of the allegations set forth in paragraphs 1 through 45, inclusive, as though set forth in full.

47.    Plaintiff seeks temporary restraining orders and/or preliminary and permanent injunctions restraining and enjoining PTVL, PTV, Whitney, Worsley, and their respective agents, employees and representatives, from interfering with Plaintiff in: (A) accessing the Premises; (B) taking possession of the Premises; (C) interfering with any of the tenants or lessees of the Premises; and (D) withholding any assets, rents, books and records relating to the Premises.

48.    Plaintiff also seeks temporary restraining orders and/or preliminary and permanent injunctions restraining and enjoining Defendants and their respective agents, employees and

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

8

**COMPLAINT**

BN 13469606v4

Case: 13-04079    Doc# 1    Filed: 04/11/13    Entered: 04/11/13 18:03:27    Page 8 of 10
Case: 12-46534    Doc# 341-6    Filed: 07/26/13    Entered: 07/26/13 11:45:15    Page 9 of 23

representatives, to permit Plaintiff access to the Premises to conduct such inspections as Plaintiff may reasonably require of the books and records and other purposes, and further enjoining Defendants not to obstruct or interfere with such inspections.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment as follows.

1.      A judicial determination that the Leases are null and void:

2.      For an accounting as to the sums due and owing by Defendants to Debtor's estate, the sums held by Defendants for the benefit of Debtor's estate, and any expenses of the Debtor paid by PTV or PTVL;

3.      For a temporary restraining order and/or preliminary and permanent injunctions restraining and enjoining Defendants and their respective agents, representatives, and all persons acting under, in concert with, or for them, from:

(a)      Directly or indirectly interfering in any manner with the discharge of the Plaintiff's duties;

(b)      Expending, disbursing, transferring, assigning, selling, conveying, devising, pledging, mortgaging, creating a security interest in, encumbering, concealing or in any manner whatsoever dealing in or disposing of the whole or any part of the Premises;

(c)      Withholding any assets, rents, books, records, or funds from Plaintiff;

(d)      Denying access to the Premises; and

(e)      Doing any act which will, or which will tend to, impair, defeat, divert, prevent or prejudice the preservation of the Premises;

//
//
//
//
//

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

**COMPLAINT**

BN 13469461v4

Case: 13-04079    Doc# 1    Filed: 04/11/13    Entered: 04/11/13 18:03:27    Page 9 of 10
Case: 12-46534    Doc# 341-6    Filed: 07/26/13    Entered: 07/26/13 11:45:15    Page 10 of 23

1    4.      For costs of suit;

2    5.      For interest at the statutory rate;

3    6.      For attorneys' fees and costs; and

4    7.      For such other and further relief as this Court deems just and proper.

DATED:  April 11, 2013

BUCHALTER NEMER
A Professional Corporation


By: /s/ Craig C. Chiang
      Craig C. Chiang
      Attorneys for Chapter 11 Trustee
      KYLE EVERETT

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
SAN FRANCISCO
BN 13869961v1

10

**COMPLAINT**

# EXHIBIT 1

# MANAGEMENT AGREEMENT

This Management Agreement, is made and entered into this 9ᵗʰ day of January, 2003 by and between Pacific Thomas Corporation ("PTC" ) (hereinafter sometimes also referred to as "Owner"); and Pacific Trading Ventures, Ltd. ("PTVL") Both entities are California corporations, duly qualified and presently in good standing.

## RECITALS:

Located at 2619 East 12th Street, City Of Oakland, County of Alameda, California, Owner owns the real property and self-storage business facility situated on such real property, (APN 025-0701-606-04). This improved real property is referred hereafter as the "Premises";

PTVL is experienced in the field of property management, and has successfully been engaged in this business within the greater San Francisco East Bay area for many years;

Owner desires PTVL to act and serve as and to manage the Premises in accordance with the basic norms and standards, including management costs and fees, of the self-storage industry throughout the United States. PTVL wishes to manage the Premises for and on behalf of PTC and will do so in accordance with the terms and conditions of this Management Agreement as hereinafter set forth;

NOW, THEREFORE, in consideration for the mutual covenants herein contained, the parties agree as follows:

## ARTICLE I

## APPOINTMENT

Owner hereby appoints PTVL as an independent contractor, and PTVL hereby accepts such appointment, on the terms and conditions hereinafter provided, to maintain, operate, manage, supervise and lease and generally serve as the property manager for PTC's entire self-storage facility (plus ancillary products associated in the industry with self-storage operations) located at 2619 East 12ᵗʰ Street in Oakland, California.

