# EXHIBIT D-2

B.   In addition to the above, Lessee agrees to pay to Lessor the net greater amount of $22,500 or 40% of the property net operating income proceeds, excepting property taxes, insurance and deferred maintenance expenses, which shall be the obligation of the Lessor (Landlord). In the event the Lessor determines that the rental paid is no longer representative of a fair market rental, the Lessor may adjust the rent based on a fair market valuation. Such written notice shall be served upon Lessee at least one-hundred eighty (180) days prior to the effective date.

### Article 4.   SPECIAL PROVISIONS

A.   The parties agree that all provisions set forth in Sections 6, 7 and 11 of Exhibit B shall particularly and specifically apply with respect to any appliances maintained or used by the Lessee on the premises (which activity of Lessee shall first require the prior written consent of Lessor). The parties further agree that the insurance required of Lessee under Exhibit B Section 20 shall be with specific reference to, but not limited to, full liability coverage with respect to such permitted appliance in an amount not less than $1,000,000.00, assuring Lessor of such insurance and coverage by delivering additional insured endorsements (naming Lessor as an added insured) and certificates of insurance evidencing the existence and amounts of such insurance with loss payable clauses as required by this Lease.

B.   To assure that Lessee faithfully performs all obligations required hereunder and that the Premises are left in a "broom-clean" condition at the end of the Lease, Lessee shall deposit on execution of this document $ 2,500.00 as a security deposit unless a security deposit of this amount was paid commencing with Lessee's Lease running from July 1, 2004, in which case such security deposit shall transfer over to this Lease commencing January 1, 2005. Lessor may use, apply, or retain all or any portion of such security deposit to compensate Lessor for any default by Lessee which results in loss or damage to Lessor. If Lessor makes such an application or use of the security deposit, Lessee shall immediately deposit with Lessor an amount sufficient to restore the security deposit to its level at the commencement of the Lease, per this Section 4 (B). Similarly, if the monthly rent shall increase at any time, pursuant to the provisions of this Lease, Lessee shall also deposit sums sufficient to bring the amount of the security deposit equal to the monthly rent amount then in effect. Any unused portion of the security deposit shall be returned to Lessee upon the termination of this Lease.

IN WITNESS WHEREOF, the parties hereto have executed this Lease as of the day and year first written above.

LESSOR:

Pacific Thomas Corporation, a California corporation

By _____
Its Duly Authorized Representative

By _____
Its Duly Authorized Representative

LESSEE:

Jill V. Worsley, Pacific Trading Ventures/dba Safe Storage Management Company, its Duly Authorized Representative

Case: 12-46534   Doc# 82-2   Filed: 09/13/12   Entered: 09/13/12 16:09:10   Page 4 of 13 of
Case: 13-04079   Doc# 1-1   Filed: 04/11/13   Entered: 04/11/13 19:05:27   Page 4 of 13 of
Case: 12-46534   Doc# 341-7   Filed: 07/26/13   Entered: 07/26/13 11:45:15   Page 2 of 24

EXHIBIT B: Leasehold Standard Terms and Conditions

## Section 1. IMPROVEMENTS.

It is agreed that no improvements placed upon the Premises by the Lessee shall become a part of the Premises realty.

## Section 2. PRIOR RIGHTS.

A. This Lease is made without covenant of title or to give possession or for quiet enjoyment.

B. This Lease is made subject to all outstanding superior rights, including, but not limited to, underground facilities, rights-of-way for highways and for power, fiber optics and other communication lines and
facilities, and the right of the Lessor to renew such outstanding rights, to renew the term thereof and to grant such new or additional rights, licenses or easements unto others as the Lessor in its sole discretion shall deem
necessary, convenient or appropriate. In the Lessee's use and occupancy of the Premises, the Lessee shall not disturb, damage or interfere with any such facilities of either the Lessor or any nonparties to this Lease.

## Section 3. PAYMENT OF RENTAL; UNPAID RENTAL.

A. All rental shall be paid in lawful money of the United States of America at the offices of Lessor's duly authorized representative and manager, Safe Storage Management Company, 1818-D Mt. Diablo Boulevard, Second Floor, Walnut Creek, California 94596, or at such other place(s) as the Lessor shall designate in writing from time to time.

B. In the event that the rental herein specified to be paid has not been received by the Lessor within ten (10) days after the date that such rental payment is due, a finance charge of $25.00 for each unpaid and delinquent rental payment shall be assessed against the Lessee, and interest, at the maximum legal rate then applicable, shall be assessed against the unpaid rental and shall accrue until such rental payments are current and all
interest payments and finance charges have been paid.

## Section 4. TAXES AND ASSESSMENTS.

A. The Lessee further agrees to pay, before the same shall become delinquent, all taxes levied during the life of this Lease upon the Premises and upon any buildings and improvements thereon allowed by Lessor, or to reimburse the Lessor, either directly or as an amount included in Lessee's rental payment for sums paid by the Lessor for such taxes.

B. If, during the life of this Lease, any street or other improvement shall be made, whether consisting of new construction, maintenance, repairs, renewals, or reconstruction, and the whole or any portion of the cost of which is assessed against or is fairly assignable to the Premises on a prorated basis, the Lessee agrees to pay in addition to the other payments herein provided for the entire amount so assessed against or assignable to the Premises.

## Section 5. WATER RIGHTS.

This Lease does not grant, convoy or transfer any right to the use of water under any water right owned or claimed by the Lessor which may be appurtenant to or otherwise associated with the Premises. All right, title, and interest in and to such water is expressly reserved unto the Lessor, its successors and assigns, and the right to use same or any part thereof may be obtained only after the prior written consent of the Lessor is first secured.

## Section 6. CARE AND USE OF PREMISES.

A. In the Lessee's use and occupancy of the Premises, the Lessee will observe and exercise reasonable care and caution against damage or destruction to the Premises by fire or otherwise. The Lessee shall not do, suffer or permit anything upon or about the Premises which will or may increase the fire hazard thereon. The Lessee shall not commit or suffer waste thereof or injury thereto and shall not use or permit the use of the Premises for any unlawful purpose nor create or maintain thereon any nuisance or any offensive object, matter or thing. The Lessee, at Lessee's expense, will at all times keep the Premises in a safe, neat, clean and presentable condition including all sidewalks and public ways located on or leading to the Premises. The Lessee, at Lessee's expense, shall also keep all walkways appurtenant to any railroad track(s) or to public rights-of-way free and clear from debris, snow, ice and any other substance which would or might create a hazard thereon.

B. The Lessee shall not install, maintain or permit any sign or advertisement upon the Premises, except signs relating to the Lessee's business, provided such signs are properly installed and maintained by the Lessee and present a neat appearance. The Lessor reserves the right to place and maintain at prominent places on the Premises, signs advertising the name and business of Lessor or the representative of Lessor maintaining the Premises.

C.    In the event any Lessor-permitted building or other improvement not belonging to the Lessor on the Premises is damaged or destroyed by fire, storm, or other casualty, the Lessee shall within thirty days after such happening, remove all debris and rubbish resulting therefrom; and if Lessee fails to do so, the Lessor may enter the premises and remove such debris and rubbish, and the Lessee agrees to reimburse the Lessor, within thirty days after bill rendered, for all expenses incurred in such cleanup.

D.    In the Lessee's occupancy and use of the Premises the Lessee, at Lossee's expense, shall conform and comply with all applicable laws, ordinances and public regulations now or hereafter in effect, and hold harmless the Lessor from any failure so to do and from any fines, penalties, forfeitures or judgments resulting from Lessee's failure to conform and comply with all such laws, ordinances and public regulations.

E.    It is further agreed that no gunpowder, gasoline, dynamite or other explosive, flammables or hazardous materials shall be stored or kept upon the Premises. Nothing herein contained, however, shall prevent the storage of those hazardous commodities, if any, specified in Article I of the Lease Agreement, nor the storage of oil or gasoline where same are used by the Lessee for fuel in the business carried on by the Lessee on the Premises, and are stored in quantities reasonable for such purposes: PROVIDED, however, that in all such excepted cases, the Lessee shall not store such commodities within fifty (50) feet from the center line of any main street and shall strictly comply with all federal, state and municipal laws and regulations relating to the storage of such commodities.

