

**EXHIBIT A**

# PROMISSORY NOTE

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** Pacific Thomas Corporation
1818 Mount Diablo Blvd. Ste D
Walnut Creek, CA 94596

**Lender:** Summit Bank
OAKLAND OFFICE
2969 BROADWAY
OAKLAND, CA 94611

---

**Principal Amount: $8,100,000.00      Interest Rate: 8.250%      Date of Note: July 27, 2007**

**PROMISE TO PAY.** Pacific Thomas Corporation ("Borrower") promises to pay to Summit Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of Eight Million One Hundred Thousand & 00/100 Dollars ($8,100,000.00) or so much as may be outstanding, together with interest at the rate of 8.250% on the unpaid outstanding principal balance of each advance. Interest shall be calculated from the date of each advance until repayment of each advance. The interest rate may change under the terms and conditions of the "INTEREST AFTER DEFAULT" section.

**PAYMENT.** Borrower will pay this loan in one payment of all outstanding principal plus all accrued unpaid interest on July 27, 2008. In addition, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning August 27, 2007, with all subsequent interest payments to be due on the same day of each month after that. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any unpaid collection costs; and then to any late charges. The annual interest rate for this Note is computed on a 365/360 basis; that is, by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**PREPAYMENT; MINIMUM INTEREST CHARGE.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. In any event, even upon full prepayment of this Note, Borrower understands that Lender is entitled to a minimum interest charge of $100.00. Other than Borrower's obligation to pay any minimum interest charge, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments of accrued unpaid interest. Rather, early payments will reduce the principal balance due. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Summit Bank, 2969 Broadway Oakland, CA 94611.

**INTEREST RESERVES.** Borrower authorizes Lender to place $1,000,000.00 of the Principal Amount as an interest reserve, which is an estimate of the interest due on the Note ("Interest Reserve"). All interest payments shall be paid from the Interest Reserve. Lender may automatically deduct accrued unpaid interest from the Interest Reserve. Interest will accrue, as described in this Note, on amounts deducted from the Interest Reserve. In the event the interest due under this Note exceeds the Interest Reserve, Borrower will pay accrued unpaid interest when due according to the terms of this Note. Upon maturity, Lender will not advance or disburse the remaining Interest Reserve, if any, to Borrower. The principal due upon maturity will not include any remaining Interest Reserve.

**LATE CHARGE.** If a payment is 11 days or more late, Borrower will be charged 5.000% of the unpaid portion of the regularly scheduled payment.

**INTEREST AFTER DEFAULT.** Upon default, the interest rate on this Note shall, if permitted under applicable law, immediately increase by 4.000 percentage points.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

    **Payment Default.** Borrower fails to make any payment when due under this Note.

    **Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

    **Environmental Default.** Failure of any party to comply with or perform when due any term, obligation, covenant or condition contained in any environmental agreement executed in connection with any loan.

    **False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf, or made by Guarantor, or any other guarantor, endorser, surety, or accommodation party, under this Note or the related documents in connection with the obtaining of the loan evidenced by this Note or any security document directly or indirectly securing repayment of this Note is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

    **Insolvency.** The dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

    **Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

    **Execution; Attachment.** Any execution or attachment is levied against the Collateral, and such execution or attachment is not set aside, discharged or stayed within thirty (30) days after the same is levied.

    **Change in Zoning or Public Restriction.** Any change in any zoning ordinance or regulation or any other public restriction is enacted, adopted or implemented, that limits or defines the uses which may be made of the Collateral such that the present or intended use of the Collateral, as specified in the related documents, would be in violation of such zoning ordinance or regulation or public restriction, as changed.

**Default Under Other Lien Documents.** A default occurs under any other mortgage, deed of trust or security agreement covering all or any portion of the Collateral.

**Judgment.** Unless adequately covered by insurance in the opinion of Lender, the entry of a final judgment for the payment of money involving more than ten thousand dollars ($10,000.00) against Borrower and the failure by Borrower to discharge the same, or cause it to be discharged, or bonded off to Lender's satisfaction, within thirty (30) days from the date of the order, decree or process under which or pursuant to which such judgment was entered.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor, or any other guarantor, endorser, surety, or accommodation party of any of the indebtedness or any Guarantor, or any other guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note. In the event of a death, Lender, at its option, may, but shall not be required to, permit the Guarantor's estate to assume unconditionally the obligations arising under the guaranty in a manner satisfactory to Lender, and, in doing so, cure any Event of Default.

**Change in Ownership.** Any change in ownership of twenty-five percent (25%) or more of the common stock of Borrower.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Cure Provisions.** If any default, other than a default in payment is curable and if Borrower has not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured if Borrower, after receiving written notice from Lender demanding cure of such default: (1) cures the default within ten (10) days; or (2) if the cure requires more than ten (10) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. Borrower also will pay any court costs, in addition to all other sums provided by law.

**GOVERNING LAW. This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of California without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of California.**

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of ALAMEDA County, State of California.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $20.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**COLLATERAL.** Borrower acknowledges this Note is secured by the following collateral described in the security instruments listed herein:

(A) a Deed of Trust dated July 27, 2007, to a trustee in favor of Lender on real property located in Alameda County, State of California. That agreement contains the following due on sale provision: Lender may, at Lender's option, declare immediately due and payable all sums secured by the Deed of Trust upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. If any Trustor is a corporation, partnership or limited liability company, transfer also includes any change in ownership of more than twenty-five percent (25%) of the voting stock, partnership interests or limited liability company interests, as the case may be, of such Trustor. However, this option shall not be exercised by Lender if such exercise is prohibited by applicable law.

(B) an Assignment of All Rents to Lender on real property located in Alameda County, State of California.

(C) Inventory, chattel paper, accounts, equipment and general intangibles described in a Commercial Security Agreement dated July 27, 2007.

**LINE OF CREDIT.** This Note evidences a straight line of credit. Once the total amount of principal has been advanced, Borrower is not entitled to further loan advances. Advances under this Note may be requested orally by Borrower or as provided in this paragraph. All oral requests shall be confirmed in writing on the day of the request. All communications, instructions, or directions by telephone or otherwise to Lender are to be directed to Lender's office shown above. Borrower agrees to be liable for all sums either: (A) advanced in accordance with the instructions of an authorized person or (B) credited to any of Borrower's accounts with Lender. The unpaid principal balance owing on this Note at any time may be evidenced by endorsements on this Note or by Lender's internal records, including daily computer print-outs.

**FINANCIAL STATEMENTS.** Borrower agrees to provide Lender with such financial statements and other related information at such frequencies and in such detail as Lender may reasonably request.

**DEFAULT CLAUSE:.** If Borrower fails to pay accrued interest and/or principal on Loan Maturity Date or a Notice of Default is recorded under the Deed of Trust, which secures the Loan, then the Note Rate provided shall, without notice increase by 4% percentage points.

**NEGATIVE PLEDGE:.** As material consideration for Lender entering into this Loan, Borrower hereby grants to Lender the first right of refusal to refinance the property of Borrower at 2615 East 12th Street. In the event that Borrower determines that it wishes to refinance this subject property, Borrower shall provide Lender a commitment letter from a bona fide lender unrelated to Borrower, which states the terms and conditions upon which this property may then be refinanced. Lender shall have 25 days from its receipt of this commitment letter to provide Borrower written notice that Lender will provide financing on the same terms and conditions set forth in the bona fide's commitment lender. This first right of refusal shall not apply to the use of 2615 East 12th Street as partial collateral in any larger loan package which replaces the present Loan of $8.1 million.

**HOLD HARMLESS:.** Borrower shall defend, indemnify , and hold Bank harmless from and against any and all claims of any third party of any nature arising from this loan transaction and/or the Property taken as security herein.

**RESTRICTION ON NEW DEVELOPMENT PROJECTS OR NEW ACQUISITIONS:.** Borrower shall not participate in any new development projects and acquire additional real property investments during the term of this loan commitment without the Bank's prior written consent, which will not be unreasonably withheld.

**FINANCIAL REPORTING:.** (a) ANNUAL REPORTING: Borrower shall provide Summit Bank with its CPA compiled FYE financial statements and

its corporate tax return within 120 days of year end. (b) SEMI-ANNUAL REPORTING: Borrower shall provide Summit Bank with semi-annual company prepared financial statements within 45 days of the period end .

DEPOSIT RELATIONSHIP:. Borrower will maintain its primary deposit relationship with Summit Bank including all operating and savings accounts related to Pacific Thomas Corporation or its affiliates. If accounts are not established with Summit Bank and maintained, then the interest rate otherwise applicable will be increased by one-half percent (0.50%).

COMPREHENSIVE INSURANCE:. Borrower shall maintain Comprehensive public liability insurance naming Summit Bank as an additional insured with single limit coverage of not less than $2,000,000.00.

BUSINESS INTERRUPTION INSURANCE:. Borrower shall provide Bank with a copy of Business Interruption Insurance and/or loss of "rental value" insurance with respect to the properties.

SECONDARY FINANCING:. No subordinate financing shall be placed on the properties without the prior written consent of Summit Bank.

APPROVAL OF LEASES:. Bank to approve all leases and tenancies affecting the property, and all documentation in connection to the leases entered into by Borrower prior to closing. Prior to closing Borrower shall provide to Bank, on Banks form, executed estoppels certificates and non-disturbance and subordinations agreements form each tenants with the exception of self-storage tenants if applicable. As of 7-16-07, Borrower does not have tenants.

PROPERTY TAXES:. Property Taxes relating to the seven collateralized properties must remain current.

DUE ON SALE:. Any sale, transfer, conveyance or other encumbrance of the Property without the prior written consent of Summit Bank or as expressly permitted in the Loan documents shall be a default under the loan Documents and shall entitle Lender to accelerate all sums due under the loan.

ASSUMPTION:. The Loan may not be assumed.

RELEASES AND RECONVEYANCES:. Bank agrees to provide one or more partial reconveyances to facilitate future parcel uses by the Borrower. These partial reconveyances shall be subject to an objective determination by the Bank that the subject Loan is adequately secured by the properties not to be released in such amounts or ratios needed to maintain or exceed the original loan-to-value and related tests. This objective determination shall be based on the performance of the properties to be left encumbered and securing the $8,100,000 Loan, the relative appraisals for such remaining properties, and any other factors which would enter into a competent loan-to-value and/or other test by which the remaining parcels encumbered by the Deed of Trust for the $8,100,000 Loan might be evaluated. Each such partial reconveyance shall be permitted only so long as, under the above objective tests, the reconveyance out of the Deed of Trust does not impair the value or functionality of the remaining parcels serving as collateral for the Loan. Borrower shall pay a reasonable Loan modification fee for each partial reconveyance allowed hereunder.

The process of arriving at the "objective determination" as used in this Section (Releases and Reconveyances) shall mean that the Borrower will identify the parcel(s) it desires to be released pursuant to this Section. The Bank shall obtain, at Borrower's sole expense, an appraisal of the remaining parcels, by an appraiser of the Bank's choice. If the appraised value of the remaining parcels is such that the Bank's security, upon release, will be no less than it was at the inception of the Loan, and provided Borrower is not in default of any other term or condition of the Promissory Note or the related documents, Borrower shall be entitled to a partial release as contemplated in this Section.

SUCCESSOR INTERESTS. The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES. Please notify us if we report any inaccurate information about your account(s) to a consumer reporting agency. Your written notice describing the specific inaccuracy(ies) should be sent to us at the following address: Summit Bank 2969 Broadway Oakland, CA 94611.

GENERAL PROVISIONS. If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive any applicable statute of limitations, presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

PACIFIC THOMAS CORPORATION

By: _____
Randall C/ M. Whitney, President of Pacific Thomas
Corporation

By: _____
Jill V. Worsley, Vice President of Pacific Thomas
Corporation

LASER PRO Lending, Ver. 5.31.00.004 Copr. Harland Financial Solutions, Inc. 1997, 2007. All Rights Reserved. CA P:\CFI\PPC\PLB\G00.FC TR-1400 PR-42

# CHANGE IN TERMS AGREEMENT

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "* * * *" has been omitted due to text length limitations.

**Borrower:** Pacific Thomas Corporation
1819 Mount Diablo Blvd, Ste D
Walnut Creek, CA 94596

**Lender:** Summit Bank
OAKLAND OFFICE
2969 BROADWAY
OAKLAND, CA 94611

---

**Principal Amount: $8,100,000.00** **Date of Agreement: September 29, 2009**

**DESCRIPTION OF EXISTING INDEBTEDNESS.** PROMISSORY NOTE FROM BORROWER TO LENDER DATED JULY 27, 2007, IN THE PRINCIPAL AMOUNT OF $8,100,000.00.

**DESCRIPTION OF COLLATERAL.** COMMERCIAL SECURITY AGREEMENT DATED JULY 27, 2007, A DEED OF TRUST FROM BORROWER TO LENDER DATED JULY 27, 2007, COMMONLY KNOWN AS 2901, EAST 12TH STREET, WEST SIDE OF 12TH STREET OF 29 AVENUE, 2783 E. 12TH STREET, 1111 29TH AVE, 2801, EAST 12TH STREET, 1113-1115 29TH AVE AND SOUTH SIDE OF 23RD AVENUE EAST OF RAIL LINE, OAKLAND, CA 94601, AND ASSIGNMENT OF RENTS DATED JULY 27, 2007.

**DESCRIPTION OF CHANGE IN TERMS.** THE MATURITY DATE OF EXISTING NOTE IS HEREBY EXTENDED TO NOVEMBER 13, 2009.

**PAYMENT.** Borrower will pay this loan in one payment of all outstanding principal plus all accrued unpaid interest on November 13, 2009. In addition, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning October 27, 2009, with all subsequent interest payments to be due on the same day of each month after that.

**INTEREST CALCULATION METHOD.** Interest on this loan is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this loan is computed using this method.

**CONTINUING VALIDITY.** Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect. Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms. Nothing in this Agreement will constitute a satisfaction of the obligation(s). It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it. This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

**DEFAULT CLAUSE:.** If Borrower fails to pay accrued interest and/or principal on Loan Maturity Date or a Notice of Default is recorded under the Deed of Trust, which secures the Loan, then the Note Rate provided shall, without notice increase by 4% percentage points.

**NEGATIVE PLEDGE:.** As material consideration for Lender entering into this Loan, Borrower hereby grants to Lender the first right of refusal to refinance the property of Borrower at 2615 East 12th Street. In the event that Borrower determines that it wishes to refinance this subject property, Borrower shall provide Lender a commitment letter from a bona fide lender unrelated to Borrower, which states the terms and conditions upon which this property may then be refinanced. Lender shall have 25 days from its receipt of this commitment letter to provide Borrower written notice that Lender will provide financing on the same terms and conditions set forth in the bona fide's commitment lender. This first right of refusal shall not apply to the use of 2615 East 12th Street as partial collateral in any larger loan package which replaces the present Loan of $8.1 million.

