ERIC A. NYBERG, ESQ. (Bar No. 131105)
CHRIS D. KUHNER, ESQ. (Bar No. 173291)
**KORNFIELD, NYBERG, BENDES & KUHNER, P.C.**
1970 Broadway, Suite 225
Oakland, California 94612
Telephone: (510) 763-1000
Facsimile: (510) 273-8669
Email: e.nyberg@kornfieldlaw.com
Email: c.kuhner@kornfieldlaw.com

Attorneys for Secured Creditor Summit Bank

UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>PACIFIC THOMAS CORPORATION<br>DBA PACIFIC THOMAS CAPITAL,<br><br><br><br><br><br>Debtor. | Case No. 12-46534 MEH<br><br>Chapter 11<br><br>**SUMMIT BANK'S OBJECTION TO DEBTOR'S SECOND AMENDED DISCLOSURE STATEMENT IN SUPPORT OF SECOND AMENDED PLAN OF REORGANIZATION DATED OCTOBER 4, 2013**<br><br>Date: October 17, 2013<br>Time: 10:30 a.m.<br>Ctrm: 215<br>U.S. Bankruptcy Court<br>1300 Clay Street<br>Oakland, California |

Secured Creditor, Summit Bank ("Summit") submits the following Objections to the Debtor's Second Amended Disclosure Statement in Support of Second Amended Plan of Reorganization, dated October 4, 2013 (the "Disclosure Statement" and "Plan") as follows.

**I.  DEBTOR HAS GIVEN IMPROPER NOTICE OF THE HEARING ON THE DISCLOSURE STATEMENT**

Bankruptcy Local Rule 3017-1 governs the hearing procedures for hearings on Chapter 11 disclosure statements. Bankruptcy Local Rule 3017-1(a) provides as follows:

///

Kornfield, Nyberg, Bendes & Kuhner, P.C.
1970 Broadway, Suite 225
Oakland, California 94612
(510) 763-1000
FAX: (510) 273-8669

"(a) The plan proponent may calendar a notice the disclosure statement hearing without necessity of a Court order, notwithstanding Official Form No. 12. Notice of hearing shall be served on the debtor, creditors, equity security holders, United States Trustee, Securities and Exchange Commission, and other parties in interest not less than 35 days prior to the hearing. The notice shall contain the information required by Official Form No. 12 and, unless the Court orders otherwise, shall state that the deadline for filing of objections is 7 days prior to the hearing. The proposed plan and proposed disclosures statement shall be served, with the notice, only on the United States Trustee and persons mentioned in the second sentence of Bankruptcy Rule 3017(a). A certificate of service of the foregoing documents must be filed at least 7 days prior to the hearing."

In this case, the Disclosure Statement was filed late in the day on Friday, October 4, 2013. The Debtor also served a Notice of Continued Hearing on Approval of Debtor's Disclosure Statement, as Amended on October 4, 2013 setting a hearing on the Disclosure Statement for October 17, 2013.

The Debtor has given insufficient notice and is clearly attempting to prejudice creditors by not providing adequate opportunity to review and object to the Disclosure Statement. The Debtor has given only fifteen (15) days notice of the hearing and served the Disclosure Statement and Notice in a manner which effectively gives creditors four (4) business days to object to the Disclosure Statement.

**II.    GENERAL LAW REGARDING APPROVAL OF DISCLOSURE STATEMENTS**

"The primary purpose of a disclosure statement is to give creditors the information they need to decide whether to accept the plan." *In re Diversified Investors Fund XVII* 91 B.R. 559, 556 (Bankr. C.D.Cal.1988); *In re Monnier Bros*. 755 F 2d 1336, 1342 (8th Cir. 1985); *Century Glove, Inc. v. First American Bank of New York* 860 F 2d 94, 100 (3rd Cir. 1988).

To approve a disclosure statement, the court must first determine that it contains "adequate information" *In re Unichemcorp.* 72 B.R. 95, 96 (Bankr. N.D. Ill 1987); *Matter of Texas Extrusion Corp*. 844 F 2d 1142, 1157 (5th Cir. 1988). The court's determination in order to approve or disapprove a disclosure statement is a "core proceeding" 28 U.S.C. §157 (b)(2).

