BUCHALTER NEMER
  ROBERT E. IZMIRIAN (SBN: 53805)
  CRAIG C. CHIANG (SBN: 209602)
A Professional Corporation
55 Second Street, Suite 1700
San Francisco, CA 94105-3493
Telephone: (415) 227-0900
Fax: (415) 227-0770
Email: rizmirian@buchalter.com; cchiang@buchalter.com

Attorneys for Chapter 11 Trustee
KYLE EVERETT

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| In re<br><br>PACIFIC THOMAS CORPORATION, dba<br>PACIFIC THOMAS CAPITAL, dba<br>SAFE STORAGE<br><br>Debtor. | Case No. 12-46534 MEH<br><br>Chapter 11<br><br>**CHAPTER 11 STATUS CONFERENCE STATEMENT SUBMITTED BY CHAPTER 11 TRUSTEE KYLE EVERETT**<br><br>Date: October 17, 2013<br>Time: 10:30 a.m.<br>Place  Courtroom 215<br>   1300 Clay Street<br>   Oakland, California<br>Courtroom of the Hon. M. Elaine Hammond |

The appointed Chapter 11 Trustee herein, Kyle Everett (in such capacity, the "Trustee"), submits his Chapter 11 Status Conference Statement setting forth the status of the Chapter 11 case of Pacific Thomas Corporation, dba Pacific Thomas Capital, dba Safe Storage (the "Debtor"):

1. On August 6, 2012, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

2. On January 17, 2013, the Court entered its Order Approving Appointment of the Trustee.

3. <u>Disposition of the Real Property.</u>

On July 1, 2013, the Bankruptcy Court entered its Order Granting Chapter 11 Trustee

Kyle Everett's Motion to Sell Real Property Free and Clear of Certain Interests (the "Sale Order"), including the disputed leasehold interest of Pacific Trading Ventures and Pacific Trading Ventures, Ltd. (collectively, "PTV") in the real property located at 2615 E. 12th Street, 2783 E. 12th Street, and 1113-15 29th Avenue in Oakland, California, all of which are property of the bankruptcy estate. Randall Whitney sought to appeal the Sale Order with the Bankruptcy Appellate Panel. On September 27, 2013, the Bankruptcy Appellate Panel entered its Order Dismissing Appeal, finding that Whitney had failed to show good cause for leave to appeal. A copy of the Order Dismissing Appeal is attached hereto as Exhibit A.

The Trustee, with the assistance of California Capital & Investment Group, the Court-approved broker, continues in his efforts to obtain the best and highest purchase offer for the Debtor's property. California Capital & Investment Group formulated a marketing plan for the sale of the Debtor's property following the Court's approval of its employment. The efforts of the Trustee and California Capital & Investment Group have yielded several offers for the Debtor's property that the Trustee is considering. Because the Trustee intends to sell the Debtor's property with the consent of the Debtor's secured creditors, the Trustee has maintained communication with all of the Debtor's secured creditors so that each can provide input on the offers that the Trustee has received. The Trustee hopes to present the Court with an offer for the purchase of the Debtor's property for the Court's review and consideration in the coming months.

The Trustee and California Capital & Investment Group have sought to provide potential buyers with complete, accurate and current information about the property's operations, so that the best and highest offers are achieved. Randall Whitney and PTV continue to hamper the Trustee's sale efforts. The Trustee has been informed by potential purchasers that Randall Whitney contacted the potential purchasers and told them that any attempt to purchase the Debtor's property would result in extended litigation. Randall Whitney and PTV have demanded that potential purchasers who visit the Debtor's property with the Trustee or his Court-approved broker reveal their identities to Randall Whitney and PTV and sign in. This has led to confrontations when the Trustee and the Court-approved broker have attempted simply to show potential purchasers property that belongs to the bankruptcy estate. In addition, PTV consistently

2

CHAPTER 11 TRUSTEE'S STATUS CONFERENCE STATEMENT

fails to provide QuickBooks reports, including rent rolls, receivable reports, and budgets on a timely basis, although the same reports are requested each month. As a result, the Trustee is required each month to make repeated requests for the same type of data. The Trustee has yet to receive the reports for September 2013, and was informed by PTV that it had obligations to other clients which caused delay in providing the reports for September. The continuing attempts by Randall Whitney and PTV to interfere with, and to hinder, the Trustee's sale efforts, along with PTV's material breach of the Management Agreement, discussed below, have convinced the Trustee that PTV's continuing management of estate property is detrimental to the estate.

