BUCHALTER NEMER
  ROBERT E. IZMIRIAN (SBN: 53805)
  CRAIG C. CHIANG (SBN: 209602)
A Professional Corporation
55 Second Street, Suite 1700
San Francisco, CA 94105-3493
Telephone: (415) 227-0900
Fax: (415) 227-0770
Email: rizmirian@buchalter.com; cchiang@buchalter.com

Attorneys for Chapter 11 Trustee
KYLE EVERETT

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| In re<br><br>PACIFIC THOMAS CORPORATION, dba<br>PACIFIC THOMAS CAPITAL, dba<br>SAFE STORAGE,<br><br>Debtor. | Case No. 12-46534 MEH<br><br>Chapter 11<br><br>**EX PARTE APPLICATION FOR ISSUANCE OF TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES** |

Kyle Everett, the Chapter 11 trustee (the "Trustee") of the bankruptcy estate of Pacific Thomas Corporation dba Pacific Thomas Capital dba Safe Storage (the "Debtor") seeks emergency relief from the Court to address the interference by Randall Whitney, Jill Worsley and Pacific Trading Ventures ("PTV") with the estate's rights to have property of the estate managed by an objective third-party manager for the estate's benefit. PTV has shown that it cannot operate as a manager of the estate's property providing fiduciary services to the estate, and that its immediate replacement is critical to the Trustee's efforts to preserve value for the estate. The management agreement with PTV was terminated for cause, and the sham PTV lease was terminated by contractual notice. PTV has no right either to manage or to occupy any property of the estate, yet Whitney and Worsley continue to violate the rights of the estate through their

1

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

APPLICATION FOR ISSUANCE OF TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES
BN 15057791v1

Case: 12-46534    Doc# 399    Filed: 10/16/13    Entered: 10/16/13 15:49:56    Page 1 of 10

continued interference, despite demands to vacate. Whitney's, Worsley's and PTV's continuing presence at the estate's property has allowed them to:

>  (1) misappropriate $50,000 in rents of third-party tenants that belong to the estate;
>
>  (2) make unauthorized transfers of estate funds to professionals whose employment the Court has never approved;
>
>  (3) withhold property management information requested repeatedly by the Trustee; and
>
>  (4) threaten and intimidate potential purchasers who have toured the estate's property with the Court-approved real estate broker.

Their continuing lack of candor, misappropriation of estate funds, and blatant attempts to interfere with the estate's sale efforts must be addressed immediately to prevent irreparable harm to the estate and its creditors. There is no justification to allow Whitney, Worsley and PTV to have any further dealings with property of the estate. At the time of the Trustee's appointment, Whitney, Worsley and PTV misled the Court by asserting that PTV leased the self-storage facility from the Debtor, only to have the Court discover, through the Trustee's efforts, that:

- The Debtor's income tax returns prior to 2005 as well as 2005-2011 include all of the revenues and expenses of operations related to the self-storage facility.
- The Debtor's QuickBooks prior to 2005, as well as 2005 through July of 2012, include all of the revenues and expenses of operations related to the self-storage facility.
- The PTV QuickBooks for 2005 through 2011 do <u>not</u> include the revenues and expenses of operations related to the self-storage facility.
- The rental income from the self-storage facility is not recorded in the PTV QuickBooks until 2012, and through July 2012, rental income from the self-storage facility was recorded on both the PTV QuickBooks and the Debtor's QuickBooks.[1]

Although the management agreement with PTV has been terminated for cause, and the sham PTV lease has been terminated by contractual notice, Whitney, Worsley and PTV assert that the bankruptcy estate is powerless to take control of and operate its own property until sometime after 2015. It is ludicrous to assert that the terminated management agreement and terminated sham PTV lease forever burdens the estate with the same management that the Court already found incapable of meeting its fiduciary responsibilities to the estate.

---

[1] *see* Declaration of Chapter 11 Trustee in Support of Oppositions to Motion to Sell Real Property Free and Clear of Certain Interests; Docket No. 309.

