BUCHALTER NEMER
  ROBERT E. IZMIRIAN (SBN: 53805)
  CRAIG C. CHIANG (SBN: 209602)
A Professional Corporation
55 Second Street, Suite 1700
San Francisco, CA 94105-3493
Telephone: (415) 227-0900
Fax: (415) 227-0770
Email: rizmirian@buchalter.com; cchiang@buchalter.com

Attorneys for Chapter 11 Trustee
KYLE EVERETT

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| In re<br><br>PACIFIC THOMAS CORPORATION, dba PACIFIC THOMAS CAPITAL, dba SAFE STORAGE,<br><br>Debtor. | Case No. 12-46534 MEH<br><br>Chapter 11<br><br>**DECLARATION OF TYLER JULIAN IN SUPPORT OF EX PARTE APPLICATION FOR ISSUANCE OF TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION**<br><br>Date:<br>Time:<br>Place: Courtroom, Hon. M. Elaine Hammond<br>  1300 Clay Street-Courtroom 215<br>  Oakland, California |

I, Tyler Julian, declare as follows:

1. On January 16, 2013, the Bankruptcy Court entered its Order Approving Appointment of Chapter 11 Trustee, pursuant to which Kyle Everett became the duly appointed, qualified and acting Chapter 11 trustee (the "Trustee") of the bankruptcy estate of the Pacific Thomas Corporation dba Pacific Thomas Capital dba Safe Storage (the "Debtor").

2. I have been working with the Trustee in connection with the administration of the Debtor's estate.

3. As to the following facts, I know them to be true of my own knowledge, and if sworn as a witness, I could and would testify competently to the truth thereof.

4. On October 14, 2013, I arrived at the Safe Storage facility in Oakland, CA at or around 7:30 a.m. I met with Mark Yandow of Self Storage Management of California. This is the storage management company that the Trustee has executed a management agreement with since the termination of the management by PTV. His management team, a locksmith, and a security guard arrived by 8:00 a.m.

5. Welton Penny, the PTV security employee, arrived at or around 8:00 a.m. to open the office. I informed Mr. Penny that PTV no longer had any right to manage or to occupy estate property, and I introduced Mr. Yandow and his associates.

6. Shortly thereafter, Randall Whitney entered the premises through the back door of the warehouse. I told Mr. Whitney that his presence was not welcome. Mr. Whitney responded that he was a customer.

7. Mr. Whitney informed me that I was infringing on certain leasehold interests. Mr. Whitney advised me that he would call the sheriff if I did not leave. Mr. Whitney then advised Mr. Penny to call the police.

8. A parking tenant in need of his vehicle entered the office. Mr. Whitney shouted across the office as he insisted that I had removed a key to the gated parking lot at 2901 E 12th Street (the "PCI Parking Lot"). At no point during my visit did I take possession of that key or anything whatsoever from the Safe Storage office.

9. An Oakland police officer arrived thereafter. He spoke with Mr. Penny and Mr. Whitney. I then spoke with the officer alone. I showed the officer the signed order of the court appointing Kyle Everett as Trustee of Pacific Thomas Corporation. I showed the officer a signed letter from Kyle Everett authorizing me to act on his behalf on the Safe Storage premises. I told the officer that as a landlord, I have the right to complete access of the properties. The officer advised that a Sheriff intervene.

10. Shortly thereafter, I called Mr. Everett, Robert Izmirian, and Craig Chiang to discuss a potential visit from the Sheriff. During this call, Mr. Whitney approached me and repeated his concerns regarding property management and the Trustee's actions. I asked Mr. Whitney if he would voice those concerns to the parties on the phone, to which Mr. Whitney

2
DECLARATION OF TYLER JULIAN

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

BN 15075659v1

firmly responded, "I don't want to talk to anyone."

11. Afterwards, while initiating a phone call with Mr. Everett, Mr. Whitney demanded a key to the front office. I provided a key to Mr. Penny.

12. Mr. Penny helped customers while I waited for him to finish. I waited inside the office with Mr. Yandow, one of Mr. Yandow's managers, and the security guard.

13. Shortly thereafter, Jill Worsley arrived. Ms. Worsley told me that she had received the letter terminating the management agreement and that she believed that the defaults had been cured except for the Performance Contracting, Inc. payments. Ms. Worsley told me that I was not allowed access to any documents, computers, or the premises.

14. A deputy arrived. I explained the matter to the deputy.

15. The deputy told me that Ms. Worsley requested return of the previous front door lock. I told the officer that the locksmith had kept the lock, and that the lock could be returned. The deputy walked me through the office to retrieve my jacket and escorted me out of the office.

16. I left the premises at or around 10:45 a.m.

17. At no time did I, or anyone else accompanying me, breach the peace or threaten anyone.

I declare under penalty of perjury that the above statements are true and that if called as a witness I could and would testify to their truthfulness. This declaration is executed on the 16th day of October 2013 in San Francisco, California.

      /s/ Tyler Julian
      TYLER JULIAN