BUCHALTER NEMER
 ROBERT E. IZMIRIAN (SBN: 53805)
 MIA S. BLACKLER (SBN: 188112)
 CRAIG C. CHIANG (SBN: 209602)
A Professional Corporation
55 Second Street, Suite 1700
San Francisco, CA 94105-3493
Telephone: (415) 227-0900
Fax: (415) 227-0770
Email: rizmirian@buchalter.com; cchiang@buchalter.com

Attorneys for Chapter 11 Trustee
KYLE EVERETT

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND DIVISION

| | |
|---|---|
| In re<br><br>PACIFIC THOMAS CORPORATION, dba PACIFIC THOMAS CAPITAL, dba SAFE STORAGE,<br><br>    Debtor. | Case No. 12-46534 MEH<br><br>Chapter 11<br><br>**MOTION FOR ORDER APPROVING SALE OF PROPERTY OF THE ESTATE; MEMORANDUM OF AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: February 13, 2014<br>Time: 10:30 a.m.<br>Place: Courtroom 215<br>       Honorable M. Elaine Hammond<br>       1300 Clay Street, 2nd Floor<br>       Oakland, California<br><br>Proposed Deadline to Submit Overbids:<br>Date: February 5, 2014<br><br>Proposed Auction:<br>Date: February 10, 2014 |

Kyle Everett, the duly appointed, qualified and acting Chapter 11 trustee (the "Trustee") of the bankruptcy estate ("Estate") of Pacific Thomas Corporation dba Pacific Thomas Capital dba Safe Storage ("Debtor") moves this Court for entry of an order approving the sale of the Estate's real properties and improvements commonly described as 2615 East 12th Street, 1113-1115 29th Avenue, 2783 East 12th Street, 2801 East 12th Street, 1111 29th Avenue, in Oakland,

1

**MOTION AND MEMORANDUM OF AUTHORITIES FOR ORDER APPROVING SALE OF PROPERTY OF THE ESTATE; MEMORANDUM OF AUTHORITIES IN SUPPORT THEREOF**
BN 15406753v2

Case: 12-46534    Doc# 445    Filed: 12/24/13    Entered: 12/24/13 15:16:39    Page 1 of 14

California (collectively, the "Property").

This motion (the "Motion") is made pursuant to 11 U.S.C. §§ 105(a), 363 and Federal Rules of Bankruptcy Procedure 2002, 6004 and 9013. This Motion is supported by the Declaration of Kyle Everett in Support of Motion for Order Approving Sale of Property of the Estate and will be based on such other evidence and argument as may be presented at the hearing on the Motion.

## RELIEF SOUGHT

By way of the Motion, the Trustee seeks an order authorizing the Trustee to sell the Property to (1) a joint venture to be formed by Barker Pacific Group ("BPG") and Artemis Real Estate Partners ("Artemis") (together, the "Buyer") pursuant to the Purchase and Sale Agreement and Joint Escrow Instructions (the "BPG Agreement") between the Buyer and the Trustee, or (2) an alternate purchaser that is selected by the Trustee following an auction to take place on February 10, 2014 if the Trustee receives a qualified overbid by February 5, 2014. A copy of the BPG Agreement is attached as Exhibit A to the Declaration of Kyle Everett filed in support of the Motion. The Motion also seeks approval of certain sales procedures, including the right to pay a breakup fee to the Buyer.

The proposed sale is the result of efforts by the Trustee and California Capital & Investment Group, the Court-approved broker ("Broker"), to market and sell the Property. The Trustee does not seek to sell the Property without the consent of Bank of the West, Private Capital Investment, Private Mortgage Fund, and Summit Bank (the "Secured Creditors"), and has obtained all of the necessary consents, or anticipates obtaining all of the necessary consents prior to the closing of the sale. The Court previously entered its Order Granting Chapter 11 Trustee Kyle Everett's Motion to Sell Real Property Free and Clear of Certain Interest [Docket No. 316], authorizing the Trustee to sell the Property free and clear of any leasehold and possessory interests of Pacific Trading Ventures ("PTV").

