**Matlock Law Group, P.C.**
Anne-Leith W. Matlock, SBN 244351
K. Brian Matlock, SBN 243812
1485 Treat Blvd., Suite 200
Walnut Creek, CA 94597
Tel.:   (925) 944-7131
Fax:    (925) 944-7138
e-mail: anne-leith@matlocklawgroup.com

Attorneys for Debtor,
PACIFIC THOMAS CORPORATION.

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA
# OAKLAND DIVISION

| | |
|---|---|
| IN RE:<br><br>PACIFIC THOMAS CORPORATION,<br><br>Debtor. | Case No.: 12-46534<br><br>Chapter 11<br><br>**DEBTOR'S AMENDED MOTION FOR AUTHORITY TO OBTAIN POST-PETITION FINANCING AND MEMORANDUM IN SUPPORT THEREOF**<br><br>Date: August 6, 2014<br>Time: 10:30 a.m.<br>Courtroom: 215<br>Judge: Hon. M. Elaine Hammond |

Pacific Thomas Corporation, the Debtor in the above-referenced Chapter 11 case, moves this Court for entry of an order authorizing the Debtor to obtain post-petition financing from Eagle Group Finance ("Lender") to implement and fund its Fifth Amended Disclosure Statement and Plan, or as further amended, (hereinafter the "Financing Motion"). In support of the Financing Motion, the Debtor respectfully represents as follows:

//

//

//

# SUMMARY OF RELIEF REQUESTED AND TERMS OF AND CONDITIONS TO THE CHAPTER 11 FINANCING

1. By its Financing Motion, Debtor seeks authority to secure post-petition financing to pay off certain secured creditors to effectuate and allow for a successful reorganization through Debtor's and obtain sufficient funds to implement its Chapter 11 Plan. The financing is conditioned upon the filing of a revised Fifth Amended Disclosure Statement being approved and the Fifth Amended Plan of Reorganization being confirmed. The proposed form of the order ("Financing Order") is attached hereto as **Exhibit A.**

2. After arms-length negotiations, the Debtor has successfully negotiated a proposed Lender Conditional Commitment for post-petition financing with the Lender (the "Financing"). See **Exhibit B**. The Lender has agreed to provide a secured loan to the Debtor to allow Debtor to refinance, fully pay off certain secured creditors (Summit Bank, Bank of the West and claims of the Alameda County Tax Collector) and fund a plan to restructure and payoff Private Mortgage Fund LLC, Jacol et al.[1], obtain a release of all liens these afore-mentioned creditors hold against the Collateral (as the term is defined *infra*), obtain sufficient funds to implement Debtor's Chapter 11 plan as amended, and effectuate and allow for a successful reorganization.

3. A copy of the Conditional Commitment Letter is attached hereto as **Exhibit B**. A draft of the proposed term sheet ("Term Sheet"), which will reflect the loan terms outlined in the Conditional Commitment Letter as shown in **Exhibit B** is included and also attached to **Exhibit B**. The final loan documents shall be forthcoming and may include further schedules, attachments, and exhibits. The loan will be in a principal amount of $14,500,000 (the "Note") with a blended interest rate of 11.76%, comprising $11,000,000 at 10.75% interest only and $3,500,000 at 15% interest only. The Commitment, the Note, and all documents executed in connection therewith shall be collectively referred to herein as the "Loan Documents".

//

---

[1] The term "Jacol et al." shall mean the group of individuals and entities that currently holds the beneficial interest in the 2nd deed of trust encumbering the real property parcels APNs 25-697-2-4, 25-697-3-6. 25-697-7-14. See Court Docket Doc. #51-2, p.13.

4. The proposed post-petition financing grants the Lender a first priority mortgage lien on the following real properties of Debtor: APN 25-701-6-4, APN 25-697-2-4, APN 25-697-7-14, APN 25-697-3-6, APN 25-701-11, APN 25-707-14, APN 25-697-7-15, and APN 19-0102-4 (the "Collateral").

5. As shown in further detail in **Exhibit C**, the Alameda County Tax Collector, Bank of the West, and Private Mortgage Fund LLC, who all currently hold a first trust deed or a secured property tax bill on certain/all parcels of the Collateral, shall be paid off in full and shall release their liens on the property immediately upon receiving their payoff, pursuant to Debtor's to be filed Fifth Amended Disclosure Statement and Fifth Amended Plan of Reorganization.

