

EAGLE
GROUP
FINANCE

12100 Wilshire Blvd.  Suite 520  Los Angeles, CA  90025
P: 310.843.0001 F: 310.843.0888

July 17, 2014
<u>Via Electronic Email</u>
Pacific Thomas Corporation
Randall Whitney, President

**Re: <u>Proposed Financing Conditional Commitment Letter on the properties located at 2615 E. 12th Street, Oakland CA 94601 with APN 025-701-6-4; 1113-1115 29th Avenue, Oakland CA 94601 with APN 025-0701-11 and 025-707-14; "Y" Access Parcel with APN 025-0697-007-15; 2783 E. 12th Street, Oakland CA 94601 with APN 025-0697-02-04; 2801 E. 12th Street, Oakland CA 94601 with APN 025-0697-007-14; 1111 29th Avenue, Oakland CA 94601 with APN 025-0697-003-06; 12th Street – 29th Avenue to Derby Avenue, Oakland CA 94601 with APN 025-0697-003-06; ; 23rd Avenue, Oakland CA 94601 with APN 019-0102-004 (the "Properties") to Pacific Thomas Capital ("Applicant" or "Borrower")</u>**

Dear Mr. Whitney:

      We are pleased to submit the following Commitment Letter ("CL").  Outlined below are the general terms and conditions under which Eagle Group Finance is prepared to fund the following broker-arranged loan ("Loan") to facilitate the Chapter 11 Reorganization Plan for refinancing the Debtor Pacific Thomas Corporation.  This CL supersedes all prior correspondence, commitments, and oral or other communications relating to financing arranged between borrower and lender.  This letter, once returned countersigned by Borrower ("<u>Applicant</u>" or "<u>Borrower</u>"), will constitute a Commitment Letter (together with any Schedules attached hereto, this "<u>Application</u>") with Eagle Group Finance, L.P., a California limited partnership (together with its successors and assigns, "<u>Lender</u>"), for financing of the Properties (the "<u>Loan</u>"), the terms of which are set forth herein and on <u>Schedule "A"</u> attached hereto.  Eagle Group Funding, LP, commits to funding this loan subject only to Bankruptcy Court Approval of Case 12-46534 and the limitations herein and attached hereto as <u>Schedule "B"</u>.

      Final terms and conditions shall be only those set forth in the loan documents executed by Lender, and accepted by Borrower.  This Commitment Letter is subject to Borrower's fulfillment of the closing conditions imposed by Lender. The loan documents executed at the closing of the Loan (the "<u>Closing</u>") will control if any terms conflict with this CL or any subsequent loan commitment issued by Lender, if any.

      Applicant will, contemporaneously with the acceptance of the CL, pay to Lender a good faith deposit of $40,000 (the "<u>Good Faith Deposit</u>"), to be applied by Lender to cover fees and expenses incurred by Lender in connection with this transaction and/or the Loan (regardless of whether the Loan closes).  Lender will engage its counsel upon receipt of the Good Faith Deposit.  To the extent that the borrower terminates the loan, through no fault of Eagle Group Finance, L.P., after signing this CL, Eagle Group Finance, L.P. will retain the Good Faith Deposit.

      Applicant hereby agrees to cooperate with Lender and its counsel, agents and representatives, and provide Lender and its counsel, agents and representatives with all requested information in order that Lender may conduct its final due diligence investigation prior to closing.  Applicant acknowledges that Lender will be relying on information supplied by Applicant in evaluating this Application and Applicant agrees to provide to Lender any updates to information previously provided to Lender on a timely basis and to disclose all material information concerning Applicant, Borrower or any of its principals, the Properties or any of the tenants of the Properties.