Owner acknowledges that PTVL has sufficient experience in the self storage management, consulting and development business to undertake and accept this appointment. . It is hereby expressly agreed that PTVL and its affiliates may continue to engage in activities other than this appointment and may manage facilities other than those belonging to Owner (whether or not such other facilities may be in direct or indirect competition with the Owner), and may in the future engage in other business which may compete directly or indirectly with activities of the Owner.

Subject to the other provisions of this Management Agreement, PTVL shall generally I have the power and authority to do any or all of the following:

A.     To employ, dismiss from employment and supervise all individuals who render services as employees in connection with the operation of the self-storage facility at the Premises. PTVL shall have the authority to determine the duties and authority of such employees, provided that such duties and authority shall not be inconsistent with any laws, rules or regulations applicable to the operation and maintenance of the self-storage facility at the Premises.

B.     PTVL shall make and execute, or supervise and have control over the making and executing of all decisions concerning the acquisition of furniture, fixtures and supplies for the facility and the Premises generally, and the purchase, lease or other acquisition of the same, on behalf of the Owner. PTVL shall make and execute, or supervise and have control over the making and executing of, all decisions concerning the maintenance, repair, and landscaping of the property, on behalf of the Owner. PTVL shall negotiate and



and contract for and supervise the installation of all capital improvements related to the facility and Premises which PTVL, in its sole discretion, deems necessary or appropriate; provided however, that PTVL shall obtain the prior approval of the Owner for all expenditures in excess of $1,000.00 for any one item (except monthly recurring operating charges, and /or emergency repairs if in the opinion of PTVL such expenditures are necessary to protect the facility and Premises from damage or to maintain services to the self-storage tenants as called for in their leases.

C.       PTVL shall cause the Owner to advertise in such media and to the extent PTVL deems necessary and appropriate. All marketing and advertising costs, shall be passed to and borne by the Owner.

D.       The parties acknowledge that certain economies may be achieved with respect to certain expenses to be incurred on behalf of Owner if specified materials, supplies, insurance or other self-storage facility services are purchased by PTVL in quantity for use not only in connection with the Premises but in connection with other properties managed by PTVL or its affiliates. PTVL shall have the right to purchase such materials, supplies, insurance or services in its own name and charge Owner a pro rata share of the cost; provided, however, that the pro rata cost of such purchase to Owner shall not result in expenses greater than would otherwise be incurred at competitive prices and on terms available in the area where the Premises are located or the service is rendered.

E.       To enter into and execute leases with third parties for rent of any part of the Premises, subject to the other provisions of this Management Agreement.

F.       To collect all rents and other charges from any tenants. Such other charges shall include, but not be limited to, late rent fees, insufficient-funds check charges, non-refundable administrative charges, and similar items.

G.       To act on behalf of Owner in cooperation with Owner's attorney, to terminate tenancies, prepare and serve notices, institute and prosecute actions to oust tenants who are in default, recover possessions of the self-storage units within the Premises rented by such defaulting tenants, and sue for and recover rent and other damages. All of the foregoing in this item "G" shall be in conformity with and shall not violate the statutes applicable within California to the self-storage business in general and shall otherwise conform to the industry standards for self-storage facilities.

H.       PTVL shall, on behalf of Owner, use its reasonable best efforts to cause all things to be done on and at the Premises necessary to comply with any statute, ordinance, law, rule, regulation or order of any governmental or regulatory body, having jurisdiction over the Premises, respecting the use of the Premises or the maintenance or operation thereof.   PTVL shall apply for and attempt to obtain and maintain, on behalf of the Owner, all licenses and permits required or advisable (in PTVL's sole judgment) in connection with the management and operation of the facility at the Premises.

I.       Generally, to do or perform any and all acts and to enter into such contracts, agreements and arrangements as PTVL shall determine to be necessary or appropriate in connection with the operation of the Premises; provided, however, that the exercise of such authority shall not be in violation of any term or condition of this Management Agreement.