## Section 7.  HAZARDOUS SUBSTANCES AND WASTES

A.    Lessee shall comply with all federal, state, and local environmental laws and regulations in its use of the Premises, including the Resource Conservation and Recovery Act, as amended (RCRA), and the Comprehensive Environmental Response Compensation and Liability Act, as amended (CERCLA). Lessee shall not treat, store or dispose of hazardous wastes on the Premises, as defined in RCRA, without first obtaining the Lessor's written permission. If such permission is granted, the Lessee shall obtain any necessary permits and identification numbers and provide the Lessor the identification numbers and copies of the permits.  Lessee shall also assume all responsibility for and costs associated with any closure and/or post-closure care required. In addition, Lessee shall not install any underground storage tanks as defined in RCRA without first obtaining the Lessor's written permission, if such written permission is granted, Lessee shall obtain any necessary permits, notify the proper authorities, and provide the Lessor with copies of such permits and notifications. Furthermore, Lessee shall assume all responsibility for and shall indemnify and defend Lessor against any and all costs and claims associated with a release or leak of any tank contents.

B.    Lessee shall use its best efforts and safety practices to prevent the release of oil and hazardous substances as defined in CERCLA on the Premises. Notwithstanding, Lessee assumes all responsibility for the investigation and cleanup of any such release and shall indemnify and defend the Lessor, its officers, agents and employees, for all costs, including environmental consultant and attorney fees, and claims resulting from or associated with any such release. This provision shall continue in full force and effect regardless of whether this Lease is terminated pursuant to any other provision, or the Premises are abandoned and vacated by the Lessee.

## Section 8.  UTILITIES.

A.    The Lessee shall arrange, secure, and be responsible for all water, gas, heat electricity, power, sewer, telephone, and any and all other utilities and services supplied and/or furnished to the Premises in connection with the use of the Premises by the Lessee as herein provided, together with any and all taxes and/or assessments applicable thereto.

B.    It is agreed that all utilities and services outlined above should be separately metered to the Lessee. In the event such utilities and services are not separately metered to Lessee, Lessee shall pay a reasonable proportion of the cost of such utilities and services, to be determined by the Lessor, of all charges jointly metered with other portions of the Lessor's property.

C.    It is understood and agreed that none of the above utilities or services may be installed or permitted upon the Premises without first securing the written consent and approval of the Lessor for such installations and services.

## Section 9.  LIENS.

The Lessee shall pay, when due and before any lien shall attach to the Premises, if the same may lawfully be asserted, all charges for water, gas, light, and power furnished; and for rental or use of sewer facilities serving the Premises, and fully pay for all materials joined or affixed to the Premises, pay for all taxes and assessments,  and pay in full all persons who perform labor upon the Premises, and shall not permit or suffer any mechanic's or materialsman's or other lien of any kind or nature
to be created, threatened, or enforced against Lessor or against  any portion or all of  the Premises for any work done or materials furnished thereon at the instance or request or on behalf of the Lessee; and the Lessee agrees to indemnify, hold harmless, and defend, the Lessor and Lessor's property against and from any and all liens, claims, demands, costs, and expenses of whatsoever nature in any way connected with or growing out of such done, labor performed, or materials or other things furnished.

## Section 10.    LESSOR'S PRIOR CONSENT REQUIRED FOR BUILDINGS, IMPROVEMENTS, STRUCTURES, DEVICES, TRACKAGE; LESSEE NOT TO IMPAIR CLEARANCES.

A    Detailed plans for all buildings, platforms loading or unloading devices, structures and all alterations, improvements and/or additions thereto, which the Lessee shall desire to make upon the Premises or adjacent property  shall be presented to Lessor for Lessor's consent prior to installation upon the Premises. If the Lessor shall give its consent, the consent shall be deemed conditioned upon Lessee acquiring a permit to do such work from appropriate governmental agencies, and  the furnishing of a copy  thereof to Lessor prior to the

commencement of the work and the compliance by Lessee prior to the commencement of the work and the compliance by Lessee of all conditions of said permit in a prompt and expeditious manner.

B.    All buildings, platforms, loading or unloading devices, structures, and/or material or obstruction of any kind erected, maintained, placed, piled, stacked, or maintained upon the Premises after the commencement of this Lease and any alterations, improvements and/or additions thereto or to buildings, platforms, loading or unloading devices or structures located on the premises prior to the commencement of this Lease shall be constructed, operated, maintained, repaired, renewed, modified and/or reconstructed by the Lessee in strict conformity with applicable federal, state, county, and local laws and regulations and with any and all covenants and conditions that encumber and run with the land which comprises the Premises in whole or in part.

C.    The Lessor consents to Lessee's use of buildings, platforms, loading or unloading devices, structures and/or material or obstructions of any kind located upon the Premises which are in place at the time the Lessee takes possession of the Premises, or which were constructed , placed, piled, stored, stacked, or maintained upon the Premises with the express consent of the Lessor under the terms of a previous lease between Lessor's predecessor in interest and such predecessor's prior tenants, even though not in conformity with Lessor's Clearance Standards applicable at the time .

D.    Nothing herein or applicable to this Premises by any agreement relieve Lessee from the obligation to fully comply with the requirements of any federal, state, county, or municipal law or regulation.

E.    The Lessee shall not locate or permit the location or erection of any poles upon the Premises, nor any, breams, pipes, wires, structure or other obstruction over or under any portion of the Premises without the prior written consent of the Lessor Lessor shall consider requests of the Lessee to impair clearances which are necessitated by the operational requirements of the Lessee, but Lessor shall not be obligated to consent to any impairment. Any necessary permission to impair clearances to which the Lessor has consented must be secured by the Lessee at its own expense, in advance of any impairment; and Lessee shall comply promptly and strictly with all requirements or orders issued by appropriate state or other public authority relating to such impairments.

F.    Lessee assumes the risk of and shall indemnity, hold harmless, and defend the Lessor, its officers, agents, and employees, against and from all injury to or death of persons, or loss of or damage to property of the parties hereto and their employees and agents and to the person or property of any other person or corpora ion resulting from the Lessee's noncompliance with the provisions of this Section 10 or resulting directly or indirectly from any impairment of any. clearances described in this Section 10, whether the Lessor had notice thereof or consented thereto, or whether authorized by applicable state or other public authority pursuant hereto, or existing without compliance with the provisions of this Section 10.

G.    Any knowledge on the part of the Lessor of a violation of the clearance requirements of this Lease, whether such knowledge is actual or implied, shall not constitute a waiver and shall not relieve the Lessee of its obligation to indemnify and defend the Lessor, its officers, agents, and employees, for losses and claims resulting from such violation. However, the forms of this Section 10 shall not apply to losses resulting from impairments or facilities created or constructed by the Lessor that will not benefit the Lessee.

## Section 11;  ASSUMPTION OF RISK; INDEMNITY.

A.    This Lessee accepts the Premises in its present condition and hereby assumes the risk of any injury to and death of persons and damage to or destruction of property resulting from the condition of or any defects anywhere in or upon the Premises, regardless of whether such condition or defects a re known or unknown, apparent or latent, and regardless of whether such condition or defects exist at the commencement of this Lease or at some later time.

B.    The occupation of and activities upon the Premises by the Lessee will expose the Lessor's property, operations and facilities to additional hazards; and as one of the material considerations for this Lease, the Lessee agrees to assume the risk of and to indemnify and hold harmless the Lessor as follows:

1.    The Lessee assumes the risk of and shall indemnity and hold harmless the Lessor, and its affiliates, their officers, agents and employees, against and from any and all liability, loss, damage, claims, demands, costs and expenses of whatsoever nature, including court costs and attorney fees, arising from or growing out of any injury to or death of persons whomsoever or loss of or damage to property whatsoever. The right of Lessor to be indemnified shall accrue when such injury, death, loss, or damage occurs from any cause and is associated in whole or in part with, incidental to, or caused by the occupation or use of the Premises, or any activity upon the Premises by the Lessee, its employees or agents, or by any person on or near the Premises by reason of any relation (contractual or otherwise) with the Lessee, its officers, employees or agents, or caused by Lessee's breach of this Lease. Except as provided in subparagraph 2 below, the Lessee shall not indemnify the Lessor when any such injury, death, loss, or damage is caused by the sole, direct negligence of the Lessor, its officers employees or agents.