**HOLD HARMLESS:.** Borrower shall defend, indemnify , and hold Bank harmless from and against any and all claims of any third party of any nature arising from this loan transaction and/or the Property taken as security herein.

**RESTRICTION ON NEW DEVELOPMENT PROJECTS OR NEW ACQUISTIONS:.** Borrower shall not participate in any new development projects and acquire additional real property investments during the term of this loan commitment without the Bank's prior written consent, which will not be unreasonably withheld.

**FINANCIAL REPORTING:.** (a) ANNUAL REPORTING: Borrower shall provide Summit Bank with its CPA compiled FYE financial statements and its corporate tax return within 120 days of year end. (b) SEMI-ANNUAL REPORTING: Borrower shall provide Summit Bank with semi-annual company prepared financial statements within 45 days of the period end .

**DEPOSIT RELATIONSHIP:.** Borrower will maintain its primary deposit relationship with Summit Bank including all operating and savings accounts related to Pacific Thomas Corporation or its affiliates. If accounts are not established with Summit Bank and maintained, then the interest rate otherwise applicable will be increased by one-half percent (0.50%).

**COMPREHENSIVE INSURANCE:.** Borrower shall maintain Comprehensive public liability insurance naming Summit Bank as an additional insured with single limit coverage of not less than $2,000,000.00.

**BUSINESS INTERRUPTION INSURANCE:.** Borrower shall provide Bank with a copy of Business Interruption Insurance and/or loss of "rental value" insurance with respect to the properties.

**SECONDARY FINANCING:.** No subordinate financing shall be placed on the properties without the prior written consent of Summit Bank.

**APPROVAL OF LEASES:.** Bank to approve all leases and tenancies affecting the property, and all documentation in connection to the leases entered into by Borrower prior to closing. Prior to closing Borrower shall provide to Bank, on Banks form, executed estoppels certificates and non-disturbance and subordinations agreements form each tenants with the exception of self-storage tenants if applicable. As of 7-16-07, Borrower does not have tenants.

**PROPERTY TAXES:.** Property Taxes relating to the seven collateralized properties must remain current.

**DUE ON SALE:.** Any sale, transfer, conveyance or other encumbrance of the Property without the prior written consent of Summit Bank or as expressly permitted in the Loan documents shall be a default under the loan Documents and shall entitle Lender to accelerate all sums due under the loan.

**ASSUMPTION:.** The Loan may not be assumed.

**DEFINITION OF GUARANTOR:.** Notwithstanding the definition of word "Guarantor" set forth (below ), the word "Guarantor" shall mean

everyone signing this Guaranty, including without limitation and collectively, Jill V. Worsley, Randall C.M. Whitney and Sales Ruth Darrow Revocable Living Trust dated July 26, 1980, Randall C.M. Whitney, Successor Trustee of Sales Ruth Darrow Revocable Living Trust dated July 26, 1980, and in each case, any signer's successors and assigns.

**JOINT AND SEVERAL OBLIGATION:** Notwithstanding anything contained in this Guaranty to the contrary, the obligation of each Guarantor shall be joint and several.

**RELEASES AND RECONVEYANCES:** Bank agrees to provide one or more partial reconveyances to facilitate future parcel uses by the Borrower. These partial reconveyances shall be subject to an objective determination by the Bank that the subject Loan is adequately secured by the properties not to be released in such amounts or ratios needed to maintain or exceed the original loan-to-value and related terms. This objective determination shall be based on the performance of the properties to be left encumbered and securing the $8,100,000 Loan, the relative appraisals for such remaining properties, and any other factors which would enter into a competent loan-to-value analysis by which the remaining parcels encumbered by the Deed of Trust for the $8,100,000 Loan might be evaluated. Each such partial reconveyance shall be permitted only so long as, under the above objective tests, the reconveyance out of the Deed of Trust does not impair the value or functionality of the remaining parcels serving as collateral for the Loan. Borrower shall pay a reasonable Loan modification fee for each partial reconveyance allowed hereunder. ::The process of arriving at the "objective determination" as used in this Section /Release is used at Borrower's sole expense, that the Borrower will specify the parcel(s) it desires to be released (hereinafter in this Section, The Bank shall obtain, at Borrower's expense, an appraisal of the remaining parcels by an appraiser of the Bank's choice. If the appraisal value of the remaining parcels is such that the Bank's security, upon release, will be no less than it was at the inception of the Loan, and provided Borrower is not in default of any other term or condition of the Promissory Note or the related document, Borrower shall be entitled to a partial release as contemplated in this Section.::

**PRIOR TO SIGNING THIS AGREEMENT, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT. BORROWER AGREES TO THE TERMS OF THE AGREEMENT.**

BORROWER:

PACIFIC T HOUSE CORPORATION

By: _____
C. M. Whitney, President of Pacific Thomas
Corporation

By: _____
Jill V. Whitney, Vice President of Pacific Thomas
Corporation

LASER PRO Lending, Ver. 5.43.00.03 Copr. Harland Financial Solutions, Inc. 1997, 2005. All Rights Reserved. CA-6 c:\cfi\LPL\E20.FC a6dd-28-03

*Exhibit*

**"7"**

# CHANGE IN TERMS AGREEMENT

References to the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "****" has been omitted due to text length limitations.

| Borrower: | Pacific Thomas Corporation<br>1818 Embarcadero Blvd, Ste D<br>Walnut Creek, CA 94598 | Lender: | Summit Bank<br>OAKLAND OFFICE<br>2300 BROADWAY<br>OAKLAND, CA 94611 |
|---|---|---|---|

**Principal Amount: $6,100,000.00**  **Date of Agreement: December 12, 2009**

DESCRIPTION OF EXISTING INDEBTEDNESS. PROMISSORY NOTE FROM BORROWER TO LENDER DATED JULY 27, 2007, IN THE PRINCIPAL AMOUNT OF $6,100,000.00, AS SUBSEQUENTLY AMENDED .

DESCRIPTION OF COLLATERAL. COMMERCIAL SECURITY AGREEMENT DATED JULY 27, 2007, A DEED OF TRUST FROM BORROWER TO LENDER DATED JULY 27, 2007, COMMONLY KNOWN AS 8801, EAST 12TH STREET, WEST SIDE OF 12TH STREET OF E AVENUE, 2763 E. 12TH STREET, 1111 29TH AVE, 8901, EAST 12TH STREET, 11101115 29TH AVE AND SOUTH SIDE OF 23RD AVENUE EAST OF RAIL LINE OAKLAND, CA 94601, AND ASSIGNMENT OF RENTS DATED JULY 27, 2007.

DESCRIPTION OF CHANGE IN TERMS. THE MATURITY DATE OF EXISTING NOTE IS HEREBY EXTENDED TO MARCH 3, 2010.

PAYMENT. Borrower will pay this loan in one payment of all outstanding principal plus all accrued unpaid interest on March 3, 2010. In addition, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning January 12, 2010, with all subsequent interest payments to be due on the same day of each month after that.

INTEREST CALCULATION METHOD. Interest on this loan is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this loan is computed using this method.

CONTINUING VALIDITY. Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect. Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms. Nothing in this Agreement will constitute a satisfaction of the obligation(s). It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it. This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

DEFAULT CLAUSE. If Borrower fails to pay accrued interest under principal on Loan Maturity Date or a Notice of Default is recorded under the Deed of Trust, which secures the Loan, then the Note Rate provided shall, without notice increase by 4% per annum.

NEGATIVE PLEDGE. As material consideration for Lender entering into this Loan, Borrower hereby grants to Lender the first right of refusal to refinance the property of Borrower at 8916 East 12th Street. In the event that Borrower determines that it wishes to refinance this subject property, Borrower shall provide Lender a commitment letter from a bona fide lender committed to Borrower, which states the terms and conditions upon which that property may then be refinanced. Lender shall have 25 days from its receipt of this commitment letter to provide Borrower written notice that Lender will provide financing on the same terms and conditions set forth in the bona fide's commitment lender. This first right of refusal shall not apply to the use of 8916 East 12th Street as partial collateral in any larger loan package which replaces the present Loan of $6.1 million.

HOLD HARMLESS. Borrower shall defend, indemnify, and hold Bank harmless from and against any and all claims of any third party of any nature arising from this loan transaction and/or the Property taken as security hereto.

RESTRICTION ON NEW DEVELOPMENT PROJECTS OR NEW ACQUISITIONS. Borrower shall not participate in any new developments projects and acquire additional real property investments during the term of this loan commitment without the Bank's prior written consent, which will not be unreasonably withheld.

FINANCIAL REPORTING. (a) ANNUAL REPORTING: Borrower shall provide Summit Bank with its CPA compiled FYE financial statements and tax returns within 120 days of year end. (b) SEMI-ANNUAL REPORTING: Borrower shall provide Summit Bank with semi-annual company prepared financial statements within 45 days of the period end .

DEPOSIT RELATIONSHIPS. Borrower will maintain its primary deposit relationship with Summit Bank including all operating and savings accounts related to Pacific Thomas Corporation or its affiliates. If accounts are not completed with Summit Bank and maintained, then the Interest rate otherwise applicable will be increased by one-half percent (0.50%).

COMPREHENSIVE INSURANCE. Borrower shall maintain Comprehensive public liability insurance naming Summit Bank as an additional insured with single limit coverage of not less than $2,000,000.00.

BUSINESS INTERRUPTION INSURANCE. Borrower shall provide Bank with a copy of Business Interruption Insurance and/or loss of "rental value" insurance with respect to the properties.

SECONDARY FINANCING. No subordinate financing shall be placed on the properties without the prior written consent of Summit Bank.

APPROVAL OF LEASES. Bank to approve all leases and tenancies affecting the property, and all documentation in connection to the leases entered into by Borrower prior to closing. Prior to closing Borrower shall provide to Bank, on Bank's form, executed estoppel certificates and non-disturbance and subordination agreements form each tenant with the exception of self-storage tenants if applicable. As of 7-19-07, Borrower does not have tenants.

PROPERTY TAXES. Property Taxes relating to the above collateralized properties must remain current.

DUE ON SALE. Any sale, transfer, encumbrance or other encumbrance of the Property without the prior written consent of Summit Bank or as expressly permitted to the Loan documents shall be a default under the loan Documents and shall entitle Lender to accelerate all sums due under the loan.

ASSUMPTION. The Loan may not be assumed.

DEFINITION OF GUARANTORS. Notwithstanding the definition of word "Guarantor" as set forth Below ), the word "Guarantor" shall mean

# CHANGE IN TERMS AGREEMENT
## (Continued)

PRIOR TO SIGNING THIS AGREEMENT, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT. BORROWER AGREES TO THE TERMS OF THE AGREEMENT.

BORROWER:

PACIFIC THOMAS CORPORATION

By: _____

By: _____

# CHANGE IN TERMS AGREEMENT
## (Continued)

[illegible] signing this Guaranty, including without limitation [illegible], Jill V. [illegible], Randall C.M. Whitney and [illegible] Revocable Living Trust dated July 28, 1980, Randall C.M. Whitney, [illegible] Trustee of [illegible] Revocable Living Trust dated July 28, 1980, and in each case, any signer's successors and assigns.

**JOINT AND SEVERAL OBLIGATIONS.** Notwithstanding anything contained in this Guaranty to the contrary, the obligation of each Guarantor shall be joint and several.

**RELEASES AND RECONVEYANCES.** Bank agrees to provide one or more partial reconveyances to facilitate future parcel sales by the Borrower. These partial reconveyances shall be subject to an objective determination by the Bank that the subject Loan is adequately secured by the properties not to be released in such amounts or ratios needed to maintain or exceed the original loan-to-value and related terms. This objective determination shall be based on the performance of the properties to be left encumbered and securing the $8,100,000 Loan, the relative appraisals for each remaining properties, and any other factors which would enter into a competent loan-to-value and/or other test by which the remaining parcels encumbered by the Deed of Trust for the $8,100,000 Loan might be evaluated. Each such partial reconveyance shall be permitted only so long as, under the above objective tests, the reconveyance out of the Deed of Trust does not impair the value or functionality of the remaining parcels serving as collateral for the Loan. Borrower shall pay a reasonable Loan modification fee for each partial reconveyance [illegible] hereunder. The process of arriving at the "objective determination" as used in this Section (Releases and Reconveyances) shall mean that the Borrower will identify the parcel(s) it desires to be released pursuant to this Section. The Bank shall obtain, at Borrower's sole expense, an appraisal of the remaining parcels, by an appraiser of the Bank's choice. If the appraised value of the remaining parcels is such that the Bank's security, upon release, will be no less than it was at the inception of the Loan, and provided Borrower is not in default of any other term or condition of the Promissory Note or the related documents, Borrower shall be entitled to a partial release as contemplated in this Section.

**PRIOR TO SIGNING THIS AGREEMENT, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT. BORROWER AGREES TO THE TERMS OF THE AGREEMENT.**

**BORROWER:**

**PACIFIC THERMO CORPORATION**

By: ______________________________
Randall C. M. Whitney, President of Pacific Thermo Corporation

By: ______________________________
Jill [illegible], Vice President of Pacific Thermo Corporation

DISBURSEMENT REQUEST AND AUTHORIZATION
(Continued)

Loan No: 1018144                                                                Page 2

BORROWER:

PACIFIC THOMAS CORPORATION

By: _____                    By: _____
_____ C. E. Whitney, President of Pacific Thomas        _____ Whitney, Vice President of Pacific Thomas
Corporation                                          Corporation

# CHANGE IN TERMS AGREEMENT

[illegible]

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** Pacific Thomas Corporation
1910 Mount Diablo Blvd, Ste D
Walnut Creek, CA 94596

**Lender:** Summit Bank
OAKLAND OFFICE
2969 BROADWAY
OAKLAND, CA 94611

---

**Principal Amount: $8,100,000.00** **Date of Agreement: June 28, 2010**

**DESCRIPTION OF EXISTING INDEBTEDNESS.** PROMISSORY NOTE FROM BORROWER TO LENDER DATED JULY 27, 2007, IN THE PRINCIPAL AMOUNT OF $8,100,000.00, AS SUBSEQUENTLY AMENDED.

**DESCRIPTION OF COLLATERAL.** COMMERCIAL SECURITY AGREEMENT DATED JULY 27, 2007, A DEED OF TRUST FROM BORROWER TO LENDER DATED JULY 27, 2007, COMMONLY KNOWN AS 2801, EAST 12TH STREET, WEST SIDE OF 12TH STREET OF 29 AVENUE, 2783 E. 12TH STREET, 1111 29TH AVE, 2801, EAST 12TH STREET, 1113-1119 29TH AVE AND SOUTH SIDE OF 23RD AVENUE EAST OF RAIL LINE, OAKLAND, CA 94601, AND ASSIGNMENT OF RENTS DATED JULY 27, 2007.