The adequacy of information provided in a disclosure statement is judged by a hypothetical investor standard. "Adequate information" means information of the kind, and in sufficient detail, as far as reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records to enable a "hypothetical investor" typical of the holders of claims and interests in the case to make an informed judgment about the plan. 11 U.S.C § 1125(a)(1).

Approval of a disclosure statement and the adequacy of information contained therein should be determined on a case by case basis. The court should take a practical approach as to what is "adequate" based on the circumstances of each case, "such as the cost of preparation of the statements, the need for relative speed and solicitation and confirmation, and of course the need for investor protection." *In re Diversified Investors Fund XVII* 91 B.R. 559, 556 (Bankr. C.D.Cal.1988).

In determining whether a disclosure statement provides adequate information, the court "shall" consider the: complexity of the case; benefit of additional information to creditors and other parties in interest; and cost of providing additional information. 11 U.S.C. § 1125(a)(1).

### III.   OBJECTIONS TO DISCLOSURE STATEMENT

#### A.   General Objections to the Disclosure Statement

While plan objections are generally reserved and considered at the confirmation hearing, "this approval of the adequacy of the disclosure statement may sometimes be appropriate where it describes a plan of reorganization which is so fatally flawed that confirmation is impossible." *In re Cardinal Congregate I,* 121 B.R. 760, 764 (Bankr. S.D. Ohio 1990); *In re 266 Washington Assocs*., 141 B.R. 275, 288 (Bankr. E.D. NY 1992).

Summit asserts that the Disclosure Statement describes a plan that is "fatally flawed." The Plan and Disclosure Statement are premised upon a refinance of the Debtor's properties in order to pay off the Debtor's creditors. The Disclosure Statement attaches to it a Conditional Commitment Letter from Thorofare Capital. There is no binding commitment from Thorofare Capital upon which creditors can base any analysis of the Debtor's prospects in confirming the Plan. The Debtor has been telling the Court and creditors that it has a refinance commitment the entire time it has been in bankruptcy and yet nothing has ever actually been presented to the Court. Further,

Kornfield, Nyberg, Bendes & Kuhner, P.C.
1970 Broadway, Suite 225
Oakland, California 94612
(510) 763-1000
FAX: (510) 273-8669

the Debtor's cash flow projections show that the Debtor has insufficient cash flow through 2014. The only way the Debtor survives based upon its own projections is by living off the interest reserve provided for under the alleged refinancing from Thorofare Capital.

Further, the Debtor grossly under reports the amount of administrative expenses which will have to be paid on the Effective Date of the Plan. The Debtor's Disclosure Statement indicates on its face that it will have insufficient funds available to pay the administrative claims on the Effective Date of the Plan. Notwithstanding having information from the Trustee and Trustee's counsel regarding the amount of the administrative expense claims, the Debtor simply chooses to footnote that fact and then use a lower number which works with the amount of money that the Debtor asserts it will have available on the Effective Date. The Plan has no contingency or back up provision to cover the contingency of what happens if the Debtor cannot raise sufficient funds to pay the Administrative Claims on the Effective Date.

The Debtor's Plan and its alleged refinance is premised upon being able to provide its proposed lender with first deeds of trust to secure the proposed refinancing loan. Summit asserts that as a matter of law, the Debtor will be unable to effectively "prime" existing first priority liens in favor of the proposed refinance lender.

The Debtor has impermissibly created a separate class of unsecured claims (Class 6(B)). The only justification and apparent reason for this separate classification is to avoid any potential claims of under secured creditors voting in the general unsecured class of creditors and dominating that class of votes. Apparently, the Debtor is concerned about obtaining the vote of one impaired class as required under 11 U.S.C. § 1129. Such a classification violates the good faith requirement of 11 U.S.C. § 1129(a)(3). Further courts generally prohibit separate classification and treatment of "substantially smaller" claims. See *In re Tuscon Self-Storage, Inc.,* 166 B.R. 892, 897 (9th Cir. BAP 1994). The Plan's treatment of Summit is not fair and equitable as is required by § 1129. The Plan incorrectly sets forth the amount of Summit's claim and given the proposed treatment of other lenders, it demonstrates clear bad faith in the treatment of Summit's claim.

By reason of the foregoing, Summit respectfully asserts that the Court should deny approval of the Disclosure Statement since it describes a plan that is "fatally defective."