4. <u>Termination of Management Agreement</u>.

PTV has failed to turnover rents of third-party tenants that constitute property of the estate and the cash collateral of the Debtor's secured creditors. On August 30, 2013, the Trustee notified PTV that it was in material breach of the terms of the Management Agreement as a result of the following:

- PTV's failure to turnover Clark Construction rents for May and June;
- PTV's inability to collect and remit Clark Construction rents for July and August;
- PTV's failure to turnover Performance Contracting, Inc. rents since the filing of the voluntary petition on August 6, 2012;
- PTV's failure to turnover Safe Parking and Budget collections for the second half of July 2013 and the first half of August 2013;
- PTV's failure to turnover Avila Trucking rents for July and August 2013; and
- PTV's failure to turnover Mujeres Unidas Y Activas rents for July and August 2013

A copy of the August 30, 2013 letter to PTV notifying it of the instances of material breach is attached hereto as <u>Exhibit B</u>. PTV has not cured the material breach and has failed to turn over the following rents that belong to the estate:

| $7,392.00 | Clark Construction for May and June 2013 |
| $7,392.00 | Clark Construction for July and August 2013 |
| $24,750.00 | Performance Contracting, Inc. rent October 2012 through August 2013 |
| $6,769.90 | Safe Parking and Budget 1/2 July and 1/2 August 2013 |
| $3,600.00 | Avila Trucking for July and August 2013 |
| $7,650.00 | Mujeres Unidas y Activas for July and August 2013 |
| **$57,553.90** | **Total**[1] |

---

[1] Performance Contracting, Inc. recently remitted $4,500 directly to the Trustee, reducing the total that PTV has failed to turn over from $57,553.90 to $53,053.90. Clark Construction has forwarded payments to its local offices.

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
SAN FRANCISCO
15055309v2

In addition, the following amounts also came due after the August 30, 2013 letter to PTV and remain unpaid:

| | |
|---|---|
| $35,000.00 | Safe Storage "Lease" Rent for 1/2 October 2013 |
| $6,750.00 | Safe Parking and Budget for September, and 1/2 October 2013 (estimated) |
| $3,600.00 | Avila Trucking for September and October 2013 |
| $7,650.00 | Mujeres Unidas y Activas for September and October 2013 |
| **$53,000.00** | **Total** |

PTV asserts that there is no material breach because it made "rightful deductions" from the estate's funds. A copy of PTV's responses, dated September 6, 2013 and September 27, 2103, are attached hereto as <u>Exhibit C</u>. Although PTV promised a thorough explanation by September 16, 2013, it was never provided. Instead, PTV has attempted to justify its "rightful deductions" by providing invoices that show payment to the Matlock Law Group for legal fees, and a significant number of "cash" payments that conspicuously do not arise until after the Trustee's appointment in January 2013.

The significance of PTV's failure to turnover property of the estate and cash collateral of the Debtor's secured creditors is intensified by the use of property of the estate to pay for professionals whose employment the Court has never approved. Since the Trustee's appointment in January 2013, Capital Restructure Group has received over $10,000.00 of estate funds diverted through PTV. According to its website, Capital Restructure Group consists of "turnaround specialists, debt restructure consultants and chapter 11 advisors" and has "utilized the leverage afforded by their knowledge of the Federal Bankruptcy System to apply pressure to creditors to renegotiate the terms of … loans" and has "written hundreds of bankruptcy reorganization plans…." Any glimmer of hope that PTV could operate as an objective manager of the estate's property has evaporated. As such, the Trustee has notified PTV that its role as property manager terminates effective October 14, 2013, at which time Self Storage Management of California, an objective, third party successor management company, will manage the estate's property. The Trustee further has notified PTV that it must not remove, alter, or destroy any property of the estate, including hardware, software, tenant files, and all documents associated with the operation of the estate's property.