2
APPLICATION FOR ISSUANCE OF TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

BN 15057779v1

Case: 12-46534   Doc# 399   Filed: 10/16/13   Entered: 10/16/13 15:49:56   Page 2 of 10

# I.

## STATEMENT OF PERTINENT FACTS

The Court will hear sensationalized ramblings by Randall Whitney to misrepresent the estate's recent efforts to install an independent management company to preserve and manage property of the estate that PTV has no right to manage or occupy. As set forth in detail in the Declaration of Tyler Julian, neither the Trustee nor his agents ever breached the peace. Instead, they withdrew from the estate's property after Whitney, who has no standing in this matter, threatened them. Immediate relief is needed to prevent Whitney, Worsley and PTV from treating the estate's property as their own fiefdom, where they hold the estate's assets hostage through a terminated and discredited sham lease and terminated management agreement. The question posed is straightforward – can discredited management of the Debtor, found to be incapable of acting in a fiduciary capacity, deny the estate the right to have its property managed by an independent management company where their sham lease and management agreement have terminated?

### Termination of the Management Agreement

The Trustee notified PTV that it was in material breach of the terms of the management agreement. PTV failed to turnover rents of third-party tenants that constitute property of the estate and the cash collateral of the Debtor's secured creditors. On August 30, 2013, the Trustee notified PTV that it was in material breach of the terms of the management agreement as a result of the following:

- PTV's failure to turnover Clark Construction rents for May and June;
- PTV's inability to collect and remit Clark Construction rents for July and August;
- PTV's failure to turnover Performance Contracting, Inc. rents since the filing of the voluntary petition on August 6, 2012;
- PTV's failure to turnover Safe Parking and Budget collections for the second half of July 2013 and the first half of August 2013;
- PTV's failure to turnover Avila Trucking rents for July and August 2013; and
- PTV's failure to turnover Mujeres Unidas Y Activas rents for July and August 2013

A copy of the August 30, 2013 letter to PTV notifying it of the instances of material breach is attached as Exhibit A to the Declaration of Craig Chiang (the "Chiang Declaration"). PTV has

3

APPLICATION FOR ISSUANCE OF TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES

Case: 12-46534   Doc# 399   Filed: 10/16/13   Entered: 10/16/13 15:49:56   Page 3 of 10

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

BN 1505779v1

not cured the material breach and has failed to turn over the rents that belong to the estate:

```
$ 7,392.00    Clark Construction for May and June 2013
$ 7,392.00    Clark Construction for July and August 2013
$24,750.00    Performance Contracting, Inc. rent October 2012 through September 2013
$ 6,769.90    Safe Parking and Budget 1/2 July and 1/2 August 2013
$ 3,600.00    Avila Trucking for July and August 2013
$ 7,650.00    Mujeres Unidas y Activas for July and August 2013
$57,553.90    Total[2]
```

PTV asserts that there is no material breach because it made "rightful deductions" from the estate's funds. A copy of PTV's responses, dated September 6, 2013 and September 27, 2103, are attached to the Chiang Declaration as <u>Exhibit B</u>. Although PTV promised a thorough explanation by September 16, 2013, it was never provided. Instead, PTV has attempted to justify its "rightful deductions" by providing invoices that show payment to the Matlock Law Group for legal fees, and a significant number of "cash" payments that conspicuously do not arise until after the Trustee's appointment in January 2013.

The significance of PTV's failure to turnover property of the estate and cash collateral of the Debtor's secured creditors is underscored by the use of property of the estate to pay for professionals whose employment the Court has never approved. Since the Trustee's appointment in January 2013, Capital Restructure Group has received over $10,000.00 of estate funds diverted through PTV. According to its website, Capital Restructure Group consists of "turnaround specialists, debt restructure consultants and chapter 11 advisors" who have "utilized the leverage afforded by their knowledge of the Federal Bankruptcy System to apply pressure to creditors to renegotiate the terms of … loans" and have "written hundreds of bankruptcy reorganization plans…."

Any glimmer of hope that PTV could operate as an independent manager of the estate's property providing fiduciary services has evaporated. As such, the Trustee notified PTV that its role as property manager terminated effective October 14, 2013, at which time Self Storage Management of California, an independent, third party successor management company, would take over management of the estate's property. The Trustee further notified PTV that it must not

---

[2] Performance Contracting, Inc. recently remitted $4,500 directly to the Trustee, reducing the total that PTV has failed to turn over from $59,803.90 to $55,303.90.