The Motion is based upon this Motion, the notice of the Motion, the Declaration of Kyle Everett filed herewith, all papers and pleadings filed herein, and such evidence, testimony and

2

MOTION AND MEMORANDUM OF AUTHORITIES FOR ORDER APPROVING SALE OF PROPERTY OF THE ESTATE; MEMORANDUM OF AUTHORITIES IN SUPPORT THEREOF

Case: 12-46534   Doc# 445   Filed: 12/24/13   Entered: 12/24/13 15:16:39   Page 2 of 14

arguments at the hearing. Any opposition to the requested relief shall be filed and served no less than 7 days before February 13, 2014, the scheduled hearing date for the Motion.

**BACKGROUND**

1. The Debtor filed its voluntary petition for relief pursuant to Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") on August 6, 2012.

2. On January 17, 2013, the Court entered its Order Approving Appointment of the Trustee.

3. The Trustee, through his efforts and the efforts of the Broker, has actively marketed the Property to potential purchasers since approximately May of 2013, following the Court's approval of the Broker's retention.

4. On or about December 24, 2013, the Trustee and the Buyer entered into the BPG Agreement. The BPG Agreement provides that the Trustee, on behalf of the Estate, will sell the Property to Buyer for Thirteen Million Seven Hundred Fifty Thousand Dollars ($13,750,000).

5. The proposed sale of the Property allows the Estate to realize the market value for the Property. The Trustee, with the assistance of the Broker, engaged in a thorough and diligent marketing campaign to identify potential buyers for the Property. Over the past seven months, the Trustee, with the assistance of the Broker, has identified a number of potential purchasers, provided them with due diligence materials, and ultimately selected the Buyer.

6. The Broker formulated a complete marketing plan for the sale of the Property following the Court's approval of its employment. The efforts of the Broker yielded several offers that the Trustee considered. In addition, the Broker performed the following tasks:

    a. Listed the Property in the Multiple Listing Service, co star, and Loopnet;

    b. Contacted over 75 prospective purchasers;

    c. Conversed with over 50 parties;

    d. Conferred with the Trustee to follow up on potential purchasers;

    e. Sent marketing materials and relevant property information to 25 parties;

    f. Solicited 5 purchase offers;

3
MOTION AND MEMORANDUM OF AUTHORITIES FOR ORDER APPROVING SALE OF PROPERTY OF THE ESTATE; MEMORANDUM OF AUTHORITIES IN SUPPORT THEREOF
BN 15406753v2

Case: 12-46534   Doc# 445   Filed: 12/24/13   Entered: 12/24/13 15:16:39   Page 3 of 14

g. Forwarded offers to the Trustee with analysis of each offer; and

h. Interfaced with the Trustee and counsel to prepare detailed counter-offers.

7. Because the Trustee intends to sell the Property with the consent of the Secured Creditors, the Trustee maintained communication with them so that each can provide input on the offers that the Trustee considered.

## PROPOSED OVERBID AND AUCTION PROCEDURES

8. The Trustee seeks approval of the sale of the Property to Buyer. In order that the sale process will not be delayed by last minute offers, the Trustee established a competing bid procedure concerning bids by any other prospective buyer. The Trustee submits that the competing bid procedure described is reasonable and necessary under the circumstances of this case, facilitates the consummation of an orderly sale, and maximizes the value of the Property, all for the benefit of the Estate's creditors.

9. The bidding procedures that the Trustee will implement are as follows:

<u>Initial Overbid</u>: The initial overbid amount is required to be not less than Two Hundred Thousand Dollars ($200,000) greater than the current purchase price of $13,750,000.

<u>Subsequent Qualified Overbid</u>: If there is a qualified overbid, then subsequent overbids are to be in increments of no less than One Hundred Thousand Dollars ($100,000).