6. Furthermore, also as shown in **Exhibit C**, Jacol et al. holds a second deed of trust on three of the Collateral parcels. See **Exhibit C** and **Exhibit D**. Jacol et al. and Debtor agreed that Jacol et al. will release its lien for a payment of $200,000 through the Lender refinance and determine terms to structure the remaining debt balance in Debtor's confirmed Chapter 11 Plan of Reorganization, as amended.

7. A respective stipulation was entered into and executed by and between Debtor and Jacol et al. See **Exhibit D**. Said stipulation is conditioned upon the approval of this honorable Court at the time of Plan confirmation.

8. Through Debtor's Fifth Amended Plan of Reorganization, *all* of the above-named creditors will be required to contemporaneously with the Financing-payout, upon Plan confirmation, release their liens on the Collateral in their entirety.

9. This means that the Financing, once Debtor's Plan of Reorganization is approved, will achieve a release of all of the liens of the above-stated creditors against the Collateral, a full payoff of the claims of the Alameda County Tax Collector (for its claims related to the Collateral), Bank of the West, and Summit Bank, and a partial pay off of Private Mortgage Fund LLC and Jacol et al.

10. To achieve this, Debtor estimates that a total payout of refinance funds of approximately $14,000,000 will be required. See **Exhibit C**.

11. The exact amounts payable to each one of the above-named creditors shall be determined at the confirmation hearing of Debtor's Plan of Reorganization, as amended, based on each

creditor's proof of claim and any and all evidence of post-petition interest, fees, and costs as filed and served by the above-stated creditors prior to the confirmation hearing.

12. Pursuant to Rule 4001(c) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Debtor makes the following disclosures as to the terms and conditions of the proposed Financing:

    (i) <u>Borrower</u>. Pacific Thomas Corporation.

    (ii) <u>Lender</u>. Eagle Group Finance

    (iii) <u>Amount</u>. $14,500,000.00.

    (iv) <u>Availability</u>. The entire loan amount shall be available at the time of closing of the loan, as soon after the date a Financing Order granting this Financing Motion is entered as possible pursuant to an order for confirmation of Debtor's Plan of Reorganization by this Court.

    (v) <u>Mandatory Use of Loan Proceeds</u>. Proceeds from the Financing shall be used as described in Debtor's Fifth Amended Plan of Reorganization, and eventually approved by the Court, to pay off the Alameda County Tax Collector's, Bank of the West's, and Summit Bank's secured claims as set forth in **Exhibit C**; the funds remaining after the payoff shall serve to provide sufficient funds to fund and implement Debtor's Chapter 11 plan as amended and to provide restructure payments to remaining secured creditors Private Mortgage Fund LLC and Jacol. *Financing Order* ¶¶5-7.

    (vi) <u>Collateral</u>. The Debtor's obligations to Lender under the Loan Documents will be secured by a valid, first priority mortgage lien on the Collateral. See **Exhibit B**, *p.2 and Exhibit A to Eagle's Commitment Letter.*

    (vii) <u>Interest</u>. The Loan will be made at the rate of ten and eighty-five of one hundredth percent (10.85%) per annum. Debtor shall be required to make interest payments only.

    (viii) <u>Term</u>. The Note will mature 18 months after the closing date, with two extension options of 6 months at 1.30% costs each, subject to borrower's replenishment of interest reserve if DSCR is below 1.15x. See **Exhibit B**, *Commitment letter,* p.1.

    (ix) <u>Fees</u>. The Debtor is responsible for all third party fees, including appraisals, background checks, title, legal, and escrow fees. *Financing Order* ¶5.

    (x) <u>Conditions</u>. The Lender's agreement to provide the post-petition financing is conditioned on (a) no material adverse change in the fair market value of the subject properties prior to close of escrow, (b) no material adverse change in the condition

of title to the subject properties as reflected in the preliminary report dated August 5, 2013 from First American Title, (c) if performance of any act hereto by Eagle Group Finance or Debtor is prevented by reason of a major event outside of the control of Eagle Group Finance or Debtor, including natural disasters, or other acts of God, war, or the failure of third parties to perform their obligations to the contracting party (i.e. Force Majeure), (d) Completion, execution, and acceptance of the loan documentation materially consistent with the terms of the commitment letter and in the form provided, (e) Bankruptcy Court approval, and (f) Final approval by Eagle Group Finance's board, which shall only be withheld if items (a)-(f) are not satisfied. See **Exhibit B**, *Commitment Letter, p.1*.