      Borrower, on its own behalf and on behalf of each Key Principal (defined below) and their respective affiliates (each, a "<u>Loan Party</u>" and, collectively, the "<u>Loan Parties</u>") hereby grants Lender the exclusive right to underwrite and, at Lender's sole discretion, issue any further commitments to make the Loan for a period (the "<u>Exclusivity Period</u>") of thirty (30) business days from the date of execution of this Application by Borrower.  In connection therewith, each Loan Party hereby represents and warrants to Lender that it is working solely with

Lender to finalize financing for the Properties and gain approval from the Bankruptcy Court. If (i) the conditions set forth in Schedule "A" are not met and the Loan does not close for any reason; or (ii) any Loan Party attempts to obtain financing for the Properties from another lender during the Exclusivity Period, then, in each case, Lender shall, in addition to any remedies as may be available to Lender at law or otherwise, be entitled to terminate this CL and retain the unapplied balance of the Good Faith Deposit as liquidated damages for the time and effort expended by Lender in connection with this Application. This paragraph shall survive any termination or expiration of this Application.

This CL is being delivered with the understanding that neither it nor the substance thereof shall be disclosed by any Loan Party to any third person, except as required in Debtor's Amended Motion to Approve Post-Petition Financing or to those who are in confidential relationships to any of them (i.e., Borrower's counsel, accountants and other retained business advisors and broker) or as may be required by law.

The Good Faith Deposit shall be wired to the account listed below. If each of (i) the Good Faith Deposit, and (ii) a counterpart hereof duly executed by are not delivered to Lender on or before July 17, 2014, this CL shall, at Lender's option and in Lender's sole discretion, be deemed terminated.

Sincerely,

Eagle Group Finance, L.P., a California limited partnership

By: Eagle Group Brokerage Corp., a California corporation, its general partner

    By: /s/ Brian Good
    Name: Brian Good
    Title: CEO/President

**BORROWER'S AUTHORIZATION AND SIGNATURE**

By signing below, the undersigned authorizes Lender to process and evaluate this Application and agree that a Loan substantially on the terms and conditions described in this Application will be acceptable. The undersigned (i) make the representations and warranties of each Loan Party stated in this Application, (ii) agree to perform or cause to be performed all obligations of each Loan Party stated in this Application and (iii) jointly and severally agree to pay all fees, expenses and liabilities contemplated as an obligation of each applicable Loan Party under this Application. Applicant has executed this Term Sheet for itself and on behalf of each other Loan Party. The person executing this Application on behalf of Applicant hereby personally represents and warrants to Lender that he or she is authorized to sign this Application on behalf of Applicant and to bind each Loan Party to this Application.

The above terms and conditions are hereby agreed to and accepted this 17th day of July, 2014.

BORROWER: Pacific Thomas Capital


By:    /s/ Randall Whitney_____
Name:   Randall Whitney
Title:    President & Director

## SCHEDULE "A"

| | |
|---|---|
| **Properties:** | **2615 E. 12th Street, Oakland CA 94601 with APN 025-701-6-4; 1113-1115 29th Avenue, Oakland CA 94601 with APN 025-0701-11 and 025-707-14; "Y" Access Parcel with APN 025-0697-007-15; 2783 E. 12th Street, Oakland CA 94601 with APN 025-0697-02-04; 2801 E. 12th Street, Oakland CA 94601 with APN 025-0697-007-14; 1111 29th Avenue, Oakland CA 94601 with APN 025-0697-003-06; 12th Street – 29th Avenue to Derby Avenue, Oakland CA 94601 with APN 025-0697-003-06; ; 23rd Avenue, Oakland CA 94601 with APN 019-0102-004** <br> The properties shall be defined in the preliminary title report. |
| **Borrower:** | Borrower shall provide satisfactory entity formation documents, approved by the Bankruptcy Court to Lender. |
| **Description of Properties:** | 9 properties in total with a combined lot size of 336,799 sqft and a combined building size of 113,715 sq ft. |
| **Lender:** | Eagle Group Finance, L.P., and its successors and/or assignees. |
| **Loan Amount:** | $14,500,000 (fourteen million five hundred thousand) with $11,000,000 at 10.75% interest only and $3,500,000 at 15% interest only. |
| **Interest Rate:** | 11.776% (blended rate), interest only current with a sweep. |
| **Good Faith Deposit:** | $40,000, of which $10,000 has been paid, and the remainder will be paid this month. Non-refundable if borrower cancels loan, through no fault of Eagle Group Finance, L.P., after signing the Letter of Intent. |
| **Term:** | 18 months. The Borrower may extend the loan for an additional six months for a fee of 1 point to the Lender. |
| **Origination Fee:** | 2 Points to Eagle Group Finance, L.P. and 1 point to Nebo Capital, David Blitz |
| **Prepayment/Release:** | Loan is freely prepayable subject to a minimum interest earned equivalent to thirteen months. |
| **Collateral:** | |