## ARTICLE II

### LEASES

PTVL shall cause each tenant renting any part of the Premises to execute a lease, of the form and substance currently in use at the Premises.   PTVL shall not use any form of lease other than that currently in use at the facility and Premises, without the prior written consent of Owner.   PTVL shall have the authority to accept or reject tenants. Unless expressly authorized by PTC, the term of each lease at the Premises facility shall not exceed one year.   PTVL and Owner hereby agree that it may be necessary from time to time to offer promotions for the purposes of renting the premium amount of available units.   PTVL shall have authority to market, promote and advertise as it deems proper and necessary



## ARTICLE III

### BONDS

PTVL shall, at Owner's request, provide evidence of a fidelity bond from a surety authorized to act as such in the State of California. Said bond shall be no less than $25,000.00 and will cover employees of Owner not deemed to be in the employ of PTVL and shall be solely at Owner's cost.

## ARTICLE IV

### INSURANCE AND TAXES

A.   **Insurance.**  PTVL and Owner agree that insurance coverage pertaining to the Premises is necessary for their mutual protection. Accordingly, Owner hereby agrees that it shall cause to be placed and kept in full force the following insurance policies, the cost thereof to be paid by the Owner:

1. Public liability insurance insuring against personal injury and property damage with limits of at least $200,000.00 per occurrence, with an excess liability (or umbrella policy) provision providing for additional coverage of not less than $1,000,000.00. Property damage, as used in this paragraph, shall include damage to tenants' property stored in the rental units located on the Premises, and non-owned (i.e. employee) vehicle coverage.

2. Fire and extended coverage insurance insuring the Premises.

3. Wrongful sale and disposal of tenant goods with a minimal limit of $100,000.00 per occurrence.

4. Worker's Compensation insurance as required by the State of California for self storage facilities.

The foregoing amounts may be increased from time to time by the Owner or PTVL. All insurance coverage shall be placed with such companies as shall be selected by the Owner or PTVL and otherwise shall be in conformity with the requirements of any mortgage or deed of trust encumbering the Premises or any part thereof. All such policies shall name the Owner, Agent and such other parties as may be required under the terms of any mortgage or deed of trust encumbering the Premises or any part thereof as the named insured thereunder, as their respective interests may appear. PTVL shall properly investigate and report to Owner and any applicable insurance company all accidents and claims for damage of which PTVL is aware relating to the ownership, operation and maintenance of the Premises and facility and any damage to or destruction of the Premises, including the Improvements thereon. PTVL shall not be authorized to execute any proof of loss or insurance claim forms, documents pertaining to adjustment of losses, signing of receipts and collection of insurance proceeds. Any such insurance proceeds which are collected by PTVL shall be remitted immediately to Owner.

B.   **Taxes and Assessments.**  If requested by Owner, PTVL shall verify bills for real estate and personal property taxes, improvement assessments and other like charges which are or may become liens against the Premises or any part thereof and recommend to Owner payment thereof without consent or contesting payment in the manner provided by law. PTVL shall annually review and submit a report on all real estate and personal property taxes and all assessments affecting the Premises and, at Owner's request, will work in conjunction with Owner or Owner's accountant in filing any personal or real property tax returns pertaining to the Premises, after consulting with Owner concerning the contents thereof.

## ARTICLE V

### OBLIGATIONS OF AGENT

In addition to the other obligations of PTVL set forth in this Management Agreement, PTVL shall have

the following obligations:

PTVL shall hire, through Owner, property-level personnel for the Premises including without limitation site managers, assistant managers and relief managers, maintenance personnel and other individuals rendering services or performing activities on the Premises in connection with its operation or maintenance. In addition, the cost of certain personnel who supervise, or otherwise participate in, the direct management of the Premises will be paid by the Owner. Hours of employment and compensation shall be provided in accordance with Federal and State requirements for overtime and minimum wage.

## ARTICLE VI
## COMPENSATION

Should Owner agree and provide for the installation of a computerized management software system as specified by PTVL, Owner shall pay to PTVL, as compensation for services rendered by PTVL pursuant to this Management Agreement, a) $2,500.00 account set up fee, and; b) the sum of $1,500.00 per month or six percent (6%) of the gross revenues per month actually collected, whichever is greater. Owner shall pay a surcharge of $400.00 per month over and above the aforesaid compensation rate in the event Owner does not authorize the installation of a computerized software system as specified by PTVL. Gross Revenue shall be defined as the amount actually received from tenants in connection with the operation of the Premises and shall not include any such rental not actually received and PTVL shall not be entitled to any percentage of income until such is actually received.