2.    The Lessee assumes all risk of and agrees to indemnify and ho ld harmless the Lessor from and against all demands, liability, claims and actions asserted by any person, including an insurer, arising out of or by reason of loss, damage or destruction of or to any and all improvements or other property on the Premises or in proximity to the Premises if used in connection with or incidental to the occupation of the Premises by the Lessee, and any and all incidental loss or injury to the business of the Lessee, (1) where occasioned by fire or other casualty regardless of. whether caused or contributed to by operations of the Lessor or any negligence of the Lessor, its officers, agents or employees; or (2) where occasioned by water to the Premises or to property located hereon belonging to or in the custody or control of the Lessee, including buildings and contents, regardless of whether such damage is caused or contributed to by the position, location, construction, or condition of any structure of Lessor or any unimproved portion of the Premises.

## Section 12.  TERMINATION ON DEFAULT.

A.    It is further agreed that the breach of any covenant, stipulation or condition herein contained to be kept and performed by the Lessee, shall, at the option of the Lessor, forthwith work a termination of this Lease, and all rights of the Lessee hereunder; provided,


Case: 12-46534    Doc# 82-2    Filed: 09/13/13    Entered: 09/13/12 16:16:27    Page 16 of
Case: 13-04079    Doc# 4-4    Filed: 09/13/13    Entered: 09/13/12 16:16:27    Page 5 of
10
Case: 12-46534    Doc# 341-7    Filed: 07/26/13    Entered: 07/26/13 11:45:15    Page 5
of 24

however, that the Lessee shall not be deemed in default under this Lease unless the Lessor has furnished written notice to the Lessee of Lessee's default, and the Lessee has failed to begin to cure that default within seventy-two (72) hours after receipt of Lessor's default notice or after commencing an attempt to cure, Lessee has failed to proceed diligently with its cure efforts.

B.       After a default by the Lessee, the Lessor may at once re-enter upon the Premises and repossess itself thereof and remove all persons therefrom or may resort to an action of forcible/unlawful entry and detainer, or any other action to recover the same. A waiver by the Lessor of the breach by the Lessee of any covenant or condition of this Lease shall not impair the right of the Lessor to avail itself of any other or subsequent breach thereof.

## Section 13.  TERMINATION ON NOTICE.

A.       This Lease may be terminated, with or without cause, by written notice given by either the Lessor to the Lessee, or by the Lessee to the Lessor, whichever the case may be, on any date in such notice stated, which effective termination date, however, shall not be less than thirty  (30) days following the date on which such notice is given.

B.       Upon such termination and vacation of the Premises by the Lessee, the Lessor shall refund to the Lessee, on a pro rata basis, any unearned rental paid in advance.

## Section 14. NOTICE.

A. Any notice, demand, request, consent, approval or communication that either party hereto desires or is required to give to the other party under this Lease shall I be in writing.  Notice shall be deemed to have been given to the Lessee by serving the Lessee personally (serving the person executing the Lease), or by mailing the same, postage prepaid, to the Lessee at the Premises or the last address known to the Lessor.  Notice may be given to the Lessor by mailing the same, postage prepaid, to  Safe Storage Management Company,  1818-D Mount Diablo Boulevard, Second Floor, Walnut Creek, California 94596 Attn:  J.V. Worsley.

B.       Postal notices shall be by certified mail, return receipt requested, and such notice shall be deemed given on the date deposited with the United States Postal Service.

## Section 15. CONSENT.

Wherever the consent, approval, judgment or determination of Lessor is required or permitted under this Lease, Lessor shall exercise good faith and reasonable business judgment in granting or withholding such consent or approval or in making such judgment or determination and shall not unreasonably withhold or delay its consent, approval, judgment or determination.

## Section 16. SURRENDER; ABANDONMENT; VACATION OF PREMISES; REMOVAL OF LESSEE'S PROPERTY.

A.       The Lessee agrees  that upon the expiration, abandonment of the Premises by Lessee, or sooner termination of this Lease, the Lessee will peaceably and quietly surrender possession of the Premises to the Lessor, or the Lessor's successors and assigns, without Lessor giving any notice to quit or demand for possession.  Lessee's non-use of the Premises for the purposes described in Article 1 of this Lease (to which this Exhibit B is attached) continuing for thirty (30) days shall be sufficient and conclusive evidence of such abandonment. No later than the expiration or termination date of this Lease, the Lessee shall (a) remove from the Premises, at the expense of the Lessee, all structures, property and other  materials not affixed to the Premises and  not belonging to the Lessor; and (b) restore the surface of the ground to as good a condition as the same was in before such legally removed structures were erected, including, without limiting the generality of the foregoing, the removal of foundations of such structures, the filling in of all excavations and pits and the removal of all debris and rubbish, all of which shall be performed at Lessee's expense.   If the Lessee should  fail to perform such removal the Lessor may perform the work and the Lessee shall reimburse the Lessor for the cost thereof within thirty (30) days after the bill therefore is rendered.

B.       In the case of the Lessee's failure to remove such non-affixed structures and other property, the same, at the option of the Lessor, shall upon the expiration of thirty  (30) days after the  termination  of this Lease, become and thereafter remain the property of the Lessor; and if within one (1) year after the expiration of such thirty-day period the Lessor elects to and does remove, or, cause to be removed said structure and other property from the Premises and the market value thereof or of the material therefrom  removed  does not equal the cost of such removal plus the cost of restoring the surface of the ground as aforesaid, then the Lessee shall reimburse the Lessor for the deficit within thirty (30) days after bill rendered.

## Section 17. PROTECTION OF FIBER OPTICS.

A.       Fiber optic cable systems may be buried on the Lessor's property.  Lessee shall telephone the Lessor at (925) 988-0804  to determine if fiber optic cable is buried anywhere on the Premises.  If it is, Lessee will telephone the telecommunications companies involved, arrange for a cable locator, and make arrangements for the relocation or other protection of the fiber optic cable prior to beginning any work on the Premises.

B.       In addition to the liability terms described elsewhere in this Lease, the Lessee shall indemnify and hold the Lessor harmless against and from all cost, liability, and expense whatsoever (including, without limitation, attorney fees and court costs and expenses) arising out of or in any way contributed to by any act or omission of the Lessee, its contractor, agents and/or employees, that causes or in any way or degree contributed to (a) any damage to or destruction of any telecommunications system by the Lessee, and/or its contractor, agents



and/or employees, on Lessor's property; (b) any injury to or death of any person employed by or on behalf of any telecommunications company, and/or its contractor, agents and/or employees, on Lessor's property, and/or its contractor, agents and/or employees on Lessor's property; and/or (c) any claim or cause of action for alleged loss of profits or revenue by, or loss of service by a customer or user of, such telecommunications company or companies.

## Section 18. LESSEE NOT TO SUBLET OR ASSIGN.

The Lessee agrees not to let and not to sublet the Premises, in whole or in part, or to assign this Lease without the consent in writing of the Lessor, and it is agreed that any transfer or assignment of this Lease, whether voluntarily, by operation of law or otherwise, without such consent in writing, shall be absolutely void and, at the option of the Lessor, shall terminate this Lease.

## Section 19. SUCCESSORS AND ASSIGNS.

Subject to the provisions of Section 18 hereof, this Lease shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, executors, administrators, successors and assigns.