**DESCRIPTION OF CHANGE IN TERMS.** 1. RATE CHANGED FROM DEFAULT RATE OF 12.25% TO FIXED RATE OF 8.25%
2. THE MATURITY DATE OF EXISTING NOTE IS HEREBY EXTENDED TO MARCH 31, 2011.

**CONTINUING VALIDITY.** Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect. Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms. Nothing in this Agreement will constitute a satisfaction of the obligation(s). It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it. This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

**DEFAULT CLAUSE:** If Borrower fails to pay accrued interest and/or principal on Loan Maturity Date or a Notice of Default is recorded under the Deed of Trust, which secures the Loan, then the Note Rate provided shall, without notice increase by 4% percentage points.

**NEGATIVE PLEDGE:** As material consideration for Lender entering into this Loan, Borrower hereby grants to Lender the first right of refusal to refinance the property of Borrower at 2815 East 12th Street. In the event that Borrower determines that it wishes to refinance this subject property, Borrower shall provide Lender a commitment letter from a bona fide lender unrelated to Borrower, which states the terms and conditions upon which this property may then be refinanced. Lender shall have 25 days from its receipt of this commitment letter to provide Borrower written notice that Lender will provide financing on the same terms and conditions set forth in the bona fide's commitment lender. This first right of refusal shall not apply to the use of 2815 East 12th Street as partial collateral in any larger loan package which replaces the present Loan of $8.1 million.

**HOLD HARMLESS:** Borrower shall defend, indemnify, and hold Bank harmless from and against any and all claims of any third party of any nature arising from this loan transaction and/or the Property taken as security herein.

**RESTRICTION ON NEW DEVELOPMENT PROJECTS OR NEW ACQUISITIONS:** Borrower shall not participate in any new development projects and acquire additional real property investments during the term of this loan commitment without the Bank's prior written consent, which will not be unreasonably withheld.

**FINANCIAL REPORTING:** (a) ANNUAL REPORTING: Borrower shall provide Summit Bank with its CPA compiled FYE financial statements and its corporate tax return within 120 days of year end. (b) SEMI-ANNUAL REPORTING: Borrower shall provide Summit Bank with semi-annual company prepared financial statements within 45 days of the period end.

**DEPOSIT RELATIONSHIP:** Borrower will maintain its primary deposit relationship with Summit Bank including all operating and savings accounts related to Pacific Thomas Corporation or its affiliates. If accounts are not established with Summit Bank and maintained, then the interest rate otherwise applicable will be increased by one-half percent (0.50%).

**COMPREHENSIVE INSURANCE:** Borrower shall maintain Comprehensive public liability insurance naming Summit Bank as an additional insured with single limit coverage of not less than $2,000,000.00.

**BUSINESS INTERRUPTION INSURANCE:** Borrower shall provide Bank with a copy of Business Interruption Insurance and/or loss of "rental value" insurance with respect to the properties.

**SECONDARY FINANCING:** No subordinate financing shall be placed on the properties without the prior written consent of Summit Bank.

**APPROVAL OF LEASES:** Bank to approve all leases and tenancies affecting the property, and all documentation in connection to the leases entered into by Borrower prior to closing. Prior to closing Borrower shall provide to Bank, on Banks form, executed estoppels certificates and non-disturbance and subordinations agreements form each tenants with the exception of self-storage tenants if applicable. As of 7-16-07, Borrower does not have tenants.

**PROPERTY TAXES:** Property Taxes relating to the seven collateralized properties must remain current.

**DUE ON SALE:** Any sale, transfer, conveyance or other encumbrance of the Property without the prior written consent of Summit Bank or as expressly permitted in the Loan documents shall be a default under the loan Documents and shall entitle Lender to accelerate all sums due under the loan.

**ASSUMPTION:** The Loan may not be assumed.

**DEFINITION OF GUARANTOR:** Notwithstanding the definition of word "Guarantor" set forth (below), the word "Guarantor" shall mean everyone signing this Guaranty, including without limitation and collectively, Jill V. Worsley, Randall C.M. Whitney and Bubla Ruth Darrow Revocable Living Trust dated July 26, 1990, Randall C.M. Whitney, Successor Trustee of Bubla Ruth Darrow Revocable Living Trust dated July 26, 1990, and in each case, any signer's successors and assigns.

**JOINT AND SEVERAL OBLIGATION:** Notwithstanding anything contained in this Guaranty to the contrary, the obligation of each Guarantor shall be joint and several.



## CHANGE IN TERMS AGREEMENT
### (Continued)

Loan No: 1018144                                                                  Page 2

RELEASES AND RECONVEYANCES: Bank agrees to provide one or more partial reconveyances to facilitate future parcel uses by the Borrower. These partial reconveyances shall be subject to an objective determination by the Bank that the subject Loan is adequately secured by the properties not to be released in such amounts or ratios needed to maintain or exceed the original loan-to-value and related tests. This objective determination shall be based on the performance of the properties to be left encumbered and securing the $4,100,000 Loan, the relative appraisals for such remaining properties, and any other factors which would enter into a competent loan-to-value and/or other test by which the remaining parcels encumbered by the Deed of Trust for the $4,100,000 Loan might be evaluated. Each such partial reconveyance shall be permitted only so long as, under the above objective tests, the reconveyance out of the Deed of Trust does not impair the value or functionality of the remaining parcels serving as collateral for the Loan. Borrower shall pay a reasonable Loan modification fee for each partial reconveyance allowed hereunder. "The process of arriving at the "objective determination" as used in this Section (Releases and Reconveyances) shall mean that the Borrower will identify the parcel(s) it desires to be released pursuant to this Section. The Bank shall obtain, at Borrower's sole expense, an appraisal of the remaining parcels, by an appraiser of the Bank's choice. If the appraised value of the remaining parcels is such that the Bank's security, upon release, will be no less than it was at the inception of the Loan, and provided Borrower is not in default of any other term or condition of the Promissory Note or the related documents, Borrower shall be entitled to a partial release as contemplated in this Section.".

MINIMUM DEBT SERVICE COVERAGE RATIO. Borrower shall maintain a Debt Service Coverage ratio of a minimum of 1.34x measured on a year-to-date basis, which will be reviewed by Summit Bank quarterly. Debt Service Coverage Ratio shall be defined as Available Cash Flow (on a year-to-date basis, Net Income adding back Non-cash Expenses and subject loan related Interest Expenses) divided by Debt Service (total Interest Payment for the period).

PRIOR TO SIGNING THIS AGREEMENT, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT.  BORROWER AGREES TO THE TERMS OF THE AGREEMENT.

BORROWER:

PACIFIC THOMAS CORPORATION

By: _____
Randall E. M. Whitney, President of Pacific Thomas
Corporation
6-30-10

By: _____
Jill V. Worsley, Vice President of Pacific Thomas
Corporation
6-30-10

Laser Pro Lending, Ver. 5.49.00.005, Copr. Harland Financial Solutions, Inc. 1997, 2010. All Rights Reserved. - CA H:\CFI\LPL\E20.FC TR-4229 PR-20

**EXHIBIT B**

# ◯USINESS LOAN AGREEMEN◯

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "*****" has been omitted due to text length limitations.

| Borrower: | Pacific Thomas Corporation<br>1818 Mount Diablo Blvd, Ste D<br>Walnut Creek, CA 94596 | Lender: | Summit Bank<br>OAKLAND OFFICE<br>2969 BROADWAY<br>OAKLAND, CA 94611 |
|---|---|---|---|

THIS BUSINESS LOAN AGREEMENT dated July 27, 2007, is made and executed between Pacific Thomas Corporation ("Borrower") and Summit Bank ("Lender") on the following terms and conditions. Borrower has received prior commercial loans from Lender or has applied to Lender for a commercial loan or loans or other financial accommodations, including those which may be described on any exhibit or schedule attached to this Agreement ("Loan"). Borrower understands and agrees that: (A) in granting, renewing, or extending any Loan, Lender is relying upon Borrower's representations, warranties, and agreements as set forth in this Agreement; (B) the granting, renewing, or extending of any Loan by Lender at all times shall be subject to Lender's sole judgment and discretion; and (C) all such Loans shall be and remain subject to the terms and conditions of this Agreement.

**TERM.** This Agreement shall be effective as of July 27, 2007, and shall continue in full force and effect until such time as all of Borrower's Loans in favor of Lender have been paid in full, including principal, interest, costs, expenses, attorneys' fees, and other fees and charges, or until such time as the parties may agree in writing to terminate this Agreement.

**CONDITIONS PRECEDENT TO EACH ADVANCE.** Lender's obligation to make the initial Advance and each subsequent Advance under this Agreement shall be subject to the fulfillment to Lender's satisfaction of all of the conditions set forth in this Agreement and in the Related Documents.

**Loan Documents.** Borrower shall provide to Lender the following documents for the Loan: (1) the Note; (2) Security Agreements granting to Lender security interests in the Collateral; (3) financing statements and all other documents perfecting Lender's Security Interests; (4) evidence of insurance as required below; (5) guaranties; (6) together with all such Related Documents as Lender may require for the Loan; all in form and substance satisfactory to Lender and Lender's counsel.

**Borrower's Authorization.** Borrower shall have provided in form and substance satisfactory to Lender properly certified resolutions, duly authorizing the execution and delivery of this Agreement, the Note and the Related Documents. In addition, Borrower shall have provided such other resolutions, authorizations, documents and instruments as Lender or its counsel, may require.

**Payment of Fees and Expenses.** Borrower shall have paid to Lender all fees, charges, and other expenses which are then due and payable as specified in this Agreement or any Related Document.

**Representations and Warranties.** The representations and warranties set forth in this Agreement, in the Related Documents, and in any document or certificate delivered to Lender under this Agreement are true and correct.

**No Event of Default.** There shall not exist at the time of any Advance a condition which would constitute an Event of Default under this Agreement or under any Related Document.

**REPRESENTATIONS AND WARRANTIES.** Borrower represents and warrants to Lender, as of the date of this Agreement, as of the date of each disbursement of loan proceeds, as of the date of any renewal, extension or modification of any Loan, and at all times any Indebtedness exists:

**Organization.** Borrower is a corporation for profit which is, and at all times shall be, duly organized, validly existing, and in good standing under and by virtue of the laws of the State of California. Borrower is duly authorized to transact business in all other states in which Borrower is doing business, having obtained all necessary filings, governmental licenses and approvals for each state in which Borrower is doing business. Specifically, Borrower is, and at all times shall be, duly qualified as a foreign corporation in all states in which the failure to so qualify would have a material adverse effect on its business or financial condition. Borrower has the full power and authority to own its properties and to transact the business in which it is presently engaged or presently proposes to engage. Borrower maintains an office at 1818 Mount Diablo Blvd, Ste D , Walnut Creek, CA 94596. Unless Borrower has designated otherwise in writing, the principal office is the office at which Borrower keeps its books and records including its records concerning the Collateral. Borrower will notify Lender prior to any change in the location of Borrower's state of organization or any change in Borrower's name. Borrower shall do all things necessary to preserve and to keep in full force and effect its existence, rights and privileges, and shall comply with all regulations, rules, ordinances, statutes, orders and decrees of any governmental or quasi-governmental authority or court applicable to Borrower and Borrower's business activities.

**Assumed Business Names.** Borrower has filed or recorded all documents or filings required by law relating to all assumed business names used by Borrower. Excluding the name of Borrower, the following is a complete list of all assumed business names under which Borrower does business: None.

**Authorization.** Borrower's execution, delivery, and performance of this Agreement and all the Related Documents have been duly authorized by all necessary action by Borrower and do not conflict with, result in a violation of, or constitute a default under (1) any provision of (a) Borrower's articles of incorporation or organization, or bylaws, or (b) any agreement or other instrument binding upon Borrower or (2) any law, governmental regulation, court decree, or order applicable to Borrower or to Borrower's properties.

**Financial Information.** Each of Borrower's financial statements supplied to Lender truly and completely disclosed Borrower's financial condition as of the date of the statement, and there has been no material adverse change in Borrower's financial condition subsequent to the date of the most recent financial statement supplied to Lender. Borrower has no material contingent obligations except as disclosed in such financial statements.

**Legal Effect.** This Agreement constitutes, and any instrument or agreement Borrower is required to give under this Agreement when delivered will constitute legal, valid, and binding obligations of Borrower enforceable against Borrower in accordance with their respective terms.

**Properties.** Except as contemplated by this Agreement or as previously disclosed in Borrower's financial statements or in writing to Lender and as accepted by Lender, and except for property tax liens for taxes not presently due and payable, Borrower owns and has good title to all of Borrower's properties free and clear of all Security Interests, and has not executed any security documents or financing statements relating to such properties. All of Borrower's properties are titled in Borrower's legal name, and Borrower has not used or filed a financing statement under any other name for at least the last five (5) years.

**Hazardous Substances.** Except as disclosed to and acknowledged by Lender in writing, Borrower represents and warrants that: (1) During

taxes, governmental charges, levies and liens, of every kind and nature, imposed upon Borrower or its properties, income, or profits, prior to the date on which penalties would attach, and all lawful claims that, if unpaid, might become a lien or charge upon any of Borrower's properties, income, or profits.

**Performance.** Perform and comply, in a timely manner, with all terms, conditions, and provisions set forth in this Agreement, in the Related Documents, and in all other instruments and agreements between Borrower and Lender. Borrower shall notify Lender immediately in writing of any default in connection with any agreement.

**Operations.** Maintain executive and management personnel with substantially the same qualifications and experience as the present executive and management personnel; provide written notice to Lender of any change in executive and management personnel; conduct its business affairs in a reasonable and prudent manner.

**Environmental Studies.** Promptly conduct and complete, at Borrower's expense, all such investigations, studies, samplings and testings as may be requested by Lender or any governmental authority relative to any substance, or any waste or by-product of any substance defined as toxic or a hazardous substance under applicable federal, state, or local law, rule, regulation, order or directive, at or affecting any property or any facility owned, leased or used by Borrower.

**Compliance with Governmental Requirements.** Comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the conduct of Borrower's properties, businesses and operations, and to the use or occupancy of the Collateral, including without limitation, the Americans With Disabilities Act. Borrower may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Borrower has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Collateral are not jeopardized. Lender may require Borrower to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Inspection.** Permit employees or agents of Lender at any reasonable time to inspect any and all Collateral for the Loan or Loans and Borrower's other properties and to examine or audit Borrower's books, accounts, and records and to make copies and memoranda of Borrower's books, accounts, and records. If Borrower now or at any time hereafter maintains any records (including without limitation computer generated records and computer software programs for the generation of such records) in the possession of a third party, Borrower, upon request of Lender, shall notify such party to permit Lender free access to such records at all reasonable times and to provide Lender with copies of any records it may request, all at Borrower's expense.