Kornfield, Nyberg, Bendes & Kuhner, P.C.
1970 Broadway, Suite 225
Oakland, California 94612
(510) 763-1000
FAX: (510) 273-8669

## B. Specific Objections to Disclosure Statement

### 1. Problems With Descriptions and History of Debtor's Business.

In Section 2.01 on Page 29, Lines 15 through 18, the Debtor provides misleading information. The Debtor indicates that the lease between the Debtor and PTV was amended and modified on August 1, 2012, but fails to mention that the modification entered into by the Debtor on August 1, 2012 was done at a time when the Debtor was subject to State Court Receivership Order and that any amendment of the lease was in violation of the State Court Order Appointing the Receiver and, therefore, ineffective and not valid. In the same section, the Disclosure Statement should not only indicate that the Trustee has given a termination notice to Pacific Trading Ventures, but the requisite time period under said notice has passed and that the Trustee takes the position that the lease between the Debtor and Pacific Trading Ventures has in fact been terminated and is of no force and effect.

### 2. Debtor's Description of Management Before and After Bankruptcy.

Section 2.03 on Page 31, Lines 19 through 22, the Disclosure Statement The Disclosure Statement indicates that post-confirmation, the reorganized Debtor's business operations will be managed by Randall Whitney and a senior financial executive or real estate professional. The Disclosure Statement needs to identify by name senior financial executive or real estate professional and set forth the exact terms and conditions, including compensation and authority to act should describe and set forth in detail in the Disclosure Statement. It is of no value to the creditors to indicate that information regarding the prospective individuals will be provided in advance of the hearing on the Disclosure Statement. By doing this, the Debtor is once again attempting to tie the hands of the creditors in terms of adequately evaluating the Disclosure Statement and this is further indicia of the tactics and bad faith of the Debtor in this case.

In the same section, the Disclosure Statement should also provide proof that Loh Realty and the Oakland Office of Collier's International have actually agreed to act as the post-confirmation property management company and leasing agent. The terms and conditions upon which those entities will be retained also needs to be disclosed by the Debtor.

///

### 3. Debtor's Incomplete and Misleading Description of Events Leading to Chapter 11 Bankruptcy.

The Disclosure Statement in Section 2.04 on Page 32, Lines 7 through 27 and Lines 1 through 10 of Page 33 continued to provide what is factually incorrect and misleading information to creditors. Summit Bank has never refused to honor a valid request by the Debtor for a payoff amount. The Debtor consistently requested Summit Bank to provide it with <u>discounted</u> payoff demands which Summit Bank declined to do.

The current description of the events leading to the bankruptcy filing attempts to lay the blame for the Debtor's mismanagement of its assets and ability to payoff its lenders at the feet of Summit Bank which is simply incorrect, misleading, argumentative and has no place in a Disclosure Statement.

### 4. Debtor's Incomplete Description of Significant Events During Bankruptcy.

On Page 34, Lines 22 through 25 and Page 35, Lines 1 through 6, the Disclosure Statement mischaracterizes and gives an inaccurate description of the Trustee's Motion to Sell Certain Real Property Free and Clear of the Pacific Trading Ventures lease and the legal basis upon which the motion was based.

The Disclosure Statement on Page 35, Lines 13 through 16, inexplicably fails to mention that the Bankruptcy Appellate Panel for the Ninth Circuit entered an order dismissing Randall Whitney's appeal and that said order was entered prior to the filing of the Second Amended Disclosure Statement. The filing of the Disclosure Statement without this piece of information borders on violating Rule 9011.

In addition, the Trustee has been actively marketing the Debtor's real property for sale. The Disclosure Statement should provide information about the Trustee's marketing efforts, offers and timing of possible sales of the real property.

Summit has filed a State Court Action against Jill Worsley and Pacific Trading Ventures, Inc. This fact should be disclosed as it could have an impact and the ability of insiders to fund the payments of Administrative Expenses on the Effective Date.