On October 14, 2013, Self Storage Management of California sought to begin managing the estate's property and tried to utilize a back conference room to start the transition. Within 45 minutes, Randall Whitney appeared and told the estate's property manager to leave the back conference room. To avoid any altercation, the estate's property manager left the back conference room and went outside, away from the customer entrance. Randall Whitney then approached them, and stated, "You do not want to f*** with me." Randall Whitney, who has stated that he has nothing to do with PTV, continues his interference with the rights of the estate to manage its own property. The estate's property manager then asked Jill Worsley for access to management records and was denied. Randall Whitney called the police and sheriff to "evict" the Trustee and his agents from the estate's property. Randall Whitney told the estate's property manager to leave the premises, which they did. Although the Management Agreement with PTV has terminated for cause, and the disputed PTV lease has been terminated by contractual notice, Whitney and Worsley continue to violate the rights of the estate through their continued occupancy and interference, despite demands to vacate.

5. <u>Termination of Disputed PTV Lease of the Self-Storage Facility.</u>

The Trustee has highlighted the dubious nature of any assertion that the eleven buildings at the Debtor's property that are utilized as self-storage facilities (the "Self-Storage Facility") are leased to PTV.

- The Debtor's income tax returns prior to 2005 as well as 2005-2011 include all of the revenues and expenses of operations related to the Self-Storage Facility.
- The Debtor's QuickBooks prior to 2005 as well as 2005 through July of 2012 include all of the revenues and expenses of operations related to the Self-Storage Facility.
- The PTV QuickBooks for 2005 through 2011 do not include the revenues and expenses of operations related to the Self-Storage Facility.
- The rental income from the Self-Storage Facility is not recorded in the PTV QuickBooks until 2012, and through July 2012, rental income from the Self-Storage Facility was recorded on both the PTV QuickBooks and the Debtor's QuickBooks.

Considering that all of the revenues and expenses of the Self-Storage Facility were included in the Debtor's tax returns through 2011 and in the Debtor's QuickBooks through July 2012, one month before the bankruptcy filing, there is compelling reason to conclude that PTV's assertion that it leases the Self-Storage Facility from PTC is a farce. Instead PTV continues to

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
SAN FRANCISCO
15055309v2

siphon at least $40,000 each month in estate funds.

The Trustee, without acknowledging the validity of PTV's lease of the Self-Storage Facility, provided PTV with notice on February 21, 2013 that its disputed lease of the Self-Storage Facility would be terminated. A copy of the February 21, 2013 letter to PTV is attached hereto as <u>Exhibit D</u>. In response, PTV asserted that the disputed lease, through a January 1, 2010 amendment, "was extended to January 1, 2015 … and (b) that <u>thereafter</u>, the lease agreement shall be cancellable only upon either party giving the other, six (6) months written notice of termination." A copy of the March 29, 2013 letter from PTV is attached hereto as <u>Exhibit E</u>.

A copy of the disputed lease and the January 1, 2010 amendment are attached hereto as <u>Exhibit F</u>. The amendment states:

> Pacific Thomas Capital, as landlord and Pacific Trading Ventures, dba Safe Storage Management Company, as lessee, entered into a lease agreement on or about January 1, 2005. The lease agreement (attached as Exhibit A) was for a five year period. Subject to each and every term and condition contained in such January 5, 2005 [sic] lease agreement, the parties wish to extend such original lease agreement for an additional five-year term.
> All other provisions within the original lease agreement shall remain as stated, excepting, of course, the (a) expiration date which is being extended as provided herein, and (b) that thereafter the lease agreement shall be cancellable only upon either party giving to the other six (6) months written notice of termination.

The January 1, 2010 amendment states that all terms of the disputed lease remains as stated, except for an extension of the term to January 1, 2015, and that <u>thereafter</u>, a six month written notice of termination is required. Under Section 13 of the disputed lease, the Trustee is permitted to terminate the lease on thirty days' notice. Nothing in the January 1, 2010 amendment affected the ability of the Trustee to terminate the disputed lease on 30 days' notice prior to January 1, 2015. We have yet to reach January 1, 2015; consequently, any six month termination notice has yet to materialize. In addition, the Trustee notified PTV of the lease termination in February 2013, and more than six months have since passed.