4
APPLICATION FOR ISSUANCE OF TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE
FOR PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES

BN 15057791v1

Case: 12-46534    Doc# 399    Filed: 10/16/13    Entered: 10/16/13 15:49:56    Page 4 of 10

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

4
APPLICATION FOR ISSUANCE OF TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE
FOR PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES
BN 15057791v1

Case: 12-46534    Doc# 399    Filed: 10/16/13    Entered: 10/16/13 15:49:56    Page 4 of 10

remove, alter, or destroy any property of the estate, including hardware, software, tenant files, and all documents associated with the operation of the estate's property. The office occupied by the former manager is where all the records of the estate's storage facility are kept, and it is important to preserve the records to preserve the estate's ownership interest in the storage facility.

### Termination of the Sham "Lease"

The Trustee has refuted, by unimpeached documentary evidence, the dubious nature of any assertion that the eleven buildings at the estate's property that are utilized as self-storage facilities are leased to PTV. The Trustee, without acknowledging the validity of the sham lease, notified PTV in writing on February 21, 2013 that its sham lease would be terminated. A copy of the February 21, 2013 letter to PTV is attached to the Chiang Declaration as <u>Exhibit C</u>. In response, PTV asserted that the sham lease, through a January 1, 2010 amendment, "was extended to January 1, 2015 … and (b) that <u>thereafter</u>, the lease agreement shall be cancellable only upon either party giving the other, six (6) months written notice of termination." A copy of the March 29, 2013 letter from PTV is attached to the Chiang Declaration as <u>Exhibit D</u>.

A copy of the sham lease and the January 1, 2010 amendment are attached to the Chiang Declaration as <u>Exhibit E</u>. The amendment states:

> Pacific Thomas Capital, as landlord and Pacific Trading Ventures, dba Safe Storage Management Company, as lessee, entered into a lease agreement on or about January 1, 2005. The lease agreement (attached as Exhibit A) was for a five year period. Subject to each and every term and condition contained in such January 5, 2005 lease agreement, the parties wish to extend such original lease agreement for an additional five-year term.
> All other provisions within the original lease agreement shall remain as stated, excepting, of course, the (a) expiration date which is being extended as provided herein, and (b) that <u>thereafter</u> the lease agreement shall be cancellable only upon either party giving to the other six (6) months written notice of termination. (emphasis supplied)

The January 1, 2010 amendment states that all terms of the sham lease remain as stated, except for an extension of the term to January 1, 2015, and that <u>thereafter</u>, a six month written notice of termination is required. Under Section 13 of the sham lease, the Trustee is permitted to terminate the sham lease on 30 days' notice. Nothing in the January 1, 2010 amendment affected the ability of the Trustee to terminate the sham lease on 30 days' notice prior to January 1, 2015. We have

5
APPLICATION FOR ISSUANCE OF TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES

Case: 12-46534   Doc# 399   Filed: 10/16/13   Entered: 10/16/13 15:49:56   Page 5 of 10

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

BN 15057791v1

yet to reach January 1, 2015; consequently, any purported six month termination notice requirement has yet to become effective. In addition, the Trustee in an abundance of caution notified PTV of the lease termination in February 2013, and more than six months have since passed.

On August 30, 2013 and on September 4, 2013, the Trustee notified PTV that it must surrender possession of the premises that are subject of the sham lease by October 7, 2013. True and correct copies of the Trustee's August 30, 2013 and September 4, 2013 correspondence are attached to the Chiang Declaration as <u>Exhibit F</u>. In response, in a September 6, 2013 letter, attached to the Chiang Declaration as <u>Exhibit G</u>, PTV's counsel asserts that the "lease goes through January 1, 2015" and that "[t]o the extent there is a problem with the lease extension the original lease automatically renewed itself and does not contain a six-month termination provision." The sham lease actually contains a 30 day termination provision under Section 13 that remains unaffected. The Trustee notified PTV that it must surrender possession of the premises subject to the sham lease by October 7, 2013.