<u>Qualified Bids</u>: In order to participate in the overbid auction, if any, a party must submit a qualified bid to the Trustee ("Qualified Bid") to become a qualified bidder. In order to be a Qualified Bid, a party must submit a written bid prior to the bid deadline in a form not substantially different than the BPG Agreement and such written bid shall not contain a financing, due diligence or any other unsatisfied contingency not contained in the BPG Agreement. All due diligence must be complete within a timeframe congruent to the due diligence timeframe set forth in the BPG Agreement. In addition, if the Buyer does not request an extension of the Due Diligence Expiration Date (as that term is defined in the BPG Agreement) under the terms of the BPG Agreement, then no Qualified Bid will be afforded any similar extension.

In addition, the bidder shall provide a deposit, in immediately available funds, to the

4

**MOTION AND MEMORANDUM OF AUTHORITIES FOR ORDER APPROVING SALE OF PROPERTY OF THE ESTATE; MEMORANDUM OF AUTHORITIES IN SUPPORT THEREOF**

Case: 12-46534   Doc# 445   Filed: 12/24/13   Entered: 12/24/13 15:16:39   Page 4 of 14

Trustee in the amount of Five Hundred Thousand Dollars ($500,000), which shall be non-refundable unless such bidder is not the ultimate winning bidder of the Property.

Any competing bidder will not be entitled to request a breakup fee, termination fee, expense reimbursement or any similar type of payment.

Any competing bidder shall include with its bid, evidence of authorization and approval from such bidder's governing body as well as evidence, subject to the Trustee's sole discretion, of the financial ability to close the purchase, including all subsequent qualified overbids.

10. The competing bid must be in writing and comply with the terms set forth above and be addressed to the following persons:

<u>Trustee</u>:
Kyle Everett, Trustee
Development Specialists, Inc.
235 Pine Street, Suite 1150
San Francisco, CA 94104
Facsimile: 415.981.2718
Email: keverett@dsi.biz

Brian Collins, SIOR
California Capital & Investment Group
300 Frank H. Ogawa Plaza, Suite 340
Oakland, CA 94612
Telephone: 510.463.6356
Facsimile:
Email: bcollins@californiagroup.com

<u>Qualified Overbid Deadline</u>: In addition to complying with the terms above, any overbid must be submitted so that it is **received** by the Trustee and the Broker no later than **February 5, 2014**.

Upon receipt of any Qualified Bid, the Trustee may provide a copy of the Qualified Bid, which will include only the proposed purchase price, terms, and deviations from the BPG Agreement (but not financial performance information), to Buyer, Summit Bank, Bank of the West, Private Mortgage Fund and Private Capital Investments, through counsel, if any, and if requested, to the Office of the United States Trustee.

11. If at least one Qualified Bid is timely submitted, then an auction will be held on **February 10, 2014** at a time and location to be provided to the Buyer and the parties who made Qualified Bids.

12. Prior to receipt by a prospective bidder of any non-public information (including, without limitation, business and financial non-public information) from the Trustee, prospective bidders will be required to execute an appropriate non-disclosure or confidentiality agreement.

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
SAN FRANCISCO
BN 15406753v2

13. Upon execution of an appropriate non-disclosure or confidentiality agreement, the Trustee is authorized to provide any prospective bidder with access to non-public information regarding the Property.

14. No Qualified Bidder shall be entitled to any expense reimbursement, breakup, or termination or similar fee or payment.

15. The Trustee reserves the right to adopt additional rules for bidding at the auction that, in his judgment, will better promote the goals of the bidding process.

16. Prior to the auction, if any, the Trustee shall review any bids and determine, at his discretion, which bids constitute Qualified Bids for the purpose of participating in the auction on the basis of among other things, the following: (a) the amount of the Qualified Bid(s), (b) the form of the proposed transaction, (c) the number, type and nature of any changes from the BPG Agreement, (d) the extent to which such modifications are likely to delay closing of the sale and the cost to the Estate of such modifications or delay, (e) the likelihood of the bidder's ability to close a transaction and the timing thereof, and (f) the net value provided to the Estate, taking into account the Buyer's right to the breakup fee, and such other aspects as determined by the Trustee, and shall submit the highest or otherwise best bid for approval by the Court pursuant to § 363 of the Bankruptcy Code.

17. In the event the Trustee is unable to obtain Court approval of the Motion, or otherwise tender performance to any bidder, the sole remedy of any such bidder shall be the return of its deposit.