(xi) <u>Events of Default.</u> An Event of Default shall exist if there is a Material Adverse Condition or Material Adverse Change as determined by Lender with respect to or affecting (i) the operations, performance or condition of any properties (for example, but without limitation, force majeure, casualty or condemnation, or (ii) the business of any Loan Party, Related Party and/or major tenant at any Properties herein (a "Material Event").

(xii) <u>Representations and Warranties</u>. The Debtor and its subsidiaries shall make customary representations and warranties.

## JURISDICTION AND VENUE

13. On August 6, 2012 (the "Petition Date"), the Debtor filed its voluntary petition for relief under Chapter 11 of the United States Code, 11 U.S.C. §§101 et seq. (the "Bankruptcy Code") commencing the Debtor's Chapter 11 case in the U.S. Bankruptcy Court for the Northern District of California, Oakland Division (the "Court").

14. On January 8, 2013, the Court entered an order approving the appointment of a Chapter 11 Trustee based on 11 U.S.C. §1104(a) and (b).

15. The Chapter 11 Trustee is currently operating Debtor's business and manages its property pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

16. This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§156 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. §157(b)(2). Venue is proper before this Court under 28 U.S.C. §§1408 and 1409.

17. The statutory basis for the relief sought herein are Section 105, 363, and 364 of the Bankruptcy Code, and Bankruptcy Rule 4001(c).

# BACKGROUND

18. Debtor is a real estate company that specializes in real estate services with a focus on investment, ownership, and development of commercial real estate properties. Debtor owns altogether nine real property parcels in Oakland, California, located on a busy intersection in the developing Fruitvale neighborhood in Oakland, one block from International Blvd., and two blocks from the Fruitvale BART station. The real properties are comprised of several commercial rental buildings, parking lots, and a safe storage operation; the properties are leased to third party entities.

19. In 2007, Debtor obtained a secured loan from Summit Bank which matured in 2011. In addition to five of Debtor's real properties, the Summit loan is also secured by one real property parcel, APN 25-693-3-3, which is owned by Nova Group.

20. Despite Debtor's attempts to negotiate a pay-off of its loan with Summit throughout the years proceeding Debtor's bankruptcy filing, Summit consistently refused to provide Debtor with an actual payoff amount, which resulted in the Debtor's losing various refinance opportunities.[2] This caused Debtor's severe financial difficulties as well as Debtor's defaulting on the Summit loan when it matured in March 2011. Despite Debtor's good faith efforts to cure the default, and its inquires and attempts to refinance Summit's loan, Summit Bank refused to work with Debtor and, instead, commenced an action for specific performance to appoint a receiver in Alameda County Superior Court, Case No., RG11574626. Summit Bank's actions, which thwarted Debtor's goals and efforts, and the receiver's dispute with Debtor regarding the scope of the receivership order, eventually led to Debtor's defaulting on the loans from and/or obligations to the above-named creditors and the filing for protection under Chapter 11 of the Code.

21. Since the inception of Debtor's Chapter 11, Debtor has been engaged in lengthy negotiations with different entities who offer(ed) various possible funding sources and options, and Debtor has diligently worked to secure a lender who is willing to refinance parts or all of Debtor's secured obligations to its creditors.

//

---

[2] Summit denies that it refused to provide the requested payoff amounts.

22. Even after the commencement of the instant case, Debtor had made payments to its secured creditors,[3] had worked out cash collateral stipulations with them, and had made adequate protection payments to them until the Chapter 11 trustee was appointed.

23. It has always been Debtor's goal to preserve its business value for its creditors to the greatest extent possible, and Debtor believes that the proposed refinance through Lender is more beneficial to all of its creditors than a sale of parcels of Debtor's real property portfolio that unreasonably break up and divide Debtor's storage operations as well as its commercial leasing and parking lot leasing operations.

24. The Bankruptcy Code's preference for reorganization over liquidation supports this approach. Warren, *Chapter 11: Reorganizing American Businesses*, at 168.