- Title insured first priority lien on the Properties
- Conditional assignment of the cash deposit to ensure the funds are used to mitigate environmental issues at the properties.
- First priority Assignment of Rents, Leases and Security Deposits
- Perfected first priority security interest in all accounts relating to the ownership and operation of the Properties (excluding Borrower's operating account)
- Perfected first priority security interest in and collateral assignment of all personal property, licenses, permits, contract rights, general intangibles and other assets of Borrower used in connection with the operation, maintenance and management of the Properties
- Collateral assignment of the property management agreement

| | |
|---|---|
| **Subordinate Financing:** | No additional financing or encumbrance, or secured or unsecured indebtedness of any kind shall be permitted without Lender's prior written consent, other than (i) the Loan, (ii) any existing subordinated secured notes hereunder subject to Debtor restructuring payments from excess operating income and (iii) unsecured trade and operational debt incurred in the ordinary course of business satisfying certain parameters to be set forth in the loan documents. |
| **Limited Recourse:** | Lender's recourse in the event of a default will be against the Properties only, subject to certain "bad boy" and environmental carve-outs to be more fully set forth in the final loan documents. |
| **Guaranty:** | Key principals ("<u>Key Principals</u>") of Borrower (as designated by Lender) will execute a guaranty and indemnity with respect to the recourse obligations and such Key Principals and Borrower will execute an environmental indemnity agreement |
| **Management:** | Borrower to utilize a professional property management firm approved by Lender. |
| **Outside Closing Date:** | The later of Wednesday September 16, 2014 or upon approval of the Bankruptcy Court Case No. 12-46534, but in no event later than the Outside Closing Date of October 16, 2014. If the Loan is not funded and closed on or prior to the Outside Closing Date, this CL shall, at Lender's option and without notice to any Loan Party, be deemed terminated. Additionally, in the event any party (other than Lender) fails to comply with or breaches any term or provision hereof, this Application shall, at Lender's option and without notice to any Loan Party, be deemed terminated. |
| **Assumption:** | This loan may not be assumed by any other borrower. |
| **Other Terms and Conditions:** | <ul><li>To the extent in existence, satisfactory structural engineering report, property condition report, ALTA survey, Appraisal report. and all environmental reports certified to Eagle Group Finance, L.P.</li><li>Copies of any and all entitlements, zoning reports, and permits for the Properties.</li><li>Opinion letter issued by lender's counsel.</li><li>Updated financials of Borrower and guarantor.</li></ul> |

SCHEDULE "B"

# General Conditions and Requirements

**GENERAL CONDITIONS**:

1. <u>Financial Reports</u>: Borrower will provide Lender with quarterly financial reports for the Properties and the Borrower including, but not limited to, a current rent roll, monthly operating statements, a balance sheet, cash receipts and cash disbursement listings, bank reconciliations and accounts payable balances. These reports are to be certified as true, correct and complete by Borrower and be in a form acceptable to Lender.

2. <u>Immediate Repairs Reserve</u>. Subject to review of 3rd party reports.

3. <u>Interest Calculation; Monthly Payments</u>. Interest will be calculated on the basis of a 360-day year, but charged for the actual days elapsed. Monthly payments of interest will be due and payable on the 1st day of each month and considered late if not paid within 5 days of the due date.

4. <u>Closing Conditions</u>. Approval of the Loan will be subject to satisfactory completion of Lender's final underwriting and due diligence.