PTVL shall be compensated at the rate of 10% of total project cost for the administration and supervision of all nonrecurring repairs, maintenance, improvements or other projects greater than $1,000.00 in value. Consulting services outside the scope of this Management Agreement shall be charged at PTVL's prevailing hourly rate.

## ARTICLE VII
## TERM

The term of this Management Agreement shall commence as of the 1st day of January, 2003, and shall terminate on the 31st day of December, 2004, unless the parties agree to extend this Management Agreement beyond such date, which extension agreement shall be in writing executed by each party hereto. PTVL shall have the unconditional right to terminate this Management Agreement and its obligations thereunder in the event Owner shall be in material breach of any term or provision of this Management Agreement and such breach shall not be cured by Owner within ten days after the delivery by PTVL of a written notice which sets forth the nature of such breach by Owner.  Otherwise, PTVL shall have the right to terminate this Management Agreement upon 120 days written notice to Owner. Owner shall have the right to terminate this Management Agreement in the event that PTVL shall be in material breach of any term or provision of this Management Agreement and such breach shall not be cured by PTVL within ten days after the delivery by Owner of a written notice which sets forth the nature of such breach by PTVL.  Otherwise, Owner shall have the right to terminate this Agreement upon 120 days written notice to PTVL.  Notwithstanding the first sentence of this Article VII, this Management Agreement will automatically renew for a period of twelve months if no notice of termination has been received by PTVL from Owner on or before ninety days from the date of termination as stated above.

### ARTICLE VIII
### MISCELLANEOUS

A.    Owner and PTVL shall not, under any circumstances, be deemed to be joint venturers or partners or members of any co-venture, and neither shall have the power to bind or obligate each other, except as set forth in this Management Agreement.

B.    PTVL shall not have the right to assign any of its rights and obligations in connection with this Management Agreement without the prior written consent of the Owner.

C.    The Owner hereby agrees to indemnify and hold PTVL, all persons and companies affiliated with PTVL (collectively, the "Indemnified Persons") harmless, and release each of such Indemnified Persons, from any and all costs, expenses, attorney's fees, suits, liabilities, judgments, damages, and claims (collectively the "Claims") incurred by the Indemnified Persons in connection with the management of the Premises (including the loss of use thereof following any damage, injury or destruction), arising from any cause (including without limitation the active or passive negligence of the Indemnified Persons), except for the willful misconduct or gross negligence on the part of the Indemnified Persons. In addition, no Indemnified Person shall be liable for any error of judgment or for any mistake of fact or law, or for anything which it may do or refrain from doing hereafter, except in cases of willful misconduct or gross negligence. PTVL hereby agrees to indemnify and hold the Owner harmless, and to release Owner, from any and all claims in connection with the management of the Premises arising from the willful misconduct or gross negligence of the Indemnified Persons. The provisions of this paragraph shall survive the termination of this Management Agreement. Notwithstanding the foregoing, PTVL shall not be required to indemnify Owner against any damages suffered as a result of the negligence or willful misconduct of Owner or any employees of Owner.

D.    Owner and PTVL shall take such actions as may be necessary to comply with any and all laws, statutes, rules, regulations, ordinances, orders or requirements affecting Owner, Agent or the Premises promulgated by any governmental authority having jurisdiction.

E.    All notices, statements, requests, demands or other communications under this Management Agreement shall be in writing, and shall be deemed to have been fully delivered on the date of service, if served personally on the party to whom notice is to be given, or three days after the deposit of such notice in first class mail, registered or certified, return receipt requested, postage prepaid and properly addressed as follows:

    To PTVL:      1818-d Mt. Diablo Blvd.
                  Second Floor
                  Walnut Creek, CA 94596
                  Attention: J.V. Worsley

    To Owner:     Pacific Thomas Corporation
                  2619 East 12th Street
                  Oakland, CA  94612
                  Attention: Randall Worsley

Either party shall have the right to change the address at which notice shall be sent to it by giving written notice of such change of address to the other party in the same manner set forth for notices above.