## Section 20. INSURANCE

A.    LIABILITY INSURANCE: During the Lease Term, Lessee shall maintain, at Lessee's own expense, a policy of comprehensive public liability, insuring Lessor and any holder of a first mortgage or deed of trust on the Premises designated by Lessor against liability for personal injury or property damage arising out of the ownership, use, occupancy, or maintenance of the Premises, the sidewalks and thoroughfares adjacent to the Premises, and the business or businesses operated by Lessee and any tenants of Lessee in the Premises. The initial amount of such insurance shall be an amount not less than  $1,000,000.00 combined single liability limit per occurrence, and shall be subject to periodic increase based upon inflation, increased liability awards, lender requirements, and other similarly relevant factors affecting insurance coverages generally. The policy shall contain (a) a cross-liability endorsement; (b) a provision such coverage is primary and non-contributing with any policy carried by Lessor (which shall be excess insurance); and (c) a provision that no cancellation or reduction in coverage shall be effective until thirty (30) days after written notice to Lessor and such lender. The policy shall be issued by an insurer licensed in California and reasonably approved by Lessor. Not in limitation of its applicability, the policy shall insure Lessee's performance of the indemnity provisions of Section 11, of this Exhibit B, above. However, the amount of the policy applied to such indemnity provisions shall not relieve Lessee's liability nor relieve Lessee of any obligation hereunder. Prior to the commencement of this Lease the Lessee shall deliver a certificate to Lessor sufficiently evidencing such insurance. Lessee shall deliver a binder or renewal of such insurance at least twenty (20) days prior to expiration of such insurance then in force. Lessee shall maintain such other liability insurance as will protect the interests and business of Lessee.

B.    FIRE AND EXTENDED COVERAGE: During the Lease Term Lessee shall maintain at Lessee's expense, insurance covering loss or damage to the Premises (excluding Lessee's personal property), in the full amount of its replacement value, insuring against all perils included within the classification of fire, extended coverage.

## Section 21. CONDEMNATION.

If, as reasonably determined by Lessor, the Premises cannot be used by Lessee because of condemnation or sale in lieu of condemnation, then this Lease shall automatically terminate. Lessor shall be entitled to the entire award or proceeds for any total or partial condemnation in sale in lieu thereof, including, without limitation, any award or proceeds for the value of the leasehold estate created by this Lease. Notwithstanding the foregoing, Lessee shall have the right to pursue recovery from the condemning authority of such compensation as may be separately awarded to Lessee for Lessee's relocation expenses, the taking of Lessee's personal property and fixtures, and the interruption of or damage to Lessee's business.

## Section  22  ATTORNEY'S FEES

If either party retains an attorney to enforce this Lease (including, without limitation, the indemnity provisions of this Lease), the prevailing party shall be entitled to reasonable attorney's fees.

## Section 23. ENTIRE AGREEMENT

This Lease is the entire agreement between the parties respecting the Premises and supercedes all other oral or written agreements between the parties pertaining to this transaction. Except for the unilateral redetermination of  rent as provided in Article 3 of the Lease to which this Exhibit B is attached,  this Lease may be amended only by written instrument signed by both parties.

END

SCHEDULE
(ATTACHMENT) A

SAFE STORAGE CUSTOMER MAP
2783 EAST 12TH STREET
OAKLAND, CA. 94601          PH. 510.536.0616

SAFE STORAGE
safe. smart. simple.

# EXHIBIT 4

*email hd Vyn*

## LEASE OF IMPROVED INDUSTRIAL / COMMERCIAL PROPERTY: 2783 EAST 12TH STREET, OAKLAND, CALIFORNIA

This Agreement (the "Lease") is made and entered into this 1st day of January, 2008 by and between Pacific Thomas Corporation, a California corporation (PTC) (hereinafter "Lessor"), and Pacific Trading Ventures, a California corporation (PTV) (c/o its duly authorized representative, Safe Storage Management Company, 1818-D Mt. Diablo Blvd, Second Floor, Walnut Creek, California 94596 (hereinafter the "Lessee").

THE ABOVE PARTIES MUTUALLY AGREE AS FOLLOWS:

### Article 1. PREMISES; LOCATION; USE.

A. The Lessor, for and in consideration of the rental to be paid and the covenants and conditions to be performed by the Lessee as hereinafter provided, does hereby lease and let unto the Lessee, for the period and subject to the terms and conditions herein stated, that portion of the Morse Building located at 2783 East 12th Street, (the "Premises"), City of Oakland, Alameda County, California, shown on the plat, or described in the description, either or both portrayed in the document marked Schedule A attached hereto and incorporated fully into this Lease. The Premises shall be comprised of approximately 1,500 square feet at such location of Lessor. The Premises leased under this Lease may be used by the Lessee to conduct during commercially reasonable business hours a self-storage operation complying with California laws concerning such enterprises and for all related purposes. In the conduct of this self-storage operation Lessee shall have access and ingress and egress to the Premises described in the attached plat Respecting use of the Premises, Lessor may make routine inspections of the Premises on a periodic basis not more frequent than monthly.

B. The grant of right herein made to the Lessee is subject to each and all of the terms, provisions, conditions, limitations and covenants set forth herein and in the attached Exhibit B, which document is acknowledged to have been, understood, and agreed to, and as such is thereby incorporated by this reference into this Lease.

### Article 2. TERM.

A. The term of this Lease shall be FIVE YEARS, unless sooner terminated as provided within this Lease, governed by the laws of California respecting such periodic tenancies, and commencing as of January 1, 2005. ~ 2010

B. So long as Lessee is not in default, this Lease shall renew itself automatically from the term stated above without further documentation until terminated and cancelled according to the terms and conditions provided herein, including, without limitation, the service upon Lessee of a thirty-day notice terminating this Lease, with or without cause. Each monthly renewal term will be upon the same terms and conditions set forth herein, including, without limitation, the Lessor's right to reevaluate and change the rental for the Premises upon giving Lessee thirty-days' notice of such change.

### Article 3. RENT; CHANGE IN RENT.

The Lessee covenants, and agrees to pay to the Lessor, as rental for the use of the Premises during each monthly leasehold term rental of Two Thousand Five Hundred and no/100 Dollars ($2500.00) per month, payable in advance for each and every month. The above agreed rental of $2500.00 will be due and owing February 1, 2005 and for each ensuing month to which this Lease pertains.

B.    At any time in the month-to-month tenancy, Lessor may re-evaluate the rental base upon which the above monthly rental is computed and change the Lessee's rent.  In the event the Lessor determines that the rental paid is no longer representative of a fair market rental, the Lessor may adjust the rental up or down and shall advise the Lessee by written notice of such change.  Such written notice shall be served upon Lessee at least thirty (30) days prior to the effective date of the next month in which the change is to first take place.

## Article 4.    SPECIAL PROVISIONS

A.    The parties agree that all provisions set forth in Sections 6, 7 and 11 of Exhibit B shall particularly and specifically apply with respect to any appliances maintained or used by the Lessee on the premises (which activity of Lessee shall first require the prior written consent of Lessor).  The parties further agree that the insurance required of Lessee under Exhibit B Section 20 shall be with specific reference to, but not limited to,  full liability coverage with respect to such permitted appliance in an amount not less than $1,000,000.00 , assuring Lessor of such insurance and coverage by delivering additional insured endorsements (naming Lessor as an added insured) and certificates of insurance evidencing the existence and amounts of such insurance with loss payable clauses as required by this Lease.

B.    To assure that Lessee faithfully performs all obligations required hereunder and that the Premises are left in a "broom-clean" condition at the end of the Lease, Lessee shall deposit on execution of this document $_____.00 as a security deposit unless a security deposit of this amount was paid commencing with Lessee's Lease running from July 1, 2004, in which case such security deposit shall transfer over to this Lease commencing January 1, 2005.    Lessor may use, apply, or retain all or any portion of such security deposit to compensate Lessor for any default by Lessee which results in loss or damage to Lessor.  If Lessor makes such an application or use of the security deposit, Lessee shall immediately deposit with Lessor an amount sufficient to restore the security deposit to its level at the commencement of the Lease, per this Section 4 (B).  Similarly, if the monthly rent shall increase at any time, pursuant to the provisions of  this Lease, Lessee shall also deposit sums sufficient to bring the amount of the security deposit equal to the monthly rent amount then in effect.  Any unused portion of the security deposit shall be returned to Lessee upon the termination of this Lease.

IN WITNESS WHEREOF, the parties hereto have executed this Lease as of the day and year first written above.

LESSOR:

Pacific Thomas Corporation, a California corporation

By

Its Duly Authorized Representative

By

Its Duly Authorized Representative

LESSEE:

Jill V. Worsley, its Duly Authorized Representative

EXHIBIT B: Leasehold Standard Terms and Conditions

Section 1. IMPROVEMENTS.