**Environmental Compliance and Reports.** Borrower shall comply in all respects with any and all Environmental Laws; not cause or permit to exist, as a result of an intentional or unintentional action or omission on Borrower's part or on the part of any third party, on property owned and/or occupied by Borrower, any environmental activity where damage may result to the environment, unless such environmental activity is pursuant to and in compliance with the conditions of a permit issued by the appropriate federal, state or local governmental authorities; shall furnish to Lender promptly and in any event within thirty (30) days after receipt thereof a copy of any notice, summons, lien, citation, directive, letter or other communication from any governmental agency or instrumentality concerning any intentional or unintentional action or omission on Borrower's part in connection with any environmental activity whether or not there is damage to the environment and/or other natural resources.

**Additional Assurances.** Make, execute and deliver to Lender such promissory notes, mortgages, deeds of trust, security agreements, assignments, financing statements, instruments, documents and other agreements as Lender or its attorneys may reasonably request to evidence and secure the Loans and to perfect all Security Interests.

**RECOVERY OF ADDITIONAL COSTS.** If the imposition of or any change in any law, rule, regulation or guideline, or the interpretation or application of any thereof by any court or administrative or governmental authority (including any request or policy not having the force of law) shall impose, modify or make applicable any taxes (except federal, state or local income or franchise taxes imposed on Lender), reserve requirements, capital adequacy requirements or other obligations which would (A) increase the cost to Lender for extending or maintaining the credit facilities to which this Agreement relates, (B) reduce the amounts payable to Lender under this Agreement or the Related Documents, or (C) reduce the rate of return on Lender's capital as a consequence of Lender's obligations with respect to the credit facilities to which this Agreement relates, then Borrower agrees to pay Lender such additional amounts as will compensate Lender therefor, within five (5) days after Lender's written demand for such payment, which demand shall be accompanied by an explanation of such imposition or charge and a calculation in reasonable detail of the additional amounts payable by Borrower, which explanation and calculations shall be conclusive in the absence of manifest error.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Collateral or if Borrower fails to comply with any provision of this Agreement or any Related Documents, including but not limited to Borrower's failure to discharge or pay when due any amounts Borrower is required to discharge or pay under this Agreement or any Related Documents, Lender on Borrower's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on any Collateral and paying all costs for insuring, maintaining and preserving any Collateral. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Borrower. All such expenses will become a part of the indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity.

**NEGATIVE COVENANTS.** Borrower covenants and agrees with Lender that while this Agreement is in effect, Borrower shall not, without the prior written consent of Lender:

**Indebtedness and Liens.** (1) Except for trade debt incurred in the normal course of business and indebtedness to Lender contemplated by this Agreement, create, incur or assume indebtedness for borrowed money, including capital leases, (2) sell, transfer, mortgage, assign, pledge, lease, grant a security interest in, or encumber any of Borrower's assets (except as allowed as Permitted Liens), or (3) sell with recourse any of Borrower's accounts, except to Lender.

**Continuity of Operations.** (1) Engage in any business activities substantially different than those in which Borrower is presently engaged, (2) cease operations, liquidate, merge, transfer, acquire or consolidate with any other entity, change its name, dissolve or transfer or sell Collateral out of the ordinary course of business, or (3) pay any dividends on Borrower's stock (other than dividends payable in its stock), provided, however that notwithstanding the foregoing, but only so long as no Event of Default has occurred and is continuing or would result from the payment of dividends, if Borrower is a "Subchapter S Corporation" (as defined in the Internal Revenue Code of 1986, as amended), Borrower may pay cash dividends on its stock to its shareholders from time to time in amounts necessary to enable the shareholders to pay income taxes and make estimated income tax payments to satisfy their liabilities under federal and state law which arise solely from their status as Shareholders of a Subchapter S Corporation because of their ownership of shares of Borrower's stock, or purchase or retire any of Borrower's outstanding shares or alter or amend Borrower's capital structure.

**Loans, Acquisitions and Guaranties.** (1) Loan, invest in or advance money or assets to any other person, enterprise or entity, (2)



**BUSINESS LOAN AGREEMENT**
**(Continued)**

purchase, create or acquire any interest in any other enterprise or entity, or (3) incur any obligation as surety or guarantor other than in the ordinary course of business.

**Agreements.** Borrower will not enter into any agreement containing any provisions which would be violated or breached by the performance of Borrower's obligations under this Agreement or in connection herewith.

**CESSATION OF ADVANCES.** If Lender has made any commitment to make any Loan to Borrower, whether under this Agreement or under any other agreement, Lender shall have no obligation to make Loan Advances or to disburse Loan proceeds if: (A) Borrower or any Guarantor is in default under the terms of this Agreement or any of the Related Documents or any other agreement that Borrower or any Guarantor has with Lender; (B) Borrower or any Guarantor dies, becomes incompetent or becomes insolvent, files a petition in bankruptcy or similar proceedings, or is adjudged a bankrupt; (C) there occurs a material adverse change in Borrower's financial condition, in the financial condition of any Guarantor, or in the value of any Collateral securing any Loan; or (D) any Guarantor seeks, claims or otherwise attempts to limit, modify or revoke such Guarantor's guaranty of the Loan or any other loan with Lender.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Borrower fails to make any payment when due under the Loan.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Environmental Default.** Failure of any party to comply with or perform when due any term, obligation, covenant or condition contained in any environmental agreement executed in connection with any Loan.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Insolvency.** The dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Defective Collateralization.** This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the Loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness. In the event of a death, Lender, at its option, may, but shall not be required to, permit the Guarantor's estate to assume unconditionally the obligations arising under the guaranty in a manner satisfactory to Lender, and, in doing so, cure any Event of Default.

**Change in Ownership.** Any change in ownership of twenty-five percent (25%) or more of the common stock of Borrower.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of the Loan is impaired.

**Right to Cure.** If any default, other than a default on Indebtedness, is curable and if Borrower or Grantor, as the case may be, has not been given a notice of a similar default within the preceding twelve (12) months, it may be cured if Borrower or Grantor, as the case may be, after receiving written notice from Lender demanding cure of such default: (1) cure the default within ten (10) days; or (2) if the cure requires more than ten (10) days, immediately initiate steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continue and complete all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**EFFECT OF AN EVENT OF DEFAULT.** If any Event of Default shall occur, except where otherwise provided in this Agreement or the Related Documents, all commitments and obligations of Lender under this Agreement or the Related Documents or any other agreement immediately will terminate (including any obligation to make further Loan Advances or disbursements), and, at Lender's option, all Indebtedness immediately will become due and payable, all without notice of any kind to Borrower, except that in the case of an Event of Default of the type described in the "Insolvency" subsection above, such acceleration shall be automatic and not optional. In addition, Lender shall have all the rights and remedies provided in the Related Documents or available at law, in equity, or otherwise. Except as may be prohibited by applicable law, all of Lender's rights and remedies shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Borrower or of any Grantor shall not affect Lender's right to declare a default and to exercise its rights and remedies.

**DEFAULT CLAUSE:.** If Borrower fails to pay accrued interest and/or principal on Loan Maturity Date or a Notice of Default is recorded under the Deed of Trust, which secures the Loan, then the Note Rate provided shall, without notice increase by 4% percentage points.

**NEGATIVE PLEDGE:.** As material consideration for Lender entering into this Loan, Borrower hereby grants to Lender the first right of refusal to refinance the property of Borrower at 2615 East 12th Street. In the event that Borrower determines that it wishes to refinance this subject property, Borrower shall provide Lender a commitment letter from a bona fide lender unrelated to Borrower, which states the terms and conditions upon which this property may then be refinanced. Lender shall have 25 days from its receipt of this commitment letter to provide Borrower written notice that Lender will provide financing on the same terms and conditions set forth in the bona fide's commitment lender. This first right of refusal shall not apply to the use of 2615 East 12th Street as partial collateral in any larger loan package which replaces the present Loan of $8.1 million.

**HOLD HARMLESS:.** Borrower shall defend, indemnify , and hold Bank harmless from and against any and all claims of any third party of any nature arising from this loan transaction and/or the Property taken as security herein.

**RESTRICTION ON NEW DEVELOPMENT PROJECTS OR NEW ACQUISITIONS:.** Borrower shall not participate in any new development projects and acquire additional real property investments during the term of this loan commitment without the Bank's prior written consent, which will not be unreasonably withheld.

# BUSINESS LOAN AGREEMENT
## (Continued)

**FINANCIAL REPORTING.** (a) ANNUAL REPORTING: Borrower shall provide Summit Bank with its CPA compiled FYE financial statements and to corporate tax return within 120 days of year end. (b) SEMI-ANNUAL REPORTING: Borrower shall provide Summit Bank with semi-annual company prepared financial statements within 45 days of the period end.

**DEPOSIT RELATIONSHIP.** Borrower will maintain its primary deposit relationship with Summit Bank including all operating and savings accounts related to Pacific Thomas Corporation or its affiliates. If accounts are not established with Summit Bank and maintained, then the interest rate otherwise applicable will be increased by one-half percent (0.50%).

**COMPREHENSIVE INSURANCE.** Borrower shall maintain Comprehensive public liability insurance naming Summit Bank as an additional insured with single limit coverage of not less than $2,000,000.00.

**BUSINESS INTERRUPTION INSURANCE.** Borrower shall provide Bank with a copy of Business Interruption insurance and/or loss of "rental value" insurance with respect to the properties.

**SECONDARY FINANCING.** No subordinate financing shall be placed on the properties without the prior written consent of Summit Bank.

**APPROVAL OF LEASES:** Bank to approve all leases and tenancies affecting the property, and all documentation in connection to the leases entered into by Borrower prior to closing. Prior to closing Borrower shall provide to Bank, on Banks' form, executed estoppel certificates and non-disturbance and subordinations agreements form each tenants with the exception of self-storage tenants if applicable. As of 7-16-07, Borrower does not have tenants.

**PROPERTY TAXES.** Property Taxes relating to the seven collateralized properties must remain current.

**DUE ON SALE.** Any sale, transfer, conveyance or other encumbrance of the Property without the prior written consent of Summit Bank or as expressly permitted in the Loan documents shall be a default under the loan Documents and shall entitle Lender to accelerate all sums due under the loan.

**ASSUMPTION.** The Loan may not be assumed.

**RELEASES AND RECONVEYANCES.** Bank agrees to provide one or more partial reconveyances to facilitate future parcel uses by the Borrower. These partial reconveyances shall be subject to an objective determination by the Bank that the subject Loan is adequately secured by the properties not to be released in such amounts or ratios needed to maintain or exceed the original loan-to-value and related tests. This objective determination shall be based on the performance of the properties to be left encumbered and securing the $8,100,000 Loan, the relative appraisals for such remaining properties, and any other factors which would enter into a competent loan-to-value and/or other test by which the remaining parcels encumbered by the Deed of Trust for the $8,100,000 Loan might be evaluated. Each such partial reconveyance shall be permitted only so long as, under the above objective terms, the reconveyance out of the Deed of Trust does not impair the value or functionality of the remaining parcels serving as collateral for the Loan. Borrower shall pay a reasonable Loan modification fee for each partial reconveyance allowed hereunder.

The process of arriving at the "objective determination" as used in this Section (Releases and Reconveyances) shall mean that the Borrower will identify the parcel(s) it desires to be released pursuant to this Section. The Bank shall obtain, at Borrower's sole expense, an appraisal of the remaining parcels, by an appraiser of the Bank's choice. If the appraised value of the remaining parcels is such that the Bank's security, upon release, will be no less than it was at the inception of the Loan, and provided Borrower is not in default of any other term or condition of the Promissory Note or the related documents, Borrower shall be entitled to a partial release as contemplated in this Section.

# MISCELLANEOUS PROVISIONS. The following miscellaneous provisions are a part of this Agreement:

**Amendments.** This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Borrower agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement. Lender may hire or pay someone else to help enforce this Agreement, and Borrower shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Borrower also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Consent to Loan Participation.** Borrower agrees and consents to Lender's sale or transfer, whether now or later, of one or more participation interests in the Loan to one or more purchasers, whether related or unrelated to Lender. Lender may provide, without any limitation whatsoever, to any one or more purchasers, or potential purchasers, any information or knowledge Lender may have about Borrower or about any other matter relating to the Loan, and Borrower hereby waives any rights to privacy Borrower may have with respect to such matters. Borrower additionally waives any and all notices of sale of participation interests, as well as all notices of any repurchase of such participation interests. Borrower further agrees that the purchasers of any such participation interests will be considered as the absolute owners of such interests in the Loan and will have all the rights granted under the participation agreement or agreements governing the sale of such participation interests. Borrower further waives all rights of offset or counterclaim that it may have now or later against Lender or against any purchaser of such a participation interest and unconditionally agrees that either Lender or such purchaser may enforce Borrower's obligation under the Loan irrespective of the failure or insolvency of any holder of any interest in the Loan. Borrower further agrees that the purchaser of any such participation interests may enforce its interests irrespective of any personal claims or defenses that Borrower may have against Lender.

**Governing Law.** This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of California without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of California.

**Choice of Venue.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of ALAMEDA County, State of California.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing between Lender and Borrower, or between Lender and any Grantor, shall constitute a waiver of any of Lender's rights or of any of

Borrower's or any Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Notices.** Any notice required to be given under this Agreement shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Agreement. Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Borrower agrees to keep Lender informed at all times of Borrower's current address. Unless otherwise provided or required by law, if there is more than one Borrower, any notice given by Lender to any Borrower is deemed to be notice given to all Borrowers.

**Severability.** If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Agreement. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

**Subsidiaries and Affiliates of Borrower.** To the extent the context of any provisions of this Agreement makes it appropriate, including without limitation any representation, warranty or covenant, the word "Borrower" as used in this Agreement shall include all of Borrower's subsidiaries and affiliates. Notwithstanding the foregoing however, under no circumstances shall this Agreement be construed to require Lender to make any Loan or other financial accommodation to any of Borrower's subsidiaries or affiliates.

**Successors and Assigns.** All covenants and agreements by or on behalf of Borrower contained in this Agreement or any Related Documents shall bind Borrower's successors and assigns and shall inure to the benefit of Lender and its successors and assigns. Borrower shall not, however, have the right to assign Borrower's rights under this Agreement or any interest therein, without the prior written consent of Lender.