///

Kornfield, Nyberg, Bendes & Kuhner, P.C.
1970 Broadway, Suite 225
Oakland, California 94612
(510) 763-1000
FAX: (510) 273-8669

**5. Information Regarding Avoidable Transfers.**

The Disclosure Statement in Section 2.05 still does not disclose whether or not the Debtor has sought any input from the Chapter 11 Trustee regarding the potential for recoveries from avoidable transfers. Interestingly enough, the most probable targets of avoidable transfers will be insiders of the Debtor and it is just too convenient for the Debtor to indicate that it does not believe there are any avoidable preferential transfers, fraudulent conveyances or other avoidance actions to pursue. The statement this aspect of the case should be made by the Trustee and not the Debtor's less than trustworthy management.

**6. Current and Historical Financial Conditions.**

Section 2.07 of the Disclosure Statement on Page 37 amounts to nothing more than speculation. The Disclosure Statement on Page 37, Lines 6 through 15, indicates that "PTC expects" to sign leases with certain groups within 90 days of the Confirmation Date. The Disclosure Statement goes on to indicate that each of the parties have signed a Letter of Intent, but none of the letters of intent are attached as exhibits to the Disclosure Statement. In addition, in a somewhat inconsistent statement, footnote 6 on Page 37, Lines 25 through 27, indicates that the Debtor has not entered into any lease negotiations with potential tenants.

The Disclosure Statement on Page 37, Lines 19 through 23, the Debtor indicates that it will set aside funds in an amount of $100,000 to $350,000 to complete tenant improvements to certain properties and to replace the lease that it lost with Planned Parenthood. The Disclosure Statement does not indicate where the Debtor will get the funds which it said it will set aside to do the tenant improvements and then later indicates the funds will be available for payment of Administrative Claims.

Page 38, Lines 3 through 9, is misleading. While the Trustee has negotiated certain cash collateral deals with the secured creditors, by reason of the Debtor's failure to turnover all of the rents and/or allowing Pacific Trading Ventures to divert certain rents, the Trustee has not collected rents sufficient to allow the Chapter 11 Trustee to make the full adequate protection payments to the secured creditors. This fact is of import to the creditors because it calls into question the actual amount of rents being generated from the properties and whether or not the Plan is even remotely

feasible from an income and expense standpoint.

The Disclosure Statement on Page 39, Lines 5 through 25, displays a chart showing a summary of the Debtor's income and expenses. The numbers show that had normal expenses then paid in January and February of 2013, the Debtor would have a net negative cash flow situation which further calls into question the confirmability of any Plan by the Debtor. The actual numbers are also at odds with the projections that the Debtor's attach to their Disclosure Statement. The projections show that the Debtor has negative cash flow through 2014 and that the only way the Debtor can fund operations is by drawing on interest reserve from the alleged refinance through Thorofare Capital.

### 7. Administrative Expenses.

The Disclosure Statement, in Section 3.02.1 on Page 41, grossly understates the amount of unpaid Administrative Expenses in the case. The Administrative Expenses have been estimated by the Trustee to be in excess of $750,000 and yet inexplicably, the Debtor only lists $500,650.00 as the Administrative Expenses.

### 8. Classified Claims and Interests.

The Disclosure Statement in Section 3.03 describes the various classification of claims and their treatment. For several of the secured creditors, including Summit, the Disclosure Statement provides for an Option A and an Option B. However, the Disclosure Statement does not say which option the Debtor will pursue in the event that Summit Bank rejects both Option A and Option B. This information is material to other creditors because it has a bearing on the feasibility and confirmability of any Plan of the Debtor. Creditors should not be left to assume that Summit will choose either Option A or Option B. There should be a default in the event that Summit chooses neither Option A nor Option B.

Further, there is absolutely no explanation other than just a conclusory statement which provides creditors with any information as to how the Debtor would actually be able to come up with the balloon payments which would be required under the various treatments of the claim of Summit Bank.

///

### 9. Disclosure Statement's Description of Post-Confirmation Management and Disbursing Agent.

The Disclosure Statement on Page 79, in Section 4.02.2 and 4.02.3, attempts to describe post-confirmation management and disbursing agent. There is no information provided which indicates that Loh Realty and the Oakland Office of Collier's International have actually agreed to act as the onsite manager and property manager for the properties. There is no information provided about the terms of any such engagement. The Disclosure Statement is also silent as to who the disbursing agent will be. The Disclosure Statement indicates that its CEO will act as the disbursing agent and yet there is no description of who the CEO will be.