On August 30, 2013 and on September 4, 2013, the Trustee notified PTV that it must surrender possession of the premises that are subject of the disputed lease by October 7, 2013. True and correct copies of the Trustee's August 30, 2013 and September 4, 2013 correspondence are attached hereto as <u>Exhibit G</u>. In response, in a September 6, 2013 letter, a copy of which is

attached hereto as <u>Exhibit H</u>, PTV's counsel asserts that the "lease goes through January 1, 2015" and that "[t]o the extent there is a problem with the lease extension the original lease automatically renewed itself and does not contain a six-month termination provision." The disputed lease actually contains a 30 day termination provision under Section 13 that remains unaffected. The Trustee has notified PTV that it must surrender possession of the premises subject to the disputed lease by October 7, 2013.

6. <u>Cash Collateral and Adequate Protection</u>. The Trustee has provided successor budgets for the use of cash collateral to the secured creditors, covering the period of September 1, 2013 to November 30, 2013, as contemplated in the cash collateral stipulations approved by the Court on April 26, 2013 [Dkt. Nos. 267 – 271]. The Trustee has made adequate protection payments to Bank of the West, Private Mortgage Fund, and Summit Bank based on the terms of the cash collateral stipulations.

7. <u>Plan of Reorganization</u>.

On June 12, 2013, the Debtor filed its Chapter 11 Plan of Reorganization. Summit Bank, Planned Parenthood, Alameda County Treasurer-Tax Collector, Bank of America, and Private Mortgage Fund each filed an objection to the Chapter 11 Plan of Reorganization.

On July 11, 2013, the Debtor filed its First Amended Chapter 11 Plan of Reorganization, setting an August 15, 2013 hearing on its First Amended Disclosure Statement. Summit Bank, Bank of the West, Private Mortgage Fund and Bank of America each filed an objection to the First Amended Disclosure Statement. The Debtor continued the hearing on the First Amended Disclosure Statement initially to September 19, 2013, and again to October 10, 2013.

The Trustee's counsel met with the Debtor's counsel to discuss the increasing administrative expenses that result from the Debtor's filing of plans of reorganization that cannot be confirmed and suggested to the Debtor's counsel to provide financial support to demonstrate feasibility so that interested parties, including secured creditors, could provide input on proposed plan terms before waves of objections are filed. Instead of doing so, on October 4, 2013, the Debtor filed its Second Amended Chapter 11 Plan of Reorganization and Second Amended Disclosure Statement, and set an October 17, 2013 hearing date. The Debtor's Notice of

Continued Hearing on Approval of Debtor's Disclosure Statement, as Amended set an objection deadline of October 10, 2013, only six days after the filing of the underlying pleadings. The Trustee believes that the proposed plan is not confirmable on its face and anticipates a number of objections.

8. <u>Nova Parcel</u>.

On September 17, 2013, Summit Bank filed a Motion for Order Granting Relief from the Automatic Stay, etc. (docket no. 373) seeking relief from the automatic stay, to the extent it is necessary, to proceed against real property commonly known as 2901 East 12th Street, Westside of 12th Street of 29th Avenue (the "Nova Parcel"). The Debtor did not schedule the Nova Parcel as its asset and no rents from the Nova Parcel have ever been provided to the Trustee. Randall Whitney filed an opposition to the stay relief motion and asserts: (1) that the Debtor provided all of the money to "the Nova group" to purchase the Nova Parcel, (2) that the Nova group has the same officers as the Debtor, Jill Worsley and Randall Whitney, (3) that the Nova group has made no payments to the Debtor for the Property, (4) that the Debtor "effectively purchased" the Nova Parcel, and (5) that the Nova Parcel "is effectively the debtor's property." The Trustee is investigating why the Debtor failed to include the Nova Parcel in its Schedule A where the Debtor's principal now asserts that the Nova Parcel is the Debtor's property.

DATED: October 16, 2013

BUCHALTER NEMER
A Professional Corporation

By: /s/ Craig C. Chiang
    Craig C. Chiang
    Attorneys for Chapter 11 Trustee
    KYLE EVERETT