<u>The Trustee's Efforts to Install Objective Management</u>

On October 14, 2013, Self Storage Management of California sought to begin managing the estate's property and tried to utilize a back conference room to start the transition. Within 45 minutes, Randall Whitney appeared and told the estate's property manager to leave the back conference room. To avoid any altercation, the estate's property manager left the back conference room and went outside, away from the customer entrance. Randall Whitney then approached them, and stated, "You do not want to f*** with me." Randall Whitney, who has stated that he has nothing to do with PTV, continues his interference with the rights of the estate to manage its own property. The estate's property manager then asked Jill Worsley for access to management records and was denied.

At no point did the Trustee or his agents breach the peace. Instead, they withdrew from the estate's property after Whitney, who has no standing in this matter, threatened them. Although the Management Agreement with PTV was terminated for cause, and the sham PTV lease was

6

APPLICATION FOR ISSUANCE OF TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES

BN 15057791v1

Case: 12-46534   Doc# 399   Filed: 10/16/13   Entered: 10/16/13 15:49:56   Page 6 of 10

terminated by contractual notice, Whitney and Worsley continue to violate the rights of the estate through their continued occupancy and interference, despite demands to vacate.

## II.

## ARGUMENT

### The Trustee is Entitled to a Temporary Restraining Order and Order to Show Cause re Preliminary Injunction to Prevent Further Harm to Estate Property.

The Trustee is entitled to the issuance of a temporary restraining order because he has established that he is likely to succeed on the merits, the estate is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor and that an injunction is in the public interest [Winter v. Natural Resources Defense Council, 555 U.S. 7, 129 S. Ct. 365, 374 (2008)]. In the Ninth Circuit, these requirements can be placed on a "sliding scale" such that a stronger showing of one element may offset a weaker showing of another [Alliance for the Wild Rockies v. Cottrell, 632 F. 3d 1045 (9th Cir. 2011)].

The Trustee submits that he has met each of the four requirements for the issuance of a temporary restraining order and preliminary injunction.

#### The Trustee is Likely to Succeed on the Merits.

The facts set forth above and in the accompanying Declaration of Tyler Julian, the Chiang Declaration and the documents attached thereto, establish that Randall Whitney, Jill Worsley and PTV are interfering with the Trustee's administration of the bankruptcy estate.

1. The Trustee terminated the management agreement for cause and with proper notice. PTV failed to cure the material breach and failed to turn over the rents that belong to the estate. Instead, estate funds were diverted to pay professionals whose employment the Court has never approved. The Trustee is likely to prevail, having shown that he has the right to install independent management to protect property of the estate.

2. PTV continues to defy its fiduciary obligations to the estate by failing timely to turn over the monthly rents and reports, and has for months been withholding property management information requested repeatedly by the Trustee, including police reports, insurance

7
APPLICATION FOR ISSUANCE OF TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES
Case: 12-46534   Doc# 399   Filed: 10/16/13   Entered: 10/16/13 15:49:56   Page 7 of 10

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
SAN FRANCISCO
BN 1505779v1

claim numbers and details relating to alleged break-ins at the property which occurred months ago, related repairs and funds used, and the source of those funds.

3. The Trustee terminated PTV's sham lease by contractual notice. The Trustee has provided evidence of the dubious nature of any assertion that the eleven buildings at the estate's property that are utilized as self-storage facilities are leased to PTV. The Trustee is likely to prevail, having now also shown that the sham lease has been terminated by contractual notice.

The Trustee has demonstrated that the management agreement with PTV was terminated for cause, and that the sham lease with PTV was terminated by contractual notice. Discredited management of the Debtor, found to be incapable of acting in a fiduciary capacity, cannot deny the estate the right to have its property managed by an independent management company where the sham lease and management agreement have terminated. Consequently, this factor weighs heavily in favor of the issuance of a temporary restraining order.