18. The Trustee also seeks approval of certain other provisions of the BPG Agreement, including the payment of a breakup fee and expense reimbursement to the Buyer. Pursuant to the BPG Agreement, the Buyer is entitled to receive a breakup fee of 0.5% of the purchase price [Sixty Eight Thousand Seven Hundred Fifty Dollars ($68,750) at a purchase price of $13,750,000] and commercially reasonable and actual payments to third parties to conduct due diligence in connection with the Property. The Buyer would only be entitled to the foregoing in the event that another qualified bidder, and not Buyer, is the successful purchaser of the Property

6

**MOTION AND MEMORANDUM OF AUTHORITIES FOR ORDER APPROVING SALE OF PROPERTY OF THE ESTATE; MEMORANDUM OF AUTHORITIES IN SUPPORT THEREOF**

Case: 12-46534   Doc# 445   Filed: 12/24/13   Entered: 12/24/13 15:16:39   Page 6 of 14

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
SAN FRANCISCO
BN 15406753v2

or if the Trustee defaulted on his obligations under an approved agreement between the Trustee and the Buyer. The breakup fee and expense reimbursement, assuming that the Buyer is not the successful purchaser, would be paid solely from the sale proceeds.

19. The Trustee believes that the foregoing Bidding Procedures and the breakup fee are reasonable and appropriately structured to ensure that the Estate will obtain the best offer for the Property. The proposed overbid procedures allow the Estate to maximize the value of the Property while also ensuring that (a) only legitimate overbids are received from entities interested in purchasing the Property; and (b) any overbid is sufficient to cover the breakup fee required to be paid to the Buyer if an overbid is accepted and the sale is consummated. The Trustee further believes, in his reasoned business judgment, that the proposed sale (subject to the Bidding Procedures) is in the best interests of the Estate and its creditors because it will maximize the value of the Property.

## ARGUMENT

**The Proposed Sale Should be Approved as Fair, Reasonable and in the Best Interests of the Estate.**

20. Bankruptcy Code section 363(b) and Rule 6004 of the Federal Rules of Bankruptcy Procedure permit a trustee to sell assets of the estate outside of its ordinary course of business, after notice and a hearing. See, e.g., In re Qintex Entertainment, Inc., 950 F.2d 1492, 1495 (9th Cir. 1991). In accordance with Bankruptcy Rule 6004(f)(1), sales of property outside of the ordinary course of business may be by private sale or by public auction. See Fed. R. Bankr. P. 6004(f)(1).

21. Although section 363(b) does not provide an express standard for determining whether the court should approve a particular proposed sale, courts have examined (i) whether the proposed transaction has a valid business justification or good business reason, (ii) whether the sale is the result of good faith negotiations, and (iii) whether the proposed purchase price is fair and reasonable. *See, e.g.*, 240 North Brand Partners, Ltd. v. Colony GFP Partners, L.P., (In re 240 North Brand Partners, Ltd.), 200 B.R. 653, 659 (9th Cir. B.A.P. 1996); In re Abbotts Dairies

7

**MOTION AND MEMORANDUM OF AUTHORITIES FOR ORDER APPROVING SALE OF PROPERTY OF THE ESTATE; MEMORANDUM OF AUTHORITIES IN SUPPORT THEREOF**

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

BN 15406753v2

Case: 12-46534   Doc# 445   Filed: 12/24/13   Entered: 12/24/13 15:16:39   Page 7 of 14

of Agreement., Inc., 788 F.2d 143, 146, 149-50 (3rd Cir. 1986); Travelers Ins. Co. v. Plaza Family Partnership (In re Plaza Family Partnership), 95 B.R. 166 (Bankr. E.D. Cal. 1989). All three of these factors are satisfied here.