25. After an initial refinance proposal by Eagle Group Finance, Debtor was able to negotiate a loan to restructure the majority of Debtor's liabilities, and, as shown in this Financing Motion, the terms of this proposed refinance are very beneficial to Debtor and the affected creditors as it provides the highest-possible return to Debtor's creditors and facilities Debtor's restructuring of its debt through Debtor's plan of reorganization (as amended).

26. In particular, Debtor seeks Court approval of Lender's refinance commitment which is referred to as in Lender's Commitment Letter, **Exhibit B,** with the instant Financing Motion.

## RELIEF REQUESTED

27. By this Financing Motion, the Debtor seeks (i) authorization under Sections 105, 363, and 364 of the Bankruptcy Code to obtain post-petition financing from the Lender pursuant to the terms and conditions set forth herein, in the Financing Order, and in the Loan Documents, and (ii) this Court's entry of the Financing Order, substantially in the form of attached **Exhibit A**, containing terms which have been negotiated with, and the Debtor believes are acceptable to, the Lender.

//

//

---

[3] For example, in January 2013, Debtor fully paid the first installment of the 2012/2013 property taxes that were due for each parcel of the Collateral. Initially, the tax assessor's office rejected Debtor's payment based on the argument that the County of Alameda had already identified 2012-2013 tax year installments as pre-petition debts.

## THE PROPOSED FINANCING SHOULD BE APPROVED

28. Pacific Thomas Corporation has made numerous inquiries but has been unable to procure the requisite financing in the form of unsecured debt. As credit has previously contracted in the non-insolvency world, the number of lenders in the insolvency world had also previously decreased and the terms of any such lending are more demanding. However, in spite of the previous difficulties in the lending market, Debtor Pacific Thomas Corporation has entertained several potential lending scenarios for secured credit. In spite of local improvements in the Oakland/Fruitvale district, especially those commercial parcels in close proximity to the Fruitvale BART station, obtaining secured credit in the real estate industry remains particularly difficult for Debtor under the circumstances of Debtor's bankruptcy filing and in light of the current economic climate.

29. Having determined that financing is available only under section 364 and 105 of the Bankruptcy Code, the Debtor negotiated the Financing pursuant to its business judgment and now proposes the attached loan terms to the Chapter 11 Trustee and this Court.

30. Provided that its business judgment does not run afoul of the provisions of and policies underlying the Bankruptcy Code, courts grant a debtor and a trustee considerable deference in acting in accordance with its business judgment. See, e.g., *In re YL West 87th Holdings I LLC*, 423 B.R. 421, 441 (Bankr. S.D.N.Y. 2010) ("Courts have generally deferred to a debtor's business judgment in granting section 364 financing."); *In re Ames Department Stores*, 115 B.R. 34, 40 (S.D.N.Y. 1990) ("Cases consistently reflect that the court's discretion under Section 364 is to be utilized on grounds that permit reasonable business judgment to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or their purpose is not so much to benefit the estate as it is to benefit parties in interest.").

31. PTC has determined that Financing is necessary to preserve the assets of the Debtor's estate, avoid a further increase of its liability for its creditors' significant and steadily increasing legal fees, maximize its payments to the creditors as a whole pursuant to its proposed Plan of Reorganization, allow its full business operations, all with the overall goal to further Debtor's emerging from Chapter 11 as a reorganized Debtor.

32. Debtor's primary source of revenue is its leasing of the commercial rental units, parking lots, and the storage operation. At the outset of this Bankruptcy, Debtor was able to reach cash collateral stipulations with PMF, PCI, Summit Bank, and Bank of the West, which allowed Debtor to pay for at least its core operating expenses for a limited period of time. After the Chapter 11 trustee had been appointed, the Court approved the cash collateral stipulations entered into by the Chapter 11 Trustee and Bank of the West, Summit Bank, Private Mortgage Fund and Private Capital Investments, respectively.

33. The operations of Debtor's business are currently significantly limited and its business activities are limited to the bare minimum, without maximizing possible returns and negotiating new leases.

34. Without paying off certain secured creditors of Debtor, its continued existence and business operations are gravely jeopardized as well as the preservation of Debtor's assets and properties.