5. <u>Brokers</u>. The Loan Parties agree to pay any and all fees imposed or charged by all brokers, mortgage bankers and advisors (each a "<u>Broker</u>") hired or contracted by any Loan Party or their affiliates who brought about the issuance of this Application or the consideration of the Loan, and agree to indemnify and hold Lender harmless from and against any and all claims, demands and liabilities for brokerage commissions, assignment fees, finder's fees or other compensation whatsoever arising from this Application or Lender's extending the Loan which may be asserted against Lender by any person. The foregoing indemnity shall survive any termination hereof and the closing of the Loan. The Loan Party hereby represent and warrant that the only Broker engaged by the Loan Party with respect hereto is Nebo Capital and Eagle Group Finance, L.P. Lender hereby agrees to pay any and all fees imposed or charged by all Brokers hired solely by Lender.

6. <u>Additional Requirements</u>. Based upon Lender's due diligence investigation, Lender commits to funding this loan subject ONLY to the following limitations: no material adverse change in the fair market value of the subject properties as reflected in the preliminary title report; if performance of any act hereto by Lender or Borrower is prevented by reason of a major event outside of the control of Lender or Borrower, including natural disasters, or other acts of God, war, or the failure of third parties to perform their obligations to the contracting party (i.e. Force Majeure); completion, execution, and acceptance of final loan documentation; Bankruptcy Court Approval of Post-Petition Financing Amended Motion, Case No, 12-46534; and final approval of Lender's loan committee. Lender has verified that Borrower has appropriate and satisfactory collateral to secure the credit hereunder and has completed its initial due diligence investigation. Each Loan Party authorizes Lender to communicate directly with any person or entity involved with the Loan, the Properties or such other transactions (as a party or a service provider) in order to request or verify any information provided to Lender in accordance with this requirement. Lender currently has sufficient funds available to loan, and Borrower has been approved for the loan amount set forth in this CL, subject to the conditions herein. The funds can be placed in escrow once loan documents have been executed by all parties, upon approval of the Bankruptcy Court but in no event later than October 16, 2014, subject to the conditions hereunder.

7. <u>Fees and Expenses</u>. The Loan Parties will be jointly and severally responsible for fees, costs and charges in connection with the Loan, including a non-refundable due diligence fee to Lender and costs of Lender's legal counsel, title insurance, filing fees, and all studies, including but not limited to appraisal, engineering and environmental reports.

8. <u>Closing</u>. The Loan Parties shall use good faith, diligent efforts to close the Loan prior to the Outside Closing Date set forth on <u>Schedule "A"</u>.

9. <u>Good Faith Deposit</u>. Lender will require the Good Faith Deposit as specified herein upon delivery of this Application to cover expenses associated with the closing of the Loan. The unapplied portion of the Good Faith Deposit, if any, will be credited to Borrower at Closing. Subject to the other provisions of this Application, in the event of a termination of this Application without a closing of the Loan, the unapplied portion of the Good Faith Deposit, if any, will be promptly returned to Applicant upon receipt of a written release from Applicant.

10. <u>Third Party Reports</u>. Borrower to provide third party reports to Lender with respect to the Properties, which shall be satisfactory to Lender in all respects and shall be deemed the Properties of Lender in all respects.

11. <u>Further Credit Inquiry Authorization</u>. The Loan Parties, each direct and indirect owner of the Loan Parties and each of their respective affiliates (each of the foregoing, a "<u>Related Party</u>" and, collectively, the "<u>Related Parties</u>") authorizes Lender to make such inquiries and to obtain such information as Lender deems necessary to process this request for financing.

12. <u>Information Sharing</u>. Lender shall be authorized to disseminate any and all information it obtains in connection with this request for financing, including, without limitation, any credit and other information with respect to the Loan Parties, and their respective affiliates and the Properties, to any counselor, accountant, advisor, assignee, investor or prospective assignee or investor, any rating agency, any affiliate of Lender, any regulatory entity having jurisdiction over Lender and to any other parties Lender deems necessary or appropriate in connection with the closing of the Loan and any Secondary Market Transaction related thereto. Lender shall additionally be permitted to publicize the Loan and any Secondary Market Transaction related thereto.