F.    If any term, covenant or provision in this Management Agreement is held by a court of competent jurisdiction to be invalid, void or unenforceable, the remainder of the provisions shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

G.    All provisions of this Management Agreement are subject to the terms and conditions of all mortgage and/or deeds of trust encumbering the Premises.

H.    This Management Agreement shall be binding upon and inure to the benefit of the respective parties hereto and their permitted assigns and successors in interest.

I.    PTVL shall establish, supervise, direct and maintain the operation of a system of record keeping

and bookkeeping with respect to all receipts and disbursements in connection with the management and operation of the Premises and facility operty. The books, records and accounts shall be maintained at PTVL's office, and shall be available at same location for examination and audit by Owner or its representatives at all reasonable times after reasonable notice to PTVL.  On or before thirty days after the close of each month, PTVL shall cause to be prepared and delivered to Owner, at Owner's expense, a monthly statement of receipts, expenses and charges and a disbursement to Owner if requested, representing receipts less disbursements.  Owner acknowledges that any budgets or projections prepared by PTVL for Owner are only estimates of revenues and expense, that the initial budgets and projections prepared by PTVL will be based in part on information provided by Owner, that any projections will be based in part on information provided by Owner, that any projections prepared by PTVL are subject to, and may be affected by, changes in financial, economic, competitive and other conditions and circumstances beyond PTVL's control and that such projections and budgets are not to be construed as a guarantee by PTVL of the actual results to be obtained from operations.  Owner acknowledges that PTVL makes no representations of warranties as to the results to be obtained from operations.  Owner acknowledges that PTVL has no knowledge, and cannot certify the accuracy, of any historical information provided to  PTVL by Owner.

J.       The Owner hereby agrees to cooperate with PTVL in the performance of its duties under this Management Agreement, and to that end, upon the request of PTVL, provide access to all files, books and records of the Owner relevant to the facility and  Premises, and to execute all documents or instruments as PTVL in its sole judgment deems necessary or advisable to enable it to fulfill its duties under this  Management Agreement.

K.       PTVL shall not be required to do, or cause to be done, anything for the account of the Owner (i) which may make PTVL liable to third parties; (ii) which may not be commenced,  undertaken or completed because of insufficient funds of Owner; or (iii) which may not be commenced, undertaken or completed because of acts of God, strikes, governmental regulations or laws, acts of war or other types of events beyond PTVL's control whether similar or dissimilar to the foregoing.

L.       This  Management Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

M. Liquidated Damages: IN THE EVENT PTVL BREACHES THIS AGREEMENT OR IS LIABLE TO OWNER FOR ANY TORTIOUS ACT PERFORMED IN CONNECTION WITH THIS AGREEMENT, THEN OWNER SHALL HAVE THE RIGHT TO RECOVER PTVL's  FEE FOR ONE MONTH'S SERVICES PROVIDED HEREUNDER BUT NO MORE THAN ONE-THOUSAND DOLLARS ($1,000.00) AS LIQUIDATED DAMAGES, AND NOT AS A PENALTY IT IS AGREED BY PTVL AND OWNER THAT THE AMOUNT OF OWNER'S ACTUAL DAMAGE SUSTAINED BY AGENT'S BREACH OR ACTS WOULD BE DIFFICULT OR IMPOSSIBLE TO DETERMINE FROM THE NATURE OF THE TRANSACTION CONTEMPLATED HEREIN, PTVL'S FEE SET FORTH IN THIS AGREEMENT HAS BEEN AGREED UPON AFTER SPECIFIC NEGOTIATION AS THE PARTIES' BEST ESTIMATE OF OWNER'S DAMAGES.

INITIALS

PTVL

OWNER

IN WITNESS WHEREOF, the parties have executed this  Management Agreement the day and year first above  written.

OWNER:

Pacific Thomas Corporation

By: _____ Date: _____ It's: President and Duly Authorized Representative
Randall CM Worsley

PTVL:

By:- _____ Date: _____ It's: President
Jill V. Worsley

# EXHIBIT 2

# Management Agreement
## AMENDED

This amended Management Agreement("Agreement") is made and entered into this 1st day of January, 2011, by and between Pacific Thomas Corporation, a California corporation(hereinafter referred to as "Landlord"), and Pacific Trading Ventures dba Safe Storage Management Company (hereinafter referred to as "Agent"), a Nevada Corporation, registered in State of California, collectively referred to herein as "Parties".