It is agreed that no improvements placed upon the Premises by the Lessee shall become a part of the Premises realty.

Section 2. PRIOR RIGHTS.

A. This Lease is made without covenant of title or to give possession or for quiet enjoyment.

B. This Lease is made subject to all outstanding superior rights, including, but not limited to, underground facilities, rights-of-way for highways and for power, fiber optics and other communication lines and facilities, and the right of the Lessor to renew such outstanding rights, to renew the term thereof and to grant such new or additional rights, licenses or easements unto others as the Lessor in its sole discretion shall deem necessary, convenient or appropriate. In the Lessee's use and occupancy of the Premises, the Lessee shall not disturb, damage or interfere with any such facilities of either the Lessor or any nonparties to this Lease.

Section 3. PAYMENT OF RENTAL; UNPAID RENTAL.

A. All rental shall be paid in lawful money of the United States of America at the offices of Lessor's duly authorized representative and manager, Safe Storage Management Company, 1818-D Mt. Diablo Boulevard, Second Floor, Walnut Creek, California 94569, or at such other place(s) as the Lessor shall designate in writing from time to time.

B. In the event that the rental herein specified to be paid has not been received by the Lessor within ten (10) days after the date that such rental payment is due, a finance charge of $25.00 for each unpaid and delinquent rental payment shall be assessed against the Lessee, and interest, at the maximum legal rate then applicable, shall be assessed against the unpaid rental and shall accrue until such rental payments are current and all interest payments and finance charges have been paid.

Section 4. TAXES AND ASSESSMENTS.

A. The Lessee further agrees to pay, before the same shall become delinquent, all taxes levied during the life of this Lease upon the Premises and upon any buildings and improvements thereon allowed by Lessor, or to reimburse the Lessor, either directly or as an amount included in Lessee's rental payment for sums paid by the Lessor for such taxes.

B. If, during the life of this Lease, any street or other improvement shall be made, whether consisting of new construction, maintenance, repairs, renewals, or reconstruction, and the whole or any portion of the cost of which is assessed against or is fairly assignable to the Premises on a prorated basis, the Lessee agrees to pay in addition to the other payments herein provided for the entire amount so assessed against or assignable to the Premises.

Section 5. WATER RIGHTS.

This Lease does not grant, convey or transfer any right to the use of water under any water right owned or claimed by the Lessor which may be appurtenant to or otherwise associated with the Premises. All right, title, and interest in and to such water is expressly reserved unto the Lessor, its successors and assigns, and the right to use same or any part thereof may be obtained only after the prior written consent of the Lessor is first secured.

Section 6. CARE AND USE OF PREMISES.

A. In the Lessee's use and occupancy of the Premises, the Lessee will observe and exercise reasonable care and caution against damage or destruction to the Premises by fire or otherwise. The Lessee shall not do, suffer or permit anything upon or about the Premises which will or may increase the fire hazard thereon. The Lessee shall not commit or suffer waste thereof or injury thereto and shall not use or permit the use of the Premises for any unlawful purpose nor create or maintain thereon any nuisance or any offensive object, matter or thing. The Lessee, at Lessee's expense, will at all times keep the Premises in a safe, neat, clean and presentable condition including all sidewalks and public ways located on or leading to the Premises. The Lessee, at Lessee's expense, shall also keep all walkways appurtenant to any railroad track(s) or to public rights-of-way free and clear from debris, snow, ice and any other substance which would or might create a hazard thereon.

B. The Lessee shall not install, maintain or permit any sign or advertisement upon the Premises, except signs relating to the Lessee's business; provided such signs are properly installed and maintained by the Lessee and present a neat appearance. The Lessor reserves the right to place and maintain at prominent places on the Premises, signs advertising the name and business of Lessor or the representative of Lessor maintaining the Premises.

C. In the event any Lessor-permitted building or other improvement not belonging to the Lessor on the Premises is damaged or destroyed by fire, storm, or other casualty, the Lessee shall within thirty days after such happening, remove all debris and rubbish resulting therefrom; and if Lessee fails to do so, the Lessor may enter the premises and remove such debris and rubbish, and the Lessee agrees to reimburse the Lessor, within thirty days after bill rendered, for all expenses incurred in such cleanup.

D.    In the Lessee's occupancy and use of the Premises the Lessee, at Lessee's expense, shall conform and comply with all applicable laws, ordinances and public regulations now or hereafter in effect, and hold harmless the Lessor from any failure so to do and from any fines, penalties, forfeitures or judgments resulting from Lessee's failure to conform and comply with all such laws, ordinances and public regulations.

E.    It is further agreed that no gunpowder, gasoline, dynamite or other explosive, flammables or hazardous materials shall be stored or kept upon the Premises. Nothing herein contained, however, shall prevent the storage of those hazardous commodities, if any, specified in Article I of the Lease Agreement, nor the storage of oil or gasoline where same are used by the Lessee for fuel in the business carried on by the Lessee on the Premises, and are stored in quantities reasonable for such purposes; PROVIDED, however, that in all such excepted cases, the Lessee shall not store such commodities within fifty (50) feet from the center line of any main street and shall strictly comply with all federal, state and municipal laws and regulations relating to the storage of such commodities.

## Section 7.  HAZARDOUS SUBSTANCES AND WASTES

A.    Lessee shall comply with all federal, state, and local environmental laws and regulations in its use of the Premises, including the Resource Conservation and Recovery Act, as amended (RCRA), and the Comprehensive Environmental Response Compensation and Liability Act, as amended (CERCLA). Lessee shall not treat, store or dispose of hazardous wastes on the Premises, as defined in RCRA, without first obtaining the Lessor's written permission. If such permission is granted, the Lessee shall obtain any necessary permits and identification numbers and provide the Lessor the identification numbers and copies of the permits. Lessee shall also assume all responsibility for and costs associated with any closure and/or post-closure care required. In addition, Lessee shall not install any underground storage tanks as defined in RCRA without first obtaining the Lessor's written permission. If such written permission is granted, Lessee shall obtain any necessary permits, notify the proper authorities, and provide the Lessor with copies of such permits and notifications. Furthermore, Lessee shall assume all responsibility for and shall indemnify and defend Lessor against any and all costs and claims associated with a release or leak of any tank contents.

B.    Lessee shall Use its best efforts and safety practices to prevent the release of oil and hazardous substances as defined in CERCLA on the Premises. Notwithstanding, Lessee assumes all responsibility for the investigation and cleanup of any such release and shall indemnify and defend the Lessor, its officers, agents and employees, for all costs, including environmental consultant and attorney fees, and claims resulting from or associated with any such release. This provision shall continue in full force and effect regardless of whether this Lease is terminated pursuant to any other provision, or the Premises are abandoned and vacated by the Lessee.

## Section 8.  UTILITIES.

A.    The Lessee shall arrange, secure, and be responsible for all water, gas, heat electricity, power, sewer, telephone, and any and all other utilities and services supplied and/or furnished to the Premises in connection with the use of the Premises by the Lessee as herein provided, together with any and all taxes and/or assessments applicable thereto.

B.    It is agreed that all utilities and services outlined above should be separately metered to the Lessee. In the event such utilities and services are not separately metered to Lessee, Lessee shall pay a reasonable proportion of the cost of such utilities and services, to be determined by the Lessor, of all charges jointly metered with other portions of the Lessor's property.

C.    It is understood and agreed that none of the above utilities or services may be installed or permitted upon the Premises without first securing the written consent and approval of the Lessor for such installations and services.

## Section 9.  LIENS.

The Lessee shall pay, when due and before any lien shall attach to the Premises, if the same may lawfully be asserted, all charges for water, gas, light, and power furnished; and for rental or use of sewer facilities serving the Premises, and fully pay for all materials joined or affixed to the Premises, pay for all labor and assessments, and pay in full all persons who perform labor upon the Premises, and shall not permit or suffer any mechanic's or materialman's or other lien of any kind or nature to be created, threatened, or enforced against Lessor or against any portion or all of the Premises for any work done or materials furnished thereon at the instance or request or on behalf of the Lessee; and the Lessee agrees to indemnify, hold harmless, and defend, the Lessor and Lessor's property against and from any and all liens, claims, demands, costs, and expenses of whatsoever nature in any way connected with or growing out of such done, labor performed, or materials or other things furnished.