**Survival of Representations and Warranties.** Borrower understands and agrees that in extending Loan Advances, Lender is relying on all representations, warranties, and covenants made by Borrower in this Agreement or in any certificate or other instrument delivered by Borrower to Lender under this Agreement or the Related Documents. Borrower further agrees that regardless of any investigation made by Lender, all such representations, warranties and covenants will survive the extension of Loan Advances and delivery to Lender of the Related Documents, shall be continuing in nature, shall be deemed made and redated by Borrower at the time each Loan Advance is made, and shall remain in full force and effect until such time as Borrower's indebtedness shall be paid in full, or until this Agreement shall be terminated in the manner provided above, whichever is the last to occur.

**Time is of the Essence.** Time is of the essence in the performance of this Agreement.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Agreement. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code. Accounting words and terms not otherwise defined in this Agreement shall have the meanings assigned to them in accordance with generally accepted accounting principles as in effect on the date of this Agreement:

**Advance.** The word "Advance" means a disbursement of Loan funds made, or to be made, to Borrower or on Borrower's behalf on a line of credit or multiple advance basis under the terms and conditions of this Agreement.

**Agreement.** The word "Agreement" means this Business Loan Agreement, as this Business Loan Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Business Loan Agreement from time to time.

**Borrower.** The word "Borrower" means Pacific Thomas Corporation and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Collateral.** The word "Collateral" means all property and assets granted as collateral security for a Loan, whether real or personal property, whether granted directly or indirectly, whether granted now or in the future, and whether granted in the form of a security interest, mortgage, collateral mortgage, deed of trust, assignment, pledge, crop pledge, chattel mortgage, collateral chattel mortgage, chattel trust, factor's lien, equipment trust, conditional sale, trust receipt, lien, charge, lien or title retention contract, lease or consignment intended as a security device, or any other security or lien interest whatsoever, whether created by law, contract, or otherwise.

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., Chapters 6.5 through 7.7 of Division 20 of the California Health and Safety Code, Section 25100, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Agreement in the default section of this Agreement.

**GAAP.** The word "GAAP" means generally accepted accounting principles.

**Grantor.** The word "Grantor" means each and all of the persons or entities granting a Security Interest in any Collateral for the Loan, including without limitation all Borrowers granting such a Security Interest.

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Loan.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Indebtedness.** The word "Indebtedness" means the indebtedness evidenced by the Note or Related Documents, including all principal and

# ◯ BUSINESS LOAN AGREEMENT ◯
## (Continued)

**Loan No: 1018144**

Page 7

Interest together with all other indebtedness and costs and expenses for which Borrower is responsible under this Agreement or under any of the Related Documents.

**Lender.** The word "Lender" means Summit Bank, its successors and assigns.

**Loan.** The word "Loan" means any and all loans and financial accommodations from Lender to Borrower whether now or hereafter existing, and however evidenced, including without limitation those loans and financial accommodations described herein or described on any exhibit or schedule attached to this Agreement from time to time.

**Note.** The word "Note" means the Note executed by Pacific Thomas Corporation in the principal amount of \$8,100,000.00 dated July 27, 2007, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the note or credit agreement.

**Permitted Liens.** The words "Permitted Liens" mean (1) liens and security interests securing indebtedness owed by Borrower to Lender; (2) liens for taxes, assessments, or similar charges either not yet due or being contested in good faith; (3) liens of materialmen, mechanics, warehousemen, or carriers, or other like liens arising in the ordinary course of business and securing obligations which are not yet delinquent; (4) purchase money liens or purchase money security interests upon or in any property acquired or held by Borrower in the ordinary course of business to secure indebtedness outstanding on the date of this Agreement or permitted to be incurred under the paragraph of this Agreement titled "Indebtedness and Liens"; (5) liens and security interests which, as of the date of this Agreement, have been disclosed to and approved by the Lender in writing; and (6) those liens and security interests which in the aggregate constitute an immaterial and insignificant monetary amount with respect to the net value of Borrower's assets.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Loan.

**Security Agreement.** The words "Security Agreement" mean and include without limitation any agreements, promises, covenants, arrangements, understandings or other agreements, whether created by law, contract, or otherwise, evidencing, governing, representing, or creating a Security Interest.

**Security Interest.** The words "Security Interest" mean, without limitation, any and all types of collateral security, present and future, whether in the form of a lien, charge, encumbrance, mortgage, deed of trust, security deed, assignment, pledge, crop pledge, chattel mortgage, collateral chattel mortgage, chattel trust, factor's lien, equipment trust, conditional sale, trust receipt, lien or title retention contract, lease or consignment intended as a security device, or any other security or lien interest whatsoever whether created by law, contract, or otherwise.

**BORROWER ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS BUSINESS LOAN AGREEMENT AND BORROWER AGREES TO ITS TERMS. THIS BUSINESS LOAN AGREEMENT IS DATED JULY 27, 2007.**

**BORROWER:**

PACIFIC THOMAS CORPORATION



By: _____
James C.T. Wiebey, President of Pacific Thomas Corporation

By: _____
Jill R. Worsley, Vice President of Pacific Thomas Corporation

**LENDER:**

SUMMIT BANK

By: _____
Authorized Signer

LASER PRO Lending, Ver. 5.37.00.004 Copr. Harland Financial Solutions, Inc. 1997, 2007. All Rights Reserved. - CA F:\CFI\APPS\CFI\LPL\C40.FC TR-4452 PR-2



the period of Borrower's ownership of the Collateral, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from any of the Collateral. (2) Borrower has no knowledge of, or reason to believe that there has been (a) any breach or violation of any Environmental Laws; (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Collateral by any prior owners or occupants of any of the Collateral; or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters. (3) Neither Borrower nor any tenant, contractor, agent or other authorized user of any of the Collateral shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from any of the Collateral; and any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations, and ordinances, including without limitation all Environmental Laws. Borrower authorizes Lender and its agents to enter upon the Collateral to make such inspections and tests as Lender may deem appropriate to determine compliance of the Collateral with this section of the Agreement. Any inspections or tests made by Lender shall be at Borrower's expense and for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Borrower or to any other person. The representations and warranties contained herein are based on Borrower's due diligence in investigating the Collateral for hazardous waste and Hazardous Substances. Borrower hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Borrower becomes liable for cleanup or other costs under any such laws, and (2) agrees to indemnify and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Agreement or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release of a hazardous waste or substance on the Collateral. The provisions of this section of the Agreement, including the obligation to indemnify, shall survive the payment of the Indebtedness and the termination, expiration or satisfaction of this Agreement and shall not be affected by Lender's acquisition of any interest in any of the Collateral, whether by foreclosure or otherwise.

**Litigation and Claims.** No litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Borrower is pending or threatened, and no other event has occurred which may materially adversely affect Borrower's financial condition or properties, other than litigation, claims, or other events, if any, that have been disclosed to and acknowledged by Lender in writing.

**Taxes.** To the best of Borrower's knowledge, all of Borrower's tax returns and reports that are or were required to be filed, have been filed, and all taxes, assessments and other governmental charges have been paid in full, except those presently being or to be contested by Borrower in good faith in the ordinary course of business and for which adequate reserves have been provided.

**Lien Priority.** Unless otherwise previously disclosed to Lender in writing, Borrower has not entered into or granted any Security Agreements, or permitted the filing or attachment of any Security Interests on or affecting any of the Collateral directly or indirectly securing repayment of Borrower's Loan and Note, that would be prior or that may in any way be superior to Lender's Security Interests and rights in and to such Collateral.

**Binding Effect.** This Agreement, the Note, all Security Agreements (if any), and all Related Documents are binding upon the signers thereof, as well as upon their successors, representatives and assigns, and are legally enforceable in accordance with their respective terms.

**AFFIRMATIVE COVENANTS.** Borrower covenants and agrees with Lender that, so long as this Agreement remains in effect, Borrower will:

**Notices of Claims and Litigation.** Promptly inform Lender in writing of (1) all material adverse changes in Borrower's financial condition, and (2) all existing and all threatened litigation, claims, investigations, administrative proceedings or similar actions affecting Borrower or any Guarantor which could materially affect the financial condition of Borrower or the financial condition of any Guarantor.

**Financial Records.** Maintain its books and records in accordance with GAAP, applied on a consistent basis, and permit Lender to examine and audit Borrower's books and records at all reasonable times.

**Financial Statements.** Furnish Lender with such financial statements and other related information at such frequencies and in such detail as Lender may reasonably request.

**Additional Information.** Furnish such additional information and statements, as Lender may request from time to time.

**Insurance.** Maintain fire and other risk insurance, public liability insurance, and such other insurance as Lender may require with respect to Borrower's properties and operations, in form, amounts, coverages and with insurance companies acceptable to Lender. Borrower, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least fifteen (15) days prior written notice to Lender. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Borrower or any other person. In connection with all policies covering assets in which Lender holds or is offered a security interest for the Loans, Borrower will provide Lender with such lender's loss payable or other endorsements as Lender may require.

**Insurance Reports.** Furnish to Lender, upon request of Lender, reports on each existing insurance policy showing such information as Lender may reasonably request, including without limitation the following: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the properties insured; (5) the then current property values on the basis of which insurance has been obtained, and the manner of determining those values; and (6) the expiration date of the policy. In addition, upon request of Lender (however not more often than annually), Borrower will have an independent appraiser satisfactory to Lender determine, as applicable, the actual cash value or replacement cost of any Collateral. The cost of such appraisal shall be paid by Borrower.

**Guaranties.** Prior to disbursement of any Loan proceeds, furnish executed guaranties of the Loans in favor of Lender, executed by the guarantor named below, on Lender's forms, and in the amount and under the conditions set forth in those guaranties.

| Name of Guarantor | Amount |
| --- | --- |
| Randall C. M. Whitney, Jill V. Worsley, and Buhla Ruth Darrow Revocable Living Trust dated July 26, 1990, Randall C.M. Whitney, Successor Trustee of Buhla Ruth Darrow Revocable Living Trust dated July 26, 1990, Jointly and Severally | $2,300,000.00 |

**Other Agreements.** Comply with all terms and conditions of all other agreements, whether now or hereafter existing, between Borrower and any other party and notify Lender immediately in writing of any default in connection with any other such agreements.

**Loan Proceeds.** Use all Loan proceeds solely for Borrower's business operations, unless specifically consented to the contrary by Lender in writing.

**EXHIBIT C**

`8-22-07`

**RECORDATION REQUESTED BY:**
Summit Bank
OAKLAND OFFICE
2869 BROADWAY
OAKLAND, CA 94611

**WHEN RECORDED MAIL TO:**
Summit Bank
OAKLAND OFFICE
2869 BROADWAY
OAKLAND, CA 94611

**SEND TAX NOTICES TO:**
Summit Bank
OAKLAND OFFICE
2869 BROADWAY
OAKLAND, CA 94611





200 287365    &c cf  2007 02 17 PH
OFFICIAL  RECORDS  CONTRA COSTA COUNTY
PATRICK J. O'CONNELL
RECORDER  FEE    54.00

**FOR RECORDER'S USE ONLY**

5810304AB-61

## DEED OF TRUST

THIS DEED OF TRUST is dated July 27, 2007. among Pacific Thomas Corporation , whose address is 1818 Mount Diablo Blvd, Ste D , Walnut Creek, CA 94596 and Nova Group, a Nevada Corporation, whose address is 121 Juanita Drive, Incline Village, NV 69452 ("Trustor"); Summit Bank, whose address is OAKLAND OFFICE, 2869 BROADWAY, OAKLAND, CA 94611 (referred to below sometimes as "Lender" and sometimes as "Beneficiary"); and Chicago Title Company, whose address is 39420 Liberty Street, Ste 155, Fremont, CA 94538 (referred to below as "Trustee").

CONVEYANCE AND GRANT. For valuable consideration, Trustor irrevocably grants, transfers and assigns to Trustee in trust, with power of sale, for the benefit of Lender as Beneficiary, all of Trustor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, (the "Real Property") located in Alameda County, State of California:

See Exhibit "A", which is attached to this Deed of Trust and made a part of this Deed of Trust as if fully set forth herein.

The Real Property or its address is commonly known as  2901 East 12th Street, West Side of 12th Street of 29 Avenue, 2783, E. 12th Street, 1111 29th Ave, 2801, East 12th Street, 1113-1115 29th Ave and South Side of 23rd Avenue East of Rall Line, Oakland, CA  94601. The Assessor's Parcel Number for the Real Property is 019-0102-004,025-0693-003-03,025-0693-008,025-0697-002,025-0697-003-06,025-0697-007-06,025-06 97-007-07 and 025-0701-011.

Trustor presently assigns to Lender (also known as Beneficiary in this Deed of Trust) all of Trustor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property. This is an absolute assignment of Rents made in connection with an obligation secured by real property pursuant to California Civil Code Section 2938. In addition, Trustor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

THIS DEED OF TRUST, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (A) PAYMENT OF THE INDEBTEDNESS AND (B) PERFORMANCE OF ANY AND ALL OBLIGATIONS UNDER THIS DEED OF TRUST. THIS DEED OF TRUST IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:

TRUSTOR'S REPRESENTATIONS AND WARRANTIES. Trustor warrants that: (a) this Deed of Trust is executed at Borrower's request and not at the request of Lender; (b) Trustor has the full power, right, and authority to enter into this Deed of Trust and to hypothecate the Property; (c) the provisions of this Deed of Trust do not conflict with, or result in a default under any agreement or other instrument binding upon Trustor and do not result in a violation of any law, regulation, court decree or order applicable to Trustor; (d) Trustor has established adequate means of obtaining from Borrower on a continuing basis information about Borrower's financial condition; and (e) Lender has made no representation to Trustor about Borrower (including without limitation the creditworthiness of Borrower).

TRUSTOR'S WAIVERS. Except as prohibited by applicable law, Trustor waives any right to require Lender to (a) make any presentment, protest, demand, or notice of any kind, including notice of change of any terms of repayment of the indebtedness, default by Borrower or any other guarantor or surety, any action or nonaction taken by Borrower, Lender, or any other guarantor or surety of Borrower, or the creation of new or additional indebtedness; (b) proceed against any person, including Borrower, before proceeding against Trustor; (c) proceed against any collateral for the indebtedness, including Borrower's collateral, before proceeding against Trustor; (d) apply any payments or proceeds received against the indebtedness in any order; (e) give notice of the terms, time, and place of any sale of any collateral pursuant to the Uniform Commercial Code or any other law governing such sale; (f) disclose any information about the indebtedness, Borrower, any collateral, or any other guarantor or surety, or about any action or nonaction of Lender; or (g) pursue any remedy or course of action in Lender's power whatsoever.

58103698

Trustor also waives any and all rights or defenses arising by reason of (h) any disability or other defense of Borrower, any other guarantor or surety or any other person; (i) the cessation from any cause whatsoever, other than payment in full, of the Indebtedness; (j) the application of proceeds of the Indebtedness by Borrower for purposes other than the purposes understood and intended by Trustor and Lender; (k) any act of omission or commission by Lender which directly or indirectly results in or contributes to the discharge of Borrower or any other guarantor or surety, or the Indebtedness, or the loss or release of any collateral by operation of law or otherwise; (l) any statute of limitations in any action under this Deed of Trust or on the Indebtedness; or (m) any modification or change in terms of the Indebtedness, whatsoever, including without limitation, the renewal, extension, acceleration, or other change in the time payment of the Indebtedness is due and any change in the interest rate.