### 10. The Inadequate Tax Information.

The Disclosure Statement still provides inadequate information regarding the tax consequences of the Debtor's proposed Plan. There is no information in the Disclosure Statement indicating what attempts were actually made by the Debtor's management to determine the tax consequences of the Plan.

### 11. Liquidation Analysis.

The Debtor's liquidation analysis is deficient in several regards. First, the Debtor's information regarding the amount of the claims is willfully inaccurate.

The liquidation analysis is also suspicious. This is the third iteration of the Debtor's Disclosure Statement and suddenly now, on Page 89, lines 20 through 23, the Debtor, for the first time, indicates that "PTC's payments for the business expenses of its shareholders were incorrectly booked as loans to shareholders, dividend payments to shareholders were booked as note receivable, and PTC's investment in a land use development project was incorrectly booked as a note receivable." If this is in fact accurate, it demonstrates the incompetence of the Debtor's management, which it appears will be continuing on after any Plan might be confirmed.

### 12. Feasibility Analysis.

The Debtor's feasibility analysis is suspect. The Debtor in Section 4.03 of the Disclosure Statement on Page 96 estimates that on the Effective Date, it will have $600,000 to $1 million dollars on hand. There is no real information to support the Debtor's "estimate" of the cash that it

Kornfield, Nyberg, Bendes & Kuhner, P.C.
1970 Broadway, Suite 225
Oakland, California 94612
(510) 763-1000
FAX: (510) 273-8669

will have on hand on the Effective Date of the Plan. There is no information to support that the estimates for Third Party Funding from insiders can actually be funded on the Effective Date. Further, to the extent that the Debtor is going to divert money which supposedly was earmarked for tenant improvements to pay Administrative Claims, this will then be inconsistent with the Debtor's financial projections and other statements made in the Disclosure Statement.

The Debtor's Disclosure Statement is also misleading on Page 98. On Page 98, lines 6 through 15, the Disclosure Statement indicates that various projected financials were prepared by different entities, and yet none of the reports allegedly prepared by these entities is attached to the Disclosure Statement for review and analysis by creditors.

## IV. CONCLUSION

For the reasons set forth above as well as in prior objections, Summit respectfully asserts that the Court should not approve the Second Amended Disclosure Statement.

Dated: October 10, 2013         KORNFIELD, NYBERG, BENDES & KUHNER, P.C.

By: /s/ Eric A. Nyberg
    (Bar No. 131105)
    Attorneys for Secured Creditor Summit Bank

Kornfield, Nyberg, Bendes & Kuhner, P.C.
1970 Broadway, Suite 225
Oakland, California 94612
(510) 763-1000
FAX: (510) 273-8669

# DECLARATION OF SERVICE

I, the undersigned, declare:

I am employed in the City of Oakland, County of Alameda, California. I am over the age of 18 years and not a party to this action. My business address is 1970 Broadway, Suite 225, Oakland, California 94612.

I am readily familiar with the business practices of my employer, Kornfield, Nyberg, Bendes & Kuhner, P.C., for the collection and processing of correspondence for mailing with the United States Postal Service and that correspondence is deposited with the United States Postal Service that same day in the ordinary course of business.

On October 10, 2013, I served the following documents:

**SUMMIT BANK'S OBJECTION TO DEBTOR'S SECOND AMENDED DISCLOSURE STATEMENT IN SUPPORT OF SECOND AMENDED PLAN OF REORGANIZATION DATED OCTOBER 4, 2013**

by placing copies of said documents in a sealed envelope and served in the manner described below addressed as follows:

| | |
|---|---|
| Lynette C. Kelly | Anne-Leith Matlock |
| U.S. Office of the U.S. Trustee | Kathrin R. Dimas |
| 1301 Clay Street | Matlock Law Group |
| Oakland, CA 94612 | 1485 Treat Blvd, Suite 200 |
| | Walnut Creek, CA 94597 |

SEE ATTACHED SERVICE LIST

I placed such envelopes for collection and mailing at my employer's office following ordinary business practices, addressed to the addressee designated.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 10th day of October, 2013 at Oakland, California.

/s/ Gail A. Michael

Objection to Second Amended Disclosure Statement ISO Second Amended Plan of Reorganization dated October 4, 2013

-11-