<u>The Estate is Likely to Suffer Irreparable Harm if Relief is Not Granted.</u>

Whitney's, Worsley's and PTV's continuing, unlawful presence at the estate's property has allowed them recently to:

(1) misappropriate $50,000 in rents of third-party tenants that belong to the estate;

(2) make unauthorized transfers of estate funds to professionals whose employment the Court has never approved;

(3) withhold property management information requested repeatedly by the Trustee; and

(4) threaten and intimidate potential purchasers who have toured the estate's property with the Court-approved real estate broker.

PTV has collected rent from third-party tenants, has refused to turn over rents that belong to the estate and has refused to turnover property-related reports. Estate funds are being diverted to pay professionals whose employment the Court has never approved to prepare Chapter 11 plans that can never be confirmed. Whitney continues to interfere with the Trustee's efforts to market the estate's property to present a sale for the Court's consideration.

If injunctive relief is not issued, the estate faces the likelihood of irreparable harm. The

8
APPLICATION FOR ISSUANCE OF TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES
BN 15057791v1
Case: 12-46534    Doc# 399    Filed: 10/16/13    Entered: 10/16/13 15:49:56    Page 8 of 10

Trustee will not have the resources to administer the estate, including paying property taxes and making adequate protection payments to secured creditors. The Trustee believes that a coordinated sale of the estate's property will yield the highest recovery for creditors. If the Trustee is not able to pay the property taxes, property-related expenses or adequate protection payments, a single secured creditor may decide to pursue a non-judicial foreclosure sale, to the detriment of all other creditors. Whitney's harassment of potential purchasers threatens the integrity of a marketing and sale process that the Court authorized.

<u>The Balances of Equity Tip Strongly in Favor of the Trustee.</u>

The Trustee seeks to protect the estate's assets and to have estate property managed by an objective and competent third-party management company. The only "harm" that Whitney, Worsley and PTV will "suffer" is their required adherence to their obligations under the law not to interfere with the Trustee's administration of the estate. The Trustee is proposing that all rents generated from estate property, including rents from the self-storage tenants, be set aside in an account controlled by the Trustee and used solely to pay property-related expenses and payments set forth in various cash collateral stipulations with the secured lenders, or as otherwise ordered by the Court.

<u>The Public Interest will not be Harmed by Issuance of the Injunctive Relief.</u>

The Trustee seeks to restrain only Whitney, Worsley and PTV, and their officers, agents, servants, employees, and other persons who are in active concert or participation with them from interfering with the Trustee's rights. If injunctive relief does not go beyond the parties, carrying with it the potential for consequences to the public, this factor in weighing the granting of injunctive relief is, at most, a neutral factor. <u>Stormans, Inc. v. Selecky</u>, 586 F. 3d. 1109, 1139 (9th Cir. 2009). Rather, the public interest is enhanced by requiring entities to adhere to the rule of law.

### III.

### **RELIEF REQUESTED**

The Trustee requests that the Court issue a temporary restraining order against Whitney,

9

APPLICATION FOR ISSUANCE OF TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES

Case: 12-46534   Doc# 399   Filed: 10/16/13   Entered: 10/16/13 15:49:56   Page 9 of 10

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

BN 1505779Iv1

Worsley and PTV, and their officers, agents, servants, employees, and other persons who are in active concert or participation with them from:

1. Interfering with the Trustee in: (i) accessing all property of the estate; (ii) taking possession of all property of the estate; (iii) operating all property of the estate; (iv) accessing all books and records, however and wherever stored, relating to the operation of estate property;
2. Interfering with any of the tenants or lessees of estate property;
3. Withholding any assets, rents, books and records relating to estate property;
4. Refusing to turnover all rents, issues and profits generated from estate property; and
5. Accessing any property of the estate, including, but not limited to, the estate's real property, and books and records relating to the estate's property.

The Trustee further requests that the Court set an order to show cause why a preliminary injunction should not be issued against Whitney, Worsley and PTV, and their officers, agents, servants, employees, and other persons who are in active concert or participation with them.

DATED: October 16, 2013

BUCHALTER NEMER
A Professional Corporation

By: /s/ Craig C. Chiang
    Craig C. Chiang
    Attorneys for Chapter 11 Trustee
    KYLE EVERETT