**There Is A Valid Business Justification and Good Business Reason To Support the Sale.**

22. The Ninth Circuit Bankruptcy Appellate Panel in Walters v. Sunwest Bank (In re Walters), 83 B.R. 14, 15-16 (9th Cir. B.A.P. 1988), applied a flexible, case-by-case test to determine whether a sound business purpose justifies a proposed sale under section 363(b). Adopting the reasoning of the Fifth Circuit in Institutional Creditors of Continental Air Lines, Inc. v. Continental Air Lines, Inc. (In re Continental Air Lines, Inc.), 780 F.2d 1223, 1226 (5th Cir. 1986) and the Second Circuit in In re Lionel Corp., 722 F.2d 1063, 1071 (2nd Cir. 1983), the Panel noted that whether a proffered justification is sufficient will depend on the specifics of the case. The Court should consider all salient factors pertaining to the case and act to further the diverse interests of the estate and creditors alike. Id.

23. The facts pertaining to this sale amply justify and substantiate the Trustee's business judgment that the proposed sale is in the best interest of the Estate. As supported by the Declaration of Kyle Everett, the offer by the Buyer allows the estate to realize the current market value for the Property. The Trustee has marketed extensively the Property to potential purchasers. The process will provide for the highest price under the circumstances. Moreover, the disposition of the Property as proposed herein affords additional assurance that the highest and best price will be realized for the Estate.

24. The courts have long recognized that where a sale by a trustee is made in good faith and upon a reasonable basis - as the proposed sale is here - "[t]he court will not entertain objections to a trustee's conduct of the estate." In re Curlew Valley Assocs., 14 B.R. 506, 513-514 (Bankr. D. Utah 1981). *See also* In re Southern Biotech, Inc., 37 B.R. 318, 322-23 (Bankr. M.D. Fla. 1983). This is because it is the "Trustee, not the Court, [that] is selling [the] property." In re Gulf States Steel, Inc., 285 B.R. 497, 516 (Bankr. N.D. Ala. 2002). In accordance with Walters and the foregoing cases, the Trustee submits that there is valid business justification and

8

MOTION AND MEMORANDUM OF AUTHORITIES FOR ORDER APPROVING SALE OF PROPERTY OF THE ESTATE; MEMORANDUM OF AUTHORITIES IN SUPPORT THEREOF

BN 15406753v2

Case: 12-46534    Doc# 445    Filed: 12/24/13    Entered: 12/24/13 15:16:39    Page 8 of 14

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

good business reason for the proposed sale on the terms contained in the BPG Agreement. The Court should approve the sale and allow the Trustee to move forward expeditiously.

25. While the Ninth Circuit does not require a finding of good faith be made by the Bankruptcy Court at the time of the sale, it is clear under the circumstances of this case that the sale of the Property to the Buyer is proposed in good faith. The BPG Agreement was negotiated by the Trustee and the Buyer at arm's-length and contains no special treatment for the Trustee, the Estate or Buyer. Full disclosure of the terms of the proposed sale transaction has been provided to creditors.[1]

**The Purchase Price is Fair and Reasonable.**

26. The Trustee believes that the proposed sale will result in the highest purchase price for the Property. The Trustee actively marketed the Property and the BPG Agreement represents the best deal available. Just as the Ninth Circuit acknowledged in Arnold & Baker, the precise value of the assets being sold will only be recognized at - and as a result of - the sale of the Property. In re Arnold & Baker Farms, 85 F. 3d 1415, 1421 (9th Cir. 1996).

27. Finally, courts have recognized that a trustee is entitled to "great judicial deference' in deciding which bid to accept as the best and highest bid." Gulf States Steel, supra, 285 B.R. at 516 (internal citation omitted). Here, too, the Trustee is entitled to deference in determining not only the manner in which the Property is to be sold, but how the value of the Property is to be maximized. Here, the Trustee believes that Buyer's offer satisfies the requirement that the price paid for the Property be fair and reasonable.

**The Proposed Sale Satisfies the Requirements of Bankruptcy Code Section 363(f) for the Sale of the Property**

28. Pursuant to Bankruptcy Code Section 363(f)(2), the sale will be free and clear of all the encumbrances of the Secured Parties, only with their consent, and with the Secured Parties to be paid agreed sums in connection with the closing. In addition, the Court has previously entered its Order Granting Chapter 11 Trustee Kyle Everett's Motion to Sell Real Property Free

---

[1] Buchalter Nemer has represented and currently represents the BPG in other unrelated matters. No attorney at Buchalter Nemer currently working on behalf of BPG in other unrelated matters has provided any services to the Trustee in the case.