35. In particular, a sale of some of Debtor's real properties will not allow the full pay off of all of Debtor's secured debts, it will unreasonably break up and rip apart Debtor's business operations, and it will have a negative impact on the value of the remaining parcels as well as the operations thereon, e.g. due to ingress/egress restrictions, utility access and supply, etc. This has particularly become apparent in the sale motion by the Chapter 11 Trustee that requires that at least one creditor accept a significantly discounted payoff and appears to only sell a portion of Debtor's storage operation, a portion of its commercial buildings, and a portion of Debtor's parking lots. The proposed sale and therefor necessary short payoff consent by Debtor's creditors in fact corroborate that a refinance will yield an overall higher return to Debtor's secured creditors than a piecemeal sale of Debtor's properties can realistically achieve.

36. A refinance, on the other hand, has no impact on the value of each Collateral parcels, and, thus, does not harm the estate. Rather, it protects and benefits the bankruptcy estate as it curtails each creditor's costs and fees that have accrued each day and steadily increased so far.

37. It should also be noted that a sale as requested by the Chapter 11 trustee is not consistent with the Bankruptcy Code's preference for reorganization over liquidation. Warren,

*Chapter 11: Reorganizing American Businesses*, at 168. As shown by this motion, Debtor can preserve its assets, its business, and its operations, and it can protect its creditors to the fullest extent possible through a refinancing with Lender. A liquidation should be avoided under these circumstances.

38. Thus, the relief requested herein is necessary, essential, and appropriate for the continued operation of the Debtor's business, the management and maintenance of Debtor's assets and properties, and the long-term goal of this bankruptcy, which is reorganizing the Debtor in a way that protects its creditors to the fullest extent possible.

39. The Financing will provide sufficient funds to pay off Debtor's secured creditors as shown in **Exhibit C**, the Alameda County Tax Collector, Summit Bank, Bank of the West, and provide a partial paydown to Private Mortgage Fund LLC, Private Capital Investments and Jacol, and will facilitate the Debtor's successful reorganization as described in Debtor's amended Disclosure Statement.

40. Accordingly, the Debtor believes that the Financing is in the best interests of the Debtor, the Debtor's estate, and Debtor's creditors; it will allow the Debtor to maximize the value of its assets for all creditors.

41. The Financing and the documents to be executed in connection therewith are the result of arm's length negotiations between the Debtor and the Lender. In addition, the terms and provisions of the Financing are fair and reasonable and in fact better than Debtor's current secured loans, especially since some of Debtor's creditors appear to apply default interest rates and charge default penalties. For example, Private Mortgage Fund currently charges 11.5% interest. As such, Debtor believes that the Financing, under the terms and conditions set forth herein, is the most favorable financing available and best resolves and addresses the Debtor's post-petition financing and reorganization needs.

## PROPOSED USE OF POST-PETITION FINANCING

42. As shown in further detail in **Exhibit C**, Alameda County Tax Collector, Summit Bank, Bank of the West, and provide a partial paydown to Private Mortgage Fund LLC, Private Capital Investments and Jacol, loans in a total amount of approximately $14,000,000.00. See **Exhibit C**.

43. As part of the Financing, Debtor's above-named secured creditors will be paid at closing, upon Plan confirmation, under the approved Financing loan in the estimated amounts set forth in **Exhibit C**. The above-named secured creditors will be required to contemporaneously with the payoff release their liens on the Collateral.

44. Debtor respectfully requests that the actual payoff figures for the Alameda County Tax Collector, Bank of the West, and Private Mortgage Fund shall be determined by Court based on the Creditor's respective proof of claims and evidence, documentation, and information filed and served by the above-stated creditors at the time of *plan confirmation*.

45. Any and all funds remaining after the above-listed creditors are paid the above-stated amounts shall be held and eventually used by Debtor to provide sufficient funds to implement Debtor's Chapter 11 plan as amended.

## PRAYER

46. **WHEREFORE**, the Debtor respectfully requests that the Court:

(i) Authorize the Debtor to obtain post-petition financing from the Lender pursuant to the terms and conditions set forth herein, in the Financing Order, and in the Loan Documents;

(ii) Enter a Financing Order substantially in the form and substance of **Exhibit A** attached hereto, and

(iii) Grant such other and further relief as this Court deems just and proper.

DATED: July 17, 2014           Respectfully submitted,

                                 MATLOCK LAW GROUP, P.C.

                                 By:  /s/ Anne-Leith Matlock
                                      Anne-Leith Matlock
                                      Attorneys for Debtor,
                                      PACIFIC THOMAS CORPORATION