13. <u>Accuracy of Information</u>. The issuance of this CL is based upon the assumed accuracy and completeness of all information, books, records, rent rolls, reports, exhibits, representations, statements, and other matters submitted to Lender for its consideration in connection with the Loan (the "<u>Submission Materials</u>"). By execution of this CL, the Loan Parties certify and affirm to Lender that all Submission Materials and all financial projections and conclusions contained therein are based on reasonable and stated assumptions, and that nothing in the Submission Materials contains any material misstatement of fact or omits to state a material fact. Lender shall have the option to terminate this Loan Commitment, if there shall have been any material misrepresentation, misstatement, omission, or error in any of the Submission Materials. In addition, the Loan Parties expressly agree that they shall be liable for (jointly and severally) and shall indemnify and hold Lender harmless from and against any and all losses, actions, claims or damages of whatever nature resulting from any material misrepresentation, misstatement, omission, or error in any of the Submission Materials, and from all costs and expenses incurred by Lender, including, without limitation, attorneys' fees, in connection with defending, paying, settling or otherwise resolving any action, suit, or claim relating thereto. The foregoing indemnity shall survive any termination hereof and the closing of the Loan.

14. <u>Tax Structure</u>. The Loan Parties hereby acknowledge and agree that, from the commencement of discussions with respect to the Loan, the Loan Parties and each of their respective employees,

representatives or agents is permitted to disclose to any and all persons, without limitation of any kind, the U.S. tax treatment and U.S. tax structure of the Loan and all materials of any kind (including opinions or other tax analyses) that are provided to any Loan Party related to such U.S. tax treatment and U.S. tax structure, other than information for which nondisclosure is reasonably necessary in order to comply with applicable securities laws. In this regard, the Loan Parties acknowledge and agree that any Loan Party's disclosure of the U.S. tax treatment and U.S. tax structure of the Loan is not limited in any way by an express or implied understanding or agreement, oral or written (whether or not such understanding or agreement is legally binding). Furthermore, each Loan Party acknowledges and agrees that it does not know or have reason to know that its use or disclosure of information relating to the U.S. tax treatment and U.S. tax structure is limited in any other manner (such as where the Loan is claimed to be proprietary or exclusive) for the benefit of any other person.

15. <u>Entire Agreement; Governing Law</u>. This Application is the entire agreement between Lender and Borrower with respect to the Loan and all capitalized or defined terms used in this Application have the meaning specified in this Application. This Application is governed by California law. Modifications or waiver to this Application will be effective only if made by a written agreement signed by Borrower and Lender. No third party is a beneficiary (express or implied) of this Application of the Loan proceeds. No Loan Party may assign this Application or the Loan proceeds without Lender's prior written consent. Time is of the essence with respect to each Loan Party's timely performance of its obligations under this application.

16. <u>Material Event</u>. Notwithstanding any other terms or conditions contained herein, prior to the closing of the Loan, Lender may, in its sole and absolute discretion, withdraw, cancel or otherwise terminate this Loan or modify the terms of same (including the Interest Rate) if there is a material adverse condition or material adverse change as determined by Lender with respect to or affecting (i) the operations, performance or condition of any Properties (for example, but without limitation, force majeure, casualty or condemnation) or (ii) the business (financial or otherwise) of any Loan Party, Related Party and/or any major tenant at any Properties (a "Material Event").

**BORROWER DELIVERIES PRIOR TO CLOSING**. In addition to any other items stipulated by Lender, Borrower shall furnish to Lender each of the following items, satisfactory in form and content to Lender and at Borrower's sole expense. Said items shall be delivered within the applicable timeframes set forth below, except that if no time frame is specified, Borrower shall deliver said item(s) as soon as commercially reasonable after the date of this Application.