Parties to this Agreement have previously executed a Management Agreement( "Management Agreement") dated January 9th, 2003, and subsequently amended and updated this Management Agreement to correctly reflect the management responsibilities relative to the premises defined in legal description(see attached Master Site Survey).

Now therefore, in consideration for the mutual covenants herein contained, the parties agree to amend the Management Agreement as follows:

### ARTICLE VI
### COMPENSATION

Landlord shall pay to Agent six percent(6%) of the gross revenues per month based on accrued charges or $2,000 per month, whichever amount is greater.

Agent shall be compensated at the rate of 10% of total project cost for the administration and supervision of all non-recurring repairs, capital improvements or other large projects(defined as any project with a construction value above $5,000) conducted on behalf of the Landlord.. Consulting services shall be charged as the published rates quoted by Agent at time of service.

### ARTICLE VII
### TERM

Term of this new amended Agreement shall commence on January 1st, 2011, and shall terminate on the 31st day of each year, unless agreed by both parties to continue services under this Agreement.

In Witness Whereof, the parties have executed this Agreement the day and year first written above:

LANDLORD: Pacific Thomas Corporation

By: _____ date: 1/5/11
    Randall C.M. Whitney

AGENT: Pacific Trading Ventures dba Safe Storage Management Company

By: _____ date: 1/6/11
    Jill Worsley

# EXHIBIT 3

## LEASE OF IMPROVED INDUSTRIAL / COMMERCIAL PROPERTY: 2783 EAST 12ᵀᴴ STREET, OAKLAND, CALIFORNIA

This Agreement (the "Lease") is made and entered into this 1st day of January, 2005 by and between Pacific Thomas Corporation, a California corporation (PTC) (hereinafter "Lessor"), and Pacific Trading Ventures, a California corporation (PTV) (c/o its duly authorized representative, Safe Storage Management Company, 1818-D Mt. Diablo Blvd, Second Floor, Walnut Creek, California 94596 (hereinafter the "Lessee").

THE ABOVE PARTIES MUTUALLY AGREE AS FOLLOWS:

Article 1. PREMISES; LOCATION; USE.

A. The Lessor, for and in consideration of the rental to be paid and the covenants and conditions to be performed by the Lessee as hereinafter provided, does hereby lease and let unto the Lessee, for the period and subject to the terms and conditions herein stated, buildings A-K and a portion of the Morse Building located at 2783 East 12th Street, (the "Premises"), City of Oakland, Alameda County, California, shown on the plat, or described in the description, either or both portrayed in the document marked Schedule A attached hereto and incorporated fully into this Lease. The Premises shall be comprised of buildings A-K and 1,500 square feet at such location of Lessor. The Premises leased under this Lease may be used by the Lessee to conduct during commercially reasonable business hours a self-storage operation complying with California laws concerning such enterprises and for all related purposes. In the conduct of this self-storage operation Lessee shall have access and ingress and egress to the Premises described in the attached plat respecting use of the Premises.

B. The grant of right herein made to the Lessee is subject to each and all of the terms, provisions, conditions, limitations and covenants set forth herein and in the attached Exhibit B, which document is acknowledged to have been, understood, and agreed to, and as such is thereby incorporated by this reference into this Lease.

Article 2. TERM.

A. The term of this Lease shall be FIVE YEARS, unless sooner terminated as provided within this Lease, governed by the laws of California respecting such periodic tenancies, and commencing as of January 1, 2005. *(See 1st Amendment)*

B. So long as Lessee is not in default, this Lease shall renew itself automatically from the term stated above without further documentation until terminated and cancelled according to the terms and conditions provided herein, including, without limitation, the service upon Lessee of a thirty-day notice terminating this Lease, with or without cause. Each monthly renewal term will be upon the same terms and conditions set forth herein, including, without limitation, the Lessor's right to reevaluate and change the rental for the Premises upon giving Lessee thirty-days' notice of such change.

Article 3. RENT; CHANGE IN RENT.

A. The Lessee covenants, and agrees to pay to the Lessor, as rental for the use of the Premises during each monthly leasehold term rental of Two Thousand Five Hundred and no/100 Dollars ($2,500.00) per month, payable in advance for each and every month. The above agreed rental of $2,500.00 will be due and owing February 1, 2005 and for each ensuing month to which this Lease pertains.