## Section 10.  LESSOR'S PRIOR CONSENT REQUIRED FOR BUILDINGS, IMPROVEMENTS, STRUCTURES, DEVICES, TRACKAGE; LESSEE NOT TO IMPAIR CLEARANCES.

A.    Detailed plans for all buildings, platforms loading or unloading devices, structures and all alterations, improvements and/or additions thereto, which the Lessee shall desire to make upon the Premises or adjacent property shall be presented to Lessor for Lessor's consent prior to installation upon the Premises. If the Lessor shall give its consent, the consent shall be deemed conditioned upon Lessee acquiring a permit to do such work from appropriate governmental agencies, and the furnishing of a copy thereof to Lessor prior to the commencement of the work and the compliance by Lessee prior to the commencement of the work and the compliance by Lessee of all conditions of said permit in a prompt and expeditious manner.

B.    All buildings, platforms, loading or unloading devices, structures, and/or material or obstruction of any kind erected, maintained, placed, piled, stacked, or maintained upon the Premises after the commencement of this Lease and any alterations, improvements and/or additions thereto or to buildings, platforms, loading or unloading devices or structures located on the premises prior to the commencement

of this Lease shall be constructed, operated, maintained, repaired, renewed, modified and/or reconstructed by the Lessee in strict conformity with applicable federal, state, county, and local laws and regulations and with any and all covenants and conditions that encumber and run with the land which comprises the Premises in whole or in part.

C.  The Lessor consents to Lessee's use of buildings, platforms, loading or unloading devices, structures and/or material or obstructions of any kind located upon the Premises which are in place at the time the Lessee takes possession of the Premises, or which were constructed , placed, piled, stored, stacked, or maintained upon the Premises with the express consent of the Lessor under the terms of a previous lease between Lessor's predecessor in interest and such predecessor's prior tenants, even though not in conformity with Lessor's Clearance Standards applicable at the time .

D.  Nothing herein or applicable to the Premises by any agreement relieve Lessee from the obligation to fully comply with the requirements of any federal, state, county, or municipal law or regulation.

E.  The Lessee shall not locate or permit the location or erection of any poles upon the Premises, nor any, breams, pipes, wires, structure or other obstruction over or under any portion of the Premises without the prior written consent of the Lessor Lessor shall consider requests of the Lessee to impair clearances which are necessitated by the operational requirements of the Lessee, but Lessor shall not be obligated to consent to any impairment. Any necessary permission to impair clearances to which the Lessor has consented must be secured by the Lessee at its own expense, in advance of any impairment; and Lessee shall comply promptly and strictly with all requirements or orders issued by appropriate state or other public authority relating to such impairments.

F.  Lessee assumes the risk of and, shall indemnify, hold harmless, and defend the Lessor, its officers, agents, and employees, against and from all injury to or death of persons, or loss of or damage to property of the parties hereto and their employees and agents and to the person or property of any other person or corpora ion resulting from the Lessee's noncompliance with the provisions of this Section 10 or resulting directly or indirectly from any impairment of any clearances described in this Section 10, whether the Lessor had notice thereof or consented thereto, or whether authorized by applicable state or other public authority pursuant hereto, or existing without compliance with the provisions of this Section 10.

G.  Any knowledge on the part of the Lessor of a violation of the clearance requirements of this Lease, whether such knowledge is actual or implied, shall not constitute a waiver and shall not relieve the Lessee of its obligation to indemnify and defend the Lessor, its officers, agents, and employees, for losses and claims resulting from such violation. However, the terms of this Section 10 shall not apply to losses resulting from impairments or facilities created or constructed by the Lessor that will not benefit the Lessee.

Section 11.  ASSUMPTION. OF RISK; INDEMNITY.

A.  The Lessee accepts the Premises in its present condition and hereby assumes the risk of any injury to and death of persons and damage to or destruction of property resulting from the condition of or any defects anywhere in or upon the Premises, regardless of whether such condition or defects a re known or unknown, apparent or latent, and regardless of whether such condition or defects exist at the commencement of this Lease or at some later time.

B.  The occupation of and activities upon the Premises by the Lessee will expose the Lessor's property, operations and facilities to additional hazards; and as one of the material considerations for this Lease, the Lessee agrees to assume the risk of and to indemnify and hold harmless the Lessor as follows:

1.  The Lessee assumes the risk of and shall indemnify and hold harmless the Lessor, and its affiliates, their officers, agents and employees, against and from any and all liability, loss, damage, claims, demands, costs and expenses of whatsoever nature, including court costs and attorney fees, arising from or growing out of any injury to or death of persons whomsoever or loss of or damage to property whatsoever. The right of Lessor to be indemnified shall accrue when such injury, death, loss, or damage occurs from any cause and is associated in whole or in part with, incidental to, or caused by the occupation or use of the Premises, or any activity upon the Premises by the Lessee, its employees or agents, or by any person on or near the Premises by reason of any relation (contractual or otherwise) with the Lessee, its officers, employees or agents, or caused by Lessee's breach of this Lease. Except as provided in subparagraph 2 below, the Lessee shall not indemnify the Lessor when any such injury, · death, loss, or damage is caused by the sole, direct negligence of the Lessor, its officers employees or agents.

2.  The Lessee assumes all risk of and agrees to indemnify and ho ld harmless the Lessor from and against all demands, liability, claims and actions asserted by any person, including an insurer, arising out of or by reason of loss, damage or destruction of or to any and all improvements or other property on the Premises or in proximity to the Premises if used in connection with or incidental to the occupation of the Premises by the Lessee, and any and all incidental loss or injury to the business of the Lessee, (1) where occasioned by fire or other casualty regardless of whether caused or contributed to by operations of the Lessor or any negligence of the Lessor, its officers, agents or employees; or (2) where occasioned by water to the Premises or to property located hereon belonging to or in the custody or control of the Lessee, including buildings and contents, regardless of whether such damage is caused or contributed to by the position, location, construction, or condition of any structure of Lessor or any unimproved portion of the Premises.

Section 12.  TERMINATION ON DEFAULT.

A.  It is further agreed that the breach of any covenant, stipulation or condition herein contained to be kept and performed by the Lessee, shall, at the option of the Lessor, forthwith work a termination of this Lease, and all rights of the Lessee hereunder; provided, however, that the Lessee shall not be deemed in default under this Lease unless the Lessor has furnished written notice to the Lessee of Lessee's default, and the Lessee has failed to begin to cure that default within seventy-two (72) hours after receipt of Lessor's default notice or after commencing an attempt to cure, Lessee has failed to proceed diligently with its cure efforts.

B.  After a default by the Lessee, the Lessor may at once re-enter upon the Premises and repossess itself thereof and remove all persons therefrom or may resort to an action of forcible/unlawful entry and detainer, or any other action to recover the same. A waiver by

the Lessor of the breach by the Lessee of any covenant or condition of this Lease shall not impair the right of the Lessor to avail itself of any other or subsequent breach thereof.

## Section 13. TERMINATION ON NOTICE.

A.      This Lease may be terminated, with or without cause, by written notice given by either the Lessor to the Lessee, or by the Lessee to the Lessor, whichever the case may be, on any date in such notice stated, which effective termination date, however, shall not be less than thirty (30) days following the date on which such notice is given.

B.      Upon such termination and vacation of the Premises by the Lessee, the Lessor shall refund to the Lessee, on a pro rata basis, any unearned rental paid in advance.

## Section 14. NOTICE.

A. Any notice, demand, request, consent, approval or communication that either party hereto desires or is required to give to the other party under this Lease shall l be in writing.   Notice shall be deemed to have been given to the Lessee by serving the Lessee personally (serving the person executing this Lease), or by mailing the same, postage prepaid, to the Lessee at the Premises or the last address known to the Lessor. Notice may be given to the Lessor by mailing the same, postage prepaid, to  Safe Storage Management Company,  1818-D Mount Diablo Boulevard, Second Floor, Walnut Creek, California 94596  Attn: J.V. Worsley.