Trustor waives all rights and defenses arising out of an election of remedies by Lender, even though that election of remedies, such as non-judicial foreclosure with respect to security for a guaranteed obligation, has destroyed Trustor's rights of subrogation and reimbursement against Borrower by the operation of Section 580d of the California Code of Civil Procedure, or otherwise.

Trustor waives all rights and defenses that Trustor may have because Borrower's obligation is secured by real property. This means among other things: (1) Lender may collect from Trustor without first foreclosing on any real or personal property collateral pledged by Borrower. (2) If Lender forecloses on any real property collateral pledged by Borrower: (A) The amount of Borrower's obligation may be reduced only by the price for which the collateral is sold at the foreclosure sale, even if the collateral is worth more than the sale price. (B) Lender may collect from Trustor even if Lender, by foreclosing on the real property collateral, has destroyed any right Trustor may have to collect from Borrower. This is an unconditional and irrevocable waiver of any rights and defenses Trustor may have because Borrower's obligation is secured by real property. These rights and defenses include, but are not limited to, any rights and defenses based upon Section 580a, 580b, 580d, or 726 of the Code of Civil Procedure.

Trustor understands and agrees that the foregoing waivers are unconditional and irrevocable waivers of substantive rights and defenses to which Trustor might otherwise be entitled under state and federal law. The rights and defenses waived include, without limitation, those provided by California laws of suretyship and guaranty, anti-deficiency laws, and the Uniform Commercial Code. Trustor acknowledges that Trustor has provided these waivers of rights and defenses with the intention that they be fully relied upon by Lender. Trustor further understands and agrees that this Deed of Trust is a separate and independent contract between Trustor and Lender, given for full and ample consideration, and is enforceable on its own terms. Until all Indebtedness is paid in full, Trustor waives any right to enforce any remedy Trustor may have against Borrower's or any other guarantor, surety, or other person, and further, Trustor waives any right to participate in any collateral for the Indebtedness now or hereafter held by Lender.

**PAYMENT AND PERFORMANCE.** Except as otherwise provided in this Deed of Trust, Borrower and Trustor shall pay to Lender all Indebtedness secured by this Deed of Trust as it becomes due, and Borrower and Trustor shall strictly perform all their respective obligations under the Note, this Deed of Trust, and the Related Documents.

**POSSESSION AND MAINTENANCE OF THE PROPERTY.** Borrower and Trustor agree that Borrower's and Trustor's possession and use of the Property shall be governed by the following provisions:

**Possession and Use.** Until the occurrence of an Event of Default, Trustor may (1) remain in possession and control of the Property; (2) use, operate or manage the Property; and (3) collect the Rents from the Property.

**Duty to Maintain.** Trustor shall maintain the Property in tenantable condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

**Compliance With Environmental Laws.** Trustor represents and warrants to Lender that: (1) During the period of Trustor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Trustor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Trustor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Trustor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Trustor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Deed of Trust. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Trustor or to any other person. The representations and warranties contained herein are based on Trustor's due diligence in investigating the Property for Hazardous Substances. Trustor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Trustor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Deed of Trust or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Trustor's ownership or interest in the Property, whether or not the same was or should have been known to Trustor. The provisions of this section of the Deed of Trust, including the obligation to indemnify, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Deed of Trust and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.** Trustor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Trustor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.** Trustor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any Improvements, Lender may require Trustor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

Lender's Right to Enter. Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Trustor's compliance with the terms and conditions of this Deed of Trust.

Compliance with Governmental Requirements. Trustor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property, including without limitation, the Americans With Disabilities Act. Trustor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Trustor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Trustor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

Duty to Protect. Trustor agrees neither to abandon or leave unattended the Property. Trustor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

DUE ON SALE - CONSENT BY LENDER. Lender may, at Lender's option, declare immediately due and payable all sums secured by this Deed of Trust upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. If any Trustor is a corporation, partnership or limited liability company, transfer also includes any change in ownership of more than twenty-five percent (25%) of the voting stock, partnership interests or limited liability company interests, as the case may be, of such Trustor. However, this option shall not be exercised by Lender if such exercise is prohibited by applicable law.

TAXES AND LIENS. The following provisions relating to the taxes and liens on the Property are part of this Deed of Trust:

Payment. Trustor shall pay when due (and in all events at least ten (10) days prior to delinquency) all taxes, special taxes, assessments, charges (including water and sewer), fines and impositions levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Trustor shall maintain the Property free of all liens having priority over or equal to the interest of Lender under this Deed of Trust, except for the lien of taxes and assessments not due and except as otherwise provided in this Deed of Trust.

Right to Contest. Trustor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Trustor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Trustor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Trustor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Trustor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

Evidence of Payment. Trustor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

Notice of Construction. Trustor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials and the cost exceeds $5,000. Trustor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Trustor can and will pay the cost of such improvements.

PROPERTY DAMAGE INSURANCE. The following provisions relating to insuring the Property are a part of this Deed of Trust.

Maintenance of Insurance. Trustor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Trustor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Lender may request with Trustee and Lender being named as additional insureds in such liability insurance policies. Additionally, Trustor shall maintain such other insurance, including but not limited to hazard, business interruption, and boiler insurance, as Lender may reasonably require. Notwithstanding the foregoing, in no event shall Trustor be required to provide hazard insurance in excess of the replacement value of the improvements on the Real Property. Policies shall be written in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. Trustor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least fifteen (15) days prior written notice to Lender. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Trustor or any other person. Should the Real Property be located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area, Trustor agrees to obtain and maintain Federal Flood Insurance, if available, within 45 days after notice is given by Lender that the Property is located in a special flood hazard area, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

Application of Proceeds. Trustor shall promptly notify Lender of any loss or damage to the Property if the estimated cost of repair or replacement exceeds $5,000. Lender may make proof of loss if Trustor fails to do so within fifteen (15) days of the casualty. If in Lender's sole judgment Lender's security interest in the Property has been impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If Lender elects to apply the proceeds to restoration and repair, Trustor shall repair

  
## DEED OF TRUST
### (Continued)

or replace the damaged or destroyed improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Trustor from the proceeds for the reasonable cost of repair or restoration if Trustor is not in default under this Deed of Trust. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Deed of Trust, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Trustor as Trustor's interests may appear.

Trustor's Report on Insurance. Upon request of Lender, however not more than once a year, Trustor shall furnish to Lender a report on each existing policy of insurance showing: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured, the then current replacement value of such property, and the manner of determining that value; and (5) the expiration date of the policy. Trustor shall, upon request of Lender, have an independent appraiser satisfactory to Lender determine the cash value replacement cost of the Property.

LENDER'S EXPENDITURES. If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Trustor fails to comply with any provision of this Deed of Trust or any Related Documents, including but not limited to Trustor's failure to discharge or pay when due any amounts Trustor is required to discharge or pay under this Deed of Trust or any Related Documents, Lender on Trustor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Trustor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Deed of Trust also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

WARRANTY; DEFENSE OF TITLE. The following provisions relating to ownership of the Property are a part of this Deed of Trust:

Title. Trustor warrants that: (a) Trustor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Deed of Trust, and (b) Trustor has the full right, power, and authority to execute and deliver this Deed of Trust to Lender.

Defense of Title. Subject to the exception in the paragraph above, Trustor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Trustor's title or the interest of Trustee or Lender under this Deed of Trust, Trustor shall defend the action at Trustor's expense. Trustor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Trustor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

Compliance With Laws. Trustor warrants that the Property and Trustor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

Survival of Representations and Warranties. All representations, warranties, and agreements made by Trustor in this Deed of Trust shall survive the execution and delivery of this Deed of Trust, shall be continuing in nature, and shall remain in full force and effect until such time as Borrower's Indebtedness shall be paid in full.

CONDEMNATION. The following provisions relating to eminent domain and inverse condemnation proceedings are a part of this Deed of Trust:

Proceedings. If any eminent domain or inverse condemnation proceeding is commenced affecting the Property, Trustor shall promptly notify Lender in writing, and Trustor shall promptly take such steps as may be necessary to pursue or defend the action and obtain the award. Trustor may be the nominal party in any such proceeding, but Lender shall be entitled, at its election, to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Trustor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

Application of Net Proceeds. If any award is made or settlement entered into in any condemnation proceedings affecting all or any part of the Property or by any proceeding or purchase in lieu of condemnation, Lender may at its election, and to the extent permitted by law, require that all or any portion of the award or settlement be applied to the Indebtedness and to the repayment of all reasonable costs, expenses, and attorneys' fees incurred by Trustee or Lender in connection with the condemnation proceedings.

IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES. The following provisions relating to governmental taxes, fees and charges are a part of this Deed of Trust:

Current Taxes, Fees and Charges. Upon request by Lender, Trustor shall execute such documents in addition to this Deed of Trust and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Trustor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Deed of Trust, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Deed of Trust.

Taxes. The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Deed of Trust or upon all or any part of the Indebtedness secured by this Deed of Trust; (2) a specific tax on Borrower which Borrower is authorized or required to deduct from payments on the Indebtedness secured by this type of Deed of Trust; (3) a tax on this type of Deed of Trust chargeable against the Lender or the holder of the Note; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Borrower.

Subsequent Taxes. If any tax to which this section applies is enacted subsequent to the date of this Deed of Trust, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as

# DEED OF TRUST
## (Continued)

provided below unless Trustor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Deed of Trust as a security agreement are a part of this Deed of Trust:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Trustor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property. Trustor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Trustor shall not remove, sever or detach the Personal Property from the Property. Upon default, Trustor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Trustor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Trustor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Deed of Trust may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Deed of Trust.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Deed of Trust:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Trustor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Borrower's and Trustor's obligations under the Note, this Deed of Trust, and the Related Documents, and (2) the liens and security interests created by this Deed of Trust as first and prior liens on the Property, whether now owned or hereafter acquired by Trustor. Unless prohibited by law or Lender agrees to the contrary in writing, Trustor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-in-Fact.** If Trustor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Trustor and at Trustor's expense. For such purposes, Trustor hereby irrevocably appoints Lender as Trustor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Borrower and Trustor pay all the Indebtedness when due, and Trustor otherwise performs all the obligations imposed upon Trustor under this Deed of Trust, Lender shall execute and deliver to Trustor a request for full reconveyance and shall execute and deliver to Trustor suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Lender may charge Trustor a reasonable reconveyance fee at the time of reconveyance.

**EVENTS OF DEFAULT.** Each of the following, at Lender's option, shall constitute an Event of Default under this Deed of Trust:

**Payment Default.** Borrower fails to make any payment when due under the Indebtedness.

**Other Defaults.** Borrower or Trustor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Deed of Trust or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower or Trustor.

**Compliance Default.** Failure to comply with any other term, obligation, covenant or condition contained in this Deed of Trust, the Note or in any of the Related Documents.

**Default on Other Payments.** Failure of Trustor within the time required by this Deed of Trust to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**Environmental Default.** Failure of any party to comply with or perform when due any term, obligation, covenant or condition contained in any environmental agreement executed in connection with the Property.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or Trustor or on Borrower's or Trustor's behalf under this Deed of Trust or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Deed of Trust or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Insolvency.** The dissolution or termination of Borrower's or Trustor's existence as a going business, the insolvency of Borrower or Trustor, the appointment of a receiver for any part of Borrower's or Trustor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower or Trustor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or Trustor or by any governmental agency against any property securing the Indebtedness. This includes a garnishment of any of Borrower's or Trustor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower or Trustor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower or Trustor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

# DEED OF TRUST
## (Continued)

Breach of Other Agreement. Any breach by Borrower or Trustor under the terms of any other agreement between Borrower or Trustor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Borrower or Trustor to Lender, whether existing now or later.

Events Affecting Guarantor. Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness. In the event of a death, Lender, at its option, may, but shall not be required to, permit the Guarantor's estate to assume unconditionally the obligations arising under the guaranty in a manner satisfactory to Lender, and, in doing so, cure any Event of Default.

Adverse Change. A material adverse change occurs in Borrower's or Trustor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Deed of Trust, at any time thereafter, Trustee or Lender may exercise any one or more of the following rights and remedies:

Election of Remedies. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Trustor under the Deed of Trust, after Trustor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

Foreclosure by Sale. Upon an Event of Default under this Deed of Trust, Beneficiary may declare the entire Indebtedness secured by this Deed of Trust immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written notice of default and of election to cause to be sold the Property, which notice Trustee shall cause to be filed for record. Beneficiary also shall deposit with Trustee this Deed of Trust, the Note, other documents requested by Trustee, and all documents evidencing expenditures secured hereby. After the lapse of such time as may then be required by law following the recordation of the notice of default, and notice of sale having been given as then required by law, Trustee, without demand on Trustor, shall sell the Property at the time and place fixed by it in the notice of sale, either as a whole or in separate parcels, and in such order as it may determine, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of the Property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement in accordance with applicable law. Trustee shall deliver to such purchaser its deed conveying the Property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any persons, including Trustor, Trustee, or Beneficiary may purchase at such sale. After deducting all costs, fees and expenses of Trustee and of the trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of all sums expended under the terms hereof, not then repaid, with accrued interest at the amount allowed by law in effect at the date hereof; all other sums then secured hereby; and the remainder, if any, to the person or persons legally entitled thereto.

Judicial Foreclosure. With respect to all or any part of the Real Property, Lender shall have the right to foreclose by judicial foreclosure in accordance with and to the full extent provided by California law.

UCC Remedies. With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code, including without limitation the right to recover any deficiency in the manner and to the full extent provided by California law.

Collect Rents. Lender shall have the right, without notice to Borrower or Trustor to take possession of and manage the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender. If the Rents are collected by Lender, then Trustor irrevocably designates Lender as Trustor's attorney-in-fact to endorse instruments received in payment thereof in the name of Trustor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

Appoint Receiver. Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

Tenancy at Sufferance. If Trustor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Trustor, Trustor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a reasonable rental for the use of the Property, or (2) vacate the Property immediately upon the demand of Lender.

Other Remedies. Trustee or Lender shall have any other right or remedy provided in this Deed of Trust or the Note or by law.

Notice of Sale. Lender shall give Trustor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition. Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

Sale of the Property. To the extent permitted by applicable law, Borrower and Trustor hereby waives any and all rights to have the Property marshalled. In exercising its rights and remedies, the Trustee or Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

Attorneys' Fees; Expenses. If Lender institutes any suit or action to enforce any of the terms of this Deed of Trust, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees, title insurance, and fees for the Trustee, to the extent permitted by applicable law. Trustor also will pay any court costs, in addition to all other sums provided by law.