9

MOTION AND MEMORANDUM OF AUTHORITIES FOR ORDER APPROVING SALE OF PROPERTY OF THE ESTATE; MEMORANDUM OF AUTHORITIES IN SUPPORT THEREOF

BN 15406753v2

Case: 12-46534   Doc# 445   Filed: 12/24/13   Entered: 12/24/13 15:16:39   Page 9 of 14

and Clear of Certain Interest [Docket No. 316], authorizing the Trustee to sell the Property free and clear of any leasehold and possessory interests of Pacific Trading Ventures ("PTV") pursuant to Bankruptcy Code Section 363(f)(4). The sale of the Property to the Buyer is free and clear of any leasehold and possessory interests of PTV pursuant to the Court's Order Granting Chapter 11 Trustee Kyle Everett's Motion to Sell Real Property Free and Clear of Certain Interest.

**The Court Should Approve the Proposed Sale Because the Procedures Are Fair, Reasonable and in the Best Interests of the Estate**

29. Bankruptcy Code § 363(b) and Rule 6004 of the Federal Rules of Bankruptcy Procedure authorize a trustee to sell assets of the estate other than in the ordinary course of business, after notice and a hearing. *See, e.g., In re Quintex Entertainment, Inc., et al.* 950 F.2d 1492, 1495 (9th Cir. 1991). In accordance with Bankruptcy Rule 6004(f)(1), sales of property outside of the ordinary course of business may be by private sale or public auction. *See* Fed. R. Bankr. P. 6004(f)(1). Here, the Trustee believes that his ability to select the highest and best bidder at an auction enhances and benefits the marketing process by providing a motivation for bidders to submit a qualified bid with a high market value. Further, the Property has been extensively marketed by both the Trustee and the Broker for a substantial period of time, further assuring the Estate is receiving the best price possible for the Property.

30. Sellers of assets often employ bidding protections in order to encourage the making of bids. Breakup fees and other arrangements, such as those proposed here, are "important tools to encourage bidding and to maximize the value of the debtor's assets." In re Integrated Resources, Inc., 147 B.R. 650, 659 (S.D.N.Y. 1992).

31. Historically, bankruptcy courts have approved bidding incentives similar to the breakup fee under the "business judgment rule," which proscribes judicial second-guessing of the actions of a corporation's board of directors taken in good faith and in the exercise of honest judgment. *See, e.g*., In re 995 Fifth Ave. Assocs.. L.P., 96 B.R. 24, 28 (Bankr. S.D.N.Y. 1989) (bidding incentives may "be legitimately necessary to convince a 'white knight' to enter the bidding by providing some form of compensation for the risks it is undertaking") (citation

10

**MOTION AND MEMORANDUM OF AUTHORITIES FOR ORDER APPROVING SALE OF PROPERTY OF THE ESTATE; MEMORANDUM OF AUTHORITIES IN SUPPORT THEREOF**

Case: 12-46534    Doc# 445    Filed: 12/24/13    Entered: 12/24/13 15:16:39    Page 10 of 14

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

BN 15406753v2

omitted); *see also* <u>In re Integrated Res., Inc.</u>, 147 B.R. 650, 657-58 (S.D.N.Y. 1992) (establishing three basic factors for determining whether to permit break-up fees in bankruptcy: whether "the relationship of the parties who negotiated the break-up fee [is] tainted by self-dealing or manipulation," whether the "fee hamper[s], rather than encourage[s], bidding," and whether "the amount of the fee [is] unreasonable relative to purchase price"), appeal dismissed on jurisdictional ground, 3 F.3d 49 (2nd Cir. 1993).