1. <u>Title Insurance</u>. Upon Lender's receipt of an executed version this Application and delivery of the appropriate deposit to Lender, Lender shall provide Borrower with its Title Requirements. Lender will choose its Title Underwriter which to issue its Lender's Title Policy. Lender to obtain an updated preliminary title report and underlying documents from title company and provide the same to the Borrower.

2. <u>Deed</u>. Borrower shall deliver to Lender a copy of the grant deed which conveyed or conveys title to the Properties to Borrower, and copies of the owner's title insurance policy relative to the Properties.

3. <u>Survey</u>. Borrower shall deliver to Lender any title survey of the Properties by a licensed or registered land surveyor acceptable to Lender, certified to Lender, its successors or assigns and the appropriate title insurance company. The title survey shall be prepared in accordance with the Minimum Standard Detail Requirement and Classifications for ALTA/ACSM Land Title Surveys, as adopted in 2011. Lender's full survey requirements shall be sent to Borrower after receipt of the Good Faith Deposit. To the extent lender can obtain ALTA title insurance without a survey, then no survey shall be required.

4.  **Insurance**. The Properties will be required to be covered by fire and casualty, machine and boiler, business interruption, terrorism and liability insurance, all of which shall be all in form, substance and coverage amounts satisfactory to Lender and its insurance consultant. Additional insurance, such as, but not limited to, ordinance and law, flood, windstorm and earthquake (if the Properties are located in a seismic zone 3 or 4), may be required in Lender's discretion. Coverage relating to damage to the Properties shall be in an amount not less than the full replacement cost of the Properties and shall contain deductibles not in excess of $10,000, except for windstorm and earthquake coverage, which deductible may be up to 5% of the total insurable value of the Properties. All insurance shall be written by carriers with a claims paying ability rating from S&P of at least "A" or at least "A:X" by Best's Key Rating Guide. Business interruption insurance shall be for a period of 12 months plus a 12 month extended period of indemnity. Lender's full requirements shall be sent to Borrower after receipt of the Good Faith Deposit. Borrower shall maintain such insurance until the Loan is paid in full.

5.  **Zoning and Municipal Compliance**. Borrower shall provide Lender such written evidence as Lender may require to the effect that the Properties have been zoned for purposes consistent with the uses contemplated in this Application beyond any possibility of appeal and to the effect, further, that there are no pending proceedings, either administrative, legislative or judicial which would in any manner adversely affect that status of the zoning of the Properties or any part thereof. In addition, Borrower shall provide Lender with written evidence satisfactory to Lender to the effect that there are no outstanding violations of municipal code, including but not limited to, fire and building codes. Lender's zoning and municipal code requirements shall be sent to you after receipt of the Good Faith Deposit.

6.  **Leases; Rent Roll**. Waived

7.  **Tenant Estoppels**. From Master Lease

8.  **SNDA's**. Waived.

9.  **Payoff Information**. This Loan is for the purpose of refinancing the Properties subject to approval of the Bankruptcy Court and pursuant to Debtor's Fifth Amended Disclosure Statement and Plan of Reorganization. Borrower shall submit to Lender payoff information confirming the amount of all liens on the Properties to be paid off and/or restructured hereunder.

10. **Searches of Public Records**. Before Closing, Lender shall conduct, or shall require Borrower to conduct, a UCC search, tax lien search judgment lien search and bankruptcy search, in respect of Borrower and each of its Key Principals and such other persons who Lender designates, at the sole cost and expense of Borrower. All UCC Financing Statements/tax liens/judgment liens must be released of record except to the extent Lender, in its sole discretion, determines otherwise. Such parties shall provide Lender with all such information as is reasonably necessary to conduct said searches, including, but not limited to all residences of Borrower and each Key Principal.

11. **Entitlements**: Copies of any and all entitlements, zoning reports, and permits for the Properties.

**GOOD FAITH DEPOSIT**
**WIRING INSTRUCTIONS**

**Eagle Group Finance LP Operating Acct**

Borrower will pay via check