B.      Postal notices shall be by certified mail, return receipt requested, and such notice shall be deemed given on the date deposited with the United States Postal Service.

## Section 15. CONSENT.

Wherever the consent, approval, judgment or determination of Lessor is required or permitted under this Lease, Lessor shall exercise good faith and reasonable business judgment in granting or withholding such consent or approval or in making such judgment or determination and shall not unreasonably withhold or delay its consent, approval, judgment or determination.

## Section 16. SURRENDER; ABANDONMENT; VACATION OF PREMISES; REMOVAL OF LESSEE'S PROPERTY.

A.      The Lessee agrees . that upon the expiration, abandonment of the Premises by Lessee, or sooner termination of this Lease, the Lessee will peaceably and quietly surrender possession of the Premises to the Lessor, or the Lessor's successors and assigns, without Lessor giving any notice to quit or demand for possession.  Lessee's non-use of the Premises for the purposes described in Article 1 of the Lease (to which this Exhibit B is attached)  continuing for thirty (30) days shall be sufficient and conclusive evidence of such abandonment. No later then the expiration or termination date of this Lease, the Lessee shall (a) remove from the Premises, at the expense of the Lessee, all structures, property and other  materials not affixed to the Premises and  not belonging to the Lessor; and (b) restore the surface of the ground to as good a condition as the same was in before such legally removed structures were erected, including, without limiting the generality of the foregoing, the removal of foundations of such structures, the filling in of all excavations and pits and the removal of all debris and rubbish, all of which shall be performed at Lessee's expense.   If the Lessee should  fail to perform such removal the Lessor may perform the work and the Lessee shall reimburse the Lessor for the cost thereof within thirty (30) days after the bill therefore is rendered.

B.      In the case of the Lessee's failure to remove such non-affixed structures and other property, the same, at the option of the Lessor, shall upon the expiration of thirty (30) days after the  termination of this Lease, become and thereafter remain the property of the Lessor; .and if within one (1) year after the expiration  of such thirty-day period the Lessor elects to and does remove, or, cause to be removed said structure and other property from the Premises and the market value thereof or of the  material therefrom  removed  does not equal the cost of such removal plus the cost of restoring the surface of the ground as aforesaid, then the Lessee shall reimburse the Lessor for the deficit within thirty (30) days after bill rendered.

## Section 17. PROTECTION OF FIBER OPTICS.

A.      Fiber optic cable systems may be buried on the Lessor's property. Lessee shall telephone the Lassor at (925) 988-0804  to determine if fiber optic cable is buried anywhere on the Premises.    If it is, Lessee will telephone the telecommunications companies involved,  arrange for a cable locator,  and make arrangements for the relocation or other protection of the fiber optic cable prior to beginning any work on the Premises.

B.      In addition to the liability terms described elsewhere in this Lease, the Lessee shall indemnify and hold the Lessor harmless against and from all cost, liability, and expense whatsoever (including, without limitation, attorney fees and court costs and expenses) arising out of or in any way contributed to by any act or omission of the Lessee, its contractor, agents and/or employees, that causes or in any way or degree contributed to (a) any damage to or destruction of any telecommunications system by the Lessee, and/or its contractor, agents and/or employees, on Lessor's property;  (b) any injury to or death of any person employed by or on behalf of any telecommunications company, and/or its contractor, agents and/or employees, on Lessor's property, and/or its contractor, agents and/or employees on Lessor's property;  and/or (c) any claim or cause of action for alleged loss of profits or revenue by, or loss of service by a customer or user of, such telecommunications company or companies.

BERK 02026

Section 18. LESSEE NOT TO SUBLET OR ASSIGN.

The Lessee agrees not to let and not to sublet the Premises, in whole or in part, or to assign this Lease without the consent in writing of the Lessor, and it is agreed that any transfer or assignment of this Lease, whether voluntarily, by operation of law or otherwise, without such consent in writing, shall be absolutely void and, at the option of the Lessor, shall terminate this Lease.

Section 19. SUCCESSORS AND ASSIGNS.

Subject to the provisions of Section 18 hereof, this Lease shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, executors, administrators, successors and assigns.

Section 20.   INSURANCE

A.      LIABILITY INSURANCE:  During the Lease Term, Lessee shall maintain, at Lessee's own expense, a policy of comprehensive public liability, insuring Lessor and any holder of a first mortgage or deed of trust on the Premises designated by Lessor against liability for personal injury or property damage arising out of the ownership, use, occupancy, or maintenance of the Premises, the sidewalks and thoroughfares adjacent to the Premises, and the business or businesses operated by Lessee and any tenants of Lessee in the Premises. The initial amount of such insurance shall be an amount not less than  $1,000,000.00 combined single liability limit per occurrence, and shall be subject to periodic increase based upon inflation, increased liability awards, lender requirements, and other similarly relevant factors affecting insurance coverages generally. The policy shall contain (a) a cross-liability endorsement; (b) a provision such coverage is primary and non-contributing with any policy carried by Lessor (which shall be excess insurance); and (c) a provision that no cancellation or reduction in coverage shall be effective until thirty (30) days after written notice to Lessor and such lender.  The policy shall be issued by an insurer licensed in California and reasonably approved by Lessor.  Not in limitation of its applicability, the policy shall insure Lessee's performance of the indemnity provisions of Section 11, of this Exhibit B, above.  However, the amount of the policy applied to such indemnity provisions shall not relieve Lessee's liability nor relieve Lessee of any obligation hereunder.  Prior to the commencement of this Lease the Lessee shall deliver a certificate to Lessor sufficiently evidencing such insurance.  Lessee shall deliver a binder or renewal of such insurance at least twenty (20) days prior to expiration of  such insurance then in force.  Lessee shall maintain such other liability insurance as will protect the interests and business of Lessee.

B.      FIRE AND EXTENDED COVERAGE:  During the Lease Term Lessee shall maintain at Lessee's  expense, insurance covering loss or damage to the Premises (excluding Lessee's personal property), in the full amount of its replacement value, insuring against all perils included within the classification of fire,  extended coverage,

Section 21. CONDEMNATION.

if, as reasonably determined by Lessor, the Premises cannot be used by Lessee because of condemnation or sale in lieu of condemnation, then this Lease shall automatically terminate. Lessor shall be entitled to the entire award or proceeds for any total or partial condemnation in sale in lieu thereof, including, without limitation, any award or proceeds for the value of the leasehold estate created by this Lease. Notwithstanding the foregoing, Lessee shall have the right to pursue recovery from the condemning authority of such compensation as may be separately awarded to Lessee for Lessee's relocation expenses, the taking of Lessee's personal property and fixtures, and the interruption of or damage to Lessee's business.

Section  22  ATTORNEY'S FEES

if either party retains an attorney to enforce this Lease (including, without limitation, the indemnity provisions of this Lease), the prevailing party shall be entitled to reasonable attorney's fees.

Section 23. ENTIRE AGREEMENT

This Lease is the entire agreement between the parties respecting the Premises and supercedes all other oral or written agreements between the parties pertaining to this transaction. Except for the unilateral redetermination of  rent as provided in Article 3 of the Lease to which this Exhibit B is attached,  this Lease may be amended only by written instrument signed by both parties.

END

B.    At any time in the month-to-month tenancy, Lessor may re-evaluate the rental base upon which the above monthly rental is computed and change the Lessee's rent.  In the event the Lessor determines that the rental paid is no longer representative of a fair market rental, the Lessor may adjust the rental up or down and shall advise the Lessee by written notice of such change. Such written notice shall be served upon Lessee at least thirty (30) days prior to the effective date of the next month in which the change is to first take place.

## Article 4.    SPECIAL PROVISIONS

A.    The parties agree that all provisions set forth in Sections 6, 7 and 11 of Exhibit B shall particularly and specifically apply with respect to any appliances maintained or used by the Lessee on the premises (which activity of Lessee shall first require the prior written consent of Lessor). The parties further agree that the insurance required of Lessee under Exhibit B Section 20 shall be with specific reference to, but not limited to, full liability coverage with respect to such permitted appliance in an amount not less than $1,000,000.00, assuring Lessor of such insurance and coverage by delivering additional insured endorsements (naming Lessor as an added insured) and certificates of insurance evidencing the existence and amounts of such insurance with loss payable clauses as required by this Lease.