Rights of Trustee. Trustee shall have all of the rights and duties of Lender as set forth in this section.

POWERS AND OBLIGATIONS OF TRUSTEE. The following provisions relating to the powers and obligations of Trustee are part of this Deed of Trust:

Powers of Trustee. In addition to all powers of Trustee arising as a matter of law, Trustee shall have the power to take the following actions with respect to the Property upon the written request of Lender and Trustor: (a) join in preparing and filing a map or plat of the Real Property, including the dedication of streets or other rights to the public; (b) join in granting any easement or creating any restriction on the Real Property; and (c) join in any subordination or other agreement affecting this Deed of Trust or the interest of Lender under this Deed of Trust.

Obligations to Notify. Trustee shall not be obligated to notify any other party of a pending sale under any other trust deed or lien, or of any action or proceeding in which Trustor, Lender, or Trustee shall be a party, unless the action or proceeding is brought by Trustee.

Trustee. Trustee shall meet all qualifications required for Trustee under applicable law. In addition to the rights and remedies set forth above, with respect to all or any part of the Property, the Trustee shall have the right to foreclose by notice and sale, and Lender shall have the right to foreclose by judicial foreclosure, in either case in accordance with and to the full extent provided by applicable law.

Successor Trustee. Lender, at Lender's option, may from time to time appoint a successor Trustee to any Trustee appointed under this Deed of Trust by an instrument executed and acknowledged by Lender and recorded in the office of the recorder of Alameda County, State of California. The instrument shall contain, in addition to all other matters required by state law, the names of the original Lender, Trustee, and Trustor, the book and page where this Deed of Trust is recorded, and the name and address of the successor trustee, and the instrument shall be executed and acknowledged by Lender or its successors in interest. The successor trustee, without conveyance of the Property, shall succeed to all the title, power, and duties conferred upon the Trustee in this Deed of Trust and by applicable law. This procedure for substitution of Trustee shall govern to the exclusion of all other provisions for substitution.

Acceptance by Trustee. Trustee accepts this Trust when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law.

NOTICES. Any notice required to be given under this Deed of Trust shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Deed of Trust. Trustor requests that copies of any notices of default and sale be directed to Trustor's address shown near the beginning of this Deed of Trust. All copies of notices of foreclosure from the holder of any lien which has priority over this Deed of Trust shall be sent to Lender's address, as shown near the beginning of this Deed of Trust. Any party may change its address for notices under this Deed of Trust by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Trustor agrees to keep Lender informed at all times of Trustor's current address. Unless otherwise provided or required by law, if there is more than one Trustor, any notice given by Lender to any Trustor is deemed to be notice given to all Trustors.

STATEMENT OF OBLIGATION FEE. Lender may collect a fee, not to exceed the maximum amount permitted by law, for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

MISCELLANEOUS PROVISIONS. The following miscellaneous provisions are a part of this Deed of Trust:

Amendments. This Deed of Trust, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Deed of Trust. No alteration of or amendment to this Deed of Trust shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

Annual Reports. If the Property is used for purposes other than Trustor's residence, Trustor shall furnish to Lender, upon request, a certified statement of net operating income received from the Property during Trustor's previous fiscal year in such form and detail as Lender shall require. "Net operating income" shall mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property.

Caption Headings. Caption headings in this Deed of Trust are for convenience purposes only and are not to be used to interpret or define the provisions of this Deed of Trust.

Merger. There shall be no merger of the interest or estate created by this Deed of Trust with any other interest or estate in the

Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Governing Law.** This Deed of Trust will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of California without regard to its conflicts of law provisions. This Deed of Trust has been accepted by Lender in the State of California.

**Choice of Venue.** If there is a lawsuit, Trustor agrees upon Lender's request to submit to the jurisdiction of the courts of ALAMEDA County, State of California.

**Joint and Several Liability.** All obligations of Borrower and Trustor under this Deed of Trust shall be joint and several, and all references to Trustor shall mean each and every Trustor, and all references to Borrower shall mean each and every Borrower. This means that each Borrower and Trustor signing below is responsible for all obligations in this Deed of Trust. Where any one or more of the parties is a corporation, partnership, limited liability company or similar entity, it is not necessary for Lender to inquire into the powers of any of the officers, directors, partners, members, or other agents acting or purporting to act on the entity's behalf, and any obligations made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Deed of Trust.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Deed of Trust unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Deed of Trust shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Deed of Trust. No prior waiver by Lender, nor any course of dealing between Lender and Trustor, shall constitute a waiver of any of Lender's rights or of any of Trustor's obligations as to any future transactions. Whenever the consent of Lender is required under this Deed of Trust, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Severability.** If a court of competent jurisdiction finds any provision of this Deed of Trust to be illegal, invalid, or unenforceable as to any person or circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other person or circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Deed of Trust. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Deed of Trust shall not affect the legality, validity or enforceability of any other provision of this Deed of Trust.

**Successors and Assigns.** Subject to any limitations stated in this Deed of Trust on transfer of Trustor's interest, this Deed of Trust shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Trustor, Lender, without notice to Trustor, may deal with Trustor's successors with reference to this Deed of Trust and the Indebtedness by way of forbearance or extension without releasing Trustor from the obligations of this Deed of Trust or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Deed of Trust.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Deed of Trust. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Deed of Trust shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Beneficiary.** The word "Beneficiary" means Summit Bank, and its successors and assigns.

**Borrower.** The word "Borrower" means Pacific Thomas Corporation and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Deed of Trust.** The words "Deed of Trust" mean this Deed of Trust among Trustor, Lender, and Trustee, and includes without limitation all assignment and security interest provisions relating to the Personal Property and Rents.

**Default.** The word "Default" means the Default set forth in this Deed of Trust in the section titled "Default".

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., Chapters 6.5 through 7.7 of Division 20 of the California Health and Safety Code, Section 25100, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Deed of Trust in the events of default section of this Deed of Trust.

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Indebtedness.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

Loan No: 1018144

# DEED OF TRUST
## (Continued)

Page 9

Indebtedness. The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Trustor's obligations or expenses incurred by Trustee or Lender to enforce Trustor's obligations under this Deed of Trust, together with interest on such amounts as provided in this Deed of Trust.

Lender. The word "Lender" means Summit Bank, its successors and assigns.

Note. The word "Note" means the promissory note dated July 22, 2007, in the original principal amount of $6,100,000.00 from Borrower to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement.

Personal Property. The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Trustor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

Property. The word "Property" means collectively the Real Property and the Personal Property.

Real Property. The words "Real Property" mean the real property, interests and rights, as further described in this Deed of Trust.

Related Documents. The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

Rents. The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property together with the cash proceeds of the Rents.

Trustee. The word "Trustee" means Chicago Title Company, whose address is 39420 Liberty Street, Ste 150, Fremont, CA 94538 and any substitute or successor trustee.

Trustor. The word "Trustor" means Pacific Thomas Corporation ; and Nove Group, a Nevada Corporation.

EACH TRUSTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS DEED OF TRUST, AND EACH TRUSTOR AGREES TO ITS TERMS.

TRUSTOR:

PACIFIC THOMAS CORPORATION

By: _____
Randall D. W. Whitney, President of Pacific Thomas Corporation

By: _____
Jill Worsley, Vice President of Pacific Thomas Corporation

NOVA-GROUP, A NEVADA CORPORATION

By: _____
Randall D. W. Whitney, President of Nova Group, a Nevada Corporation

By: _____
Jill Worsley, Vice President of Nova Group, a Nevada Corporation

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of California

County of Riverside

On July 19, 2007 before me, Guadalupe B. Gloussard, Notary Public,

personally appeared Richard Douglas Worsley —

Guadalupe B. Ploussard
1743292
Riverside
May 3.2011
925-288-8065

GUADALUPE B. PLOUSSARD
Commission # 1743292
Notary Public - California
Riverside County
My Comm. Expires May 3, 2011

Place Notary Seal Above

☐ personally known to me

☒ (or proved to me on the basis of satisfactory evidence)

to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature Guadalupe B. Ploussard
Signature of Notary Public

— OPTIONAL —

Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.

**Description of Attached Document**

Title or Type of Document: Deed of Trust

Document Date: July 19, 2007          Number of Pages: 1

Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

| Signer's Name: _____ | Signer's Name: _____ |
|---|---|
| ☐ Individual | ☐ Individual |
| ☐ Corporate Officer — Title(s): ___ | ☐ Corporate Officer — Title(s): ___ |
| ☐ Partner — ☐ Limited ☐ General | ☐ Partner — ☐ Limited ☐ General |
| ☐ Attorney in Fact | ☐ Attorney in Fact |
| ☐ Trustee | ☐ Trustee |
| ☐ Guardian or Conservator | ☐ Guardian or Conservator |
| ☐ Other: _____ | ☐ Other: _____ |
| | |
| Signer is Representing: ___ | Signer is Representing: ___ |

Top of thumb here

© 2006 National Notary Association • 9350 De Soto Ave., P.O. Box 2402 • Chatsworth, CA 91313-2402    Item No. 5907 v609    Reorder: Call Toll-Free 1-800-876-6827

**DEED OF TRUST**
**(Continued)**

## CERTIFICATE OF ACKNOWLEDGMENT

STATE OF _California_ )
) SS
COUNTY OF _Alameda_ )

On _July 30_ , 20 _07_ before me, _KATHY PHAN, NOTARY PUBLIC_ personally appeared Randall C. M. Whitney; Jill V. Worsley, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____

```
                    KATHY PHAN
              Commission # 1616913
            Notary Public - California
                 Alameda County
           My Comm. Expires Oct 29, 2009
```

(Seal)

## CERTIFICATE OF ACKNOWLEDGMENT

STATE OF _____ )
) SS
COUNTY OF _____ )

On _____, 20____ before me, _____,
personally appeared Randall C.M. Whitney; Richard D. Worsley, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____

(Seal)

## DEED OF TRUST
### (Continued)

### (DO NOT RECORD)
## REQUEST FOR FULL RECONVEYANCE
(To be used only when obligations have been paid in full)

To: _____, Trustee

The undersigned is the legal owner and holder of all indebtedness secured by this Deed of Trust. All sums secured by this Deed of Trust have been fully paid and satisfied. You are hereby directed, upon payment to you of any sums owing to you under the terms of this Deed of Trust or pursuant to any applicable statute, to cancel the Note secured by this Deed of Trust (which is delivered to you together with this Deed of Trust), and to reconvey, without warranty, to the parties designated by the terms of this Deed of Trust, the estate now held by you under this Deed of Trust. Please mail the reconveyance and Related Documents to:

| | |
|---|---|
| Date: _____ | Beneficiary: _____ |
| | By: _____ |
| | Its: _____ |

LASER PRO Lending, Ver. 5.24.00.00 Corp. Harland Financial Solutions, Inc. 1997, 2002. All Rights Reserved. - CA P:\CFI\WIN\CFI\LPL\G01.FC TR-1157 PR-29

## LEGAL DESCRIPTION

## EXHIBIT "A"

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF OAKLAND, COUNTY OF ALAMEDA, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

**Parcel One:**

Portions of the Parcels described in the Deeds to Pacific Thomas Corporation recorded at Document Number 1999452428 on December 23, 1999 and at Document Number 2002163999 on April 12, 2002, in the Official Records of the County of Alameda more particularly described as follows:

Commencing at the point of intersection of the northeast right of way line of Union Pacific Railroad (formerly Southern Pacific Railroad) and the northwest line of 29th Avenue, as said point is shown on that certain record of survey; filed in the Office of the recorder of Alameda County, in Book 4 of Records of Surveys at Page 48;

Thence northeasterly along said northwest line of 29th Avenue north 36° 47' 32" east, 72.84 feet to the true point of beginning of this description;

Thence north 49° 20' 46" west, 287.74 feet;

Thence north 61° 34' 49" west, 57.47 feet;

Thence south 40° 36' 10" west 60.81 feet to a point on said northeast right of way of Union Pacific Railroad;

Thence north 49° 23' 50" west, 1995.35 feet along said northeast right of way line of Union Pacific Railroad to the most westerly corner of Parcel 2 as described in said deed to Pacific Thomas Corporation recorded at Document Number 1999452428;

Thence north 6° 59' 05" west, 92.39 feet to the most northerly corner of Parcel 2 as described in said Deed to Pacific Thomas Corporation recorded at Document Number 1999452428;

Thence south 49° 23' 50" east, 1692.39 feet along the northeasterly line of Parcel 2 as described in said Deed to Pacific Thomas Corporation recorded at Document Number 1999452428;

Thence continuing along the northeasterly line of Parcel 2 as described in said Deed to Pacific Thomas Corporation recorded at Document Number 1999452428, along a curve to the left with a radius of 1873.08 feet, a distance of 373.67 feet to the most southerly corner of Parcel 1 described in the Deed recorded May 12, 1945 in Book 4705, at Page 255 in the Official Records of the County of Alameda, being the same point as the most westerly corner of the Parcel described in the Deed recorded August 18, 1947, in Book 5181, at Page 382, in the Official Records of the County of Alameda;

Thence south 61° 43' 49" east, 160.94 feet along the southerly line of said parcel of land described in Book 5181, at Page 382;

Thence South 40° 39' 14" west, 29.20 feet;

Thence south 49° 20' 46" east, 184.61 feet to a point on the northwest line of 29th Avenue;

Thence along said northwest line of 29th Avenue, south 36° 47' 32" east, 32.07 feet to the true point of beginning of this description.

Assessor's Parcel Nos. 019-0102-004, 019-0103-004, 025-0707-014, 025-0701-011 and 025-0697-007-07

**Parcel Two:**

**Parcel A**

Beginning at a point on the southeastern line of 29th Avenue distant thereon south 36° 46' 40" west 50 feet from the southwestern line of East 12th Street, as said Avenue and Street existed on August 13, 1947; running

2

CLTA Preliminary Report Form - Modified (11/17/04)

thence parallel with said line of East 12th Street, south 53° 15' 20" east, 175 feet; thence parallel with said line of 29th Avenue, north 36° 46' 40" east, 46.46 feet to a point on the southwestern line of East 12th Street as the name now exists, from which said point the center of a circle having a radius of 1000 feet bears south 31° 55' 25" west; thence along the last named line the two following courses and distances; northwesterly along the circumference of said circle 5.31 feet to a point from which the center of said circle bears south 31° 27' 10" west, 1000 feet distant; thence north 58° 22' 50" west, 170.40 feet to the said southwestern line of 29th Avenue and thence along the last named line southwesterly 30.78 feet to the point of beginning.