32. It has become increasingly common in Section 363 sales of significant portions of an estate's assets for the prospective buyer to demand a breakup fee or other protection in the event that the sale is not consummated." <u>In re Bethlehem Steel Corp.</u>, 2003 U.S. Dist. LEXIS 12909 (S.D.N.Y. 2003), *quoting 3 Collier on Bankruptcy* § 363.03 [7] (15th ed. 2002). Courts which limit or deny such breakup fees do so not because they lack statutory authority, but because they find the fee or amount is not in the best interests of the various parties and/or the estate. *Id.*; *see also* <u>In re APP Plus, Inc.</u>, 223, B.R. 870 (Bankr. E.D.N.Y. 1998); <u>Calpine Corp. v. O'Brien Env'tl. Energy, Inc. (In re O'Brien Env'tl. Energy Inc.)</u>, 181 F.3d 527 (3rd Cir. 1999).

33. The Trustee believes that the breakup fee of $68,750, an amount equal to 0.5% of the Purchase Price, is reasonable given the amount of the Purchase Price, the benefits to the Estate of having a definitive agreement and the risk to the Buyer that a third-party offer ultimately may be accepted. The Trustee further believes that the breakup fee and bidding procedures are necessary to preserve and enhance the value of the Estate.

34. The breakup fee is the product of good faith, arm's length negotiations between the Trustee and the Buyer. Other than the BPG Agreement, there is no material relationship between the Trustee, on the one hand, and the Buyer, BPG, or Artemis, on the other hand. Neither the Trustee nor any director or officer of Development Specialists, Inc. is or was a director or officer of the Buyer, BPG or Artemis, or vice versa.

35. The breakup fee is fair and reasonable in amount, particularly in view of the Buyer's efforts to date, and the risks associated with being a "stalking horse." The breakup fee benefits the Estate because it assists in maximizing the value to the Estate by facilitating a sale of

11

**MOTION AND MEMORANDUM OF AUTHORITIES FOR ORDER APPROVING SALE OF PROPERTY OF THE ESTATE; MEMORANDUM OF AUTHORITIES IN SUPPORT THEREOF**

Case: 12-46534   Doc# 445   Filed: 12/24/13   Entered: 12/24/13 15:16:39   Page 11 of 14

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

BN 15406753v2

the Property. See In re O'Brien Env'tl. Energy Inc., 181 F.3d 527, 537 (3rd Cir. 1999) (finding benefit to the estate where "assurance of a breakup fee promoted more competitive bidding").

36. The Trustee does not believe that the amount of the breakup fee is so substantial so as to chill other potential bidders from submitting competing bids. Rather, the amount is reasonable compared to the total consideration under the BPG Agreement and will only be paid if the Property is sold to a competing bidder necessarily providing greater value for the Property. Even in the absence of the breakup fee, an incremental amount would be appropriate to assure that the Trustee is dealing with only serious bidders with the financial ability to complete a transaction without delay.

37. The breakup fee has "induc[ed] a bid that otherwise would not have been made and without which bidding would [be] limited." See In re O'Brien Env'tl. Energy, Inc., 181 F.3d at 537. Similarly, the Buyer's offer provides a minimum bid on which other bidders can rely, thereby "increasing the likelihood that the price at which the [assets will be] sold will reflect [their] true worth." Id. Finally, the mere existence of the breakup fee permits the Trustee to insist that competing bids for the Property be sufficiently higher than that being offered by the Buyer, a clear benefit to the Estate.

38. Protection of opening bidders is the price paid for the Estate's enjoyment of the best of both worlds — the assurance of a contractually bound purchase at a fair price, on the one hand, and at the same time the potential of an even better bid with the corresponding enhanced benefit to the Estate. The Trustee's ability to offer the breakup fee enables it to ensure the sale of the Property to a committed bidder. Under the circumstances, the Trustee believes the breakup fee is reasonable and should be approved.