B.    To assure that Lessee faithfully performs all obligations required hereunder and that the Premises are left in a "broom-clean" condition at the end of the Lease, Lessee shall deposit on execution of this document $ 2,500.00 as a security deposit unless a security deposit of this amount was paid commencing with Lessee's Lease running from July 1, 2004, in which case such security deposit shall transfer over to this Lease commencing January 1, 2005. Lessor may use, apply, or retain all or any portion of such security deposit to compensate Lessor for any default by Lessee which results in loss or damage to Lessor. If Lessor makes such an application or use of the security deposit, Lessee shall immediately deposit with Lessor an amount sufficient to restore the security deposit to its level at the commencement of the Lease, per this Section 4 (B).  Similarly, if the monthly rent shall increase at any time, pursuant to the provisions of this Lease, Lessee shall also deposit sums sufficient to bring the amount of the security deposit equal to the monthly rent amount then in effect.  Any unused portion of the security deposit shall be returned to Lessee upon the termination of this Lease.

IN WITNESS WHEREOF, the parties hereto have executed this Lease as of the day and year first written above.

LESSOR:

Pacific Thomas Corporation, a California corporation

By _____

Its Duly Authorized Representative

By _____

Its Duly Authorized Representative

LESSEE:

Jill V. Worsley, its Duly Authorized Representative

# EXHIBIT 5



**SAFE STORAGE**

MANAGEMENT COMPANY

January 1, 2010

Pacific Thomas Capital, as landlord and Pacific Trading Ventures, dba Safe Storage Management Company, as lessee, entered into a lease agreement on or about January 1, 2005. The lease agreement (attached as Exhibit A) was for a five year period. Subject to each and every term and condition contained in such January 5, 2005 lease agreement, the parties wish to extend such original lease agreement for an additional five-year term.

All other provisions within the original lease agreement shall remain as stated, excepting, of course, the (a) expiration date which is being extended as provided herein, and (b) that thereafter, the lease agreement shall be cancellable only upon either party giving to the other six (6) months written notice of termination.

Duly represented by Jill Worsley, Pacific Trading Ventures, dba Safe Storage Management company

_Jill Worsley_                                                01/01/10

_Yes-agreed._

1818 Mt. Diablo Blvd. Suite D
Walnut Creek, CA 94596

Tel: (925) 988-0804   Fax: (925) 988-0897

BERK-02029

# EXHIBIT 6

# AMENDMENT and MODIFICATION TO LEASE

This Amendment and Modification to Lease (this "Amendment and Modification") is made as of August 1, 2012 by and between Pacific Thomas Corporation ("Lessor") and Pacific Trading Ventures doing business as Safe Storage Management Company ("Lessee").

## RECITALS

A.     Lessor and Lessee are parties to that commercial Lease of Improved Industrial / Commercial Property dated January 01, 2005 and extended by that lease extension dated January 1, 2010 (collectively, the "Lease") providing for the leasing of certain premises primarily located at 2783 East 12th Street, 1113-1115 29th Avenue and 2615 East 12th Street, Oakland, California (the "Premises").

B.     The parties now desire to further amend and modify the Lease to shift additional lease payment responsibility to Lessee in exchange for Lessor granting necessary tenant improvements for Lessee to continue operations of the self storage operation. In particular, Article 3B of the original Lease allows for the following:

*"In the event the Lessor determines that the rental paid is no longer representative of a fair market rental, the Lessor may adjust the rent based on a fair market valuation."*

Any capitalized terms used but not defined herein shall have the meanings attributed to them in the Lease.

C.     All other provisions within the original lease agreement shall remain as stated, excepting that if any conflicting language occurs between the Exhibit B: Leasehold Standard Terms and Conditions and the primary Lease documents, or any subsequent amendments, the language contained within the primary Lease documents shall control and be binding upon all parties.

NOW, THEREFORE, in consideration of the mutual promises set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Lessor and Lessee agree as follows:

1.     Amendment and modification to Articles 3A and 3B. RENT; CHANGE IN RENT. The following paragraph will replace the original Articles 3A and 3B:

A. The Lessee covenants, and agrees to pay to the Lessor, as rental for the use of the Premises during leasehold term rental of   SEVENTY THOUSAND and No/100 ( $70,000.00) per month, payable on the 1st and 15th for each and every month, and payable in 50% partial commitments, but never less than the total due amount for each month.  The above agreed rental of $70,000 will be due August 1st ($35,000 payment due) and August 15th($35,000 payment due). Lessee shall continue to be responsible for the operating costs, excepting property taxes, insurance and deferred maintenance,

which shall be the obligation of the Lessor(Landlord expense). In the event the Lessor determines that the rental paid is no longer representative of a fair market rental, the Lessor may adjust the rent based on a fair market valuation. Such written notice shall be served upon Lessee at least one-hundred eighty (180) days prior to effective date.

2. <u>Granting Tenant Improvements</u>. In exchange for Lessee's agreement to above adjustment to the Lease rent, Lessor shall provide Lessee with the necessary tenant improvements for continuation of self storage operations and needed deferred maintenance capital improvements. Lessee shall have the same rights and remedies that it has under this Lease in the event Lessor fails to provide the necessary Tenant Improvements for self storage operations or to complete the Lessor's requirement.

3. <u>Continued Effectiveness of the Lease</u>. Except as herein expressly provided, all of the terms, provisions and conditions of the Lease shall be unaffected by this Amendment and shall remain in full force and effect.

4. <u>Counterparts</u>. This Amendment may be executed in multiple counterparts, each of which shall be deemed an original but all of which together shall constitute a single instrument.

IN WITNESS WHEREOF, Lessor and Lessee have executed this Amendment as of the day and year first above written.

LESSOR:

Pacific Thomas Corporation

By: _____
Randall Whitney, Chief Operating Officer

LESSEE:

Pacific Trading Ventures doing business as Safe Storage Management Company

By: _____
V. Jill Worsley, Chief Operating Officer

2

| **ADVERSARY PROCEEDING COVER SHEET**<br>(Instructions on Reverse) | **ADVERSARY PROCEEDING NUMBER**<br>(Court Use Only) |
|---|---|

| **PLAINTIFFS**<br>Kyle Everett, Chapter 11 Trustee | **DEFENDANTS**<br>Randall Whitney aka Randall C.M. Whitney aka Randall Worsley; Pacific Trading Ventures dba Safe Storage Management Company; Pacific Trading Ventures, Ltd; and Jill V. Worsley aka V. Jill Worsley |
|---|---|
| **ATTORNEYS** (Firm Name, Address, and Telephone No.)<br>Buchalter Nemer, P.C.<br>55 Second Street, Ste. 1700<br>San Francisco, CA 94105-3493<br>phone: 415-227-0900; fax 415-227-0770 | **ATTORNEYS** (If Known) |

| **PARTY** (Check One Box Only) | **PARTY** (Check One Box Only) |
|---|---|
| ☐ Debtor  ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor  ☐ Other<br>☒ Trustee | ☐ Debtor  ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor  ☒ Other<br>☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)
Complaint for Declaratory Relief, Accounting, Turnover, and Injunctive Relief

**NATURE OF SUIT**

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☒ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☒ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☒ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☒ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa et.seq
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ |

Other Relief Sought
Attorneys' fees; Accounting

Case: 13-04079  Doc# 1-2  Filed: 04/11/13  Entered: 04/11/13 18:03:27  Pa...

Case: 12-46534  Doc# 341-7  Filed: 07/26/13  Entered: 07/26/13 11:45:15  Page 23
of 24

American LegalNet, Inc.
www.FormsWorkflow.com

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>Pacific Thomas Corporation dba Pacific Thomas Capital dba Safe Storage | BANKRUPTCY CASE NO.<br>12-46534-MEH | |
| DISTRICT IN WHICH CASE IS PENDING<br>Northern District of California | DIVISION OFFICE<br>Oakland | NAME OF JUDGE<br>M. Elaine Hammond |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br>/s/ Craig C. Chiang | | |
| DATE<br>April 11, 2013 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>Craig C. Chiang | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.