## Parcel B

Beginning at a point on the southwestern line of East 12th Street, as the same existed prior to the widening thereof, distant thereon southeasterly 175 feet from the intersection thereof, with the southeastern line of 29th Avenue; running thence southeasterly along said line of East 12th Street, 175 feet; thence southwesterly parallel with said line of 29th Avenue, 50 feet; thence northwesterly parallel with said line of East 12th Street, 175 feet; thence northeasterly parallel with said line of 29th Avenue, 50 feet to the point of beginning.

Except from Parcels Two and Three above that portion which lies within the land conveyed to the City of Oakland, a municipal corporation, by Deed dated November 25, 1975, and recorded February 4, 1976, in Reel 4249, Image 504, Alameda County Records, designated as "Parcel A16-1". The southwesterly line of said Parcel A16-1 is shown as Radius = 5119.35 feet; angle = 0° 06", 37.3 feet; length = 9.86 feet, north 56° 15' 36" west, 165.64 feet, north 56° 15' 36" west 168.15 feet.

Assessor's Parcel No. 025-0693-003-03

## Parcel Three:

Commencing at a point of intersection of the northeast right of way line of Union Pacific Railroad (formerly Southern Pacific Railroad) and the northwest line of 29th Avenue, as said point is shown on that certain Record of Survey, filed in the Office of the Recorder of Alameda County, in Book 4 of Records of Surveys at Page 48; thence northeasterly along said northwest line north 38° 16' 39" east (north 38° 16' 39" east being taken for the purpose of this description) 121.51 feet; thence leaving said line south 49° 42' 10" east, 66.06 feet to a point on the southeast line of 29th Avenue, said point being the point of beginning of the herein described parcel of land; thence along said southeast line north 38° 16' 55" east, 77.73 feet to a point in the westerly line of the parcel of land described in the Deed recorded in Book 627 Official Records, Page 71, said point also in the east line of the parcel of land described in the Deed recorded in Book 1369 of Deeds, at Page 318; thence southerly along said easterly line south 51° 43' 41" east, 671.77 feet; thence north 38° 16' 37" east, 50.00 feet; thence south 51° 37' 07" east, 559.77 feet to the northwesterly line of Fruitvale Avenue, said point also being the southeast corner of said Parcel 1369 of Deeds, at Page 318; thence southwesterly along said line south 23° 01' 37" west, 92.24 feet to the southwest corner of said Parcel 1369 of Deeds at Page 318; thence along the westerly line of said Parcel 1369 of Deeds, at Page 318, said line also being the easterly right of way line of the Union Pacific Railroad (formerly Southern Pacific Railroad), north 57° 36' 23" west, 106.42 feet; thence north 56° 39' 23" west, 94.20 feet; thence north 54° 43' 23" west, 100.00 feet; thence north 52° 43' 23" west, 100.00 feet; thence north 51° 43' 23" west, 740.92 feet to a non-tangent curve; thence along the arc of a curve to the south, having a radius of 1885.58 feet, center bears south 34° 09' 00" west, through a central angle of 00° 28' 01", an arc length of 15.36 feet to a point of reverse curvature; thence along the arc of a curve to the north, having a radius of 1885.58 feet, center bears north 31° 07' 33" east, through a central angle of 02° 48' 01", an arc length of 92.16 feet; thence north 61° 10' 21" west, 8.44 feet to the point of beginning.

Excepting therefrom:

All that portion described in that certain Final Order of Condemnation to the Bay Rea Rapid Transit District, recorded January 29th, 2002, Official Records, under Recorder's Serial Number 2002-046183.

Assessor's Parcel No. 025-0693-008

## Parcel Four:

BEGINNING AT THE MOST WESTERN CORNER OF THAT CERTAIN PARCEL OF LAND DESCRIBED AS PARCEL 4 IN THE DEED FROM THE WESTERN PACIFIC RAILROAD COMPANY TO THE CITY OF OAKLAND, DATED April 21, 1947, AND FILED MAY 14, 1947, IN THE OFFICE OF THE COUNTY RECORDER OF ALAMEDA COUNTY, UNDER RECORDER'S SERIES NO. AB/41258, SAID CORNER BEING IN THE SOUTHEASTERN LINE OF THE PARCEL OF LAND DESCRIBED AS PARCEL 1 IN THE DEED FROM THE

CLTA Preliminary Report Form - Modified (11/17/06)

WESTERN PACIFIC RAILROAD COMPANY, A CORPORATION, TO HAMMER-BRAY COMPANY, LTD., A CORPORATION, DATED MAY 3, 1945 AND RECORDED MAY 12, 1945, IN BOOK 4705 OF OFFICIAL RECORDS, PAGE 255; RUNNING THENCE SOUTH 36° 44' 40" WEST, ALONG SAID SOUTHEASTERN LINE, 83.17 FEET; THENCE SOUTH 61° 46' 20" EAST, 243.23 FEET TO A POINT ON A LINE DRAWN PARALLEL TO THE NORTHWESTERN LINE OF 29TH AVENUE, AND DISTANT 100 FEET NORTHWESTERLY THEREFROM, MEASURED AT RIGHT ANGLES THERETO; THENCE NORTHWESTERLY, ALONG THE ARC OF A CIRCLE TO THE RIGHT, HAVING A RADIUS OF 211.12 FEET (THE CENTER OF SAID CIRCLE BEARING NORTH 29° 53' 06" EAST FROM SAID LAST MENTIONED POINT), THROUGH AN ANGLE OF 35° 16' 16", A DISTANCE OF 129.96 FEET TO THE SOUTHWESTERN BOUNDARY LINE OF SAID PARCEL OF LAND DESCRIBED IN THE DEED TO THE CITY OF OAKLAND; THENCE NORTHWESTERLY, ALONG SAID SOUTHWESTERN BOUNDARY LINE, ON THE ARC OF A CIRCLE TO THE RIGHT, HAVING A RADIUS OF 1306.0 FEET, THROUGH AN ANGLE OF 5° 18' 30", A DISTANCE OF 121.0 FEET TO THE POINT OF BEGINNING.

ASSESSOR'S PARCEL NO. 025-0697-002

**Parcel Five:**

Portions of the Parcels described in the Deeds to Pacific Thomas Corporation recorded at Document Number 99-452428 on December 23, 1999 and at Document Number 2002-163999 on April 12, 2002, in the Official Records of the County of Alameda, more particularly described as follows:

Beginning at the point of intersection of the northeast right of way line of Union Pacific Railroad (formerly Southern Pacific Railroad) and the northwest line of 29th Avenue, as said point is shown on that certain Record of Survey, filed in the Office of the Recorder of Alameda County, in Book 4 of Records of Surveys, at Page 48; thence along said northwest line of 29th Avenue north 36° 47' 32" east, 72.84 feet; thence north 49° 20' 46" west, 287.74 feet; thence north 61° 34' 49" west, 57.47 feet; thence south 40° 36' 10" west, 60.81 feet to a point on said northeast right of way line of Union Pacific Railroad; thence along said northeast right of way line of Union Pacific Railroad, south 49° 23' 50" east, 348.75 eet to the point of beginning

Said Parcel also being Parcel B as shown on Parcel Map Waiver Map 02-018 Approved by the City of Oakland on October 22, 2002.

Assessor's Parcel No. 025-0697-003-06

**Parcel Six:**

PORTIONS OF THE PARCELS DESCRIBED IN THE DEEDS TO PACIFIC THOMAS CORPORATION RECORDED AT DOCUMENT NUMBER 1999452428 ON December 23, 1999 AND AT DOCUMENT NUMBER 2002163999 ON April 12, 2002, IN THE OFFICIAL RECORDS OF THE COUNTY OF ALAMEDA, MORE PARTICULARLY DESCRIBED AS FOLLOWS:

COMMENCING AT THE MOST SOUTHERLY CORNER OF PARCEL NO. 1 DESCRIBED IN THE DEED RECORDED MAY 12, 1945 IN BOOK 4705, AT PAGE 255, IN THE OFFICIAL RECORDS OF THE COUNTY OF ALAMEDA BEING THE SAME POINT AS THE MOST WESTERLY CORNER OF THE PARCEL DESCRIBED IN THE DEED RECORDED AUGUST 18, 1947 IN BOOK 5181, AT PAGE 382, IN THE OFFICIAL RECORDS OF THE COUNTY OF ALAMEDA.

THENCE SOUTH 61° 43' 49" EAST, 160.94 FEET ALONG THE SOUTHWESTERLY LINE OF SAID PARCEL DESCRIBED IN BOOK 5181 AT PAGE 382 TO THE TRUE POINT OF BEGINNING FOR THIS DESCRIPTION:

THENCE SOUTH 40° 39' 14" WEST, 29.20 FEET:

THENCE SOUTH 49° 20'46" EAST, 184.61 FEET TO A POINT ON THE NORTHWEST LINE OF 29TH AVENUE;

THENCE NORTHEASTERLY ALONG SAID NORTHWEST LINE OF 29TH AVENUE NORTH 36° 47'32" EAST, 63.11 FEET;

THENCE CONTINUING ALONG SAID NORTHWEST LINE OF 29TH AVENUE, ALONG A TANGENT CURVE TO THE LEFT WITH A RADIUS OF 40.00 FEET, THROUGH A CENTRAL ANGLE OF 48° 36' 29" AN ARC DISTANCE OF 33.93 FEET TO THE SOUTHWESTERLY LINE OF EAST 12TH STREET;

THENCE ALONG THE SOUTHWESTERLY LINE OF EAST 12TH STREET NORTH 50° 42'34" WEST, 86.90 FEET;

THENCE CONTINUING ALONG SAID SOUTHWESTERLY LINE OF EAST 12TH STREET, NORTH 47° 67'36- WEST, 60.50 FEET;

THENCE CONTINUING ALONG SAID SOUTHWESTERLY LINE OF EAST 12TH STREET, ALONG A NON-TANGENT CURVE, THE CENTER OF WHICH BEARS NORTH 32° 20'04" EAST, WITH A RADIUS OF 1306.00 FEET, THROUGH A CENTRAL ANGLE OF 2° 37' 39", AN ARC DISTANCE OF 59.89 FEET TO AN ANGLE POINT FORMED BY TWO NON-TANGENT CURVES IN THE NORTHEASTERLY LINE OF SAID PARCEL OF LAND DESCRIBED IN BOOK 5181 AT PAGE 382;

THENCE SOUTHEASTERLY ALONG THE NORTHEASTERLY LINE OF SAID PARCEL OF LAND DESCRIBED IN BOOK 5181 AT PAGE 382, ALONG A NON-TANGENT CURVE, THE CENTER OF WHICH BEARS NORTH 75° 07'156" EAST. WITH A RADIUS OF 211.12 FEET, AN ARC DISTANCE OF 130.73 FEET;

THENCE NORTH 61° 43' 49" WEST, 83.11 FEET ALONG THE SOUTHWESTERLY LINE OF SAID PARCEL DESCRIBED IN BOOK 5181 AT PAGE 382, TO THE TRUE POINT OF BEGINNING.

BEING PARCEL A AS SHOWN ON PARCEL MAP WAIVER MAP 02-018 APPROVED BY THE CITY OF OAKLAND ON October 22,2002

Assessor's Parcel No. 025-0697-007-006

Excepting therefrom, Parcels One, Two, Three, Five and Six above, all minerals and all mineral rights of every kind and character now known to exist or hereafter discovered, including without limiting the generality of the foregoing oil and gas and rights thereto, together with the sole, exclusive and perpetual right to explore for, remove and dispose of said minerals by an means or methods suitable to grantor, its successors and assigns, but without entering upon or using the surface of the property, and in such manner as not to damage the surface of said lands or to interfere with the use thereof by Grantee, it successors or assigns, as reserved in Deed from Union Pacific Railroad Company, recorded December 23, 1999, Series No. 1999452428, Official Records.



**EXHIBIT D**

RECORDING REQUESTED BY:

WHEN RECORDED MAIL TO:
**Old Republic - Trustee Services Division**
**1000 Burnett Avenue, Suite 400**
**Concord, California 94520**

WE HEREBY CERTIFY THIS TO BE A TRUE
AND CORRECT COPY OF THE ORIGINAL
DOCUMENT RECORDED.

April 7, 2011

SERIES # 2011102986
OF OFFICIAL RECORDS.

Alameda
OLD REPUBLIC TITLE CO.     COUNTY

BY

SPACE ABOVE THIS LINE FOR RECORDER'S USE

TS No.: 0125000670
Loan No.: 1018144
APN: 019-0102-004, 025-0693-003-03, 025-0693-008, 025-0697-002, 025-0697-003-06, 025-0697-007-06, 025-06-97-007-07 and 025-0701-011

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

## IMPORTANT NOTICE
## IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS IT MAY BE SOLD WITHOUT ANY COURT ACTION,
and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for sale of your property. No sale date may be set until three months from the date this notice of default may be recorded (which date of recordation appears on this notice).

This amount is **$8,284,705.57** as of **April 05, 2011**, and will increase until your account becomes current. While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than the three month period stated above) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor. To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

**Summit Bank**
**C/O Old Republic - Trustee Services Division**
**1000 Burnett Avenue, Suite 400**
**Concord, California 94520**

**Phone: (866) 248-9598**

TS No.: 0125000670
Loan No.: 1018144

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

**If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan.**

**Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure.**

## Remember, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

NOTICE IS HEREBY GIVEN: That **Old Republic Title Company, a California corporation** is either the original trustee, the duly appointed substituted trustee, or acting as agent for the trustee or beneficiary under a Deed of Trust dated 7/27/2007, executed by **Pacific Thomas Corporation and Nova Group, a Nevada Corporation**, as Trustor, to secure certain obligations in favor of **Summit Bank**, as beneficiary, recorded 8/2/2007, as Instrument No. 2007287985, of Official Records in the Office of the Recorder of **Alameda** County, California describing land therein as: As more fully described on said Deed of Trust.

including **ONE (1) NOTE(S) FOR THE ORIGINAL** sum of **$8,100,000.00**, that the beneficial interest under such Deed of Trust and the obligations secured thereby are presently held by the beneficiary; that a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of:

### THE UNPAID PRINCIPAL BALANCE OF $8,100,000.00 WHICH BECAME ALL DUE AND PAYABLE ON 3/31/2011 WITH INTEREST DUE THEREON FROM 1/6/2011. ALL LATE CHARGES DUE. ALL FORECLOSURE FEES AND COSTS.

That by reason thereof, the present beneficiary under such deed of trust, has executed and delivered to said duly appointed Trustee, a written Declaration of Default and Demand for same, and has deposited with said duly appointed Trustee, such deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

Dated: April 05, 2011

Old Republic Title Company, as Agent for the Beneficiary

BY: Debbie Jackson, Assistant Vice President

This loan which is subject of this notice is not subject to the provisions of California Civil Code 2923.5