**Waiver of Federal Rules of Bankruptcy Procedure 6004(g) is Appropriate in this Case.**

As a final matter, the Trustee requests that the stay imposed by Federal Rules of Bankruptcy Procedure 6004(h) upon orders authorizing the use, sale or lease of property be waived under the circumstances of this case. It is in the interest of the Estate's creditors and Estate that the sale closes. The Trustee has served the sale notice upon all of its creditors, interest

12

MOTION AND MEMORANDUM OF AUTHORITIES FOR ORDER APPROVING SALE OF PROPERTY OF THE ESTATE; MEMORANDUM OF AUTHORITIES IN SUPPORT THEREOF

Case: 12-46534   Doc# 445   Filed: 12/24/13   Entered: 12/24/13 15:16:39   Page 12 of 14

BN 15406753v2

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

holders and other parties-in-interest, and therefore any person having any objection to the Motion has been afforded a reasonable opportunity to voice any objections or concerns.

Accordingly, the Trustee is aware of no prejudice that would be caused by the Court's waiver of Federal Rules of Bankruptcy Procedure 6004(h).

**WHEREFORE**, the Trustee respectfully requests that the Court enter its order as follows:

A. Approving the Motion and authorizing the Trustee to consummate and carry out the transactions described in the Motion and either the BPG Agreement or the sale agreement with the ultimate buyer;

B. Approving the sale of the Property to the Buyer, or the ultimate buyer, free and clear of all encumbrances with the consent of the Secured Parties pursuant to 11 U.S.C. 363(f);

C. Finding that the terms of the sale are fair and reasonable and the Buyer, or the ultimate buyer, is paying reasonably equivalent value for the Property;

D. Approving the BPG Agreement or the sale agreement with the ultimate buyer;

E. Waiving the provisions of Federal Rules of Bankruptcy Procedure 6004(h) under the circumstances;

F. Finding that all interested parties, potential bidders and parties who hold liens, claims or interests in the Property have received proper and adequate notice of the sale in accordance with the Bankruptcy Code and applicable orders of the Bankruptcy Court;

G. Authorizing the Trustee to consummate the transactions contemplated under the BPG Agreement, or the sale agreement with the ultimate buyer, and finding that his decision to do so is a proper exercise of his business judgment and fiduciary duties;

H. Finding that the transfer of the Property to Buyer, or the ultimate buyer, will be a legal, valid, and effective transfer of the Property, and will vest Buyer, or the ultimate buyer, with good, valid and marketable title to the Property free and clear of all liens, claims and interests, including any such liens, claims or interests that purport to give to any party a right or option to effect any forfeiture, modification, right of first refusal, or termination of the Trustee's or the Estate's interest in the Property, or any similar rights;

13

**MOTION AND MEMORANDUM OF AUTHORITIES FOR ORDER APPROVING SALE OF PROPERTY OF THE ESTATE; MEMORANDUM OF AUTHORITIES IN SUPPORT THEREOF**

Case: 12-46534    Doc# 445    Filed: 12/24/13    Entered: 12/24/13 15:16:39    Page 13 of 14

I. Finding that the Buyer, or the ultimate buyer, is a good faith purchaser entitled to the protections afforded by 11 U.S.C. § 363(m) such that the reversal or modification on appeal of any Order granting the Motion shall not affect the validity of the sale of the Property as contemplated hereunder, negotiations have been fair and arm's-length and no party has engaged in any conduct that would cause the sale to be affected under 11 U.S.C. § 363(n);

J. Finding that the Buyer, or the ultimate buyer, shall have no obligations under any liabilities of the Trustee or the Estate other than their obligations under the BPG Agreement, or the sale agreement between the Trustee and the ultimate buyer;

K. Approving the proposed breakup fee to Buyer if the Property is sold to a competing bidder; and

L. For such other and further relief as the Court deems appropriate.

DATED: December 24, 2013

BUCHALTER NEMER
A Professional Corporation

By: /s/ Craig C. Chiang
Craig C. Chiang
Attorneys for Chapter 11 Trustee
KYLE EVERETT

14

**MOTION AND MEMORANDUM OF AUTHORITIES FOR ORDER APPROVING SALE OF PROPERTY OF THE ESTATE; MEMORANDUM OF AUTHORITIES IN SUPPORT THEREOF**

Case: 12-46534    Doc# 445    Filed: 12/24/13    Entered: 12/24/13 15:16:39    Page 14 of 14